No. 25-5289

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————————

COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al*.,
*Plaintiffs-Appellees*,

v.

KRISTI NOEM, Secretary of Homeland Security, *et al*.,
*Defendants-Appellants*.

———————————————————

On Appeal from the United States District Court
for the District of Columbia
No. 1:25-cv-00872-JMC (Hon. Jia M. Cobb)

———————————————

**ADDENDUM**

———————————————

Esther H. Sung
Hillary Li
Karen C. Tumlin
Brandon Galli-Graves
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
hillary.li@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

5 U.S.C. § 706.................................................................................ADD-1

6 U.S.C. § 202(4).............................................................................ADD-3

8 U.S.C. § 1101(a)(13)....................................................................ADD-5

8 U.S.C. § 1158(a)...........................................................................ADD-7

8 U.S.C. § 1229a............................................................................ADD-15

8 C.F.R. § 245.1.............................................................................ADD-24

Act of Nov. 2, 1966, Pub. L. No. 89-732.....................................ADD-34

Act of Nov. 6, 2000, Pub. L. No. 106-429....................................ADD-35

Act of Nov. 21, 1989, Pub. L. No. 101-167..................................ADD-37

Act of Oct. 28, 1977, Pub. L. No. 95-145.....................................ADD-39

Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132,
§§ 414, 422 (Apr. 24, 1996) .........................................................ADD 42

Haitian Refugee Immigration Fairness Act, Pub. L. No. 105-277...............ADD-45

Help Haitian Adoptees Immediately to Integrate Act of 2010, Pub. L.
No. 111-293...................................................................................ADD-47

Illegal Immigration Reform and Immigrant Responsibility Act, Pub.
L. No. 104-208, § 302 (Sept. 30, 1996).........................................ADD-49

Pub. L. No. 85-559 (1958)............................................................ADD-55

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part I. The Agencies Generally
      Chapter 7. Judicial Review (Refs & Annos)

5 U.S.C.A. § 706

§ 706. Scope of review

Currentness

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

  (1) compel agency action unlawfully withheld or unreasonably delayed; and

  (2) hold unlawful and set aside agency action, findings, and conclusions found to be--

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B) contrary to constitutional right, power, privilege, or immunity;

    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    (D) without observance of procedure required by law;

    (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

**CREDIT(S)**

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 393.)

Notes of Decisions (6793)

5 U.S.C.A. § 706, 5 USCA § 706

Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

**End of Document**        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
　Title 6. Domestic Security (Refs & Annos)
　　Chapter 1. Homeland Security Organization
　　　Subchapter IV. Border, Maritime, and Transportation Security (Refs & Annos)
　　　　Part A. Border, Maritime, and Transportation Security Responsibilities and Functions (Refs & Annos)

6 U.S.C.A. § 202

§ 202. Border, maritime, and transportation responsibilities

Effective: February 24, 2016
Currentness

The Secretary shall be responsible for the following:

**(1)** Preventing the entry of terrorists and the instruments of terrorism into the United States.

**(2)** Securing the borders, territorial waters, ports, terminals, waterways, and air, land, and sea transportation systems of the United States, including managing and coordinating those functions transferred to the Department at ports of entry.

**(3)** Carrying out the immigration enforcement functions vested by statute in, or performed by, the Commissioner of Immigration and Naturalization (or any officer, employee, or component of the Immigration and Naturalization Service) immediately before the date on which the transfer of functions specified under section 251 of this title takes effect.

**(4)** Establishing and administering rules, in accordance with section 236 of this title, governing the granting of visas or other forms of permission, including parole, to enter the United States to individuals who are not a citizen or an alien lawfully admitted for permanent residence in the United States.

**(5)** Establishing national immigration enforcement policies and priorities.

**(6)** Except as provided in part C of this subchapter, administering the customs laws of the United States.

**(7)** Conducting the inspection and related administrative functions of the Department of Agriculture transferred to the Secretary of Homeland Security under section 231 of this title.

**(8)** In carrying out the foregoing responsibilities, ensuring the speedy, orderly, and efficient flow of lawful traffic and commerce.

**CREDIT(S)**

(Pub.L. 107-296, Title IV, § 402, Nov. 25, 2002, 116 Stat. 2177; Pub.L. 114-125, Title VIII, § 802(g)(1)(B)(ii)(II), Feb. 24, 2016, 130 Stat. 211.)

Notes of Decisions (12)

6 U.S.C.A. § 202, 6 USCA § 202
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

**End of Document**                                            © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.   ADD-4   2

United States Code Annotated
  Title 8. Aliens and Nationality (Refs & Annos)
    Chapter 12. Immigration and Nationality (Refs & Annos)
      Subchapter I. General Provisions (Refs & Annos)

8 U.S.C.A. § 1101

§ 1101. Definitions

Effective: January 5, 2023
Currentness

**(a)** As used in this chapter--

**(1)** The term "administrator" means the official designated by the Secretary of State pursuant to section 1104(b) of this title.

**(2)** The term "advocates" includes, but is not limited to, advises, recommends, furthers by overt act, and admits belief in.

**(3)** The term "alien" means any person not a citizen or national of the United States.

**(4)** The term "application for admission" has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa.

**(5)** The term "Attorney General" means the Attorney General of the United States.

**(6)** The term "border crossing identification card" means a document of identity bearing that designation issued to an alien who is lawfully admitted for permanent residence, or to an alien who is a resident in foreign contiguous territory, by a consular officer or an immigration officer for the purpose of crossing over the borders between the United States and foreign contiguous territory in accordance with such conditions for its issuance and use as may be prescribed by regulations. Such regulations shall provide that (A) each such document include a biometric identifier (such as the fingerprint or handprint of the alien) that is machine readable and (B) an alien presenting a border crossing identification card is not permitted to cross over the border into the United States unless the biometric identifier contained on the card matches the appropriate biometric characteristic of the alien.

**(7)** The term "clerk of court" means a clerk of a naturalization court.

**(8)** The terms "Commissioner" and "Deputy Commissioner" mean the Commissioner of Immigration and Naturalization and a Deputy Commissioner of Immigration and Naturalization, respectively.

**(9)** The term "consular officer" means any consular, diplomatic, or other officer or employee of the United States designated under regulations prescribed under authority contained in this chapter, for the purpose of issuing immigrant or nonimmigrant visas or, when used in subchapter III, for the purpose of adjudicating nationality.

**(10)** The term "crewman" means a person serving in any capacity on board a vessel or aircraft.

**(11)** The term "diplomatic visa" means a nonimmigrant visa bearing that title and issued to a nonimmigrant in accordance with such regulations as the Secretary of State may prescribe.

**(12)** The term "doctrine" includes, but is not limited to, policies, practices, purposes, aims, or procedures.

**(13)(A)** The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

**(B)** An alien who is paroled under section 1182(d)(5) of this title or permitted to land temporarily as an alien crewman shall not be considered to have been admitted.

**(C)** An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien--

**(i)** has abandoned or relinquished that status,

**(ii)** has been absent from the United States for a continuous period in excess of 180 days,

**(iii)** has engaged in illegal activity after having departed the United States,

**(iv)** has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,

**(v)** has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title, or

**(vi)** is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

**(14)** The term "foreign state" includes outlying possessions of a foreign state, but self-governing dominions or territories under mandate or trusteeship shall be regarded as separate foreign states.

United States Code Annotated
  Title 8. Aliens and Nationality (Refs & Annos)
    Chapter 12. Immigration and Nationality (Refs & Annos)
      Subchapter II. Immigration
        Part I. Selection System

8 U.S.C.A. § 1158

§ 1158. Asylum

Effective: July 4, 2025

Currentness

**(a) Authority to apply for asylum**

**(1) In general**

Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title.

**(2) Exceptions**

**(A) Safe third country**

Paragraph (1) shall not apply to an alien if the Attorney General determines that the alien may be removed, pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection, unless the Attorney General finds that it is in the public interest for the alien to receive asylum in the United States.

**(B) Time limit**

Subject to subparagraph (D), paragraph (1) shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States.

**(C) Previous asylum applications**

Subject to subparagraph (D), paragraph (1) shall not apply to an alien if the alien has previously applied for asylum and had such application denied.

**(D) Changed circumstances**

An application for asylum of an alien may be considered, notwithstanding subparagraphs (B) and (C), if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B).

**(E) Applicability**

Subparagraphs (A) and (B) shall not apply to an unaccompanied alien child (as defined in section 279(g) of Title 6).

**(3) Limitation on judicial review**

No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2).

**(b) Conditions for granting asylum**

**(1) In general**

**(A) Eligibility**

The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General under this section if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.

**(B) Burden of proof**

**(i) In general**

The burden of proof is on the applicant to establish that the applicant is a refugee, within the meaning of section 1101(a)(42)(A) of this title. To establish that the applicant is a refugee within the meaning of such section, the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant.

**(ii) Sustaining burden**

The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

**(iii) Credibility determination**

Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

**(2) Exceptions**

**(A) In general**

Paragraph (1) shall not apply to an alien if the Attorney General determines that--

**(i)** the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

**(ii)** the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;

**(iii)** there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States;

**(iv)** there are reasonable grounds for regarding the alien as a danger to the security of the United States;

**(v)** the alien is described in subclause (I), (II), (III), (IV), or (VI) of section 1182(a)(3)(B)(i) of this title or section 1227(a)(4)(B) of this title (relating to terrorist activity), unless, in the case only of an alien described in subclause (IV) of section 1182(a)(3)(B)(i) of this title, the Attorney General determines, in the Attorney General's discretion, that there are not reasonable grounds for regarding the alien as a danger to the security of the United States; or

**(vi)** the alien was firmly resettled in another country prior to arriving in the United States.

**(B) Special rules**

**(i) Conviction of aggravated felony**

For purposes of clause (ii) of subparagraph (A), an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime.

**(ii) Offenses**

The Attorney General may designate by regulation offenses that will be considered to be a crime described in clause (ii) or (iii) of subparagraph (A).

**(C) Additional limitations**

The Attorney General may by regulation establish additional limitations and conditions, consistent with this section, under which an alien shall be ineligible for asylum under paragraph (1).

**(D) No judicial review**

There shall be no judicial review of a determination of the Attorney General under subparagraph (A)(v).

**(3) Treatment of spouse and children**

**(A) In general**

A spouse or child (as defined in section 1101(b)(1)(A), (B), (C), (D), or (E) of this title) of an alien who is granted asylum under this subsection may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien.

**(B) Continued classification of certain aliens as children**

An unmarried alien who seeks to accompany, or follow to join, a parent granted asylum under this subsection, and who was under 21 years of age on the date on which such parent applied for asylum under this section, shall continue to be classified as a child for purposes of this paragraph and section 1159(b)(3) of this title, if the alien attained 21 years of age after such application was filed but while it was pending.

**(C) Initial jurisdiction**

An asylum officer (as defined in section 1225(b)(1)(E) of this title) shall have initial jurisdiction over any asylum application filed by an unaccompanied alien child (as defined in section 279(g) of Title 6), regardless of whether filed in accordance with this section or section 1225(b) of this title.

**(c) Asylum status**

**(1) In general**

In the case of an alien granted asylum under subsection (b), the Attorney General--

**(A)** shall not remove or return the alien to the alien's country of nationality or, in the case of a person having no nationality, the country of the alien's last habitual residence;

**(B)** shall authorize the alien to engage in employment in the United States and provide the alien with appropriate endorsement of that authorization; and

**(C)** may allow the alien to travel abroad with the prior consent of the Attorney General.

**(2) Termination of asylum**

Asylum granted under subsection (b) does not convey a right to remain permanently in the United States, and may be terminated if the Attorney General determines that--

**(A)** the alien no longer meets the conditions described in subsection (b)(1) owing to a fundamental change in circumstances;

**(B)** the alien meets a condition described in subsection (b)(2);

**(C)** the alien may be removed, pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien is eligible to receive asylum or equivalent temporary protection;

**(D)** the alien has voluntarily availed himself or herself of the protection of the alien's country of nationality or, in the case of an alien having no nationality, the alien's country of last habitual residence, by returning to such country with permanent resident status or the reasonable possibility of obtaining such status with the same rights and obligations pertaining to other permanent residents of that country; or

**(E)** the alien has acquired a new nationality and enjoys the protection of the country of his or her new nationality.

**(3) Removal when asylum is terminated**

An alien described in paragraph (2) is subject to any applicable grounds of inadmissibility or deportability under section [1] 1182(a) and 1227(a) of this title, and the alien's removal or return shall be directed by the Attorney General in accordance with sections 1229a and 1231 of this title.

**(d) Asylum procedure**

**(1) Applications**

The Attorney General shall establish a procedure for the consideration of asylum applications filed under subsection (a). The Attorney General may require applicants to submit fingerprints and a photograph at such time and in such manner to be determined by regulation by the Attorney General.

**(2) Employment**

An applicant for asylum is not entitled to employment authorization, but such authorization may be provided under regulation by the Attorney General. An applicant who is not otherwise eligible for employment authorization shall not be granted such authorization prior to 180 days after the date of filing of the application for asylum.

**(3) Fees**

The Attorney General shall impose fees for the consideration of an application for asylum, for employment authorization under this section, and for adjustment of status under section 1159(b) of this title. Nothing in this paragraph may be construed to limit the authority of the Attorney General to set additional adjudication and naturalization fees in accordance with section 1356(m) of this title.

