

JUSTICE ACTION
CENTER

May 8, 2026

VIA CM/ECF

Clifton Cislak
Clerk of Court
U.S. Court of Appeals for the D.C. Circuit
333 Constitution Ave NW
Washington, DC 20001

> RE: *CHIRLA v. Noem*, No. 25-5289 (Oral Argument Held March 16, 2026), Rule 28(j) Letter

Dear Mr. Cislak,

Appellees respectfully write to alert the panel to a recent Board of Immigration Appeals precedential decision, *Matter of C-P-Y-*, 29 I&N Dec. 610 (BIA 2026), interpreting the serious nonpolitical crime bar enacted in IIRIRA. *See id.* at 613. The Board held that the undefined terms "arrival" and "arrived" "have their ordinary meaning and refer to the alien's reaching the United States as a destination," on "a single date." *Id.* at 614. *C-P-Y-* supports Appellees in four ways.

First, *C-P-Y-* cites dictionary definitions in effect in 1996 to identify the terms' ordinary meanings. "Arrival" is defined as "the act of arriving" and "arrive" as "to reach a destination." *Id.* at 613-14. Appellees reference additional dictionary support to ascertain the ordinary meaning of the similarly undefined term "is arriving." Appellees' Br. 35-37.

Second, *C-P-Y-* applies the canon that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." 29 I&N Dec. at 614 (citation omitted). The Board holds that Congress's choice to use "arrival" rather than the defined term "admission" was intentional. *Id.* Appellees similarly argue that Congress's choice to subject "arriving" noncitizens to expedited removal—rather than the broader,

defined "applicant[s] for admission," 8 U.S.C. § 1225(a)(1)—was likewise intentional. Appellees' Br. 30, 40-41.

Third, *C-P-Y-* rejects an interpretation of "arrival" and "arrived" that leads to an "absurd result." 29 I&N Dec. at 614. Appellees similarly identify absurd results from Appellants' position. Appellees' Br. 42-44.

Fourth, *C-P-Y-* holds that "arrival" and "arrived" refer to the "most recent arrival in the United States," 29 I&N Dec. at 615—an interpretation based on congressional purpose and a regulation implementing the IIRIRA-enacted 1-year asylum filing deadline that references the "last arrival." *Id.* ("[T]he words 'last arrival' refer to an alien's most recent coming or crossing into the United States." (citation omitted)). Appellees similarly read IIRIRA's expedited-removal provisions to focus on a noncitizen's current period of stay rather than a distant historical event. Appellees' Br. 27-28 & n.15.

Sincerely,

Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing letter complies with the type-volume limitations of Fed. R. App. P. 28(j) and D.C. Circuit local rules because the body contains 350 words.

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2026, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: May 8, 2026                    /s/Esther H. Sung
                                      Esther H. Sung

# Matter of C-P-Y-, Respondent

*Decided May 6, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The words "arrival" and "arrived" in the serious nonpolitical crime bar provisions at sections 208(b)(2)(A)(iii) and 241(b)(3)(B)(iii) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii), refer to the alien's most recent arrival in the United States.

FOR THE RESPONDENT: Nancy L. Alexander, Esquire, Portland, Oregon

FOR THE DEPARTMENT OF HOMELAND SECURITY: Dae C. Choi, Associate Legal Advisor

BEFORE: Board Panel: GOODWIN and MULLANE, Appellate Immigration Judges; MCCLOSKEY, Temporary Appellate Immigration Judge.

GOODWIN, Appellate Immigration Judge:

The respondent, a native and citizen of Mexico, appeals from the Immigration Judge's March 19, 2025, decision denying his applications for cancellation of removal for certain permanent residents under section 240A(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(a) (2024), asylum under section 208(b)(1)(A) of the INA, 8 U.S.C. § 1158(b)(1)(A) (2024), withholding of removal under section 241(b)(3)(A) of the INA, 8 U.S.C. § 1231(b)(3)(A) (2024), and protection under the regulations implementing the Convention Against Torture ("CAT").[1] We requested and received supplemental briefing from the parties.[2] We will dismiss the appeal.

