No. 25-5289

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,
*Appellees*,

v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, *et al.*,
*Appellants.*

On Appeal from the U.S. District Court
for the District of Columbia
No. 1:25-cv-00872 (Cobb, J.)

**APPELLANTS' EMERGENCY MOTION
FOR A STAY PENDING APPEAL**
(Relief requested by August 22, 2025)

PAPU SANDHU
*Assistant Director*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
General Litigation & Appeals
Section
P.O. Box 878, Ben Franklin
Station
Washington, DC 20044

BRETT A. SHUMATE
*Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
TYLER J. BECKER
*Counsel to the Assistant Attorney
General*
U.S. Department of Justice,
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

## CERTIFICATES AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

Plaintiffs are the following organizations: the Coalition for Humane Immigrant Rights; CASA, Inc.; and UndocuBlack Network.

Defendants are Kristi Noem, in her official capacity as Secretary of Homeland Security; Todd M. Lyons, in his official capacity as the Acting Director of Immigration and Customs Enforcement ("ICE"); Rodney Scott, in his official capacity as the Commissioner of Customs and Border Protection ("CBP"); Joseph B. Edlow, in his official capacity as the Director of U.S. Citizenship and Immigration Services ("USCIS"); and Donald J. Trump, in his official capacity as the President of the United States.

No amici or intervenors participated in the district court.

### B.    Rulings under Review

The ruling under review consists of an order (Docket No. 40) and opinion (Docket No. 41) regarding Plaintiffs' motion for a stay of agency action under 5 U.S.C. §705, which the district court issued on August 1, 2025.  The opinion and order are attached to this motion as Exhibits A and B.

### C.    Related Cases

This case has not previously been before this Court.  Overlapping issues are present in the following cases: *Make the Road New York vs. Noem*, No. 1:25-cv-00190 (D.D.C.); *Svitlana Doe v. Noem*, No, 25-1384 (1st Cir.).

/s/ *Drew C. Ensign*
Drew C. Ensign
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

STATEMENT ..................................................................................... 3

ARGUMENT ...................................................................................... 8

    I.    The Government Is Likely To Succeed on the Merits ........... 9

        A.    Plaintiffs' Alleged Harms are not Redressable ............ 9

        B.    Plaintiffs' Request for a Stay is Prohibited by 8 U.S.C. §1252(f)(1) ........................................................ 12

        C.    The INA Authorizes Expedited Removal to Paroled Arriving Aliens ............................................................. 13

        D.    The Agency's Actions are not Arbitrary and Capricious .................................................................... 22

    II.    The District Court's Order Irreparably Harms Defendants and The Remaining Equitable Factors Favor a Stay ........................................................................ 24

    III.    The District Court's Overbroad Relief Exceeded its Authority ............................................................................ 26

CONCLUSION .................................................................................. 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Bondi v. VanDerStock,*
  145 S. Ct. 857 (2025) ................................................................ 22

*Cordon-Linarez v. Garland,*
  No. 24-cv-488, 2024 WL 4652824 (M.D. Pa. 2024) ............................. 12

*DHS v. Thuraissigiam,*
  591 U.S. 103 (2020) ................................................... 14, 20, 25

*Garland v. Aleman Gonzalez,*
  596 U.S. 543 (2022) .......................................................... 12, 13

*Haaland v. Brackeen,*
  599 U.S. 255 (2023) ............................................................... 11

*Hewitt v. United States,*
  145 S. Ct. 2165 (2025) ....................................................... 14, 15

*Immigrant Defs. L. Ctr. v. Noem,*
  No. 25-2581, 2025 WL 2017247 (9th Cir. July 18, 2025) ............. 13, 27

*Kaplan v. Tod,*
  267 U.S. 228 (1925) ............................................................... 20

*Leng May Ma v. Barber,*
  357 U.S. 185 (1958) ............................................................... 20

*Nken v. Holder,*
  556 U.S. 418 (2009) ................................................................. 8

*Noem v. Doe,*
  145 S. Ct. 1524 (2025) ............................................................. 6

*Scenic Am., Inc. v. DOT,*
  836 F.3d 42 (D.C. Cir. 2016) .................................................. 11

*Skidmore v. Swift & Co.,*
  323 U.S. 134 (1944) ............................................................... 22

*Taggart v. Lorenzen,*
  587 U.S. 554 (2019) ............................................................... 21

i

*Texas v. EPA,*
    726 F.3d 180 (D.C. Cir. 2013)...........................................................11

*Trump v. CASA, Inc.,*
    145 S. Ct. 2540 (2025) ..............................................................2, 27

*United States v. Arredondo-Martinez,*
    No. 10-525, 2011 WL 13196331 (C.D. Cal. 2011) ...............................12

