ORAL ARGUMENT NOT YET SCHEDULED
**No. 25-5289**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al*.,
*Plaintiffs-Appellees*,

v.

KRISTI NOEM, Secretary of Homeland Security, *et al*.,
*Defendants-Appellants*.

———————————————

On Appeal from the United States District Court
for the District of Columbia
No. 1:25-cv-00872-JMC (Hon. Jia M. Cobb)

———————————————

## PLAINTIFFS-APPELLEES' RESPONSE IN OPPOSITION TO EMERGENCY MOTION FOR STAY PENDING APPEAL

———————————————

Karen C. Tumlin
Esther H. Sung
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
karen.tumlin@justiceactioncenter.org
esther.sung@justiceactioncenter.org

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

All parties, intervenors, and amici appearing in this Court are listed in the Emergency Motion for Stay Pending Appeal.

I certify under Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1 as follows:

Plaintiff-Appellee Coalition for Humane Immigrant Rights ("CHIRLA") is a membership-based nonprofit organization incorporated in California. CHIRLA has no parent corporation, and no publicly held company owns 10% or more of the organization.

Plaintiff-Appellee CASA, Inc. ("CASA") is a membership-based nonprofit organization headquartered in Maryland. CASA has no parent corporation, and no publicly held company owns 10% or more of the organization.

Plaintiff-Appellee UndocuBlack Network ("UndocuBlack") is a membership-based nonprofit organization and multigenerational network of Black immigrants. UndocuBlack has no parent corporation, and no publicly held company owns 10% or more of the organization.

/s/ Karen C. Tumlin

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 6

I.     Defendants Fail to Make a "Strong Showing" of Likelihood of Success. ........ 6

     A.    Plaintiffs' Claims are Redressable. ............................................................ 6

     B.    8 U.S.C. §1252(f)(1) Does Not Bar Plaintiffs' Request for a Stay. ........... 8

     C.    The INA Does Not Authorize Expedited Removal of Paroled
          Individuals. ................................................................................................. 9

     D.    The Challenged Actions are Arbitrary and Capricious. .......................... 17

II.    The Equitable Factors Weigh Against a Stay. ................................................ 19

III.   The Scope of the District Court's Stay is Appropriate. .................................. 21

CONCLUSION ................................................................................................. 23

CERTIFICATE OF COMPLIANCE ............................................................... 25

CERTIFICATE OF SERVICE ......................................................................... 26

ca

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*All. for Hippocratic Med. v. Food & Drug Admin.*,
   No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023) ................................9

*Allina Health Servs. v. Sebelius*,
   746 F.3d 1102 (D.C. Cir. 2014) ........................................................................22

*Bridgeport Hosp. v. Becerra*,
   108 F.4th 882 (D.C. Cir. 2024) ........................................................................22

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ..........................................................................................16

*Cmty. Legal Servs. in East Palo Alto v. HHS*,
   137 F.4th 932 (9th Cir. 2025)............................................................................19

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   603 U.S. 799 (2024) ..........................................................................................22

*Defs. of Wildlife v. Gutierrez*,
   532 F.3d 913 (D.C. Cir. 2008) .......................................................................6, 7

*DHS v. Thuraissigiam*,
   591 U.S. 103 (2020) ..........................................................................................11

*Encino Motorcars, LLC v. Navarro*,
   579 U.S. 211 (2016) ..........................................................................................18

*Fischer v. United States*,
   603 U.S. 480 (2024) ..........................................................................................12

*Garland v. Aleman Gonzalez*,
   596 U.S. 543 (2022) ............................................................................................8

*Hewitt v. United States*,
   145 S. Ct. 2165 (2025) .................................................................10, 11, 12, 13

*Immigrant Defenders Law Center v. Noem*,
   No. 25-2581, 2025 WL 2017247 (9th Cir. Jul. 18, 2025)........................8, 9, 23

*J.G.G. v. Trump*,
    No. 1:25-cv-00766, 2025 WL 1577811 (D.D.C. Jun. 4, 2025) ........................ 19

*Jazz Pharms., Inc. v. Kennedy*,
    141 F.4th 254 (D.C. Cir. 2025) ........................................................ 16

*Kucana v. Holder*,
    558 U.S. 233 (2010) ...................................................................... 17

*Larson v. Valente*,
    456 U.S. 228 (1982) ........................................................................ 7

*Las Americas Immigrant Advoc. Ctr. v. Wolf*,
    507 F. Supp. 3d 1 (D.D.C. 2020) ..................................................... 19

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ............................................................ 20

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ................................................................. 15, 16

*Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*,
    70 F.4th 582 (D.C. Cir. 2023) ......................................................... 18

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ........................................................................ 9

*Nat'l Postal Pol'y Council v. Postal Regul. Comm'n*,
    17 F.4th 1184 (D.C. Cir. 2021) ....................................................... 15

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................... 1, 6

*Reno v. American-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ........................................................................ 8

*Shawnee Tribe v. Mnuchin*,
    984 F.3d 94 (D.C. Cir. 2021) .......................................................... 21