**(4) Notice of privilege of counsel and consequences of frivolous application**

At the time of filing an application for asylum, the Attorney General shall--

**(A)** advise the alien of the privilege of being represented by counsel and of the consequences, under paragraph (6), of knowingly filing a frivolous application for asylum; and

**(B)** provide the alien a list of persons (updated not less often than quarterly) who have indicated their availability to represent aliens in asylum proceedings on a pro bono basis.

**(5) Consideration of asylum applications**

**(A) Procedures**

The procedure established under paragraph (1) shall provide that--

**(i)** asylum cannot be granted until the identity of the applicant has been checked against all appropriate records or databases maintained by the Attorney General and by the Secretary of State, including the Automated Visa Lookout System, to determine any grounds on which the alien may be inadmissible to or deportable from the United States, or ineligible to apply for or be granted asylum;

**(ii)** in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed;

**(iii)** in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed;

**(iv)** any administrative appeal shall be filed within 30 days of a decision granting or denying asylum, or within 30 days of the completion of removal proceedings before an immigration judge under section 1229a of this title, whichever is later; and

**(v)** in the case of an applicant for asylum who fails without prior authorization or in the absence of exceptional circumstances to appear for an interview or hearing, including a hearing under section 1229a of this title, the application may be dismissed or the applicant may be otherwise sanctioned for such failure.

**(B) Additional regulatory conditions**

The Attorney General may provide by regulation for any other conditions or limitations on the consideration of an application for asylum not inconsistent with this chapter.

**(6) Frivolous applications**

If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A), the alien shall be permanently ineligible for any benefits under this chapter, effective as of the date of a final determination on such application.

**(7) No private right of action**

Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

**(e) Commonwealth of the Northern Mariana Islands**

The provisions of this section and section 1159(b) of this title shall apply to persons physically present in the Commonwealth of the Northern Mariana Islands or arriving in the Commonwealth (whether or not at a designated port of arrival and including persons who are brought to the Commonwealth after having been interdicted in international or United States waters) only on or after January 1, 2014.

CREDIT(S)

(June 27, 1952, c. 477, Title II, c. 1, § 208, as added Pub.L. 96-212, Title II, § 201(b), Mar. 17, 1980, 94 Stat. 105; amended Pub.L. 101-649, Title V, § 515(a)(1), Nov. 29, 1990, 104 Stat. 5053; Pub.L. 103-322, Title XIII, § 130005(b), Sept. 13, 1994, 108 Stat. 2028; Pub.L. 104-132, Title IV, § 421(a), Apr. 24, 1996, 110 Stat. 1270; Pub.L. 104-208, Div. C, Title VI, § 604(a), Sept. 30, 1996, 110 Stat. 3009-690; Pub.L. 107-56, Title IV, § 411(b)(2), Oct. 26, 2001, 115 Stat. 348; Pub.L. 107-208, § 4, Aug. 6, 2002, 116 Stat. 928; Pub.L. 109-13, Div. B, Title I, § 101(a), (b), May 11, 2005, 119 Stat. 302, 303; Pub.L. 110-229, Title VII, § 702(j)(4), May 8, 2008, 122 Stat. 866; Pub.L. 110-457, Title II, § 235(d)(7), Dec. 23, 2008, 122 Stat. 5080; Pub.L. 119-21, Title X, § 100018, July 4, 2025, 139 Stat. 385.)

## U.S. SUPREME COURT OCTOBER TERM 2025

<U.S. Supreme Court, Oct. Term 2025, Oral Argument - Question Presented:>

<Whether a federal court of appeals must defer to the BIA's judgment that a given set of undisputed facts does not demonstrate mistreatment severe enough to constitute "persecution" under 8 U.S.C. § 1101(a)(42). Urias-Orellana v. Garland, 121 F.4th 327 (1st Cir. 2024), cert. granted sub nom. Urias-Orellana v. Bondi, 145 S. Ct. 2842 (2025); 2025 WL 3463688 (U.S.) (U.S.Oral.Arg.,2025). >

Notes of Decisions (3397)

### Footnotes

1       So in original. Probably should be "sections".

8 U.S.C.A. § 1158, 8 USCA § 1158
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

**End of Document**                          © 2026 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 8. Aliens and Nationality (Refs & Annos)
    Chapter 12. Immigration and Nationality (Refs & Annos)
      Subchapter II. Immigration
        Part IV. Inspection, Apprehension, Examination, Exclusion, and Removal (Refs & Annos)

8 U.S.C.A. § 1229a

§ 1229a. Removal proceedings

Effective: January 5, 2006
Currentness

**(a) Proceeding**

**(1) In general**

An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien.

**(2) Charges**

An alien placed in proceedings under this section may be charged with any applicable ground of inadmissibility under section 1182(a) of this title or any applicable ground of deportability under section 1227(a) of this title.

**(3) Exclusive procedures**

Unless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States. Nothing in this section shall affect proceedings conducted pursuant to section 1228 of this title.

**(b) Conduct of proceeding**

**(1) Authority of immigration judge**

The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses. The immigration judge may issue subpoenas for the attendance of witnesses and presentation of evidence. The immigration judge shall have authority (under regulations prescribed by the Attorney General) to sanction by civil money penalty any action (or inaction) in contempt of the judge's proper exercise of authority under this chapter.

**(2) Form of proceeding**

**(A) In general**

The proceeding may take place--

   **(i)** in person,

   **(ii)** where agreed to by the parties, in the absence of the alien,

   **(iii)** through video conference, or

   **(iv)** subject to subparagraph (B), through telephone conference.

**(B) Consent required in certain cases**

An evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the alien involved after the alien has been advised of the right to proceed in person or through video conference.

**(3) Presence of alien**

If it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien.

**(4) Alien's rights in proceeding**

In proceedings under this section, under regulations of the Attorney General--

**(A)** the alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings,

**(B)** the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government but these rights shall not entitle the alien to examine such national security information as the Government may proffer in opposition to the alien's admission to the United States or to an application by the alien for discretionary relief under this chapter, and

**(C)** a complete record shall be kept of all testimony and evidence produced at the proceeding.

**(5) Consequences of failure to appear**

**(A) In general**

Any alien who, after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in

absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2)). The written notice by the Attorney General shall be considered sufficient for purposes of this subparagraph if provided at the most recent address provided under section 1229(a)(1)(F) of this title.

**(B) No notice if failure to provide address information**

No written notice shall be required under subparagraph (A) if the alien has failed to provide the address required under section 1229(a)(1)(F) of this title.

**(C) Rescission of order**

Such an order may be rescinded only--

**(i)** upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1)), or

**(ii)** upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title or the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien.

The filing of the motion to reopen described in clause (i) or (ii) shall stay the removal of the alien pending disposition of the motion by the immigration judge.

**(D) Effect on judicial review**

Any petition for review under section 1252 of this title of an order entered in absentia under this paragraph shall (except in cases described in section 1252(b)(5) of this title) be confined to (i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable.

**(E) Additional application to certain aliens in contiguous territory**

The preceding provisions of this paragraph shall apply to all aliens placed in proceedings under this section, including any alien who remains in a contiguous foreign territory pursuant to section 1225(b)(2)(C) of this title.

**(6) Treatment of frivolous behavior**

The Attorney General shall, by regulation--

**(A)** define in a proceeding before an immigration judge or before an appellate administrative body under this subchapter, frivolous behavior for which attorneys may be sanctioned,

**(B)** specify the circumstances under which an administrative appeal of a decision or ruling will be considered frivolous and will be summarily dismissed, and

**(C)** impose appropriate sanctions (which may include suspension and disbarment) in the case of frivolous behavior.

Nothing in this paragraph shall be construed as limiting the authority of the Attorney General to take actions with respect to inappropriate behavior.

**(7) Limitation on discretionary relief for failure to appear**

Any alien against whom a final order of removal is entered in absentia under this subsection and who, at the time of the notice described in paragraph (1) or (2) of section 1229(a) of this title, was provided oral notice, either in the alien's native language or in another language the alien understands, of the time and place of the proceedings and of the consequences under this paragraph of failing, other than because of exceptional circumstances (as defined in subsection (e)(1)) to attend a proceeding under this section, shall not be eligible for relief under section 1229b, 1229c, 1255, 1258, or 1259 of this title for a period of 10 years after the date of the entry of the final order of removal.

**(c) Decision and burden of proof**

**(1) Decision**

**(A) In general**

At the conclusion of the proceeding the immigration judge shall decide whether an alien is removable from the United States. The determination of the immigration judge shall be based only on the evidence produced at the hearing.

**(B) Certain medical decisions**

If a medical officer or civil surgeon or board of medical officers has certified under section 1222(b) of this title that an alien has a disease, illness, or addiction which would make the alien inadmissible under paragraph (1) of section 1182(a) of this title, the decision of the immigration judge shall be based solely upon such certification.

**(2) Burden on alien**

In the proceeding the alien has the burden of establishing--

**(A)** if the alien is an applicant for admission, that the alien is clearly and beyond doubt entitled to be admitted and is not inadmissible under section 1182 of this title; or

**(B)** by clear and convincing evidence, that the alien is lawfully present in the United States pursuant to a prior admission.

In meeting the burden of proof under subparagraph (B), the alien shall have access to the alien's visa or other entry document, if any, and any other records and documents, not considered by the Attorney General to be confidential, pertaining to the alien's admission or presence in the United States.

**(3) Burden on service in cases of deportable aliens**

**(A) In general**

In the proceeding the Service has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable. No decision on deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence.

**(B) Proof of convictions**

In any proceeding under this chapter, any of the following documents or records (or a certified copy of such an official document or record) shall constitute proof of a criminal conviction:

**(i)** An official record of judgment and conviction.

**(ii)** An official record of plea, verdict, and sentence.

**(iii)** A docket entry from court records that indicates the existence of the conviction.

**(iv)** Official minutes of a court proceeding or a transcript of a court hearing in which the court takes notice of the existence of the conviction.

**(v)** An abstract of a record of conviction prepared by the court in which the conviction was entered, or by a State official associated with the State's repository of criminal justice records, that indicates the charge or section of law violated, the disposition of the case, the existence and date of conviction, and the sentence.

**(vi)** Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction.

**(vii)** Any document or record attesting to the conviction that is maintained by an official of a State or Federal penal institution, which is the basis for that institution's authority to assume custody of the individual named in the record.

**(C) Electronic records**

In any proceeding under this chapter, any record of conviction or abstract that has been submitted by electronic means to the Service from a State or court shall be admissible as evidence to prove a criminal conviction if it is--

**(i)** certified by a State official associated with the State's repository of criminal justice records as an official record from its repository or by a court official from the court in which the conviction was entered as an official record from its repository, and

**(ii)** certified in writing by a Service official as having been received electronically from the State's record repository or the court's record repository.

A certification under clause (i) may be by means of a computer-generated signature and statement of authenticity.

**(4) Applications for relief from removal**

**(A) In general**

An alien applying for relief or protection from removal has the burden of proof to establish that the alien--

**(i)** satisfies the applicable eligibility requirements; and

**(ii)** with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion.

**(B) Sustaining burden**

The applicant must comply with the applicable requirements to submit information or documentation in support of the applicant's application for relief or protection as provided by law or by regulation or in the instructions for the application form. In evaluating the testimony of the applicant or other witness in support of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof. In determining whether the applicant has met such burden, the immigration judge shall weigh the credible testimony along with other evidence of record. Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.

**(C) Credibility determination**

Considering the totality of the circumstances, and all relevant factors, the immigration judge may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

**(5) Notice**

If the immigration judge decides that the alien is removable and orders the alien to be removed, the judge shall inform the alien of the right to appeal that decision and of the consequences for failure to depart under the order of removal, including civil and criminal penalties.

**(6) Motions to reconsider**

**(A) In general**

The alien may file one motion to reconsider a decision that the alien is removable from the United States.

**(B) Deadline**

The motion must be filed within 30 days of the date of entry of a final administrative order of removal.

**(C) Contents**

The motion shall specify the errors of law or fact in the previous order and shall be supported by pertinent authority.

**(7) Motions to reopen**

**(A) In general**

An alien may file one motion to reopen proceedings under this section, except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv).

**(B) Contents**

The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material.

**(C) Deadline**

**(i) In general**

Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.

**(ii) Asylum**

There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under sections [1] 1158 or 1231(b)(3) of this title and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding.

**(iii) Failure to appear**

The filing of a motion to reopen an order entered pursuant to subsection (b)(5) is subject to the deadline specified in subparagraph (C) of such subsection.

**(iv) Special rule for battered spouses, children, and parents**

Any limitation under this section on the deadlines for filing such motions shall not apply--

**(I)** if the basis for the motion is to apply for relief under clause (iii) or (iv) of section 1154(a)(1)(A) of this title, clause (ii) or (iii) of section 1154(a)(1)(B) of this title,, [2] section 1229b(b) of this title, or section 1254(a)(3) of this title (as in effect on March 31, 1997);

**(II)** if the motion is accompanied by a cancellation of removal application to be filed with the Attorney General or by a copy of the self-petition that has been or will be filed with the Immigration and Naturalization Service upon the granting of the motion to reopen;

**(III)** if the motion to reopen is filed within 1 year of the entry of the final order of removal, except that the Attorney General may, in the Attorney General's discretion, waive this time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child; and

**(IV)** if the alien is physically present in the United States at the time of filing the motion.

The filing of a motion to reopen under this clause shall only stay the removal of a qualified alien (as defined in section 1641(c)(1)(B) of this title [3] pending the final disposition of the motion, including exhaustion of all appeals if the motion establishes that the alien is a qualified alien.