---

[1] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. § 1208.16(c) (2026); 8 C.F.R. § 1208.18(a) (2020).

[2] We acknowledge with appreciation the parties' supplemental briefs.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On August 13, 2024, the Department of Homeland Security ("DHS") initiated removal proceedings against the respondent, alleging that he is not a citizen or national of the United States, he is a native of Mexico, he was admitted to the United States at El Paso, Texas, on or about March 24, 1995, as a lawful permanent resident, and on August 23, 2005, he was convicted in the Superior Court of California, County of Los Angeles, for the offense of willful infliction of corporal injury on a spouse or cohabitant in violation of section 273.5(a) of the California Penal Code.  DHS charged the respondent with removability under section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i) (2024), for having been convicted of a crime of domestic violence, stalking, or child abuse.  On May 29, 2024, the Immigration Judge determined the respondent was not competent to represent himself in removal proceedings and appointed a qualified representative to assist him. The Immigration Judge held the respondent is removable as charged.  The respondent asserted a fear of returning to Mexico because of his bisexuality and mental illness.  The Immigration Judge found the respondent credible.

The respondent was apprehended by U.S. Immigration and Customs Enforcement based on a referral from U.S. Interpol identifying the respondent as the subject of an Interpol Red Notice.  The Record of Deportable/Inadmissible Alien ("Form I-213") indicates that an arrest warrant was issued by the Government of Mexico for the crime of "human trafficking in the category of recruitment for the purpose of sexual exploitation," that the Red Notice and the Mexican warrant for the respondent's arrest were active, and, based on the identifiers in the warrant, a match existed between the warrant and the respondent.

The Immigration Judge found that the Mexican arrest warrant contains the respondent's name and other identifiers related to the respondent and states that the respondent is wanted in relation to the sexual exploitation of a minor.  The arrest warrant asserts that the respondent established a sexual relationship with a minor, moved her from her home to the city of Tijuana, and engaged her in prostitution for the purpose of gaining an economic benefit.  Further, the Immigration Judge considered the respondent's testimony that he fathered children with the minor victim.

Considering the evidentiary findings and the lack of any political character associated with the criminal offenses alleged in the Mexican arrest warrant, the Immigration Judge concluded that the respondent is ineligible for asylum and withholding of removal because there are serious reasons to believe the respondent committed a serious nonpolitical crime.  The

Immigration Judge also denied the respondent's claims for deferral of removal under the CAT and cancellation of removal.

## II.   ISSUE

This case presents the issue of whether the statutory terms "arrival" and "arrived" in the serious nonpolitical crime bar at sections 208(b)(2)(A)(iii) and 241(b)(3)(B)(iii) of the INA, 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii), refer solely to an alien's initial admission in the United States or include any subsequent arrival in the United States despite a prior admission.

## III.   ANALYSIS

An applicant is barred from obtaining asylum "if the Attorney General determines that . . . there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States." INA § 208(b)(2)(A)(iii), 8 U.S.C. § 1158(b)(2)(A)(iii). An applicant is similarly barred from obtaining withholding of removal "if the Attorney General decides that . . . there are serious reasons to believe that the alien committed a serious nonpolitical crime outside the United States before the alien arrived in the United States." INA § 241(b)(3)(B)(iii), 8 U.S.C. § 1231(b)(3)(B)(iii). Each of these two provisions of the INA is commonly referred to as "the serious nonpolitical crime bar" to the relevant relief.

The respondent argues that the serious nonpolitical crime bar does not apply to him because the alleged criminal activity occurred after his admission into the United States as a lawful permanent resident. This appeal, thus, requires us to interpret the terms "arrival" and "arrived" in the serious nonpolitical crime bar statutes. The meaning of the terms "arrival" and "arrived" for purposes of the serious nonpolitical crime bar is an issue of first impression.