*U.S. ex rel. Accardi v. Shaughnessy,*
    347 U.S. 260 (1954) ...................................................................19

*United States v. Texas,*
    599 U.S. 670 (2023) ....................................................................11

## STATUTES

5 U.S.C. §705 ..................................................................... *passim*

Immigration and Nationality Act of 1952, as amended:

Section 212(a)(6)(C)
    8 U.S.C. §1182(a)(6)(C).................................................................3

Section 212(a)(7)
    8 U.S.C. §1182(a)(7) ....................................................................3

Section 212(d)(5)
    8 U.S.C. §1182(d)(5) .............................................................14, 15

Section 212(d)(5)(A)
    8 U.S.C. §1182(d)(5)(A) .......................................................2, 5, 20

Section 235,
    8 U.S.C. §1225 ........................................................................12

Section 235(a),
    8 U.S.C. §1225(a)........................................................................3

Section 235(b),
    8 U.S.C. §1225(b)........................................................................3

Section 235(b)(1),
    8 U.S.C. §1225(b)(1) ....................................................................3

Section 235(b)(1)(A)(i),
    8 U.S.C. §1225(b)(1)(A)(i) .................................................. 4, 18

Section 235(b)(1)(A)(iii),
    8 U.S.C. §1225(b)(1)(A)(iii) ........................................ 4, 14, 22

Section 235(b)(1)(A)(iii)(II),
    8 U.S.C. §1225(b)(1)(A)(iii)(II) ............................................. 4

Section 235(b)(1)(B),
    8 U.S.C. §1225(b)(1)(B) ...................................................... 26

Section 235(b)(1)(F),
    8 U.S.C. §1225(b)(1)(F) ....................................................... 21

Section 235(b)(2),
    8 U.S.C. §1225(b)(2) ............................................................. 3

Section 240,
    8 U.S.C. §1229a ............................................... 1, 12, 24, 25

Section 242(e)(3)(B),
    8 U.S.C. §1252(e)(3)(B) ................................................ 10, 19

Section 242(f)(1),
    8 U.S.C. §1252(f)(1) ..................................................... *passim*

## REGULATIONS

8 C.F.R. §1.2 ........................................................... *passim*

8 C.F.R. §208.14(c)(4)(ii) ................................................... 17

8 C.F.R. §208.14(c)(4)(ii)(A) ............................................... 17

8 C.F.R. §208.30 .................................................................. 26

8 C.F.R. §235.3 ....................................................... 10, 16, 17

8 C.F.R. §235.3(b)(1)(i) ........................................................ 5

8 C.F.R. §235.3(b)(4) ......................................................... 26

8 C.F.R. §235.3(b)(6) .................................................... 16, 22

8 C.F.R. §1003.42(d) ......................................................... 26

iii

## OTHER AUTHORITIES

*Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans,* 90 Fed. Reg. 13,611 (Mar. 25, 2025)...................5, 23

*Designating Aliens for Expedited Removal,*
    90 Fed. Reg. 8139 (Jan. 24, 2025).......................................................4

*Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures,*
    62 Fed. Reg. 10,312 (Mar. 6, 1997) ...................................4, 10, 17, 19

## INTRODUCTION

Congress created expedited removal in 1996 to provide an invaluable enforcement tool to remove inadmissible aliens quickly without the more cumbersome procedures under Immigration and Nationality Act (INA) §240, and its associated backlogs.  Congress provided that arriving aliens and unadmitted aliens not continuously present in the country for two years could be subject to expedited removal.  To avoid encumbering this new authority, Congress prohibited lower courts from enjoining or restraining the implementation of the expedited-removal statute.  8 U.S.C. §1252(f)(1).

Yet the district court below issued a sweeping stay under 5 U.S.C. §705 of three recent actions by the Department of Homeland Security (DHS) "to the extent those Challenged Actions subject to expedited removal individuals who have been, at any time, paroled into the United States at a point of entry."  Although unclear, the district court's order appears to be an attempt to block the Secretary from utilizing expedited removal to remove hundreds of thousands of aliens whose parole was terminated.

1

The Government is likely to succeed on appeal. *First*, Plaintiffs cannot establish Article III redressability because they did not ask the district court to enjoin the application of the arriving alien regulation, 8 C.F.R. §1.2, which provides an independent basis for DHS to apply expedited removal to paroled arriving aliens. *Second*, the district court's stay conflicts with 8 U.S.C. §1252(f)(1), which prohibits courts from enjoining or restraining the implementation of the expedited-removal statute in a suit like this one. *Third*, the district court's statutory reasoning contravenes Congress's explicit directive in the parole statute that parole "shall not be regarded as an admission" and when the purposes of parole have been served "the alien shall forthwith return ... to the custody from which he was paroled" and thereafter be treated "in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. §1182(d)(5)(A). Statutory text, context, and history demonstrate that aliens paroled on arrival to the United States are subject to expedited removal if that parole is revoked.