*Swanson Grp. Mfg. LLC v. Jewell*,
    790 F.3d 235 (D.C. Cir. 2015) ........................................................ 21

*Texas v. Biden*,
   646 F. Supp. 3d 753 (N.D. Tex. 2022) ................................................. 9

*Texas v. EPA*,
   726 F.3d 180 (D.C. Cir. 2013) ............................................................ 7

*Trump v. CASA, Inc.*,
   145 S. Ct. 2540 (2025) ...................................................................... 22

*United States ex rel. Accardi v. Shaughnessy*,
   347 U.S. 260 (1954) .......................................................................... 16

*United States v. Texas*,
   599 U.S. 670 (2023) ............................................................................ 7

*United States v. West*,
   392 F.3d 450 (D.C. Cir. 2004) .......................................................... 21

## Statutes

5 U.S.C. §705 ........................................................... 1, 5, 8, 9, 22

6 U.S.C. §202(4) ......................................................... 12, 15

8 U.S.C. §1101(a)(13)(A) ........................................... 12, 14

8 U.S.C. §1182(a)(9)(B)(ii) ............................................... 13

8 U.S.C. §1182(d)(5) ........................................................ 10

8 U.S.C. §1182(d)(5)(A) .................................................... 16

8 U.S.C. §1225 ................................................................. 15

8 U.S.C. §1225(a)(1) ............................................ 10, 11, 17

8 U.S.C. §1225(b)(1) ............................................... 1, 9, 10

8 U.S.C. §1225(b)(1)(A)(i) .................................................. 2

8 U.S.C. §1225(b)(1)(A)(iii) ............................................... 2

8 U.S.C. §1225(b)(1)(A)(iii)(II) ........................................ 10

8 U.S.C. §1229a(a)(3) ........................................................ 2

8 U.S.C. §1229a(c)(2)(A) ........................................................... 11

8 U.S.C. §1252(e)(3) ............................................................... 9, 22

8 U.S.C. §1252(e)(3)(A) ............................................................ 19

8 U.S.C. §1252(f)(1) ................................................................. 8, 9

8 U.S.C. §1255(a) ....................................................................... 13

## **Other Authorities**

8 C.F.R. §1.2 .............................................................................. 15

8 C.F.R. §208.14(c)(4)(ii) .......................................................... 14

8 C.F.R. §235.3 ..................................................................... 14, 17

8 C.F.R. §235.3(b)(6) ................................................................. 17

8 C.F.R. §245.1(b)(3) ................................................................. 13

Termination of Parole Processes for CHNV, 90 Fed. Reg. 13611, at
    13619, 13620 (Mar. 25, 2025) ............................................... 4

DHS, Memorandum from Acting Secretary Benjamine C. Huffman on
    Guidance Regarding How to Exercise Enforcement Discretion
    (Jan. 23, 2025) ....................................................................... 3

David J. Bier, *126 Parole Orders over 7 Decades: A Historical Re-
    view of Immigration Parole Orders*, Cato Institute (July 17, 2023) ................... 3

Ted Hesson & Kristina Cooke, *Trump weighs revoking legal status of
    Ukrainians as US steps up deportations*, Reuters (March 6, 2025) .................... 4

USCIS, Instructions for Application to Register Permanent Residence
    or Adjust Status ..................................................................... 13

## INTRODUCTION

On August 1, the district court properly stayed the administration's illegal effort to use expedited removal to summarily deport people legally paroled into the country. This followed the administration's "nationwide blitz" starting in May to arrest noncitizens appearing in immigration court and place them in expedited removal without access to an immigration judge. Noncitizens who came to the country with authorization, were inspected at a port of entry, and granted parole— temporary permission to live and work here—were among those targeted.

The application of expedited removal to paroled individuals is unlawful. The Immigration and Nationality Act ("INA") limits the use of expedited removal to certain noncitizens "arriving in the United States" or who "ha[ve] not been admitted or paroled into the United States." 8 U.S.C. §1225(b)(1). Paroled individuals are not in either category. Plaintiffs filed suit to challenge agency actions that jettisoned long-established understanding of the law and exposed Plaintiffs' members to summary removal, and the district court granted Plaintiffs' request for a 5 U.S.C. §705 stay of the agency actions insofar as they applied expedited removal to individuals paroled into the country at a port of entry.

Defendants cannot make the required showings to justify a stay pending appeal. *Nken v. Holder,* 556 U.S. 418, 426 (2009).

## BACKGROUND

The INA generally specifies that removal proceedings conducted in immigration court—with various procedural protections—are the "sole and exclusive procedure" for determining whether a person can be removed. 8 U.S.C. §1229a(a)(3).

One exception is "expedited removal," whereby certain noncitizens determined by an immigration officer as "inadmissible" for certain reasons may be ordered removed "without further hearing or review." 8 U.S.C. §1225(b)(1)(A)(i). The INA authorizes expedited removal only for two grounds of inadmissibility, and only for noncitizens who: (1) are "arriving in the United States" (e.g., at a port of entry), 8 U.S.C. §1225(b)(1)(A)(i) (hereinafter, "'Arriving In' Provision") or (2) entered the United States without "be[ing] admitted or paroled" (e.g., entered without inspection) and have been present for less than two years, 8 U.S.C. §1225(b)(1)(A)(iii) (hereinafter, "Designation Provision").