**(d) Stipulated removal**

The Attorney General shall provide by regulation for the entry by an immigration judge of an order of removal stipulated to by the alien (or the alien's representative) and the Service. A stipulated order shall constitute a conclusive determination of the alien's removability from the United States.

**(e) Definitions**

In this section and section 1229b of this title:

**(1) Exceptional circumstances**

The term "exceptional circumstances" refers to exceptional circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien.

**(2) Removable**

The term "removable" means--

    **(A)** in the case of an alien not admitted to the United States, that the alien is inadmissible under section 1182 of this title, or

    **(B)** in the case of an alien admitted to the United States, that the alien is deportable under section 1227 of this title.

**CREDIT(S)**

(June 27, 1952, c. 477, Title II, c. 4, § 240, as added Pub.L. 104-208, Div. C, Title III, § 304(a)(3), Sept. 30, 1996, 110 Stat. 3009-589; amended Pub.L. 106-386, Div. B, Title V, § 1506(c)(1)(A), Oct. 28, 2000, 114 Stat. 1528; Pub.L. 109-13, Div. B, Title I, § 101(d), May 11, 2005, 119 Stat. 304; Pub.L. 109-162, Title VIII, §§ 813(a)(1), 825(a), Jan. 5, 2006, 119 Stat. 3057, 3063.)

Notes of Decisions (2608)

**Footnotes**

1    So in original. Probably should be "section".

2    So in original. The second comma probably should not appear.

3    So in original. A closing parenthesis probably should appear.

8 U.S.C.A. § 1229a, 8 USCA § 1229a
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
   Title 8. Aliens and Nationality
      Chapter I. Department of Homeland Security (Refs & Annos)
         Subchapter B. Immigration Regulations
            Part 245. Adjustment of Status to that of Person Admitted for Permanent Residence (Refs & Annos)

8 C.F.R. § 245.1

§ 245.1 Eligibility.

Effective: April 1, 2024

Currentness

<For statute(s) affecting validity, see: 8 U.S.C.A. § 1101(a)(15)(K).>

(a) General. Any alien who is physically present in the United States, except for an alien who is ineligible to apply for adjustment of status under paragraph (b) or (c) of this section, may apply for adjustment of status to that of a lawful permanent resident of the United States if the applicant is eligible to receive an immigrant visa and an immigrant visa is immediately available at the time of filing of the application. A special immigrant described under section 101(a)(27)(J) of the Act shall be deemed, for the purpose of applying the adjustment to status provisions of section 245(a) of the Act, to have been paroled into the United States, regardless of the actual method of entry into the United States.

(b) Restricted aliens. The following categories of aliens are ineligible to apply for adjustment of status to that of a lawful permanent resident alien under section 245 of the Act, unless the alien establishes eligibility under the provisions of section 245(i) of the Act and § 245.10, is not included in the categories of aliens prohibited from applying for adjustment of status listed in § 245.1(c), is eligible to receive an immigrant visa, and has an immigrant visa immediately available at the time of filing the application for adjustment of status:

   (1) Any alien who entered the United States in transit without a visa;

   (2) Any alien who, on arrival in the United States, was serving in any capacity on board a vessel or aircraft or was destined to join a vessel or aircraft in the United States to serve in any capacity thereon;

   (3) Any alien who was not admitted or paroled following inspection by an immigration officer;

   (4) Any alien who, on or after January 1, 1977, was employed in the United States without authorization prior to filing an application for adjustment of status. This restriction shall not apply to an alien who is:

   (i) An immediate relative as defined in section 201(b) of the Act;

   (ii) A special immigrant as defined in section 101(a)(27)(H) or (J) of the Act;

(iii) Eligible for the benefits of Public Law 101–238 (the Immigration Nursing Relief Act of 1989) and files an application for adjustment of status on or before October 17, 1991; or

(iv) Eligible for the benefits of Public Law 101–238 (the Immigration Nursing Relief Act of 1989), and has not entered into or continued in unauthorized employment on or after November 29, 1990.

(5) Any alien who on or after November 6, 1986 is not in lawful immigration status on the date of filing his or her application for adjustment of status, except an applicant who is an immediate relative as defined in section 201(b) or a special immigrant as defined in section 101(a)(27)(H), (I), or (J).

(6) Any alien who files an application for adjustment of status on or after November 6, 1986, who has failed (other than through no fault of his or her own or for technical reasons) to maintain continuously a lawful status since entry into the United States, except an applicant who is an immediate relative as defined in section 201(b) of the Act or a special immigrant as defined in section 101(a)(27)(H), (I), or (J) of the Act;

(7) Any alien admitted as a visitor under the visa waiver provisions of 8 CFR 212.1(e) or (q), other than an immediate relative as defined in section 201(b) of the Act;

(8) Any alien admitted as a Visa Waiver Pilot Program visitor under the provisions of section 217 of the Act and part 217 of this chapter other than an immediate relative as defined in section 201(b) of the Act;

(9) Any alien who seeks adjustment of status pursuant to an employment-based immigrant visa petition under section 203(b) of the Act and who is not maintaining a lawful nonimmigrant status at the time he or she files an application for adjustment of status; and

(10) Any alien who was ever employed in the United States without the authorization of the Service or who has otherwise at any time violated the terms of his or her admission to the United States as a nonimmigrant, except an alien who is an immediate relative as defined in section 201(b) of the Act or a special immigrant as defined in section 101(a)(27)(H), (I), (J), or (K) of the Act. For purposes of this paragraph, an alien who meets the requirements of § 274a.12(c)(9) of this chapter shall not be deemed to have engaged in unauthorized employment during the pendency of his or her adjustment application.

(c) Ineligible aliens. The following categories of aliens are ineligible to apply for adjustment of status to that of a lawful permanent resident alien under section 245 of the Act:

(1) Any nonpreference alien who is seeking or engaging in gainful employment in the United States who is not the beneficiary of a valid individual or blanket labor certification issued by the Secretary of Labor or who is not exempt from certification requirements under § 212.8(b) of this chapter;

(2) Except for an alien who is applying for residence under the provisions of section 133 of the Immigration Act of 1990, any alien who has or had the status of an exchange visitor under section 101(a)(15)(J) of the Act and who is subject to

the foreign residence requirement of section 212(e) of the Act, unless the alien has complied with the foreign residence requirement or has been granted a waiver of that requirement, under that section. An alien who has been granted a waiver under section 212(e)(iii) of the Act based on a request by a State Department of Health (or its equivalent) under Pub.L. 103–416 shall be ineligible to apply for adjustment of status under section 245 of the Act if the terms and conditions specified in section 214(l) of the Act and § 212.7(c)(9) of this chapter have not been met;

(3) Any alien who has nonimmigrant status under paragraph (15)(A), (15)(E), or (15)(G) of section 101(a) of the Act, or has an occupational status which would, if the alien were seeking admission to the United States, entitle the alien to nonimmigrant status under those paragraphs, unless the alien first executes and submits the written waiver required by section 247(b) of the Act and part 247 of this chapter;

(4) Any alien who claims immediate relative status under section 201(b) or preference status under sections 203(a) or 203(b) of the Act, unless the applicant is the beneficiary of a valid unexpired visa petition filed in accordance with part 204 of this chapter;

(5) Any alien who is already an alien lawfully admitted to the United States for permanent residence on a conditional basis pursuant to section 216 or 216A of the Act, regardless of any other quota or non-quota immigrant visa classification for which the alien may otherwise be eligible;

(6) Any alien admitted to the United States as a nonimmigrant defined in section 101(a)(15)(K) of the Act, unless:

(i) In the case of a K–1 fianceé(e) under section 101(a)(15)(K)(i) of the Act or the K–2 child of a fianceé(e) under section 101(a)(15)(K)(iii) of the Act, the alien is applying for adjustment of status based upon the marriage of the K–1 fianceé(e) which was contracted within 90 days of entry with the United States citizen who filed a petition on behalf of the K–1 fianceé(e) pursuant to § 214.2(k) of this chapter;

(ii) In the case of a K–3 spouse under section 101(a)(15)(K)(ii) of the Act or the K–4 child of a spouse under section 101(a)(15)(K)(iii) of the Act, the alien is applying for adjustment of status based upon the marriage of the K–3 spouse to the United States citizen who filed a petition on behalf of the K–3 spouse pursuant to § 214.2(k) of this chapter;

(7) A nonimmigrant classified pursuant to section 101(a)(15)(S) of the Act, unless the nonimmigrant is applying for adjustment of status pursuant to the request of a law enforcement authority, the provisions of section 101(a)(15)(S) of the Act, and 8 CFR 245.11;

(8) Any alien who seeks to adjust status based upon a marriage which occurred on or after November 10, 1986, and while the alien was in exclusion, deportation, or removal proceedings, or judicial proceedings relating thereto.

(i) Commencement of proceedings. The period during which the alien is in deportation, exclusion, or removal proceedings or judicial proceedings relating thereto, commences:

(A) With the issuance of the Form I–221, Order to Show Cause and Notice of Hearing prior to June 20, 1991;

(B) With the filing of a Form I–221, Order to Show Cause and Notice of Hearing, issued on or after June 20, 1991, with the Immigration Court;

(C) With the issuance of Form I–122, Notice to Applicant for Admission Detained for Hearing Before Immigration Judge, prior to April 1, 1997,

(D) With the filing of a Form I–862, Notice to Appear, with the Immigration Court, or

(E) With the issuance and service of Form I–860, Notice and Order of Expedited Removal.

(ii) Termination of proceedings. The period during which the alien is in exclusion, deportation, or removal proceedings, or judicial proceedings relating thereto, terminates:

(A) When the alien departs from the United States while an order of exclusion, deportation, or removal is outstanding or before the expiration of the voluntary departure time granted in connection with an alternate order of deportation or removal;

(B) When the alien is found not to be inadmissible or deportable from the United States;

(C) When the Form I–122, I–221, I–860, or I–862 is canceled;

(D) When proceedings are terminated by the immigration judge or the Board of Immigration Appeals; or

(E) When a petition for review or an action for habeas corpus is granted by a Federal court on judicial review.

(iii) Exemptions. This prohibition shall no longer apply if:

(A) The alien is found not to be inadmissible or deportable from the United States;

(B) Form I–122, I–221, I–860, or I–862, is canceled;

(C) Proceedings are terminated by the immigration judge or the Board of Immigration Appeals;

(D) A petition for review or an action for habeas corpus is granted by a Federal court on judicial review;

(E) The alien has resided outside the United States for 2 or more years following the marriage; or

(F) The alien establishes the marriage is bona fide by providing clear and convincing evidence that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place, was not entered into for the purpose of procuring the alien's entry as an immigrant, and no fee or other consideration was given (other than to an attorney for assistance in preparation of a lawful petition) for the filing of a petition.

(iv) Request for exemption. No application or fee is required to request the exemption under section 245(e) of the Act. The request must be made in writing and submitted with the Form I–485. Application for Permanent Residence. The request must state the basis for requesting consideration for the exemption and must be supported by documentary evidence establishing eligibility for the exemption.

(v) Evidence to establish eligibility for the bona fide marriage exemption. Section 204(g) of the Act provides that certain visa petitions based upon marriages entered into during deportation, exclusion or related judicial proceedings may be approved only if the petitioner provides clear and convincing evidence that the marriage is bona fide. Evidence that a visa petition based upon the same marriage was approved under the bona fide marriage exemption to section 204(g) of the Act will be considered primary evidence of eligibility for the bona fide marriage exemption provided in this part. The applicant will not be required to submit additional evidence to qualify for the bona fide marriage exemption provided in this part, unless the district director determines that such additional evidence is needed. In cases where the district director notifies the applicant that additional evidence is required, the applicant must submit documentary evidence which clearly and convincingly establishes that the marriage was entered into in good faith and not entered into for the purpose of procuring the alien's entry as an immigrant. Such evidence may include:

(A) Documentation showing joint ownership of property;

(B) Lease showing joint tenancy of a common residence;

(C) Documentation showing commingling of financial resources;

(D) Birth certificates of children born to the applicant and his or her spouse;

(E) Affidavits of third parties having knowledge of the bona fides of the marital relationship, or

(F) Other documentation establishing that the marriage was not entered into in order to evade the immigration laws of the United States.

(vi) Decision. An application for adjustment of status filed during the prohibited period shall be denied, unless the applicant establishes eligibility for an exemption from the general prohibition.

(vii) Denials. The denial of an application for adjustment of status because the marriage took place during the prohibited period shall be without prejudice to the consideration of a new application or a motion to reopen a previously denied application, if deportation or exclusion proceedings are terminated while the alien is in the United States. The denial shall also be without prejudice to the consideration of a new application or motion to reopen the adjustment of status

application, if the applicant presents clear and convincing evidence establishing eligibility for the bona fide marriage exemption contained in this part.