The serious nonpolitical crime bar provisions in sections 208(b)(2)(A)(iii) and 241(b)(3)(B)(iii) of the INA, 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii), serve the same purpose, namely, to preclude statutory relief if the Attorney General determines there are serious reasons to believe the alien committed a serious nonpolitical crime outside of the United Sates "prior to the arrival of the alien" or "before the alien arrived" in the United States. Therefore, we should interpret these statutory provisions consistently. *See Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 752 (1988) ("Given the parallel purpose, structure, and language of [the

statute], we must interpret that provision in the same manner."); *Ariz. All. for Cmty. Health Ctrs. v. Ariz. Health Care Cost Containment Sys.*, 47 F.4th 992, 999 (9th Cir. 2022) (holding that "courts must 'interpret [a] statut[e] as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous' and that '[p]articular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme") (quoting *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015)).

The INA does not define the terms "arrival" and "arrived." When a phrase "is not defined in the statute, our textual analysis begins by consulting contemporaneous dictionaries, because we are bound to assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Doe 1–10 v. Fitzgerald*, 102 F.4th 1089, 1099 (9th Cir. 2024) (citation omitted). Thus, we will consult contemporaneous dictionaries to discern the plain meaning of the noun "arrival" and the verb "arrive," of which "arrived" is the past tense, and will interpret them consistently.

The serious nonpolitical crime bar was first enacted by the Refugee Act of 1980 with respect to withholding of deportation or return of an alien to a country where the alien's life or freedom would be threatened on account of a statutorily protected ground. *See* INA § 243(h)(2)(C), 8 U.S.C. § 1253(h)(2)(C) (1980) (withholding of deportation "shall not apply to any alien if the Attorney General determines that . . . there are serious reasons for considering that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States"); *Matter of Rodriguez-Palma*, 17 I&N Dec. 465, 467–68 (BIA 1980) (explaining that "[s]ection 243(h) was recently amended by the Refugee Act of 1980 and now provides" the serious nonpolitical crime bar to relief, and noting that "[t]he term 'serious nonpolitical crime' is new to the Immigration Act and is not further defined therein."). On September 30, 1996, as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-602, 691 ("IIRIRA"), Congress enacted the serious nonpolitical crime bars to asylum and withholding of removal in sections 208(b)(2)(A)(iii) and 241(b)(3) of the INA, 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3).

Webster's Third New International Dictionary of the English Language Unabridged (1993) and the American Heritage Dictionary of the English Language (3d ed. 1996), which were in effect at the time of the enactment of the serious nonpolitical crime bar provisions in 1996, both define the noun "arrival" as "the act of arriving" and the verb "arrive" as "to reach a

destination."  Based on these definitions, we conclude that the words "arrival" and "arrived" in their ordinary meaning are not synonymous with the words "admission" or "admitted," which are specifically defined in the INA.  *See* INA § 101(a)(13)(A), 8 U.S.C. § 1101(a)(13)(A) (2024) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.").

"IIRIRA amended section 101(a)(13) of the Act by entirely supplanting the definition of 'entry' with definitions for the terms 'admission' and 'admitted.'" *Matter of Collado*, 21 I&N Dec. 1061, 1064 (BIA 1998).  We are persuaded that Congress could have replaced the terms "arrival" and "arrived" with the terms "admission" and "admitted" when enacting IIRIRA but chose not to do so.  "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted).  We thus conclude that the difference between the statutory language "arrival" and "arrived" in the serious nonpolitical crime bar and "admission" and "admitted" as defined in section 101(a)(13)(A) of the INA, 8 U.S.C. § 1101 (a)(13)(A), is intentional.

Moreover, interpreting the terms "arrival" and "arrived" in the serious nonpolitical crime bar to mean "admission" and "admitted" as defined in section 101(a)(13)(A) of the INA, 8 U.S.C. § 1101(a)(13)(A), would render the serious nonpolitical crime bar inapplicable to aliens who have never been admitted, including aliens who apply for asylum or withholding of removal after entry into the United States without inspection.  We do not think that Congress intended such an absurd result.  *Cf. Matter of Chavez-Alvarez*, 26 I&N Dec. 274, 278 (BIA 2014) ("there should be no loophole in the law that would allow an alien who enters the country without inspection and adjusts status to avoid removal if he or she subsequently commits an aggravated felony").  Accordingly, we conclude that the terms "arrival" and "arrived" in the serious nonpolitical crime bar provisions have their ordinary meaning and refer to the alien's reaching the United States as a destination.