Further, the district court's universal remedy exceeds the court's authority. In *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025), the Supreme Court held that traditional equitable principles required that injunctive

relief should be limited to parties before the court. Section 705 is equally governed by those same traditional equitable principles and is thus subject to *CASA*'s requirements.

## STATEMENT

**A. Expedited Removal**. In 1996, Congress created expedited removal, a procedure that allows the Government to remove through streamlined procedures certain inadmissible aliens who lack valid documentation or who present fraudulent documents. 8 U.S.C. §1225(b)(1); *see also id.* §1182(a)(6)(C), (7). In creating expedited removal, Congress defined a new category of aliens, known as "applicants for admission." *See* 8 U.S.C. §1225(a) (describing "[a]n alien present in the United States who has not been admitted or who arrives in the United States").

The expedited removal process is a process specific to certain applicants for admission. *See* 8 U.S.C. §1225(b) (describing "inspection of applicants for admission"). Within that broader category, two groups of aliens are subject to expedited removal under §1225(b)(1), while other applicants for admission are subject to the procedures of §1225(b)(2). The first group of aliens subject to expedited removal includes aliens

3

designated by the Secretary within certain statutory limits.  *See* 8 U.S.C. §1225(b)(1)(A)(iii).  The statute limits designation as follows: "An alien ... who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility."  8 U.S.C. §1225(b)(1)(A)(iii)(II).  The most recent designation restored the scope of expedited removal to "the fullest extent authorized by Congress."  Dkt. 41, at 13-14 (hereafter "Op.__"); *see* 90 Fed. Reg. 8139 (Jan. 24, 2025).

The second group encompasses aliens "arriving in" the United States without permissible documentation.  8 U.S.C. §1225(b)(1)(A)(i).  The statute does not define "arriving in."  A regulation promulgated in 1997 defines an "[a]rriving alien" as "an applicant for admission coming or attempting to come into the United States at a port-of-entry."  8 C.F.R. §1.2; *see* 62 Fed. Reg. 10,312, 10,312-13 (Mar. 6, 1997).  That same regulation provides that "[a]n arriving alien remains an arriving alien even if paroled" into the country, "and even after any such parole is

4

terminated or revoked." 8 C.F.R. §1.2. "Arriving aliens, as defined in 8 CFR 1.2," are subject to expedited removal. 8 C.F.R. §235.3(b)(1)(i).

**B. Parole.** As amended in 1996, the parole statute provides that the Secretary of Homeland Security "may, … in [her] discretion parole" an "alien applying for admission," and specifies that such a parole is done "temporarily under such conditions as [the Secretary] may prescribe [and] only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. §1182(d)(5)(A). The statute further states that parole may be terminated "when the purposes of such parole shall, in the opinion of the [DHS] Secretary …, have been served." *Id.*

In the Biden administration, DHS established several parole programs, including parole programs for individuals from Cuba, Haiti, Nicaragua, and Venezuela ("CHNV" programs), in which nationals of those countries who met certain requirements could be allowed to travel to certain U.S. ports of entry to request discretionary consideration for parole for up to a two-year term. Op.16. DHS Secretary Kristi Noem ended these parole programs in March. Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13,611 (Mar. 25, 2025) ("CHNV Termination Notice"). The Supreme

5

Court stayed a district court's stay of this termination. *Noem v. Doe*, 145 S. Ct. 1524, 1524 (2025).

**C. DHS Documents Plaintiffs Challenge:** Plaintiffs first challenge a memorandum issued January 23, 2025 by the then-Acting DHS Secretary providing guidance on how to exercise enforcement discretion regarding the parole statute and expedited removal. Memorandum from Benjamine Huffman, Acting Secretary (Jan. 23, 2025), https://perma.cc/4HPX-45Z7 ("Huffman Memorandum"). For "any alien … who is amenable to expedited removal," the Memorandum instructs immigration officers to take "all steps necessary to review [an] alien's case and consider, in exercising [] enforcement discretion, whether to apply expedited removal," which "may include" terminating other removal proceedings or parole. *Id.* For aliens who are not subject to expedited removal and have "been granted parole under a policy that may be paused, modified, or terminated immediately under [a] January 20 memorandum," the Memorandum instructs DHS officials to "consider, in exercising [their] enforcement discretion, whether any such alien should be placed in removal proceedings" or whether "parole remains appropriate in light of any changed … circumstances." *Id.*

The second document Plaintiffs challenge is a "directive" sent by ICE leadership to Enforcement and Removal Operations personnel "directing such officers to consider for expedited removal 'paroled arriving aliens' who have not applied affirmatively for asylum with USCIS." Dkt. 21, ¶63, https://perma.cc/S3LJ-AFJM. The third document Plaintiffs seek to stay is the CHNV Termination Notice discussed above.