The provisions' exemption of "paroled" individuals is significant. Over the last 70 years, administrations of both parties have utilized humanitarian parole as a key component of immigration policy. Since the Eisenhower administration paroled 30,000 Hungarians fleeing Soviet repression into the United States, categorical

humanitarian parole has been used over 125 times,[1] including in recent years to assist 75,000 Afghans fleeing the Taliban; 200,000 Ukrainians following Russia's invasion; and 500,000 Cubans, Haitians, Nicaraguans, and Venezuelans following civil unrest in those countries.

This lawsuit concerns the administration's recent actions to apply expedited removal to parole beneficiaries (together, the "Challenged Actions"):

(a)    January 23 Memorandum: On January 23, the Acting DHS Secretary directed DHS personnel to consider for expedited removal "any alien…amenable to expedited removal," including by terminating ongoing removal proceedings and active parole grants.[2]

(b)    February 18 Directive: On February 18, ICE leadership directed personnel to consider expedited removal for any "paroled arriving aliens" who had not affirmatively applied for asylum. The directive

---

[1] David J. Bier, *126 Parole Orders over 7 Decades: A Historical Review of Immigration Parole Orders*, Cato Institute (July 17, 2023), https://www.cato.org/blog/126-parole-orders-over-7-decades-historical-review-immigration-parole-orders.

[2] DHS, Memorandum from Acting Secretary Benjamine C. Huffman on Guidance Regarding How to Exercise Enforcement Discretion (Jan. 23, 2025), https://www.dhs.gov/sites/default/files/2025-01/25_0123_er-and-parole-guidance.pdf.

stated "[t]here is no time limit on the ability to process such [individuals] for ER."[3]

(c)    March 25 Notice: On March 25, DHS published a Federal Register Notice terminating *en masse* all grants of parole under the Cuban, Haitian, Nicaraguan, and Venezuelan ("CHNV") parole processes. DHS stated it was terminating parole grants early so it could "initiate expedited removal proceedings to the maximum extent possible."[4]

Some parole beneficiaries were immediately targeted for expedited removal, *see, e.g.*, Dkt. 22-17, ¶¶ 6-7; Dkt. 22-12, ¶¶ 2, 6; Dkt. 22-16, ¶¶ 7-10; Dkt. 22-7, ¶ 6, but enforcement efforts ramped up in May 2025 when Defendants initiated a "nationwide blitz." Noncitizens began reporting that, during routine immigration court hearings, DHS's attorneys asked immigration judges to dismiss their cases, after which point, ICE agents waiting outside the courtroom arrested them to process them for expedited removal. *See* Dkt. 22-11, ¶¶ 6, 9.

---

[3] Ted Hesson & Kristina Cooke, *Trump weighs revoking legal status of Ukrainians as US steps up deportations*, Reuters (March 6, 2025), https://www.reuters.com/world/us/trump-plans-revoke-legal-status-ukrainians-who-fled-us-sources-say-2025-03-06/ (citing "internal ICE email" available at https://fingfx.thomsonreuters.com/gfx/legaldocs/gkpljxxoqpb/ICE_email_Reuters.pdf).

[4] Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611, at 13619, 13620 (Mar. 25, 2025).

Noncitizens paroled into the United States, including Plaintiffs' members, are among those harmed by Defendants' actions. *See* Dkt. 22-3, ¶¶ 14-24; Dkt. 22-2, ¶¶ 10-18; Dkt. 22-4, ¶¶ 13-19; Dkt. 22-7, ¶ 2; Dkt. 22-10, ¶ 2; Dkt. 22-13, ¶ 2. They have been detained indefinitely, forced to do Credible Fear Interviews ("CFIs") without access to counsel, and deprived of the opportunity to apply for immigration relief for which they are eligible. *See, e.g.*, Dkt. 22-7, ¶¶ 8-12; Dkt. 22-13, ¶¶ 14-16.

On March 24, 2025, Plaintiffs timely brought suit, arguing that DHS's actions violate the INA, the Administrative Procedure Act ("APA"), and the Fifth Amendment's Due Process Clause. On June 11, Plaintiffs moved to stay the Challenged Actions under 5 U.S.C. §705 "insofar as they subject individuals who have been previously granted parole at ports of entry to expedited removal," Dkt. 22.

On August 1, the district court granted Plaintiffs' motion, Dkt. 41 (hereinafter, "Op."), at 26-80, finding: (1) Plaintiffs' claims were redressable, *id.* at 33-38; (2) the Challenged Actions exceeded DHS's statutory authority under the INA, *id.* at 44-65, and were arbitrary and capricious, *id.* at 65-73; and (3) Plaintiffs established imminent, irreparable injury, and the equitable factors favored a stay, *id.* at 73-80.

On August 4, Defendants sought a stay of the district court's order. Dkt. 42. On August 13, the district court denied Defendants' motion. Dkt. 49.