(viii) Appeals. An application for adjustment of status to lawful permanent resident which is denied by the district director solely because the applicant failed to establish eligibility for the bona fide marriage exemption contained in this part may be appealed to the Associate Commissioner, Examinations, in accordance with 8 CFR part 103. The appeal to the Associate Commissioner, Examinations, shall be the single level of appellate review established by statute.

(d) Definitions—

(1) Lawful immigration status. For purposes of section 245(c)(2) of the Act, the term "lawful immigration status" will only describe the immigration status of an individual who is:

(i) In lawful permanent resident status;

(ii) An alien admitted to the United States in nonimmigrant status as defined in section 101(a)(15) of the Act, whose initial period of admission has not expired or whose nonimmigrant status has been extended in accordance with part 214 of this chapter;

(iii) In refugee status under section 207 of the Act, such status not having been revoked;

(iv) In asylee status under section 208 of the Act, such status not having been revoked;

(v) In parole status which has not expired, been revoked or terminated; or

(vi) Eligible for the benefits of Public Law 101–238 (the Immigration Nursing Relief Act of 1989) and files an application for adjustment of status on or before October 17, 1991.

(2) No fault of the applicant or for technical reasons. The parenthetical phrase other than through no fault of his or her own or for technical reasons shall be limited to:

(i) Inaction of another individual or organization designated by regulation to act on behalf of an individual and over whose actions the individual has no control, if the inaction is acknowledged by that individual or organization (as, for example, where a designated school official certified under § 214.2(f) of this chapter or an exchange program sponsor under § 214.2(j) of this chapter did not provide required notification to the Service of continuation of status, or did not forward a request for continuation of status to the Service); or

(ii) A technical violation resulting from inaction of the Service (as for example, where an applicant establishes that he or she properly filed a timely request to maintain status and the Service has not yet acted on that request). An individual whose refugee or asylum status has expired through passage of time, but whose status has not been revoked, will be considered to have gone out of status for a technical reason.

(iii) A technical violation caused by the physical inability of the applicant to request an extension of nonimmigrant stay from the Service either in person or by mail (as, for example, an individual who is hospitalized with an illness at the time nonimmigrant stay expires). The explanation of such a technical violation shall be accompanied by a letter explaining the circumstances from the hospital or attending physician.

(iv) A technical violation resulting from the Service's application of the maximum five/six year period of stay for certain H–1 nurses only if the applicant was subsequently reinstated to H–1 status in accordance with the terms of Public Law 101–656 (Immigration Amendments of 1988).

(3) Effect of departure. The departure and subsequent reentry of an individual who was employed without authorization in the United States after January 1, 1977 does not erase the bar to adjustment of status in section 245(c)(2) of the Act. Similarly, the departure and subsequent reentry of an individual who has not maintained a lawful immigration status on any previous entry into the United States does not erase the bar to adjustment of status in section 245(c)(2) of the Act for any application filed on or after November 6, 1986.

(e) Special categories—

(1) Alien medical graduates. Any alien who is a medical graduate qualified for special immigrant classification under section 101(a)(27)(H) of the Act and is the beneficiary of an approved petition as required under section 204(a)(1)(E)(i) of the Act is eligible for adjustment of status. An accompanying spouse and children also may apply for adjustment of status under this section. Temporary absences from the United States for 30 days or less, during which the applicant was practicing or studying medicine, do not interrupt the continuous presence requirement. Temporary absences authorized under the Service's advance parole procedures will not be considered interruptive of continuous presence when the alien applies for adjustment of status.

(2) [Reserved by 76 FR 53792]

(3) Special immigrant juveniles.

(i) Eligibility for adjustment of status. For the limited purpose of meeting one of the eligibility requirements for adjustment of status under section 245(a) of the Act, which requires that an individual be inspected and admitted or paroled, an applicant classified as a special immigrant juvenile under section 101(a)(27)(J) of the Act will be deemed to have been paroled into the United States as provided in § 245.1(a) and section 245(h) of the Act.

(ii) Bars to adjustment. An applicant classified as a special immigrant juvenile is subject only to the adjustment bar described in section 245(c)(6) of the Act. Therefore, an applicant classified as a special immigrant juvenile is barred from adjustment if deportable due to engagement in terrorist activity or association with terrorist organizations (section 237(a) (4)(B) of the Act). There is no waiver of or exemption to this adjustment bar if it applies.

(iii) Inadmissibility provisions that do not apply. The following inadmissibility provisions of section 212(a) of the Act do not apply to an applicant classified as a special immigrant juvenile and do not render the applicant ineligible for the benefit:

(A) Public charge (section 212(a)(4) of the Act);

(B) Labor certification (section 212(a)(5)(A) of the Act);

(C) Aliens present without admission or parole (section 212(a)(6)(A) of the Act);

(D) Misrepresentation (section 212(a)(6)(C) of the Act);

(E) Stowaways (section 212(a)(6)(D) of the Act);

(F) Documentation requirements for immigrants (section 212(a)(7)(A) of the Act);

(G) Aliens unlawfully present (section 212(a)(9)(B) of the Act);

(iv) Inadmissibility provisions that do apply. Except as provided for in paragraph (e)(3)(iii) of this section, all inadmissibility provisions in section 212(a) of the Act apply to an applicant classified as a special immigrant juvenile.

(v) Waivers.

(A) Pursuant to section 245(h)(2)(B) of the Act, USCIS may grant a waiver for humanitarian purposes, to assure family unity, or in the public interest for any applicable provision of section 212(a) of the Act to an applicant seeking to adjust status based upon their classification as a special immigrant juvenile, except for the following provisions:

(1) Conviction of certain crimes (section 212(a)(2)(A) of the Act) (except for a single offense of simple possession of 30 grams or less of marijuana);

(2) Multiple criminal convictions (section 212(a)(2)(B) of the Act) (except for a single offense of simple possession of 30 grams or less of marijuana);

(3) Controlled substance traffickers (section 212(a)(2)(C) of the Act) (except for a single offense of simple possession of 30 grams or less of marijuana);

(4) Security and related grounds (section 212(a)(3)(A) of the Act);

(5) Terrorist activities (section 212(a)(3)(B) of the Act);

(6) Foreign policy (section 212(a)(3)(C) of the Act); or

(7) Participants in Nazi persecution, genocide, or the commission of any act of torture or extrajudicial killing (section 212(a)(3)(E) of the Act).

(B) The relationship between an applicant classified as a special immigrant juvenile and the applicant's natural or prior adoptive parents cannot be considered a factor in issuing a waiver based on family unity under paragraph (v) of this section.

(vi) No parental immigration rights based on special immigrant juvenile classification. The natural or prior adoptive parent(s) of an applicant classified as a special immigrant juvenile will not be accorded any right, privilege, or status under the Act by virtue of their parentage. This prohibition applies to all of the applicant's natural and prior adoptive parent(s) and remains in effect even after the special immigrant juvenile becomes a lawful permanent resident or a United States citizen.

(vii) No contact. During the application or interview process, USCIS will take no action that requires an applicant classified as a special immigrant juvenile to contact the person who allegedly battered, abused, neglected, or abandoned the applicant (or the family member of such person(s)).

(f) Concurrent applications to overcome grounds of inadmissibility. Except as provided in 8 CFR parts 235 and 249, an application under this part shall be the sole method of requesting the exercise of discretion under sections 212(g), (h), (i), and (k) of the Act, as they relate to the inadmissibility of an alien in the United States.

(g) Availability of immigrant visas under section 245 and priority dates—

(1) Availability of immigrant visas under section 245. An alien is ineligible for the benefits of section 245 of the Act unless an immigrant visa is immediately available to him or her at the time the application is filed. If the applicant is a preference alien, the current Department of State Bureau of Consular Affairs Visa Bulletin will be consulted to determine whether an immigrant visa is immediately available. A preference immigrant visa is considered available for accepting and processing if the applicant has a priority date on the waiting list which is earlier than the date shown in the Bulletin (or the Bulletin shows that numbers for visa applicants in his or her category are current). Information concerning the immediate availability of an immigrant visa may be obtained at any Service office.

(2) Priority dates. The priority date of an applicant who is seeking the allotment of an immigrant visa number under one of the preference classes specified in section 203(a) or 203(b) of the Act by virtue of a valid visa petition approved in his or her behalf shall be fixed by the date on which such approved petition was filed.

(h) Conditional basis of status. Whenever an alien spouse (as defined in section 216(g)(1) of the Act), an alien son or daughter (as defined in section 216(g)(2) of the Act), an alien entrepreneur (as defined in section 216A(f)(1) of the Act), or an alien spouse or child (as defined in section 216A(f)(2) of the Act) is granted adjustment of status to that of lawful permanent residence, the alien shall be considered to have obtained such status on a conditional basis subject to the provisions of section 216 or 216A of the Act, as appropriate.

(i) Adjustment of status from K–3/K–4 status. An alien admitted to the United States as a K–3 under section 101(a)(15)(K)(ii) of the Act may apply for adjustment of status to that of a permanent resident pursuant to section 245 of the Act at any time following the approval of the Form I–130 petition filed on the alien's behalf, by the same citizen who petitioned for the alien's K–3 status. An alien admitted to the United States as a K–4 under section 101(a)(15)(K)(iii) of the Act may apply for adjustment of status to that of permanent residence pursuant to section 245 of the Act at any time following the approval of the Form I–130 petition filed on the alien's behalf, by the same citizen who petitioned for the alien's parent's K–3 status. Upon approval of the application, the director shall record his or her lawful admission for permanent residence in accordance with that section and subject to the conditions prescribed in section 216 of the Act. An alien admitted to the U.S. as a K–3/K–4 alien may not adjust to that of permanent resident status in any way other than as a spouse or child of the U.S. citizen who originally filed the petition for that alien's K–3/K–4 status.

**Credits**

[30 FR 14778, Nov. 30, 1965, as amended at 31 FR 535, Jan. 15, 1966; 31 FR 2373, Feb. 4, 1966; 31 FR 15235, Dec. 6, 1966; 32 FR 9632, July 4, 1967; 35 FR 5960, April 10, 1970; 41 FR 55850, Dec. 29, 1976; 43 FR 18644, May 2, 1978; 45 FR 37396, June 2, 1980; 45 FR 69429, Oct. 21, 1980; 46 FR 25598, May 8, 1981; 47 FR 12133, March 22, 1982; 47 FR 44237, Oct. 7, 1982; 52 FR 6321, March 5, 1987; 52 FR 48084, Dec. 18, 1987; 53 FR 24903, June 30, 1988; 53 FR 30022, Aug. 10, 1988; 54 FR 29441, July 12, 1989; 54 FR 47676, Nov. 16, 1989; 55 FR 10397, March 21, 1990; 56 FR 28040, June 19, 1991; 56 FR 28313, June 20, 1991; 56 FR 49840, Oct. 2, 1991; 57 FR 56812, 56813, Dec. 1, 1992; 58 FR 42851, Aug. 12, 1993; 59 FR 51095, Oct. 7, 1994; 60 FR 26683, May 18, 1995; 60 FR 34090, June 30, 1995; 60 FR 44269, Aug. 25, 1995; 62 FR 10382, March 6, 1997; 62 FR 18508, April 16, 1997; 62 FR 39424, July 23, 1997; 66 FR 42594, Aug. 14, 2001; 67 FR 49563, July 31, 2002; 71 FR 27591, May 12, 2006; 74 FR 55739, Oct. 28, 2009; 76 FR 53792, Aug. 29, 2011; 87 FR 13112, March 8, 2022; 89 FR 6399, Jan. 31, 2024]

SOURCE: 52 FR 34764, Sept. 15, 1987; 52 FR 48084, Dec. 18, 1987; 53 FR 24903, June 30, 1988; 53 FR 30022, Aug. 10, 1988; 54 FR 29441, July 12, 1989; 54 FR 47348, Nov. 14, 1989; 54 FR 47968, Nov. 20, 1989; 57 FR 56812, Dec. 1, 1992; 60 FR 34090, June 30, 1995; 62 FR 10382, March 6, 1997; 63 FR 27829, May 21, 1998; 64 FR 25767, May 12, 1999; 65 FR 15844, 15854, March 24, 2000; 68 FR 10923, March 6, 2003; 68 FR 35275, June 13, 2003; 74 FR 55739, Oct. 28, 2009; 76 FR 53792, Aug. 29, 2011; 89 FR 6399, Jan. 31, 2024, unless otherwise noted.

AUTHORITY: 8 U.S.C. 1101, 1103, 1182, 1252, 1255; Pub.L. 105–100, section 202, 111 Stat. 2160, 2193; Pub.L. 105–277, section 902, 112 Stat. 2681; Pub.L. 110–229, tit. VII, 122 Stat. 754; 8 CFR part 2.

Notes of Decisions (83)

Current through January 14, 2026, 91 FR 1655. Some sections may be more current. See credits for details.

Public Law 89-732

## AN ACT

To adjust the status of Cuban refugees to that of lawful permanent residents of the United States, and for other purposes.

November 2, 1966
[H. R. 15183]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That, notwithstanding the provisions of section 245(c) of the Immigration and Nationality Act, the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least two years, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. Upon approval of such an application for adjustment of status, the Attorney General shall create a record of the alien's admission for permanent residence as of a date thirty months prior to the filing of such an application or the date of his last arrival into the United States, whichever date is later. The provisions of this Act shall be applicable to the spouse and child of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States.