Use of the definite article "the" preceding the word "arrival" in section 208(b)(2)(A)(iii) of the INA, 8 U.S.C. § 1158(b)(2)(A)(iii), refers to a single date.  The question remains how to determine that single date for purposes of the serious nonpolitical crime bar if an alien has, like the respondent, made more than one arrival in the United States.

The asylum statute uses the word "arrival" in another provision, namely the 1-year time limit for filing an asylum application in section 208(a)(2)(B) of the INA, 8 U.S.C.§ 1158(a)(2)(B) (2024). The INA requires an asylum application to be filed "within 1 year after the date of the alien's arrival in the United States." INA § 208(a)(2)(B), 8 U.S.C.§ 1158(a)(2)(B). This provision, like the serious nonpolitical crime bar, was enacted in 1996 as part of IIRIRA. IIRIRA § 604, 110 Stat. at 3009-691. We conclude that "arrival" should be construed consistently in the two sections. Congress "generally uses a particular word with a consistent meaning in a given context," particularly "when the statutes were enacted by the same legislative body at the same time." *Erlenbaugh v. United States*, 409 U.S. 239, 243–44 (1972).

The regulation governing how to calculate the 1-year statutory time limit for filing an asylum application provides that "[t]he 1-year period shall be calculated from the date of the alien's last arrival in the United States or April 1, 1997, whichever is later." 8 C.F.R. § 1208.4(a)(2)(ii) (2026). "[T]he words 'last arrival' refer to an alien's most recent coming or crossing into the United States after having traveled from somewhere outside of the country." *Matter of F-P-R-*, 24 I&N Dec. 681, 683 (BIA 2008). Although there is not a similar regulation applicable to the serious nonpolitical crime bar in section 208(b)(2)(A)(iii) of the INA, 8 U.S.C. § 1158(b)(2)(A)(iii), our interest in consistently interpreting the term within the statute guides us to conclude that "arrival" in section 208(b)(2)(A)(iii) of the INA, 8 U.S.C. § 1158(b)(2)(A)(iii), likewise refers to the alien's most recent arrival in the United States.

This interpretation is consistent with the purposes of the serious nonpolitical crime bar, which is "to protect the community of a receiving country from the danger of admitting a refugee who has committed a serious common crime." United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status and Guidelines on International Protection Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees*, ¶ 151 (2019). We are not persuaded by the respondent's argument that the serious nonpolitical crime bar does not apply to lawful permanent residents like him because other provisions of the INA serve the purpose of protecting the community from lawful permanent residents who have committed serious crimes. *See* INA section 237(a)(2), 8 U.S.C. § 1227(a)(2) (providing for removability based on criminal convictions), and INA sections 208(b)(2)(A)(ii) and 241(b)(3)(B)(ii), 8 U.S.C. §§ 1158(b)(2)(A)(ii), 231(b)(3)(B)(ii) (respectively barring asylum and withholding of removal based on convictions for a particularly serious crime). For example, those provisions

are limited to criminal convictions and hence do not include all conduct covered by the serious nonpolitical crime bar.

The respondent also argues that interpreting the serious nonpolitical crime bar to apply to him would render the bar void for vagueness because it failed to give him sufficient notice of the conduct the statute punishes. "Neither the Board nor the Immigration Judges have the authority to rule on the constitutionality of the statutes we administer, so we lack jurisdiction to address this claim." *Matter of G-K-*, 26 I&N Dec. 88, 96–97 (BIA 2013) (finding no authority to reach void-for-vagueness argument).

We thus hold that the words "arrival" and "arrived" in the serious nonpolitical crime bar provisions at sections 208(b)(2)(A)(iii) and 241(b)(3)(B)(iii) of the INA, 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii), refer to the alien's most recent arrival in the United States. The respondent does not contest that the offense of which he is accused occurred prior to his last arrival in the United States on June 24, 2018. Accordingly, the bar applies to the respondent if we conclude that there are serious reasons to believe the respondent committed the serious nonpolitical crime with which he has been charged in Mexico.