**D. District Court Proceedings:** Plaintiffs sued on March 24, 2025, alleging that the challenged agency actions exceeded DHS's statutory authority and violated the Due Process Clause. On June 11, Plaintiffs filed an amended complaint adding two claims, including that the "arriving alien" regulation is *ultra vires*. Dkt. 21, ¶¶171-183. That same day, Plaintiffs moved to stay agency action under 5 U.S.C. §705, requesting that the challenged documents be stayed "insofar as they subject individuals who have been previously granted parole at ports of entry to expedited removal." Dkt. 22, at 1.

On August 1, the district court granted Plaintiffs' motion. The court concluded that (1) Plaintiff's claims were redressable (Op.33-38); (2) the challenged agency actions exceeded DHS's authority to apply expedited removal to aliens who had been paroled (Op.44-65) and were arbitrary

7

and capricious under the Administrative Procedure Act (APA) (Op.65-73); and (3) Plaintiffs established irreparable harm and the balance of equities and public interest favored a stay (Op.73-80).  The district court rejected Defendants' arguments that 8 U.S.C. §1252(f)(1) precluded the court from granting a stay, and that relief should be limited to Plaintiffs' members.  Op.27-30, 80-83.

On August 4, Defendants filed a motion in district court for a stay of its order pending appeal, which was denied on August 13.  Dkt. 49.

## ARGUMENT

A stay pending appeal turns on "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009).  Each factor weighs in favor of a stay here.

## I.   The Government Is Likely To Succeed on the Merits

### A.  Plaintiffs' Alleged Harms are not Redressable

Plaintiffs cannot establish Article III standing because they fail to show how staying the challenged agency actions will prevent their members from their alleged injury: being subject to expedited removal.

Plaintiffs concede in their complaint that DHS's arriving alien regulation at 8 C.F.R. §1.2, as applied through 8 C.F.R. §235.3, allows DHS to apply expedited removal to aliens—like Plaintiffs' members— who are paroled at ports of entry. *See* Dkt. 21, ¶178. And yet, in their stay motion, Plaintiffs *did not* ask the court below to enjoin these regulations even though they provide DHS with independent authority to apply expedited removal. Dkt. 28, at 23 n.12 (Plaintiffs do "challenge 8 C.F.R. §1.2 as *ultra vires*, Am. Compl. ¶¶171-83, but have not moved for preliminary relief as to it."). At the July 9 stay hearing, Plaintiffs conceded that even if the Court grants a stay as to the challenged agency actions, DHS will still be able to apply expedited removal to aliens paroled at ports of entry:

> **THE COURT**: [C]ould the government still remove individuals who have been paroled under the regulations, even despite the writings at issue?

> **PLAINTIFFS' COUNSEL**:  Yes, under the regulations as they're currently written, yes, correct.

Dkt. 35, at 6:22-7:1.

Plaintiffs' declination to challenge the "arriving alien" regulation is understandable: it is egregiously time-barred.   Under 8 U.S.C. §1252(e)(3)(B), challenges to the implementation of expedited removal, which includes regulations used to implement that section, must be brought "no later than 60 days" after the rule or directive "is first implemented."  8 C.F.R. §1.2 was promulgated in 1997 and applied to expedited removal by 8 C.F.R. §235.3 at the same time, 62 Fed. Reg. at 10,355, so any challenge by Plaintiffs would be extremely time-barred. But that instant refusal to challenge regulations that authorize the very conduct they challenge leaves Plaintiffs with an insurmountable redressability problem.

When asked for their "best argument for redressability" given this concession, Plaintiffs' counsel responded: "the relief that the Court grants need not completely relieve all the plaintiffs' harms."  Dkt. 35, at 7:7-13. But if the regulations provide separate authority for DHS to apply expedited removal it is unclear how a stay of the agency actions provides Plaintiffs any effective relief.  In these circumstances, Plaintiffs cannot

establish redressability. *See United States v. Texas*, 599 U.S. 670, 689-93 (2023) (Gorsuch, J., concurring) (injury from DHS prosecutorial guidance not redressable by vacatur because immigration officers would still have discretion not to pursue removal); *Texas v. EPA*, 726 F.3d 180, 198 (D.C. Cir. 2013) (dismissing challenge to rules for lack of standing because vacating those rules "would not redress the State petitioners' injury," which was separately caused by statute).