# ARGUMENT

Defendants bear the burden to establish four factors for a stay pending appeal: (1) a "strong showing" they are likely to succeed; (2) irreparable injury absent a stay; (3) whether a stay "will substantially injure" other parties; and (4) whether "the public interest" is harmed absent a stay. *Nken*, 556 U.S. at 426. They fail on each.

## I.    Defendants Fail to Make a "Strong Showing" of Likelihood of Success.

### A.    Plaintiffs' Claims are Redressable.

The district court correctly held that Plaintiffs' injuries are redressable. Op. at 33-38. The record demonstrates that DHS began subjecting parolees to expedited removal at an unprecedented scale only *after* Defendants adopted the Challenged Actions, Dkt. 28 at 10-12, such that Plaintiffs' members' harms—undisputed by Defendants, Dkt. 26 at 20—stem from the Challenged Actions and are thus redressable by the court's stay, *id.* at 20. Defendants' two arguments on redressability both fail.

First, Defendants argue that because Plaintiffs did not seek to enjoin a 1997 expedited removal regulation in their request for stay relief, this regulation provides DHS with an "independent authority to apply expedited removal." Doc. No. 2130201 (hereinafter, "Mot."), at 9, 10. But the district court correctly found that a stay would address many, if not all, of Plaintiffs' members' harms, so such harms are "likely to be redressed" by a stay. Op. at 36; *Defs. of Wildlife v. Gutierrez*, 532

F.3d 913, 925 (D.C. Cir. 2008); *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A plaintiff] need not show that a favorable decision will relieve his *every* injury."). Here, the "nationwide blitz" only started after the Challenged Actions, in May 2025; conversely, for 27 years following the 1997 regulation, there was only *de minimis* use of expedited removal against paroled persons. Dkt. 28 at 10-12; *see* Op. at 34.[5]

Second, Defendants attempt to challenge redressability by relying on negligible evidence that expedited removal has been applied to parolees before 2025. Mot. at 11-12. As the district court noted, Defendants provided only two examples where expedited removal was applied to parolees, both of whose status was revoked following a criminal prosecution.[6] Op. at 35. Defendants provide no evidence that, before 2025, DHS applied expedited removal to parolees like Plaintiffs' members, or at the scale directed by the Challenged Actions. The district court correctly

---

[5] Defendants' reliance on *Texas v. EPA*, Mot. at 11, is misplaced. 726 F.3d 180 (D.C. Cir. 2013). In *Texas*, the court found no redressability because the self-executing statute would cause the same injury with or without the challenged regulations. 726 F.3d at 198. Here, Defendants have not shown that the 1997 regulation would have "the same result had none of the [] Challenged Actions been issued." Op. at 37. Defendants' reliance on Justice Gorsuch's concurrence in *United States v. Texas*, 599 U.S. 670, 689-93 (2023) (Gorsuch, J., concurring) is likewise inapposite, Mot. at 11, since "a three-Justice concurrence is not the law." Op. at 38.

[6] Defendants only submitted these examples *after* the stay hearing, because Defendants' counsel could not muster a single example when asked during the hearing. Dkt. 35 at 52:2-20; Dkt. 36 at 1-2.

observed that these examples do not overcome the record evidence of Plaintiffs' members' harms resulting from the Challenged Actions. *Id.*

Plaintiffs have established redressability, and Defendants present no substantial evidence or arguments proving otherwise.

**B.     8 U.S.C. §1252(f)(1) Does Not Bar Plaintiffs' Request for a Stay.**

Section 1252(f)(1) does not prohibit stay relief under the APA, 5 U.S.C. §705, because a stay is not an injunction and therefore not implicated by §1252(f). Op. at 27. Defendants assert the district court's decision "reads the word 'restrain' out of the statute." Mot. at 13. But Defendants ignore clear Supreme Court precedent that section 1252(f)(1) is "nothing more or less than a limit on *injunctive* relief." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999) (emphasis added). *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022)—which Defendants cite—concludes that "[p]utting these terms together, §1252(f)(1) generally prohibits lower courts from entering *injunctions*," not stays. *Id.* at 544 (emphasis added). Defendants similarly ignore an unbroken line of lower-court cases (decided since *Aleman Gonzalez*) uniformly rejecting Defendants' interpretation. *See* Op. at 27 n.16. More recently, the Ninth Circuit added to this precedent in *Immigrant Defenders L. Ctr.* ("*ImmDef*") *v. Noem*, holding that "§1252(f)(1) does not bar the district court's stay pursuant to §705 of the APA pending further review of the merits

of Plaintiffs' APA challenge." No. 25-2581, 2025 WL 2017247, at *10 (9th Cir. Jul. 18, 2025).