Cuban refugees.
Adjustment of status.
79 Stat. 919.
8 USC 1255.

SEC. 2. In the case of any alien described in section 1 of this Act who, prior to the effective date thereof, has been lawfully admitted into the United States for permanent residence, the Attorney General shall, upon application, record his admission for permanent residence as of the date the alien originally arrived in the United States as a nonimmigrant or as a parolee, or a date thirty months prior to the date of enactment of this Act, whichever date is later.

SEC. 3. Section 13 of the Act entitled "An Act to amend the Immigration and Nationality Act, and for other purposes", approved October 3, 1965 (Public Law 89–236), is amended by adding at the end thereof the following new subsection:

8 USC 1255.

"(c) Nothing contained in subsection (b) of this section shall be construed to affect the validity of any application for adjustment under section 245 filed with the Attorney General prior to December 1, 1965, which would have been valid on that date; but as to all such applications the statutes or parts of statutes repealed or amended by this Act are, unless otherwise specifically provided therein, continued in force and effect."

SEC. 4. Except as otherwise specifically provided in this Act, the definitions contained in section 101 (a) and (b) of the Immigration and Nationality Act shall apply in the administration of this Act. Nothing contained in this Act shall be held to repeal, amend, alter, modify, affect, or restrict the powers, duties, functions, or authority of the Attorney General in the administration and enforcement of the Immigration and Nationality Act or any other law relating to immigration, nationality, or naturalization.

8 USC 1101.

Approved November 2, 1966.


AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

ADD-34

PUBLIC LAW 106–429—APPENDIX A      114 STAT. 1900A–57

(2) If a report under paragraph (1) indicates that the United Nations Population Fund plans to spend funds for a country program in the People's Republic of China in the year covered by the report, then the amount of such funds that the UNFPA plans to spend in the People's Republic of China shall be deducted from the funds made available to the UNFPA after March 1 for obligation for the remainder of the fiscal year in which the report is submitted.

INDOCHINESE PAROLEES

SEC. 586. (a) The status of certain aliens from Vietnam, Cambodia, and Laos described in subsection (b) of this section may be adjusted by the Attorney General, under such regulations as she may prescribe, to that of an alien lawfully admitted permanent residence if—

(1) within 3 years after the date of promulgation by the Attorney General of regulations in connection with this title the alien makes an application for such adjustment and pays the appropriate fee;

(2) the alien is otherwise eligible to receive an immigrant visa and is otherwise admissible to the United States for permanent residence except as described in subsection (c); and

(3) the alien had been physically present in the United States prior to October 1, 1997.

(b) The benefits provided by subsection (a) shall apply to any alien who is a native or citizen of Vietnam, Laos, or Cambodia and who was inspected and paroled into the United States before October 1, 1997 and was physically present in the United States on October 1, 1997; and

(1) was paroled into the United States from Vietnam under the auspices of the Orderly Departure Program; or

(2) was paroled into the United States from a refugee camp in East Asia; or

(3) was paroled into the United States from a displaced person camp administered by the United Nations High Commissioner for Refugees in Thailand.

(c) WAIVER OF CERTAIN GROUNDS FOR INADMISSIBILITY.—The provisions of paragraphs (4), (5), and (7)(A) and (9) of section 212(a) of the Immigration and Nationality Act shall not be applicable to any alien seeking admission to the United States under this subsection, and nothwithstanding any other provision of law, the Attorney General may waive 212(a)(1); 212(a)(6)(B), (C), and (F); 212(8)(A); 212(a)(10)(B) and (D) with respect to such an alien in order to prevent extreme hardship to the alien or the alien's spouse, parent, son or daughter, who is a citizen of the United States or an alien lawfully admitted for permanent residence. Any such waiver by the Attorney General shall be in writing and shall be granted only on an individual basis following an investigation.

(d) CEILING.—The number of aliens who may be provided adjustment of status under this provision shall not exceed 5,000.

(e) DATE OF APPROVAL.—Upon the approval of such an application for adjustment of status, the Attorney General shall create a record of the alien's admission as a lawful permanent resident as of the date of the alien's inspection and parole described in subsection (b)(1), (b)(2) and (b)(3).

ADD-35

114 STAT. 1900A–58     PUBLIC LAW 106–429—APPENDIX A

(f) NO OFFSET IN NUMBER OF VISAS AVAILABLE.—When an alien is granted the status of having been lawfully admitted for permanent residence under this section the Secretary of State shall not be required to reduce the number of immigrant visas authorized to be issued under the Immigration and Nationality Act.

AMERICAN CHURCHWOMEN IN EL SALVADOR

SEC. 587. (a) Information relevant to the December 2, 1980, murders of four American churchwomen in El Salvador shall be made public to the fullest extent possible.

(b) The Secretary of State and the Department of State are to be commended for fully releasing information regarding the murders.

(c) The President shall order all Federal agencies and departments that possess relevant information to make every effort to declassify and release to the victims' families relevant information as expeditiously as possible.

(d) In making determinations concerning the declassification and release of relevant information, the Federal agencies and departments shall presume in favor of releasing, rather than of withholding, such information.

PROCUREMENT AND FINANCIAL MANAGEMENT REFORM

SEC. 588. (a) FUNDING CONDITIONS.—Of the funds made available under the heading "International Financial Institutions" in this Act, 10 percent of the United States portion or payment to such International Financial Institution shall be withheld by the Secretary of the Treasury, until the Secretary certifies to the Committees on Appropriations that, to the extent pertinent to its lending programs, the institution is—

(1) Implementing procedures for conducting annual audits by qualified independent auditors for all new investment lending;

(2) Implementing procedures for annual independent external audits of central bank financial statements for countries making use of International Monetary Fund resources under new arrangements or agreements with the Fund;

(3) Taking steps to establish an independent fraud and corruption investigative organization or office;

(4) Implementing a process to assess a recipient country's procurement and financial management capabilities including an analysis of the risks of corruption prior to initiating new investment lending; and

(5) Taking steps to fund and implement programs and policies to improve transparency and anti-corruption programs and procurement and financial management controls in recipient countries.

(b) REPORT.—The Secretary of the Treasury shall report on March 1, 2001 to the Committees on Appropriations on progress made by each International Financial Institution, and, to the extent pertinent to its lending programs, the International Monetary Fund, to fulfill the objectives identified in subsection (a) and on progress of the International Monetary Fund to implement procedures for annual independent external audits of central bank financial statements for countries making use of Fund resources under all new arrangements with the Fund.

ADD-36

PUBLIC LAW 101-167—NOV. 21, 1989          103 STAT. 1263

(e) PERIOD OF APPLICATION.—

Effective dates.

(1) Subsections (a) and (b) shall take effect on the date of the enactment of this Act and shall only apply to applications for refugee status submitted before October 1, 1990.

(2) Subsection (c) shall apply to decisions made after the date of the enactment of this Act and before October 1, 1990.

(3) Subsection (d) shall take effect on the date of the enactment of this Act and shall only apply to reapplications for refugee status submitted before October 1, 1990.

(f) GAO REPORTS ON SOVIET REFUGEE PROCESSING.—

(1) The Comptroller General shall submit to the Committees on the Judiciary of the Senate and of the House of Representatives reports on the implementation of this section in Italy and the Soviet Union. Such reports shall include a review of—

(A) the timeliness and length of individual interviews,

(B) the adequacy of staffing and funding by the Department of State, the Immigration and Naturalization Service, and voluntary agencies, including the adequacy of staffing, computerization, and administration of the processing center in Washington,

(C) the sufficiency of the proposed Soviet refugee processing system within the United States,

(D) backlogs (if any) by ethnic or religious groups and the reasons any such backlogs exist,

(E) the sufficiency of the means of distributing and receiving applications for refugee status in Moscow,

(F) to the extent possible, a comparison of the cost of conducting refugee processing only in Moscow and such cost of processing in both Moscow and in Italy, and

(G) an evaluation of efforts to phase out Soviet refugee processing in Italy.

(2) The Comptroller shall submit a preliminary report under paragraph (1) by December 31, 1989, and a final report by March 31, 1990. The final report shall include any recommendations which the Comptroller General may have regarding the need, if any, to revise or extend the application of this section.

ADJUSTMENT OF STATUS FOR CERTAIN SOVIET AND INDOCHINESE PAROLEES

SEC. 599E. (a) IN GENERAL.—The Attorney General shall adjust the status of an alien described in subsection (b) to that of an alien lawfully admitted for permanent residence if the alien—

8 USC 1255 note.

(1) applies for such adjustment,

(2) has been physically present in the United States for at least 1 year and is physically present in the United States on the date the application for such adjustment is filed,

(3) is admissible to the United States as an immigrant, except as provided in subsection (c), and

(4) pays a fee (determined by the Attorney General) for the processing of such application.

(b) ALIENS ELIGIBLE FOR ADJUSTMENT OF STATUS.—The benefits provided in subsection (a) shall only apply to an alien who—

(1) was a national of the Soviet Union, Vietnam, Laos, or Cambodia, and

ADD-37

103 STAT. 1264          PUBLIC LAW 101–167—NOV. 21, 1989

(2) was inspected and granted parole into the United States during the period beginning on August 15, 1988, and ending on September 30, 1990, after being denied refugee status.

(c) WAIVER OF CERTAIN GROUNDS FOR INADMISSIBILITY.—The provisions of paragraphs (14), (15), (20), (21), (25), (28) (other than subparagraph (F)), and (32) of section 212(a) of the Immigration and Nationality Act shall not apply to adjustment of status under this section and the Attorney General may waive any other provision of such section (other than paragraph (23)(B), (27), (29), or (33)) with respect to such an adjustment for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest.

Records.

(d) DATE OF APPROVAL.—Upon the approval of such an application for adjustment of status, the Attorney General shall create a record of the alien's admission as a lawful permanent resident as of the date of the alien's inspection and parole described in subsection (b)(2).

(e) NO OFFSET IN NUMBER OF VISAS AVAILABLE.—When an alien is granted the status of having been lawfully admitted for permanent residence under this section, the Secretary of State shall not be required to reduce the number of immigrant visas authorized to be issued under the Immigration and Nationality Act.

### REPEAL OF PROVISION

SEC. 599F. (a) The following provision under the heading "Salaries and Expenses, General Legal Activities", contained in the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1990 (H.R. 2991), as enacted into law, is hereby repealed: "*: Provided further,* That for fiscal year 1990 and hereafter the Attorney General may establish and collect fees to cover the cost of identifying, copying and distributing copies of tax decisions rendered by the Federal Judiciary and that any such fees shall be credited to this appropriation notwithstanding the provisions of 31 U.S.C. 3302".

*Ante,* p. 988.

Effective date.

(b) The provisions of subsection (a) shall take effect upon the date of the enactment into law of the Department of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1990 (H.R. 2991).

### CONDITIONAL ASSISTANCE FOR EL SALVADOR FOR POLICE TRAINING

SEC. 599G. (a) CONDITIONAL ASSISTANCE.—In order to promote the professional development of the security forces of El Salvador and to encourage the separation of the law enforcement forces from the armed forces of El Salvador, funds made available under chapter 4 of part II of the Foreign Assistance Act of 1961 which are allocated to El Salvador may, notwithstanding section 660 of that Act, be provided to El Salvador for fiscal year 1990 for purposes otherwise prohibited by section 660 of the Act, if the following conditions are met:

(1) The training provided with such assistance is provided by United States civilian law enforcement personnel.

(2)(A) The assistance is to be used for the purposes of professional development and training of the security forces of El Salvador in such areas as human rights, civil law, investigative and civilian law enforcement techniques, and urban law enforcement training.

ADD-38

Public Law 95–145
95th Congress

## An Act

To authorize the creation of a record of admission for permanent residence in the cases of certain refugees from Vietnam, Laos, or Cambodia, and to amend the Indochina Migration and Refugee Assistance Act of 1975 to extend the period during which refugee assistance may be provided, and for other purposes.

Oct. 28, 1977
[H.R. 7769]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Indochinese refugees.
Permanent residence status, adjustment and refugee assistance, extension. Conditions.
8 USC 1255 note.

## TITLE I—ADJUSTMENT OF STATUS OF INDOCHINA REFUGEES

SEC. 101. That (a) the status of any alien described in subsection (b) of this section may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if—

(1) the alien makes an application for such adjustment within six years after the date of enactment of this title;

(2) the alien is otherwise eligible to receive an immigrant visa and is otherwise admissible to the United States for permanent residence, except for the grounds for exclusion specified in paragraph (14), (15), (20), (21), (25), and (32) of section 212(a) of the Immigration and Nationality Act; and

8 USC 1182.

(3) the alien has been physically present in the United States for at least two years.

(b) The benefits provided by subsection (a) shall apply to any alien who is a native or citizen of Vietnam, Laos, or Cambodia and who—

(1) was paroled into the United States as a refugee from those countries under section 212(d)(5) of the Immigration and Nationality Act subsequent to March 31, 1975, but prior to January 1, 1979; or

(2) was inspected and admitted or paroled into the United States on or before March 31, 1975, and was physically present in the United States on March 31, 1975.