The United States Court of Appeals for the Ninth Circuit "has long interpreted 'serious reasons to believe,' the standard set by statute for the serious nonpolitical crime bar, as equivalent to probable cause." *Gonzalez-Castillo v. Garland*, 47 F.4th 971, 974 (9th Cir. 2022); *see also Matter of E-A-*, 26 I&N Dec. 1, 3 (BIA 2012) ("We interpret 'serious reasons for believing' to be equivalent to probable cause, as have the circuit courts that have considered this question."). Contrary to the respondent's argument, the Immigration Judge need not use the words "probable cause" when determining that there are serious reasons to believe the respondent committed a serious nonpolitical crime. *See Villalobos Sura v. Garland*, 8 F.4th 1161, 1167 (9th Cir. 2021) ("Probable cause exists when there is a 'fair probability' that the defendant committed the alleged crime."). In making that finding, the Immigration Judge relied on DHS's Form I-213, the Mexican warrant for the respondent's arrest, and the respondent's admissions of the existence of his sexual relationship with the minor victim.

The Mexican arrest warrant specifies the serious crime of which the respondent is accused, namely "human trafficking in the category of recruitment for sexual exploitation." This is not a situation involving nothing more than a Red Notice that "fails to articulate any specific crime of which [the respondent] is accused" to support application of the serious nonpolitical crime bar. *Gonzalez-Castillo*, 47 F.4th at 977. Moreover, the Mexican arrest

616

warrant is not the only evidence supporting a serious reason to believe the respondent committed a serious nonpolitical crime. *See Villalobos Sura*, 8 F.4th at 1167 ("While we have not held that a foreign arrest warrant alone can establish probable cause, we have held that arrest warrants and other government documents provide probable cause when supported by other evidence.").[3] The Immigration Judge also considered the content of the Form I-213 and the respondent's admissions. Although on cross-examination the respondent denied certain allegations contained in the Mexican arrest warrant, his admissions sufficiently corroborate the allegations contained in the arrest warrant, and the Form I-213 sufficiently corroborates the existence of the Mexican arrest warrant and notes the active status of the related Red Notice.

Accordingly, we conclude that there are serious reasons to believe the respondent committed a serious nonpolitical crime in Mexico prior to his most recent arrival in the United States. He is therefore statutorily ineligible for asylum and withholding of removal pursuant to sections 208(b)(2)(A)(iii) and 241(b)(3)(B)(iii) of the INA, 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii).

## IV.   RESPONDENT'S OTHER CLAIMS

### A. Cancellation of Removal

We affirm the Immigration Judge's denial of the respondent's application for cancellation of removal under section 240(A)(a) of the INA, 8 U.S.C. § 1229b(a), as a matter of discretion. The Immigration Judge considered the relevant factors favorable to the respondent, including the respondent's family ties, long residence in the United States, and the claimed hardships. *See Matter of C-V-T-,* 22 I&N Dec. 7, 11–12 (BIA 1998) (explaining that the exercise of discretion requires balancing of favorable and adverse factors and "as the negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities").

We agree with the Immigration Judge that the favorable factors of record are significantly outweighed by the respondent's recidivist criminal history. The respondent has several criminal convictions, dating back to 2005, and an

---

[3] We need not determine today whether a foreign arrest warrant alleging a serious nonpolitical crime is, by itself, sufficient to establish probable cause for purposes of the serious nonpolitical crime bar under sections 208(b)(2)(A)(iii) and 241(b)(3)(B)(iii) of the INA, 8 U.S.C. §§ 1158 (b)(2)(A)(iii), 1231(b)(3)(B)(iii).

arrest as recent as 2024. We are not persuaded by the respondent's arguments that the Immigration Judge failed to consider all favorable factors. Nor did the Immigration Judge err in assigning weight to arrests not resulting in a criminal charge or conviction. *Matter of Thomas*, 21 I&N Dec. 20, 23 (BIA 1995) ("In examining the presence of adverse factors on an application for discretionary relief, this Board has found it appropriate to consider evidence of unfavorable conduct, including criminal conduct which has not culminated in a final conviction for purposes of the [INA]."). Weighing all factors of record, we conclude that the respondent does not merit a favorable exercise of discretion with respect to his application for cancellation of removal.