The district court erred in holding otherwise. The court first determined that the "factual record" indicated that although "DHS has long asserted the authority to apply expedited removal to parolees," it "only beg[a]n doing so *en masse* since the Challenged Actions" and that made Plaintiffs' injuries redressable. Op.34. Such a judgment staying the challenged agency actions would provide Plaintiffs no "legally enforceable protection from the allegedly imminent harm." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). DHS would still be able to place Plaintiffs' members in expedited removal proceedings using 8 C.F.R. §1.2, as Plaintiffs concede. Plaintiffs "simply assume[]" that DHS will "revert to its pre-[directive] position as soon as the [directive] is invalidated," but that is nothing more than "unadorned speculation." *See Scenic Am., Inc.*

11

*v. DOT*, 836 F.3d 42, 52 (D.C. Cir. 2016) (cleaned up). And the record also contains evidence that expedited removal has been applied to paroled arriving aliens prior to 2025.[1] Thus, the decades' old regulations are in no way contingent on the agency actions issued just months ago.

Because Plaintiffs cannot demonstrate that their alleged harms will likely be remedied by their requested stay, Plaintiffs lack standing to seek it.

## B. Plaintiffs' Request for a Stay is Prohibited by 8 U.S.C. §1252(f)(1)

Section 1252(f)(1) provides that "[r]egardless of the nature of the action or claim" "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" specified INA provisions, including §§1225 and 1229a, "other than with respect to the application of such provisions to an individual alien against whom proceedings ... have been initiated." *See also Garland v. Aleman Gonzalez*, 596 U.S. 543, 549 (2022). Expedited removal is one of the covered provisions. To the extent the district court's order actually

---

[1] *E.g., United States v. Arredondo-Martinez*, 2011 WL 13196331, at *1, *4 (C.D. Cal. 2011), *aff'd*, 492 F. App'x 823 (9th Cir. 2012); *Cordon-Linarez v. Garland*, 2024 WL 4652824 (M.D. Pa. 2024).

redresses (even in part) any injury of Plaintiffs, *but see* Part I.A, *supra*, the order could do so only by preventing the Government from placing certain previously paroled aliens in expedited removal proceedings. That comfortably fits within the meaning of "enjoin" or "restrain" in Section 1252(f)(1) because the order "interfere[s] with the Government's efforts to operate" the expedited-removal provision in a particular way. *Aleman Gonzalez*, 596 U.S. at 551; *see id.* at 549 ("restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action).

The district court's contrary interpretation relied on its view that a §705 stay is not an injunction, Op.28, but that reasoning reads the word "restrain" out of the statute. That reasoning also is incorrect on its own terms because a §705 stay has the same practical effect as a temporary injunction and turns on the same equitable factors. *See Immigrant Defs. L. Ctr. v. Noem*, No. 25-2581, 2025 WL 2017247, at *4-*5 (9th Cir. July 18, 2025). Thus, the order impermissibly contravenes §1252(f)(1).

## C. The INA Authorizes Expedited Removal to Paroled Arriving Aliens

**1**. **"Designation" Authority:** Under the designation provision, Congress authorized expedited removal for certain applicants for

13

admission as designated by the Secretary. *See* 8 U.S.C. §1225(b)(1)(A)(iii). The parole statute, 8 U.S.C. §1182(d)(5), makes clear that aliens are eligible for expedited removal once parole is revoked. It provides that when an alien's parole is revoked, "his case shall … be dealt with in the same manner as that of *any other* applicant for admission." *See* 8 U.S.C. §1182(d)(5) (emphasis added). As discussed, an applicant for admission is a special category Congress created to implement the expedited removal authority. *See DHS v. Thuraissigiam*, 591 U.S. 103, 108-09 (2020); *supra* p.3.

The district court concluded otherwise because the expedited removal statute describes an alien who "has not been admitted or paroled." 8 U.S.C. §1225(b)(1)(A)(iii). But Congress's use of the present perfect tense supports the Government's position that this qualification does not apply to aliens whose parole has terminated because they are no longer "paroled."

For example, in *Hewitt v. United States*, 145 S. Ct. 2165 (2025), the Supreme Court held that a statute permitting resentencing of a defendant whose sentence "has not been imposed" applied to defendants whose sentences were imposed but then vacated. *Id.* at 2168. The Court

14

explained that the use of the present perfect tense "conveys to a listener that the event in question continues to be true or valid." *Id.* at 2172. The same is true here: an alien "has not been … paroled into the United States" once his parole has been terminated.

The district court reasoned that because *Hewitt* involved vacatur of a sentence, "it makes sense for an offender whose sentence was vacated" to be treated as someone who was never sentenced; it then concluded that parole is different because termination "does not render that parole" void *ab initio*. Op.48-49. But the relevant context here is about the alien's status when present in the United States: aliens present *without* a lawful admission (unadmitted aliens) lack valid documentation and are unlawfully present within the country and subject to expedited removal under the designation provision. As discussed, when an alien's parole is revoked, "his case shall … be dealt with in the same manner as that of any other applicant for admission"—the alien has never been "admitted." 8 U.S.C. §1182(d)(5). As in *Hewitt*, that context compels the conclusion that "has not been … paroled" asks whether "the event in question continues to be true or valid." 145 S. Ct. at 2172.