Although Defendants attempt to conflate the relief offered by injunctions and section 705 stays, the Supreme Court has long distinguished between the two. Compared to injunctions, vacatur under the APA is "less drastic," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)—and a stay under section 705 is considered "an interim or lesser form of [relief than] vacatur." *Texas v. Biden*, 646 F. Supp. 3d 753, 769 (N.D. Tex. 2022). Defendants have not identified any controlling precedent from any circuit suggesting that a section 705 stay should be considered an injunction. *See All. for Hippocratic Med. v. Food & Drug Admin.*, No. 23-10362, 2023 WL 2913725, at *4 (5th Cir. Apr. 12, 2023) (stating that stays and injunctions are not "one and the same").

Indeed, Defendants' interpretation of section 1252(f)(1) would prohibit the court from providing any relief, even under section 1252(e)(3), which expressly authorizes such relief. *See* Op. at 29. This interpretation would preclude judicial review of "[c]hallenges on the validity of the [expedited removal] system" of any practical effect—a point Defendants fail to address.

### C. The INA Does Not Authorize Expedited Removal of Paroled Individuals.

The district court correctly concluded that neither provision of the expedited removal statute permits the expedited removal of noncitizens who have been paroled

- 9 -

into the country at a port of entry. *See* Op. at 65. Defendants point to nothing proving the contrary.

*Designation provision.* The language of the Designation Provision is clear: A noncitizen here in the United States who "has…been…paroled" after inspection is categorically exempt from expedited removal. 8 U.S.C. §1225(b)(1)(A)(iii)(II); Op. at 45-46. Attempting to reach a contrary conclusion, Defendants improperly read the INA, misrepresent the Supreme Court's reasoning in *Hewitt v. United States*, 145 S. Ct. 2165 (2025), and ignore the agency's own contradicting regulations.

1. Defendants baldly assert that the parole statute "makes clear that [noncitizens] are eligible for expedited removal," because when a noncitizen's parole is revoked, their case shall be "dealt with in the same manner as that of any other applicant for admission." Mot. at 14 (emphasis omitted) (citing 8 U.S.C. §1182(d)(5)). But an "applicant for admission" is not the same as someone eligible for expedited removal. Congress chose not to apply expedited removal to all "applicants for admission" (and explicitly carved paroled individuals out of the Designation Provision). 8 U.S.C. §1225(b)(1). Notably, the INA defines "applicants for admission" broadly as noncitizens "present in the United States who ha[ve] not been admitted *or* who arrive[] in the United States." 8 U.S.C. §1225(a)(1) (emphasis added). In contrast, expedited removal applies solely to people encompassed by the Designation Provision and "Arriving In" Provision. If all "applicants for admission"

were subject to expedited removal, there would be no need for the statute to expressly delineate those two provisions.

Defendants assert, without authority, that "applicants for admission" is a "special" category "created to implement the expedited removal authority." Mot. at 14. However, the only case they cite, *DHS v. Thuraissigiam*, made clear that expedited removal only applies to "certain"—not all—"applicants for admission." 591 U.S. 103, 108-09 (2020). Moreover, 8 U.S.C. §1225(a)(1) defines "applicant for admission" for all of Chapter 12 of the INA, and it is used in other parts of the chapter unrelated to expedited removal. *See, e.g.*, 8 U.S.C. §1229a(c)(2)(A) (describing the burden of proof for an applicant for admission in section 240 removal proceedings). This indicates that the "applicant for admission" definition was designed to do much more than "implement the expedited removal authority," and is not synonymous with eligibility for expedited removal.

2. The district court properly rejected Defendants' arguments that the phrase "has not been…paroled" in the Designation Provision includes a noncitizen whose parole status has been terminated. *Compare* Op. 48-49, *with* Mot. at 14-15. Defendants present only arguments the district court already rejected, misapplying *Hewitt*.

When the *Hewitt* court explained that the present perfect tense ("has not been") "conveys to a listener that the event in question continues to be true or valid,"

- 11 -

it referred to its use "describ[ing] situations involving a specific change of state that produces a continuing result." 145 S. Ct. at 2172 (cleaned up); *see* Op. at 47. To determine whether that situation applies, a court must—as the district court did—examine the *statutory context of the language at issue* to "determine whether its grammatical holding made sense in the context of the statute as a whole." Op. at 47.

Regarding the Designation Provision, the statutory context supports Plaintiffs' interpretation of "has not been admitted or paroled"—that both "admitted" and "paroled" describe a manner of entry, not an ongoing status. As the district court correctly assessed, the pairing of the two words is significant. Op. at 47-48; *Fischer v. United States*, 603 U.S. 480, 487 (2024) (describing the canon of *noscitur a sociis*). Because the INA clearly defines "admitted" as a manner of entry, 8 U.S.C. §1101(a)(13)(A), it follows that "paroled" also necessarily refers to a manner of entry, not a status, and therefore does not describe a "situation[] 'involv[ing] a specific *change of state*'" or status "that produces a 'continuing result.'" *Hewitt*, 145 S. Ct. at 2172-73 (emphasis added); *see also* 6 U.S.C. §202(4) (describing parole as a "form[] of permission…to enter the United States"). Defendants' counterargument centers on a hypothetical noncitizen who was previously admitted, left the country, and returned years later without authorization and would be eligible for expedited removal. Mot. at 16-17. But this hypothetical only demonstrates that the inquiry about expedited removal, like other parts of the INA, is concerned with a

noncitizen's most recent entry:[7] the hypothetical confirms that "paroled," like "admitted," refers to the manner of entry—in the case of Defendants' hypothetical, specifically the most recent one.