SEC. 102. Upon approval of an application for adjustment of status under section 101 of this title, the Attorney General shall establish a record of the alien's admission for permanent residence as of March 31, 1975, or the date of the alien's arrival in the United States, whichever date is later.

Record, establishment.
8 USC 1255 note.

SEC. 103. Any alien determined to be eligible for lawful admission for permanent residence under this title who acquired that status under the provisions of the Immigration and Nationality Act prior to the date of enactment of this title may, upon application, have his admission for permanent residence recorded as of March 31, 1975, or the date of his arrival in the United States, whichever date is later.

Recordation.
8 USC 1255 note.
8 USC 1101 note.

SEC. 104. When an alien has been granted the status of having been lawfully admitted to the United States for permanent residence pursuant to this title, his spouse and children, regardless of nationality, may also be granted such status by the Attorney General, in his discretion and under such regulations he may prescribe, if they meet the requirements specified in section 101(a) of this title. Upon approval

Spouse and children of aliens, grant of permanent residence status.
8 USC 1255 note.
Record, creation.

of the application, the Attorney General shall create a record of the alien's admission for permanent residence as of the date of the record of admission of the alien through whom such spouse and children derive benefits under this section.

Ineligibility.
8 USC 1255 note.

SEC. 105. Any alien who ordered, assisted, or otherwise participated in the persecution of any person because of race, religion, or political opinion shall be ineligible for permanent residence under any provision of this title.

8 USC 1255 note.

SEC. 106. When an alien is granted the status of having been lawfully admitted for permanent residence pursuant to the provisions of this title the Secretary of State shall not be required to reduce the number of visas authorized to be issued under the Immigration and

8 USC 1101 note.

Nationality Act, and the Attorney General shall not be required to charge the alien any fee.

8 USC 1255 note.

SEC. 107. Except as otherwise specifically provided in this title, the definitions contained in the Immigration and Nationality Act shall apply in the administration of this title. Nothing contained in this title shall be held to repeal, amend, alter, modify, effect, or restrict the powers, duties, functions, or authority of the Attorney General in the administration and enforcement of the Immigration and Nationality Act or any other law relating to immigration, nationality, and naturalization. The fact that an alien may be eligible to be granted the status of having been lawfully admitted for permanent residence under this title shall not preclude him from seeking such status under any other provision of law for which he may be eligible.

## TITLE II—EXTENSION OF THE INDOCHINA MIGRATION AND REFUGEE ASSISTANCE ACT OF 1975

Appropriation authorization.
22 USC 2601 note.

SEC. 201. Section 2 of the Indochina Migration and Refugee Assistance Act of 1975 is amended to read as follows:

"SEC. 2. (a)(1) Subject to the provisions of subsection (b), there are authorized to be appropriated, in addition to amounts otherwise available for such purposes, such sums as may be necessary for carrying out the provisions of paragraphs (3), (4), (5), and (6) of section

22 USC 2601.

2(b) of the Migration and Refugee Assistance Act of 1962 with respect to aliens who have fled from Cambodia, Vietnam, or Laos.

"(2) Funds appropriated under this Act shall be made available to State or local public agencies to reimburse them for the non-Federal

Funds for cash or medical assistance.
42 USC 601, 1396.

share of costs under titles IV and XIX of the Social Security Act for the provision of cash or medical assistance to aliens who have fled from Cambodia, Vietnam, or Laos.

"(b)(1) None of the funds authorized to be appropriated by subsection (a) may be available for obligation after September 30, 1981.

"(2) The amount of assistance (including the amount of reimbursement as described in subsection (a)(2)) provided to a State or local public agency under section 2(b) of the Migration and Refugee Assistance Act of 1962 for the purpose of providing cash or medical assistance to aliens who have fled from Cambodia, Vietnam, or Laos may not exceed—

"(A) for the fiscal year ending September 30, 1979, 75 per centum, and

"(B) for the fiscal year ending September 30, 1980, 50 per centum, and

"(C) for the fiscal year ending September 30, 1981, 25 per centum,

USCA Case #25-5289     Document #2154725          Filed: 01/16/2026     Page 43 of 58

of the cost (including the non-Federal share of costs as described in subsection (a)(2)) of the State or local public agency in providing such assistance for such purpose for the fiscal year ending September 30, 1978.

"(c) In addition to amounts otherwise available for the purposes of this Act, there are authorized to be appropriated $25,000,000, to remain available until expended, for special projects and programs, administered in whole or in part by State or local public agencies or by private voluntary agencies participating in the Indochina refugee assistance program, to assist minor and adult refugees in resettling and in gaining skills and education necessary to become self-reliant.".

Additional appropriation authorization.

SEC. 202. (a) Section 4(b) of the Indochina Migration and Refugee Assistance Act of 1975 is amended to read as follows:

"(b) Not later than December 31 of each year ending prior to January 1, 1982, the Secretary of Health, Education, and Welfare shall transmit to such committees a report describing fully and completely the status of refugees from Cambodia, Vietnam, and Laos.".

(b) Section 4(c) of such Act is repealed.

Annual report to congressional committees. 22 USC 2601 note.

Repeal.

Approved October 28, 1977.

---

LEGISLATIVE HISTORY:

HOUSE REPORT No. 95-547 (Comm. on the Judiciary).
SENATE REPORT No. 95-471 accompanying S. 2108 (Comm. on Human Resources).
CONGRESSIONAL RECORD, Vol. 123 (1977):
    Sept. 27, considered and passed House.
    Oct. 10, considered and passed Senate, amended, in lieu of S. 2108.
    Oct. 18, House concurred in Senate amendments.
WEEKLY COMPILATION OF PRESIDENTIAL DOCUMENTS, Vol. 13, No. 44:
    Oct. 28, Presidential statement.

110 STAT. 1270        PUBLIC LAW 104–132—APR. 24, 1996

shall apply to applications filed before, on, or after such date if final action has not been taken on them before such date.

### SEC. 414. EXCLUSION OF ALIENS WHO HAVE NOT BEEN INSPECTED AND ADMITTED.

(a) IN GENERAL.—Section 241 of the Immigration and Nationality Act (8 U.S.C. 1251) is amended by adding at the end the following new subsection:

"(d) Notwithstanding any other provision of this title, an alien found in the United States who has not been admitted to the United States after inspection in accordance with section 235 is deemed for purposes of this Act to be seeking entry and admission to the United States and shall be subject to examination and exclusion by the Attorney General under chapter 4. In the case of such an alien the Attorney General shall provide by regulation an opportunity for the alien to establish that the alien was so admitted.".

8 USC 1251 note.    (b) EFFECTIVE DATE.—The amendment made by subsection (a) shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act.

## Subtitle C—Modification to Asylum Procedures

### SEC. 421. DENIAL OF ASYLUM TO ALIEN TERRORISTS.

(a) IN GENERAL.—Section 208(a) of the Immigration and Nationality Act (8 U.S.C. 1158(a)) is amended by adding at the end the following: "The Attorney General may not grant an alien asylum if the Attorney General determines that the alien is excludable under subclause (I), (II), or (III) of section 212(a)(3)(B)(i) or deportable under section 241(a)(4)(B), unless the Attorney General determines, in the discretion of the Attorney General, that there are not reasonable grounds for regarding the alien as a danger to the security of the United States.".

8 USC 1158 note.    (b) EFFECTIVE DATE.—The amendment made by subsection (a) shall take effect on the date of the enactment of this Act and apply to asylum determinations made on or after such date.

### SEC. 422. INSPECTION AND EXCLUSION BY IMMIGRATION OFFICERS.

(a) IN GENERAL.—Subsection (b) of section 235 of the Immigration and Nationality Act (8 U.S.C. 1225) is amended to read as follows:

"(b)(1)(A) If the examining immigration officer determines that an alien seeking entry—

"(i) is excludable under section 212(a)(6)(C) or 212(a)(7), and

"(ii) does not indicate either an intention to apply for asylum under section 208 or a fear of persecution,

the officer shall order the alien excluded from the United States without further hearing or review.

"(B) The examining immigration officer shall refer for an interview by an asylum officer under subparagraph (C) any alien who is excludable under section 212(a)(6)(C) or 212(a)(7) and has indicated an intention to apply for asylum under section 208 or a fear of persecution.

ADD-42

PUBLIC LAW 104–132—APR. 24, 1996          110 STAT. 1271

"(C)(i) An asylum officer shall promptly conduct interviews of aliens referred under subparagraph (B).

"(ii) If the officer determines at the time of the interview that an alien has a credible fear of persecution (as defined in clause (v)), the alien shall be detained for an asylum hearing before an asylum officer under section 208.

"(iii)(I) Subject to subclause (II), if the officer determines that the alien does not have a credible fear of persecution, the officer shall order the alien excluded from the United States without further hearing or review.

"(II) The Attorney General shall promulgate regulations to provide for the immediate review by a supervisory asylum office at the port of entry of a determination under subclause (I).

*Regulations.*

"(iv) The Attorney General shall provide information concerning the asylum interview described in this subparagraph to aliens who may be eligible. An alien who is eligible for such interview may consult with a person or persons of the alien's choosing prior to the interview or any review thereof, according to regulations prescribed by the Attorney General. Such consultation shall be at no expense to the Government and shall not delay the process.

"(v) For purposes of this subparagraph, the term 'credible fear of persecution' means (I) that it is more probable than not that the statements made by the alien in support of the alien's claim are true, and (II) that there is a significant possibility, in light of such statements and of such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 208.

"(D) As used in this paragraph, the term 'asylum officer' means an immigration officer who—

    "(i) has had professional training in country conditions, asylum law, and interview techniques; and

    "(ii) is supervised by an officer who meets the condition in clause (i).

"(E)(i) An exclusion order entered in accordance with subparagraph (A) is not subject to administrative appeal, except that the Attorney General shall provide by regulation for prompt review of such an order against an alien who claims under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, after having been warned of the penalties for falsely making such claim under such conditions, to have been lawfully admitted for permanent residence.

"(ii) In any action brought against an alien under section 275(a) or section 276, the court shall not have jurisdiction to hear any claim attacking the validity of an order of exclusion entered under subparagraph (A).

"(2)(A) Except as provided in subparagraph (B), if the examining immigration officer determines that an alien seeking entry is not clearly and beyond a doubt entitled to enter, the alien shall be detained for a hearing before a special inquiry officer.

"(B) The provisions of subparagraph (A) shall not apply—

    "(i) to an alien crewman,

    "(ii) to an alien described in paragraph (1)(A) or (1)(C)(iii)(I), or

    "(iii) if the conditions described in section 273(d) exist.

"(3) The decision of the examining immigration officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate

ADD-43

110 STAT. 1272        PUBLIC LAW 104–132—APR. 24, 1996

to take the alien whose privilege to enter is so challenged, before a special inquiry officer for a hearing on exclusion of the alien.".

(b) CONFORMING AMENDMENT.—Section 237(a) of such Act (8 U.S.C. 1227(a)) is amended—

(1) in the second sentence of paragraph (1), by striking "Deportation" and inserting "Subject to section 235(b)(1), deportation", and

(2) in the first sentence of paragraph (2), by striking "If" and inserting "Subject to section 235(b)(1), if".

8 USC 1225 note.  (c) EFFECTIVE DATE.—The amendments made by this section shall take effect on the first day of the first month that begins more than 180 days after the date of the enactment of this Act.

**SEC. 423. JUDICIAL REVIEW.**

(a) PRECLUSION OF JUDICIAL REVIEW.—Section 106 of the Immigration and Nationality Act (8 U.S.C. 1105a) is amended—

(1) by amending the section heading to read as follows:

"JUDICIAL REVIEW OF ORDERS OF DEPORTATION AND EXCLUSION, AND SPECIAL EXCLUSION"; and

(2) by adding at the end the following new subsection:

"(e)(1) Notwithstanding any other provision of law, and except as provided in this subsection, no court shall have jurisdiction to review any individual determination, or to entertain any other cause or claim, arising from or relating to the implementation or operation of section 235(b)(1). Regardless of the nature of the action or claim, or the party or parties bringing the action, no court shall have jurisdiction or authority to enter declaratory, injunctive, or other equitable relief not specifically authorized in this subsection nor to certify a class under Rule 23 of the Federal Rules of Civil Procedure.

"(2) Judicial review of any cause, claim, or individual determination covered under paragraph (1) shall only be available in habeas corpus proceedings, and shall be limited to determinations of—

"(A) whether the petitioner is an alien, if the petitioner makes a showing that the petitioner's claim of United States nationality is not frivolous;

"(B) whether the petitioner was ordered specially excluded under section 235(b)(1)(A); and

"(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence and is entitled to such review as is provided by the Attorney General pursuant to section 235(b)(1)(E)(i).

"(3) In any case where the court determines that an alien was not ordered specially excluded, or was not properly subject to special exclusion under the regulations adopted by the Attorney General, the court may order no relief beyond requiring that the alien receive a hearing in accordance with section 236, or a determination in accordance with section 235(c) or 273(d).

"(4) In determining whether an alien has been ordered specially excluded, the court's inquiry shall be limited to whether such an order was in fact issued and whether it relates to the petitioner.".