## B. CAT Deferral of Removal

We affirm the Immigration Judge's finding that the respondent's aggregate risk of torture is insufficient to establish that he will more likely than not be tortured in Mexico. *See* 8 C.F.R. § 1208.16(c); *Cole v. Holder*, 659 F.3d 762, 775 (9th Cir. 2011) (where a petitioner asserts he would face risk of torture "from police, death squads, and gangs," he "need not prove that each group, treated individually, would more likely than not torture him," but "must establish that, taking into account all possible sources of torture, he is more likely than not to be tortured, by or with the consent or acquiescence of the government").

We do not perceive any legal error in the standard applied by the Immigration Judge when assessing deferral of removal under the CAT. The Immigration Judge properly considered in the aggregate the respondent's risk of torture from multiple sources. The respondent does not assert that the Immigration Judge considered his "separate theories of torture as a single hypothetical chain of events" or required the respondent "to show that he was more likely than not to be tortured under [all] theories" or "that he was more likely than not to be tortured under any *single* theory considered individually." *Velasquez-Samayoa v. Garland*, 49 F.4th 1149, 1155–56 (9th Cir. 2022).

The respondent's conclusory assertion that reliance on *Matter of J-F-F-*, 23 I&N Dec. 912, 917 (A.G. 2006) (requiring a CAT applicant to establish that each "step in th[e] hypothetical chain of events is more likely than not to happen"), is legal error simply because he faces torture from multiple sources is incorrect. *See Andrade v. Garland*, 94 F.4th 904, 915 (9th Cir. 2024) (applying the *Matter of J-F-F-* standard where multiple theories of torture were asserted). The respondent does not challenge the Immigration Judge's finding that he did not suffer past torture in Mexico and has not

shown clear error in the Immigration Judge's predictive finding that the respondent is not more likely than not to suffer harm rising to the level of torture if removed to Mexico.

## C.  Due Process

The respondent argues that the Immigration Judge erred in finding the respondent removable based on his pro se admissions and concessions made while incompetent.  The respondent, however, has failed to establish prejudice from any initial pleading error because the record demonstrates that, during the July 31, 2024, hearing, the respondent, through counsel, entered new pleadings.  Counsel conceded the respondent's alienage, denied the factual allegation of a domestic violence conviction, and denied removability.  The respondent's counsel did not dispute the admissibility of DHS's evidentiary submission that included an FBI rap sheet.  The Immigration Judge sustained the charge of removability based on the documentary evidence of the conviction and the respondent's admission of alienage.  Thus, the outcome of the proceedings was unaffected by the alleged error in the initial removability holding.  *See Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009) (to prevail on a due process violation claim an alien must demonstrate prejudice, "which means that the outcome of the proceeding may have been affected by the alleged violation") (quoting *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620–21 (9th Cir. 2006)).

Similarly, the respondent has shown no prejudice from the Immigration Judge's exclusion of the Forensic Competency Evaluation from the record. He argues that it is an important piece of evidence in support of his claims, but he does not specify how its preclusion may have affected the outcome of the proceedings.  The Immigration Judge considered the respondent's mental health issues when assessing the likelihood the respondent will be tortured and when weighing whether the respondent merits cancellation of removal as a matter of discretion.  The respondent does not specify any fact regarding his mental health that the Immigration Judge did not consider.

The respondent argues the Immigration Judge erred by giving no weight to Dr. Alexandera Linscott's psychological evaluation and Dr. Beatriz Reyes Foster's country conditions report.  However, the Immigration Judge expressly considered both the psychological evaluation and the country conditions report and found the respondent's fear of torture speculative.  The respondent is arguing for a different interpretation of the evidence and has not shown that he was denied due process in this regard.  The respondent has not established that he was denied due process or was prejudiced by any of the errors he alleges.

Accordingly, the following order will be entered.

**ORDER:**  The appeal is dismissed.

**NOTICE:**  If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation.  *See* INA § 274D, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2026).  Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than two years, or both.  *See* INA § 276(a), 8 U.S.C. § 1326(a) (2024).