15

The district court also reasoned that Congress's decision to pair "admitted" and "paroled" in the same phrase demonstrates that both terms refer to a completed act, not a continuing status. *See* Op.47-48. That reasoning is incorrect. For example, if an alien was admitted on a tourist visa at age 5 (and returned home), but then was apprehended 100 yards from the border after illegally crossing it 20 years later, nobody would think that the alien was immune from expedited removal on the theory that he "has been admitted" in the past. In context, the statute is obviously concerned with whether the alien's *current* presence is pursuant to a lawful admission or parole—not their *past* manner of entry.

The district court then relied on DHS regulations to support its interpretation, but that reliance was misplaced. First, the court invoked language in 8 C.F.R. §235.3—the expedited removal regulation—that refers to parole in the past tense. Op.52. That regulation describes the burden on the alien to show he "was admitted or paroled." 8 C.F.R. §235.3(b)(6)). It is a stretch to conclude based *solely* on this past-tense usage that the agency promulgated a regulation intending to limit application of the designation provision in this way *when the statute does not contain such limitation*. At a minimum, one would expect the

16

regulatory history to contain a discussion of such a deviation from the statute if the agency intended this limitation.  But neither Plaintiffs nor the Court offer such evidence.  *See also* 62 Fed. Reg. 10,313-14.

Second, the district court failed to give adequate weight to other regulations that are more probative of agency intent than the strained inferences Plaintiffs and the court draw from 8 C.F.R. §235.3.  Specifically, an asylum regulation authorizes the use of expedited removal to paroled arriving aliens under *both* the designation and "arriving in" authorities.  8 C.F.R. §208.14(c)(4)(ii).  The district court's speculation that the regulation "envisioned expedited removal for parolees only" under the "arriving in" authority because the "arriving alien" regulation contains a similar dichotomy between aliens paroled before April 1, 1997 and after, Op.55, is incorrect because the language of that regulation explicitly authorizes expedited removal under *both* authorities.  8 C.F.R. §208.14(c)(4)(ii)(A) ("In the case of an applicant who is an arriving alien *or is otherwise subject to removal under §235.3(b)* of this chapter...." the asylum officer "shall proceed in accordance with §235.3(b)) (emphasis added).

17

**2. "Arriving in" Authority:** The designation provision alone provides a fully sufficient basis to resolve the merits here, and this Court need go no farther to resolve this motion.[2]  But the district court's decision as to the arriving-alien authority warrants a stay here too—and unlike the designation provision, this provision does not contain any discussion of whether the alien was "admitted or paroled."

The INA provides that an alien "arriving in the United States" who is inadmissible under one of the qualifying grounds is subject to expedited removal.  8 U.S.C. §1225(b)(1)(A)(i).  Text, statutory context, and longstanding regulations demonstrate that the "arriving aliens" provision applies to paroled arriving aliens.  In concluding otherwise, the court made several errors.  *See* Op.57-65.

As a threshold matter, 8 C.F.R. §1.2, which was promulgated in 1997, expressly provides that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked."  Plaintiffs did not

---

[2] Defendants do not seek a stay pending appeal of the district court's order to the extent it prohibits Defendants from applying expedited removal to former parolees who have been continuously present in the United States for longer than two years.

18

challenge that regulation in their stay motion, and the district court was therefore obliged to treat it as valid and controlling for present purposes. *Cf. U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265-67 (1954). Indeed, failing to treat that regulation as valid would contravene Congress's express directive in 8 U.S.C. §1252(e)(3)(B) that challenges of the type Plaintiffs bring here may not be entertained by district courts more than 60 days after a regulation's promulgation. The validity of Section 1.2 fully resolves the merits here; this Court need go no further.

In any event, the district court erred in its statutory analysis. The court began by accepting Plaintiffs' invitation to read the word "arriving" in a vacuum and concluded it "would not naturally be read to refer" to someone who had already arrived and is paroled into the country. Op.59. But this fails to consider the unique statutory and historical context of parole in which Congress legislated. Op.60-62. Indeed, the Attorney General's "inclusion of paroled aliens" in the arriving alien definition "was based on the statutory language in section 212(d)(5) [parole statute]." 62 Fed. Reg. at 10,313. Yet the court brushes this aside, suggesting the Attorney General unreasonably relied on that statute. Not so.