Further, Defendants ignore that *Hewitt* hinged on "background principles regarding the legal effect of vacatur" of a criminal sentence—that if a criminal sentence is vacated, it is as if the sentence never existed: therefore, if a sentence is vacated, it is one that "has not been imposed" under the First Step Act. 145 S. Ct. at 2173-74. The legal effect of terminating parole is distinct from vacating a criminal sentence: a parole grant retains legal effect after expiration or termination. *See id.* at 2173. For example, parole beneficiaries are eligible to adjust status even if their parole has ended. *See* 8 U.S.C. §1255(a); 8 C.F.R. §245.1(b)(3); Op. at 49. The statute governing accrual of unlawful presence does not include the time someone had on active parole status, even if their parole is terminated. 8 U.S.C. §1182(a)(9)(B)(ii). The district court correctly determined that it is reasonable for the Designation Provision to treat parole beneficiaries differently, even after their parole ends, than noncitizens who entered the country without parole. Op. at 49.

---

[7] *See* 8 U.S.C. §1255(a); USCIS, Instructions for Application to Register Permanent Residence or Adjust Status, at 11 https://www.uscis.gov/sites/default/files/document/forms/i-485instr.pdf (requiring evidence of inspection and parole related to "the most recent arrival").

Defendants ignore this aspect of *Hewitt* and argue that the context of the Designation Provision, in targeting noncitizens who "ha[ve] not been admitted or paroled," "is about the [noncitizen]'s status when present in the United States" and whether they are now "unlawfully present." Mot. at 15. But that is not what the provision says. Defendants' position also cannot be squared with the fact that a noncitizen who was admitted to the country can become someone who is unlawfully present (e.g., by overstaying a visa). Mot. at 15. No one would suggest that such a person has not been admitted into the United States,[8] or that it is their current status that determines whether they may be subjected to expedited removal.

3. Defendants parse the asylum regulations at 8 C.F.R. §208.14(c)(4)(ii) to argue they better represent the "agency intent" to subject paroled individuals to expedited removal. Mot. at 17; *see* Op. at 54-55. But Defendants do not raise anything about that regulation that outweighs the plain meaning of the expedited removal statute and the prior regulatory practice of not applying expedited removal to parolees noted by the district court. *See* Op. at 52-53 (citing 8 C.F.R. §235.3 and DHS's 2019 Designation Notice). As the district court correctly analyzed, "any implication from section 208.14(c)(4)(ii) is weak" given the broader regulatory context. *Id.* at 54-55. And even if the agency's regulations were not "internally

---

[8] The definition of "admission" does not allow such an interpretation. 8 U.S.C. §1101(a)(13)(A).

- 14 -

contradictory," *id*. at 54, the meaning of the statute is what controls, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 388 (2024).

*"Arriving In" Provision.* As the district court correctly held, per the "ordinary meaning" of the term "arriving," a noncitizen who "is arriving" in the United States is someone "in the process of reaching his or her destination." Op. at 59. It is not someone who, like Plaintiffs' members, previously arrived in the United States and was inspected and paroled into the country. *Id.*; *see* 6 U.S.C. §202(4). Other provisions in the same statute—8 U.S.C. §1225—similarly use "arrive" or a conjugation to describe the process of arrival as one that happens at the border or another port of entry. Op. at 57-58. Despite Defendants' unsupported assertions, Mot. at 21, an identical or nearly identical term in the same statute should be read to have the same or similar meaning. *Nat'l Postal Pol'y Council v. Postal Regul. Comm'n*, 17 F.4th 1184, 1191 (D.C. Cir. 2021). The legislative history supports this interpretation: when Congress created expedited removal, they were concerned with "noncitizens physically arriving at the border for entry, not those already physically present within the country." Op. at 63. Defendants' arguments do not address the statutory text or legislative history.

1. Defendants argue that 8 C.F.R. §1.2 "fully resolves the merits" of the statutory analysis because it provides that an "arriving alien" (a term nowhere in the INA) "remains an arriving alien even if paroled." Mot. at 18-29. However, the only

case Defendants cite to support their contention that the district court was "obliged to treat [the regulation] as valid and controlling for present purposes" is inapposite. Mot. at 19 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954)). Even under *Chevron* deference, which Defendants seem to want to resurrect, regulations were only given controlling weight if they were not "arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984). Post-*Chevron*, courts "need not and *under the APA may not* defer to an agency interpretation of the law." *Loper Bright Enters.*, 603 U.S. at 413 (emphasis added). While the court can consider the agency's views as "evidence," Mot. at 22, even a "longstanding view" is "at most, only persuasive authority and [courts] must still independently interpret the statute." *Jazz Pharms., Inc. v. Kennedy*, 141 F.4th 254, 266 (D.C. Cir. 2025). The district court did just this, reviewing the regulation and the agency's longstanding view along with the other arguments and evidence to find the Challenged Actions—and the regulation itself—contrary to statute. Op. at 57-65.