(b) PRECLUSION OF COLLATERAL ATTACKS.—Section 235 of such Act (8 U.S.C. 1225) is amended by adding at the end the following new subsection:

PUBLIC LAW 105–277—OCT. 21, 1998        112 STAT. 2681–538

"(2) in subsection (d)(4), by striking 'Judges Retirement Fund established by section 124(a) of the District of Columbia Retirement Reform Act' and inserting 'Judicial Retirement and Survivors Annuity Fund under section 11–1570'.".

(6) Section 11253 of the Balanced Budget Act of 1997 (Public Law 105–33; 111 Stat. 759) is amended by adding at the end the following new subsection:

"(d) REDEPOSITS TO FUND.—Section 11–1568.1(4)(A), District of Columbia Code, is amended by striking 'Judges Retirement Fund' and inserting 'Judicial Retirement and Survivors Annuity Fund'.".

(f) EFFECTIVE DATE.—The amendments made by subsections (a)(2), (a)(4), and (a)(6) shall take effect October 1, 1998.

**SEC. 805. EFFECTIVE DATE.**

Except as otherwise specifically provided, this title and the amendments made by this title shall take effect as if included in the enactment of title XI of the Balanced Budget Act of 1997.

26 USC 3121 note.

## TITLE IX—HAITIAN REFUGEE IMMIGRATION FAIRNESS ACT OF 1998

Haitian Refugee Immigration Fairness Act of 1998.
8 USC 1101 note.

SEC. 901. SHORT TITLE. This title may be cited as the "Haitian Refugee Immigration Fairness Act of 1998".

SEC. 902. ADJUSTMENT OF STATUS OF CERTAIN HAITIAN NATIONALS. (a) ADJUSTMENT OF STATUS.—

8 USC 1255 note.

(1) IN GENERAL.—The status of any alien described in subsection (b) shall be adjusted by the Attorney General to that of an alien lawfully admitted for permanent residence, if the alien—

(A) applies for such adjustment before April 1, 2000; and

(B) is otherwise admissible to the United States for permanent residence, except that, in determining such admissibility, the grounds for inadmissibility specified in paragraphs (4), (5), (6)(A), (7)(A), and (9)(B) of section 212(a) of the Immigration and Nationality Act shall not apply.

(2) RELATIONSHIP OF APPLICATION TO CERTAIN ORDERS.—An alien present in the United States who has been ordered excluded, deported, removed, or ordered to depart voluntarily from the United States under any provision of the Immigration and Nationality Act may, notwithstanding such order, apply for adjustment of status under paragraph (1). Such an alien may not be required, as a condition on submitting or granting such application, to file a separate motion to reopen, reconsider, or vacate such order. If the Attorney General grants the application, the Attorney General shall cancel the order. If the Attorney General makes a final decision to deny the application, the order shall be effective and enforceable to the same extent as if the application had not been made.

(b) ALIENS ELIGIBLE FOR ADJUSTMENT OF STATUS.—The benefits provided by subsection (a) shall apply to any alien who is a national of Haiti who—

(1) was present in the United States on December 31, 1995, who—

(A) filed for asylum before December 31, 1995,

(B) was paroled into the United States prior to December 31, 1995, after having been identified as having a

ADD-45

112 STAT. 2681–539     PUBLIC LAW 105–277—OCT. 21, 1998

credible fear of persecution, or paroled for emergent reasons or reasons deemed strictly in the public interest, or

(C) was a child (as defined in the text above subparagraph (A) of section 101(b)(1) of the Immigration and Nationality Act (8 U.S.C. 1101(b)(1)) at the time of arrival in the United States and on December 31, 1995, and who—

(i) arrived in the United States without parents in the United States and has remained without parents in the United States since such arrival,

(ii) became orphaned subsequent to arrival in the United States, or

(iii) was abandoned by parents or guardians prior to April 1, 1998 and has remained abandoned since such abandonment; and

(2) has been physically present in the United States for a continuous period beginning not later than December 31, 1995, and ending not earlier than the date the application for such adjustment is filed, except that an alien shall not be considered to have failed to maintain continuous physical presence by reason of an absence, or absences, from the United States for any period or periods amounting in the aggregate to not more than 180 days.

(c) STAY OF REMOVAL.—

(1) IN GENERAL.—The Attorney General shall provide by regulation for an alien who is subject to a final order of deportation or removal or exclusion to seek a stay of such order based on the filing of an application under subsection (a).

(2) DURING CERTAIN PROCEEDINGS.—Notwithstanding any provision of the Immigration and Nationality Act, the Attorney General shall not order any alien to be removed from the United States, if the alien is in exclusion, deportation, or removal proceedings under any provision of such Act and has applied for adjustment of status under subsection (a), except where the Attorney General has made a final determination to deny the application.

(3) WORK AUTHORIZATION.—The Attorney General may authorize an alien who has applied for adjustment of status under subsection (a) to engage in employment in the United States during the pendency of such application and may provide the alien with an "employment authorized" endorsement or other appropriate document signifying authorization of employment, except that if such application is pending for a period exceeding 180 days, and has not been denied, the Attorney General shall authorize such employment.

(d) ADJUSTMENT OF STATUS FOR SPOUSES AND CHILDREN.—

(1) IN GENERAL.—The status of an alien shall be adjusted by the Attorney General to that of an alien lawfully admitted for permanent residence, if—

(A) the alien is a national of Haiti;

(B) the alien is the spouse, child, or unmarried son or daughter, of an alien whose status is adjusted to that of an alien lawfully admitted for permanent residence under subsection (a), except that, in the case of such an unmarried son or daughter, the son or daughter shall be required to establish that he or she has been physically present in the United States for a continuous period beginning not later than December 31, 1995, and ending not

PUBLIC LAW 111–293—DEC. 9, 2010          124 STAT. 3175

Public Law 111–293
111th Congress

## An Act

To provide for adjustment of status for certain Haitian orphans paroled into the United States after the earthquake of January 12, 2010.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as—
    (1) the "Help Haitian Adoptees Immediately to Integrate Act of 2010"; or
    (2) the "Help HAITI Act of 2010".

**SEC. 2. ADJUSTMENT OF STATUS FOR CERTAIN HAITIAN ORPHANS.**

(a) IN GENERAL.—The Secretary of Homeland Security may adjust the status of an alien to that of an alien lawfully admitted for permanent residence if the alien—
    (1) was inspected and granted parole into the United States pursuant to the humanitarian parole policy for certain Haitian orphans announced by the Secretary of Homeland Security on January 18, 2010, and suspended as to new applications on April 15, 2010;
    (2) is physically present in the United States;
    (3) is admissible to the United States as an immigrant, except as provided in subsection (c); and
    (4) files an application for an adjustment of status under this section not later than 3 years after the date of the enactment of this Act.

(b) NUMERICAL LIMITATION.—The number of aliens who are granted the status of an alien lawfully admitted for permanent residence under this section shall not exceed 1400.

(c) GROUNDS OF INADMISSIBILITY.—Section 212(a)(7)(A) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(7)(A)) shall not apply to an alien seeking an adjustment of status under this section.

(d) VISA AVAILABILITY.—The Secretary of State shall not be required to reduce the number of immigrant visas authorized to be issued under the Immigration and Nationality Act (8 U.S.C. 1101 et seq.) for any alien granted the status of having been lawfully admitted for permanent residence under this section.

(e) ALIENS DEEMED TO MEET DEFINITION OF CHILD.—An unmarried alien described in subsection (a) who is under the age of 18 years shall be deemed to satisfy the requirements applicable to adopted children under section 101(b)(1) of the Immigration and Nationality Act (8 U.S.C. 1101(b)(1)) if—
    (1) the alien obtained adjustment of status under this section; and

Dec. 9, 2010
[H.R. 5283]

Help Haitian
Adoptees
Immediately to
Integrate Act of
2010.
8 USC 1255 note.

Deadline.

ADD-47

124 STAT. 3176          PUBLIC LAW 111–293—DEC. 9, 2010

(2) a citizen of the United States adopted the alien prior to, on, or after the date of the decision granting such adjustment of status.

(f) NO IMMIGRATION BENEFITS FOR BIRTH PARENTS.—No birth parent of an alien who obtains adjustment of status under this section shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this section or the Immigration and Nationality Act (8 U.S.C. 1101 et seq.).

**SEC. 3. COMPLIANCE WITH PAYGO.**

The budgetary effects of this Act, for the purpose of complying with the Statutory Pay-As-You-Go-Act of 2010, shall be determined by reference to the latest statement titled "Budgetary Effects of PAYGO Legislation" for this Act, submitted for printing in the Congressional Record by the Chairman of the Senate Budget Committee, provided that such statement has been submitted prior to the vote on passage.

Approved December 9, 2010.

---

LEGISLATIVE HISTORY—H.R. 5283:

CONGRESSIONAL RECORD, Vol. 156 (2010):
July 20, considered and passed House.
Aug. 4, considered and passed Senate, amended.
Dec. 1, House concurred in Senate amendment.

110 STAT. 3009–579    PUBLIC LAW 104–208—SEPT. 30, 1996

"(III) there was a substantial connection between the battery or cruelty described in subclause (I) or (II) and the alien's unlawful entry into the United States.

"(B) FAILURE TO ATTEND REMOVAL PROCEEDING.—Any alien who without reasonable cause fails or refuses to attend or remain in attendance at a proceeding to determine the alien's inadmissibility or deportability and who seeks admission to the United States within 5 years of such alien's subsequent departure or removal is inadmissible. ".

8 USC 1182 note.

(2) TRANSITION FOR BATTERED SPOUSE OR CHILD PROVISION.—The requirements of subclauses (II) and (III) of section 212(a)(6)(A)(ii) of the Immigration and Nationality Act, as inserted by paragraph (1), shall not apply to an alien who demonstrates that the alien first arrived in the United States before the title III–A effective date (described in section 309(a) of this division).

(d) ADJUSTMENT IN GROUNDS FOR DEPORTATION.—Section 241 (8 U.S.C. 1251), before redesignation as section 237 by section 305(a)(2) of this division, is amended—

(1) in the matter before paragraph (1) of subsection (a), by striking "in the United States" and inserting "in and admitted to the United States";

(2) in subsection (a)(1), by striking "EXCLUDABLE" each place it appears and inserting "INADMISSIBLE";

(3) in subsection (a)(1)(A), by striking "excludable" and inserting "inadmissible"; and

(4) by amending subparagraph (B) of subsection (a)(1) to read as follows:

"(B) PRESENT IN VIOLATION OF LAW.—Any alien who is present in the United States in violation of this Act or any other law of the United States is deportable.

**SEC. 302. INSPECTION OF ALIENS; EXPEDITED REMOVAL OF INADMISSIBLE ARRIVING ALIENS; REFERRAL FOR HEARING (REVISED SECTION 235).**

(a) IN GENERAL.—Section 235 (8 U.S.C. 1225) is amended to read as follows:

"INSPECTION BY IMMIGRATION OFFICERS; EXPEDITED REMOVAL OF INADMISSIBLE ARRIVING ALIENS; REFERRAL FOR HEARING

"SEC. 235. (a) INSPECTION.—

"(1) ALIENS TREATED AS APPLICANTS FOR ADMISSION.—An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this Act an applicant for admission.

"(2) STOWAWAYS.—An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted and shall be ordered removed upon inspection by an immigration officer. Upon such inspection if the alien indicates an intention to apply for asylum under section 208 or a fear of persecution, the officer shall refer the alien for an interview under subsection (b)(1)(B). A stowaway may apply for asylum only if

PUBLIC LAW 104–208—SEPT. 30, 1996    110 STAT. 3009–580

the stowaway is found to have a credible fear of persecution under subsection (b)(1)(B). In no case may a stowaway be considered an applicant for admission or eligible for a hearing under section 240.

"(3) INSPECTION.—All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.

"(4) WITHDRAWAL OF APPLICATION FOR ADMISSION.—An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States.

"(5) STATEMENTS.—An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States, including the applicant's intended length of stay and whether the applicant intends to remain permanently or become a United States citizen, and whether the applicant is inadmissible.

"(b) INSPECTION OF APPLICANTS FOR ADMISSION.—

"(1) INSPECTION OF ALIENS ARRIVING IN THE UNITED STATES AND CERTAIN OTHER ALIENS WHO HAVE NOT BEEN ADMITTED OR PAROLED.—

"(A) SCREENING.—

"(i) IN GENERAL.—If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7), the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 or a fear of persecution.

"(ii) CLAIMS FOR ASYLUM.—If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) and the alien indicates either an intention to apply for asylum under section 208 or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under subparagraph (B).

"(iii) APPLICATION TO CERTAIN OTHER ALIENS.—

"(I) IN GENERAL.—The Attorney General may apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General. Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time.

"(II) ALIENS DESCRIBED.—An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an

ADD-50

immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

"(B) ASYLUM INTERVIEWS.—

"(i) CONDUCT BY ASYLUM OFFICERS.—An asylum officer shall conduct interviews of aliens referred under subparagraph (A)(ii), either at a port of entry or at such other place designated by the Attorney General.

"(ii) REFERRAL OF CERTAIN ALIENS.—If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum.

"(iii) REMOVAL WITHOUT FURTHER REVIEW IF NO CREDIBLE FEAR OF PERSECUTION.—

"(I) IN GENERAL.—Subject to subclause (III), if the officer determines that an alien does not have a credible fear of persecution, the officer shall order the alien removed from the United States without further hearing or review.