19

That statute makes clear that parole "shall not be regarded as an admission" and that once parole ends "the alien shall forthwith return ... to the custody from which he was paroled" and thereafter be treated "in the same manner as that of any other applicant for admission." 8 U.S.C. §1182(d)(5)(A). Thus, Congress specified that parole is simply a temporary release of an alien into the United States that confers no immigration status. An alien paroled at the border then is subject to expedited removal because he retains his status as an "arriving alien" under the INA. The parole statute is foundational to the "legal fiction" the Supreme Court has long maintained—and repeatedly affirmed—that arriving aliens paroled into the United States are legally in the position of aliens standing at the border, regardless of their parole's duration. *E.g., Thuraissigiam*, 591 U.S. at 139; *Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958); *Kaplan v. Tod*, 267 U.S. 228, 230 (1925).

The district court's objections fall flat. The court's observation that none of the pre-expedited removal cases cited in Defendants' brief use the term "arriving" is beside the point. *See* Op.60. These specific principles concerning parole and paroled arriving aliens were well-established at the time of the expedited removal statute's enactment in 1996. Although

20

a paroled arriving alien may have "arrived" at a port of entry in terms of a historical event, Op.61, that does not mean the alien is not an "arriving alien" for purposes of the "arriving in" authority; the alien is positionally an arriving alien and Congress legislated with awareness of that principle. *See, e.g.*, *Taggart v. Lorenzen,* 587 U.S. 554, 560 (2019) ("When a statutory term is 'obviously transplanted from another legal source,' it 'brings the old soil with it.'") (citation omitted).

The district court's conclusion rests on little else. The court reasons that other provisions in the expedited removal statute "use 'arrive,' or some conjugation thereof, to refer to physical arrival at a port of entry" but fails to elaborate. Op.59. None of those statutory provisions provide any insight regarding Congress's intent to apply expedited removal to aliens paroled at ports of entry. One of these provisions does not even use the word "arriving." Op.59 (citing 8 U.S.C. §1225(b)(1)(F)).

The district court further misses the mark by suggesting the arriving alien definition conflicts with the parole statute, and "another portion of the regulatory scheme," because aliens are considered "arriving both when their parole is active and after it is terminated." *See* Op.61-62. The court describes the "arriving alien" regulation correctly but that

21

regulation is consistent with the parole statute's language discussed above.  The court does not engage with this language or explain the inconsistency.  *See* Op.61-62.  Likewise, the court's conclusion that the "arriving alien" regulation "conflicts" with another regulation at 8 C.F.R. §235.3(b)(6)—which provides the alien with an opportunity to establish they were paroled into the country before being subject to expedited removal—overlooks the fact that this regulation is implementing the *designation authority* at 8 U.S.C. §1225(b)(1)(A)(iii), not the "arriving in" provision.  *See* Op.62.

In addition, the district court failed to give sufficient weight to DHS's longstanding interpretation of the statute in the "arriving alien" regulation.  *See* Op.58-59.  "[W]hile courts must exercise independent judgment in determining the meaning of statutory provisions, the contemporary and consistent views of a coordinate branch of government can provide evidence of the law's meaning." *Bondi v. VanDerStock*, 145 S. Ct. 857, 874 (2025) (quotation marks omitted); *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Yet the district court did not give DHS's longstanding interpretation meaningful weight.

**D.    The Agency's Actions are not Arbitrary and Capricious**

The district court's ruling that the challenged actions are arbitrary and capricious under the APA did not provide an independent ground for granting the §705 stay.  That claim is premised on the agency's alleged failure to sufficiently articulate its authority to apply expedited removal and explain which authority it is applying.  If Defendants acted within the scope of their statutory authority, the APA claim necessarily fails with the statutory claims.

The Court concluded that the challenged DHS documents set forth inconsistent "legal justifications" for expedited removal, primarily based on language in the CHNV Termination Notice regarding the Secretary's designation authority.  Op.70-72.  But the district court failed to adequately explain how the Notice can serve as a basis for an APA violation when it did not purport to create any rule applying expedited removal to aliens paroled at ports of entry.  90 Fed. Reg. at 13,611.  The discussion of the designation provision in the Notice was in the context of providing one of several agency justifications for terminating the

23

CHNV parole programs, which is not at issue in this case.  *Id.* at 13,619-

20.[3]

## II. The District Court's Order Irreparably Harms Defendants and The Remaining Equitable Factors Favor a Stay

The district court's order causes significant harm to the

Government.  As a preliminary matter, because the court's order appears

to halt the expedited removal of paroled arriving aliens but does not

enjoin the "arriving alien" regulation's application, it creates uncertainty

regarding how the Government may proceed.  *See* Mejia Decl., ¶2, Exhibit

C; Bradford Decl., ¶6, Exhibit D.