2. Defendants claim that the statute treats paroled individuals as always "arriving" at the border. Mot. at 19-20. However, the parole statute merely recognizes that parole is "not an admission" and that when a noncitizen's parole ends, their case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. §1182(d)(5)(A). As

discussed above, an "applicant for admission" is defined far more broadly than an "arriving" individual. 8 U.S.C. §1225(a)(1). It certainly does not mean, as Defendants suggest, that "arriving aliens paroled into the United States are legally in the position of aliens standing at the border." Mot. at 20. If Congress intended to authorize expedited removal for all "applicants for admission," they could have done so—but did not. *Kucana v. Holder*, 558 U.S. 233, 248 (2010).

Defendants' proposed statutory interpretation, moreover, is internally inconsistent and renders other parts of the statute and regulations moot. *See* Op. at 62; Dkt. 22-1 at 20. Defendants' reading—that paroled individuals are eligible for expedited removal as indefinitely "arriving," *including when their parole is active*—makes the Designation Provision's exemption for paroled noncitizens and the regulatory provision at 8 C.F.R. §235.3(b)(6) meaningless. Defendants ignore this inconsistency. Mot. at 22. Why do DHS's regulations allow an individual to prove they have been paroled (8 C.F.R. §235.3)—and thus avoid expedited removal—if they can be put through expedited removal under the "Arriving In" Provision?

### D.    The Challenged Actions are Arbitrary and Capricious.

The district court correctly held that "*[i]ndependent of* being *ultra vires*, the Challenged Actions are also likely invalid as arbitrary and capricious" as unreasoned changes in agency position. Op. at 65 (emphasis added). Defendants' two narrow arguments challenging this ruling are wrong.

First, Defendants advance an argument not made below, trying to reframe Plaintiffs' arbitrary and capricious claim only as the agency's "failure to sufficiently articulate its authority." Mot. at 23. But *independent of whether they violate the expedited removal statute*, the Challenged Actions are arbitrary and capricious because they contain no consideration of the reliance interests at stake, *see* Dkt. 22-1 at 26-27, and provide starkly inconsistent legal justifications for DHS changing its position. The January 23 Memorandum and the March 25 Notice state that parolees must be processed for expedited removal before they have resided in the country for two years. But the February 18 Directive asserts "there is no time limit" to process "any arriving alien" for expedited removal. The directives provide no explanation for this contradictory flip-flop. *Cf.* Op. at 71 (describing the inconsistency as "Schrödinger's legal justification"). An "[u]nexplained inconsistency in agency policy" like this "is a reason for holding an interpretation to be [arbitrary and capricious]." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (cleaned up); *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582, 598-99 (D.C. Cir. 2023) (where an agency "displayed no awareness of its own flip flop," such action was "arbitrary and capricious") (cleaned up).

Second, Defendants argue that Plaintiffs can have no APA claim as to the March 25 Notice because it "did not purport to create any rule applying expedited removal to [noncitizens] paroled at ports of entry." Mot. at 23. However, as the

district court correctly noted, the APA applies to "'[a]gency action' that is 'made reviewable by statute,'" Op. at 67, and all three Challenged Actions—including the March 25 Notice, which specified that CHNV parole beneficiaries will be subjected to expedited removal—are written policies reviewable under 8 U.S.C. §1252(e)(3)(A). *See Las Americas Immigrant Advoc. Ctr. v. Wolf,* 507 F. Supp. 3d 1, 34 (D.D.C. 2020).

Defendants fail to demonstrate a likelihood of success on the merits of the appeal.

## II.    The Equitable Factors Weigh Against a Stay.

The district court correctly found that, without a stay, Plaintiffs' members and others like them would face irreparable injury that outweighs any harm to the government, and that the equitable factors favor a stay. Op. at 77-80.

Defendants' argument that the government suffers irreparable harm because the court is holding them to statutory limits on their expedited removal authority, Mot. at 24, does not justify a stay pending appeal. Defendants identify only vague, abstract harms to the power of the executive, which district and circuit courts alike have repeatedly rejected.[9] Mot. at 24-25.

---

[9] *See, e.g.*, *Cmty. Legal Servs. in East Palo Alto v. HHS*, 137 F. 4th 932, 942-43 (9th Cir. 2025) ("reject[ing] the notion that the injunction's effect on the 'separation of powers' qualifies as irreparable harm at the stay stage"); *J.G.G. v. Trump*, No. 1:25-cv-00766, 2025 WL 1577811, at *26 (D.D.C. Jun. 4, 2025)

Defendants do not contest that Plaintiffs' members and others like them suffer substantial harms—they merely argue that "[t]he harm to Defendants and the public interest outweighs Plaintiffs' harms." Mot. at 26. As below, "Defendants vastly understate Plaintiffs' evidence of irreparable injury." Op. at 74. Plaintiffs' members and other paroled individuals face imminent and irreparable harms if Defendants' actions do not remain stayed, including detention; loss of opportunity to apply for relief for which they are eligible; persecution or torture in their home countries; and family separation. *Id.* at 28-37, 73-80. Defendants' assertion that such individuals still have access to CFIs, Mot. at 26, ignores that (i) those procedures are a far cry from the protections and opportunities for relief available in section 240 proceedings, Op. at 28-34, 74-77, and (ii) the targeted individuals *were previously* in section 240 proceedings, where they were not detained and with their families, had a right to counsel at their own expense, and could pursue immigration relief, Op. at 28-36, 73-77.