"(II) RECORD OF DETERMINATION.—The officer shall prepare a written record of a determination under subclause (I). Such record shall include a summary of the material facts as stated by the applicant, such additional facts (if any) relied upon by the officer, and the officer's analysis of why, in the light of such facts, the alien has not established a credible fear of persecution. A copy of the officer's interview notes shall be attached to the written summary.

"(III) REVIEW OF DETERMINATION.—The Attorney General shall provide by regulation and upon the alien's request for prompt review by an immigration judge of a determination under subclause (I) that the alien does not have a credible fear of persecution. Such review shall include an opportunity for the alien to be heard and questioned by the immigration judge, either in person or by telephonic or video connection. Review shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination under subclause (I).

"(IV) MANDATORY DETENTION.—Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.

"(iv) INFORMATION ABOUT INTERVIEWS.—The Attorney General shall provide information concerning the asylum interview described in this subparagraph to aliens who may be eligible. An alien who is eligible for such interview may consult with a person or persons of the alien's choosing prior to the interview or any review thereof, according to regulations prescribed

PUBLIC LAW 104–208—SEPT. 30, 1996      110 STAT. 3009–582

by the Attorney General. Such consultation shall be at no expense to the Government and shall not unreasonably delay the process.

"(v) CREDIBLE FEAR OF PERSECUTION DEFINED.—For purposes of this subparagraph, the term 'credible fear of persecution' means that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 208.

"(C) LIMITATION ON ADMINISTRATIVE REVIEW.—Except as provided in subparagraph (B)(iii)(III), a removal order entered in accordance with subparagraph (A)(i) or (B)(iii)(I) is not subject to administrative appeal, except that the Attorney General shall provide by regulation for prompt review of such an order under subparagraph (A)(i) against an alien who claims under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, after having been warned of the penalties for falsely making such claim under such conditions, to have been lawfully admitted for permanent residence, to have been admitted as a refugee under section 207, or to have been granted asylum under section 208.

"(D) LIMIT ON COLLATERAL ATTACKS.—In any action brought against an alien under section 275(a) or section 276, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii).

"(E) ASYLUM OFFICER DEFINED.—As used in this paragraph, the term 'asylum officer' means an immigration officer who—

"(i) has had professional training in country conditions, asylum law, and interview techniques comparable to that provided to full-time adjudicators of applications under section 208, and

"(ii) is supervised by an officer who meets the condition described in clause (i) and has had substantial experience adjudicating asylum applications.

"(F) EXCEPTION.—Subparagraph (A) shall not apply to an alien who is a native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry.

"(2) INSPECTION OF OTHER ALIENS.—

"(A) IN GENERAL.—Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240.

"(B) EXCEPTION.—Subparagraph (A) shall not apply to an alien—

"(i) who is a crewman,

"(ii) to whom paragraph (1) applies, or

"(iii) who is a stowaway.

ADD-52

110 STAT. 3009–583    PUBLIC LAW 104–208—SEPT. 30, 1996

"(C) TREATMENT OF ALIENS ARRIVING FROM CONTIGUOUS TERRITORY.—In the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 240.

"(3) CHALLENGE OF DECISION.—The decision of the examining immigration officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 240.

"(c) REMOVAL OF ALIENS INADMISSIBLE ON SECURITY AND RELATED GROUNDS.—

"(1) REMOVAL WITHOUT FURTHER HEARING.—If an immigration officer or an immigration judge suspects that an arriving alien may be inadmissible under subparagraph (A) (other than clause (ii)), (B), or (C) of section 212(a)(3), the officer or judge shall—

"(A) order the alien removed, subject to review under paragraph (2);

"(B) report the order of removal to the Attorney General; and

"(C) not conduct any further inquiry or hearing until ordered by the Attorney General.

"(2) REVIEW OF ORDER.—(A) The Attorney General shall review orders issued under paragraph (1).

"(B) If the Attorney General—

"(i) is satisfied on the basis of confidential information that the alien is inadmissible under subparagraph (A) (other than clause (ii)), (B), or (C) of section 212(a)(3), and

"(ii) after consulting with appropriate security agencies of the United States Government, concludes that disclosure of the information would be prejudicial to the public interest, safety, or security,

the Attorney General may order the alien removed without further inquiry or hearing by an immigration judge.

"(C) If the Attorney General does not order the removal of the alien under subparagraph (B), the Attorney General shall specify the further inquiry or hearing that shall be conducted in the case.

"(3) SUBMISSION OF STATEMENT AND INFORMATION.—The alien or the alien's representative may submit a written statement and additional information for consideration by the Attorney General.

"(d) AUTHORITY RELATING TO INSPECTIONS.—

"(1) AUTHORITY TO SEARCH CONVEYANCES.—Immigration officers are authorized to board and search any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States.

"(2) AUTHORITY TO ORDER DETENTION AND DELIVERY OF ARRIVING ALIENS.—Immigration officers are authorized to order an owner, agent, master, commanding officer, person in charge, purser, or consignee of a vessel or aircraft bringing an alien (except an alien crewmember) to the United States—

ADD-53

PUBLIC LAW 104–208—SEPT. 30, 1996     110 STAT. 3009–584

"(A) to detain the alien on the vessel or at the airport of arrival, and

"(B) to deliver the alien to an immigration officer for inspection or to a medical officer for examination.

"(3) ADMINISTRATION OF OATH AND CONSIDERATION OF EVIDENCE.—The Attorney General and any immigration officer shall have power to administer oaths and to take and consider evidence of or from any person touching the privilege of any alien or person he believes or suspects to be an alien to enter, reenter, transit through, or reside in the United States or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service.

"(4) SUBPOENA AUTHORITY.—(A) The Attorney General and any immigration officer shall have power to require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service, and to that end may invoke the aid of any court of the United States.

"(B) Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer may, in the event of neglect or refusal to respond to a subpoena issued under this paragraph or refusal to testify before an immigration officer, issue an order requiring such persons to appear before an immigration officer, produce books, papers, and documents if demanded, and testify, and any failure to obey such order of the court may be punished by the court as a contempt thereof.".

(b) GAO STUDY ON OPERATION OF EXPEDITED REMOVAL PROCEDURES.— 8 USC 1225 note.

(1) STUDY.—The Comptroller General shall conduct a study on the implementation of the expedited removal procedures under section 235(b)(1) of the Immigration and Nationality Act, as amended by subsection (a). The study shall examine—

(A) the effectiveness of such procedures in deterring illegal entry,

(B) the detention and adjudication resources saved as a result of the procedures,

(C) the administrative and other costs expended to comply with the provision,

(D) the effectiveness of such procedures in processing asylum claims by undocumented aliens who assert a fear of persecution, including the accuracy of credible fear determinations, and

(E) the cooperation of other countries and air carriers in accepting and returning aliens removed under such procedures.

(2) REPORT.—By not later than 18 months after the date of the enactment of this Act, the Comptroller General shall submit to the Committees on the Judiciary of the House of Representatives and the Senate a report on the study conducted under paragraph (1).

USCA Case #25-5289    Document #2154725    Filed: 01/16/2026    Page 57 of 58

before set forth whenever in their judgment such action is necessary to prevent frauds or evasions."

Sec. 3. Section 23 (e) of the District of Columbia Alcoholic Beverage Control Act, as amended (48 Stat. 332; sec. 25–124 (e), D. C. Code), is amended by striking out the words "beverage" and "beverages" wherever they appear and substituting in lieu thereof the words "spirits or alcohol". <span style="float:right">48 Stat. 655.</span>

Sec. 4. Section 23 (i) of the District of Columbia Alcoholic Beverage Control Act, as amended (48 Stat. 332; sec. 25–124 (i), D. C. Code), is amended by striking out the words "beverage" and "beverages" wherever they appear and substituting in lieu thereof the words "spirits or alcohol". <span style="float:right">48 Stat. 655.</span>

Sec. 5. The last sentence of section 23 (k) of the District of Columbia Alcoholic Beverage Control Act, as amended (48 Stat. 332; sec. 25–124 (k), D. C. Code), is amended to read as follows: "Each holder of such a license shall, on or before the tenth day of each month, forward to the Board on a form to be prescribed by the Commissioners, a statement under oath, showing the quantity of each kind of beverage, except beer and wine (wine containing 14 per centum or less of alcoholic content, wine containing more than 14 per centum of alcoholic content, champagne, sparkling wine and any wine artificially carbonated) sold under such license in the District of Columbia during the preceding calendar month, to which said statement shall be attached stamps denoting the payment of the tax imposed under this Act upon the spirits or alcohol set forth in said report and such statement shall be accompanied by payment of any tax imposed under this Act upon any such wines as set forth in said report." <span style="float:right">Statement.<br>49 Stat. 901.</span>

Sec. 6. Nothing in this Act shall be construed so as to affect the authority vested in the Board of Commissioners of the District of Columbia by Reorganization Plan Numbered 5 of 1952 (66 Stat. 824). The performance of any function vested by this Act in the Board of Commissioners or in any office or agency under the jurisdiction and control of said Board of Commissioners may be delegated by said Board of Commissioners in accordance with section 3 of such plan. <span style="float:right">D.C. Code Title 1 app.</span>

Sec. 7. This Act shall take effect on the first day of the calendar month beginning not less than sixty days after the date of approval of this Act. <span style="float:right">Effective date.</span>

Approved July 25, 1958.

---

## Public Law 85-559

### AN ACT

To authorize the creation of record of admission for permanent residence in the case of certain Hungarian refugees. <span style="float:right">July 25, 1958<br>[H. R. 11033]</span>

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That any alien who was paroled into the United States as a refugee from the Hungarian revolution under section 212 (d) (5) of the Immigration and Nationality Act subsequent to October 23, 1956, who has been in the United States for at least two years, and who has not acquired permanent residence, shall forthwith return or be returned to the custody of the Immigration and Naturalization Service, and shall thereupon be inspected and examined for admission into the United States, and his case dealt with, in accordance with the provisions of sections 235, 236 and 237 of that Act. <span style="float:right">Hungarian refugees.<br>Relief.<br>66 Stat. 182.<br>8 USC 1182.<br><br>8 USC 1225,<br>1226, 1227.</span>

Sec. 2. Any such alien who, pursuant to section 1 of this Act, is found, upon inspection by an immigration officer or after hearing before a special inquiry officer, to have been and to be admissible as

 AUTHENTICATED U.S. GOVERNMENT INFORMATION GPO

ADD-55

420                    PUBLIC LAW 85-560—JULY 25, 1958                [72 STAT.

8 USC 1182.

an immigrant at the time of his arrival in the United States and at the time of his inspection and examination, except for the fact that he was not and is not in possession of the documents required by section 212 (a) (20) of the Immigration and Nationality Act, shall be regarded as lawfully admitted to the United States for permanent residence as of the date of his arrival.

SEC. 3. Nothing contained in this Act shall be held to repeal, amend, alter, modify, affect, or restrict the powers, duties, functions, or authority of the Attorney General in the administration and enforcement of the Immigration and Nationality Act or any other law relating to immigration, nationality, or naturalization.

Approved July 25, 1958.

## Public Law 85-560

July 25, 1958
[H. R. 10320]

### AN ACT

To provide for additional charges to reflect certain costs in the acceptance of business reply cards, letters in business reply envelopes, and other matter under business reply labels for transmission in the mails without prepayment of postage, and for other purposes.

Postal service.
Business reply mail.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 2 of the Act of May 29, 1928 (45 Stat. 940; 39 U. S. C. 303), is amended to read as follows:

"ADDITIONAL CHARGES FOR TRANSMISSION OF CERTAIN MAIL MATTERS WITHOUT PREPAYMENT OF POSTAGE

"SEC. 2. Under such regulations and conditions as the Postmaster General may prescribe, it shall be lawful to accept for transmission in the mails, without prepayment of postage, business reply cards, letters in business reply envelopes, and any other matter under business reply labels. Postage thereon at the regular first-class rate, and an additional charge thereon of 2 cents for each piece weighing two ounces or less and 5 cents for each piece weighing more than two ounces, shall be collected on delivery."

Effective date.

SEC. 2. The amendment made by the first section of this Act shall become effective on August 1, 1958.

Franking privilege.
48 Stat. 1018.

SEC. 3. (a) Section 85 of the Act of January 12, 1895 (39 U. S. C. 326), is amended by inserting after the words "Secretary of the Senate," wherever they appear the words "Sergeant at Arms of the Senate,".

33 Stat. 441.

(b) (1) Section 7 of the Act of April 28, 1904 (39 U. S. C. 327), is amended by inserting after the word "Congress," the following: "and the Secretary of the Senate and the Sergeant at Arms of the Senate".

(2) Such section is further amended by adding at the end thereof the following: "In the event of a vacancy in the office of Secretary of the Senate or Sergeant at Arms of the Senate, such privilege may be exercised in such officer's name during the period of such vacancy by any authorized person."

(c) Section 2 of the Act entitled "An Act to reimburse the Post Office Department for the transmission of official Government-mail matter", approved August 15, 1953 (67 Stat. 614; 39 U. S. C. 321o), is amended by inserting after the words "Secretary of the Senate," the words "the Sergeant at Arms of the Senate,".

Approved July 25, 1958.

ADD-56