If the court *did* intend to effectively enjoin removal, its order

interferes with the Executive Branch's constitutional and statutory

responsibility for immigration affairs on an issue potentially affecting

---

[3] The district court offered only scattered APA reasoning not specifically based on its statutory reasoning. To the extent it was intended to be an independent ground, it fails. The district court, for example, was troubled by the fact that the Huffman Memorandum does not explain when a paroled alien would *not* be "amenable" to expedited removal.  Op.68-69. But as the court noted, there could be any number of reasons why in an individual case, an alien paroled at a port of entry may not be "amenable" to expedited removal.  The fact that the Memorandum did not memorialize all these scenarios does not render it arbitrary and capricious.

24

hundreds of thousands of aliens notwithstanding that they have no right to remain in the United States. Mejia Decl., ¶2; Bradford Decl., ¶8. The order also imposes substantial administrative burdens and taxes agency resources by requiring DHS to initiate and litigate §240 removal hearings if it chooses to pursue removal. *See Thuraissigiam*, 591 U.S. at 107-08; Mejia Decl., ¶¶6-7.

The district court acknowledged that the Government's irreparable-harm arguments were "consistent with the record," but asserted it is not in the public interest to "perpetuat[e] … unlawful agency action." Op.78. But, as Defendants have explained, they are likely to prevail on the merits of the statutory-authority question. (And in any event, the district court's reasoning improperly collapses the merits and the harm factors, which are distinct.) The district court is also incorrect in stating that the public interest in the removal of illegal aliens is "fully vindicated by section 240 proceedings." Op.78. That ignores the public interest in prompt and efficient enforcement of the immigration laws without the more cumbersome and duplicative proceedings under §240 that Congress expressly recognized in the expedited-removal statute. Mejia Decl., ¶¶5-8; *Thuraissigiam*, 591 U.S. at 108-09.

25

The harm to Defendants and the public interest outweighs Plaintiffs' harms. Many of Plaintiffs' alleged harms relate to their claims of possible persecution and torture if returned to their home countries. Op.75 ("a noncitizen's removal to a country where they face persecution, torture, or death" constitutes irreparable harm). These arguments are undermined by the credible fear procedures available to aliens in expedited removal—procedures that allow them to receive an interview before an asylum officer and review by a USCIS supervisor and an immigration judge. 8 U.S.C. §1225(b)(1)(B); 8 C.F.R. §§235.3(b)(4), 208.30, 1003.42(d). Even assuming Plaintiff organizations' members subject to expedited removal are more likely to be detained and experience family separation, *see* Op.76-77, those harms are outweighed by the harms to the Government. Plaintiffs do not contend that these members have any right to remain in the United States or have been improperly charged with one of the qualifying inadmissibility grounds for expedited removal. The balance of harms tips in Defendants' favor.

## III. The District Court's Overbroad Relief Exceeded its Authority

At minimum, the court below exceeded its equitable authority by issuing a universal stay. Plaintiffs sued on behalf of their members, and

complete relief is provided by a remedy that applies to those members who they can identify as being affected by the challenged agency actions. Section 705 states that a court may order relief only "to the extent necessary to prevent irreparable injury"; and the phrase "irreparable injury," in the context of interim equitable relief, refers to irreparable injury to the plaintiff—not irreparable injury to third parties. *See CASA*, 145 S. Ct. at 2551-53. As the Ninth Circuit recently held, *CASA*'s "complete-relief principle provides some useful guidance for crafting interim equitable relief" in §705 cases, which use the same traditional equitable principles that govern the preliminary injunctions at issue in *CASA*, including the four-factor test. *Immigrant Defs.*, 2025 WL 2017247, at *14. The Ninth Circuit proceeded, based on *CASA*, to "limit the district court's §705 Stay order" to plaintiff's clients. *Id*. This Court should do the same.

## CONCLUSION

The Court should grant an immediate administrative stay and, after briefing, a stay pending appeal.

Respectfully submitted,

PAPU SANDHU
*Assistant Director*
U.S. Department of Justice,
Civil Division
Office of Immigration
Litigation
P.O. Box 868 Ben Franklin
Station
Washington, DC 20044
(202) 616-9357

BRETT A. SHUMATE
*Assistant Attorney General*

/s/ *Drew C. Ensign*
DREW C. ENSIGN
*Deputy Assistant Attorney General*

TYLER J. BECKER
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil
Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
*Drew.C.Ensign@usdoj.gov*
(202) 514-2000

Dated: August 14, 2025

28

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 5,194 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Century Schoolbook type.


*/s/ Drew C. Ensign*
Drew C. Ensign

Dated: August 14, 2025          Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.


/s/ *Drew C. Ensign*
Drew C. Ensign

Dated: August 14, 2025            Attorney for Appellants