The other equitable factors likewise support maintaining the stay, which will "not substantially injure other interested parties," *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016), but will benefit individuals around the country harmed by the government's unlawful actions. There is no public interest in

---

(holding executive "foreign affairs" interests "do not defeat the need for the Government to fix its legal wrongs.").

unlawful agency action, *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021), and if there is a public interest in the prompt execution of removal orders, "section 240 proceedings *are* the main 'streamlined' removal proceedings [Congress] established," Op. at 78. The public interest is not served by eschewing legality for increased speed of removal.

Perhaps recognizing the paucity of evidence in their favor, Defendants submitted two declarations not presented below, on which their arguments on the equitable factors almost exclusively rely. Doc. No. 2130203 at 90-100. This evidence is not properly before this Court. *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (citing, inter alia, *United States v. West*, 392 F.3d 450, 455 n.2 (D.C. Cir. 2004)). Even taking the declarations at face value, however, it is not the *district court's* order that "imposes substantial administrative burdens and taxes agency resources," Mot. at 25, but the removal procedures Congress set out in the INA. Such matters are for Congress to decide, and the Executive to implement.

The equitable factors favor maintaining the stay.

## III.    The Scope of the District Court's Stay is Appropriate.

The district court's remedy staying the Challenged Actions is appropriate, and Defendants present no reason to narrow the relief. The district court's stay is

expressly contemplated by Congress through both the INA and APA and aligns with the Supreme Court's holding in *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025).

The district court's stay is statutorily authorized by the INA and APA and therefore does not implicate the issues that concerned the Supreme Court about the Judiciary Act of 1789 in *CASA*. *See* 145 S. Ct. at 2562. Congress expressly granted the U.S. District Court for the District of Columbia (and only that Court) jurisdiction to review "[c]hallenges on [the] validity of the [expedited removal] system," 8 U.S.C. §1252(e)(3), and placed no restrictions on that court's ability to provide stay relief under the APA. Congress likewise expressly authorized in APA section 705 relief that allows the reviewing court "to preserve status or rights pending conclusion of the review proceedings," 5 U.S.C. §705—including stay relief.[10]  Accordingly, the *CASA* decision neither disturbs relevant controlling D.C. Circuit precedent[11] nor the district court's stay. *See* 145 S. Ct. at 2567 (Kavanaugh, J., concurring) (leaving untouched the authority to "preliminarily 'set aside' a new agency rule.").[12]

---

[10] *See Bridgeport Hosp. v. Becerra,* 108 F. 4th 882, 890 (D.C. Cir. 2024); *Allina Health Servs. v. Sebelius,* 746 F.3d 1102, 1110 (D.C. Cir. 2014).

[11] *Id.*

[12] *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 830-31 (2024) (Kavanaugh, J., concurring) (cataloguing decisions affirmed by Supreme Court vacating agency actions rather than enjoining enforcement of rules against specific plaintiffs).

Defendants' discussion of *CASA*'s "complete relief principle" and an inapposite Ninth Circuit case, *ImmDef v. Noem*, misses the mark. 2025 WL 2017247 (9th Cir. July 18, 2025). The district court considered this principle, taking into account numerous factors not present in *ImmDef*, including that expedited removal is designed to limit review of individual cases; even the limited process available under expedited removal is not always observed and impinges on individuals' rights; limiting relief to Plaintiffs' members creates significant practical challenges for the government; and the benefits of suits percolating across different courts cannot be realized here because the mandatory venue requires any suit challenging the expedited removal system be brought in D.C. Op. at 82. Defendants have identified no flaws in this reasoning, much less articulated any other reason (apart from the *ipse dixit* of pointing to the "complete relief" principle itself) for this Court to reconsider.

The scope of the district court's stay was proper.

## CONCLUSION

For the foregoing reasons, Defendants' stay request should be denied.

Dated: August 22, 2025                    Respectfully submitted,

*/s/ Karen C. Tumlin*
Karen C. Tumlin
Esther H. Sung
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
karen.tumlin@justiceactioncenter.org
esther.sung@justiceactioncenter.org

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 27(d)(2)(A) that the foregoing opposition contains 5,200 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). I further certify that the document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

Dated: August 22, 2025                    Respectfully submitted,

                                          */s/ Karen C. Tumlin*
                                          Karen C. Tumlin

                                          *Counsel for Plaintiffs-Appellees*

- 25 -

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, I caused the foregoing document to be electronically filed using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Respectfully submitted,

*/s/ Karen C. Tumlin*
Karen C. Tumlin

*Counsel for Plaintiffs-Appellees*