# EXHIBIT LIST

| Exhibit | Description |
|---|---|
| Exhibit A ……………………………. | Declaration of George Escobar, Chief of Programs and Services at CASA Inc. (Dkt. 22-2) |
| Exhibit B ……………………………. | Declaration of Angelica Salas, Executive Director of the Coalition for Humane Immigrant Rights (CHIRLA) (Dkt. 22-3) |
| Exhibit C ……………………………. | Declaration of Patrice Lawrence, Executive Director of UndocuBlack Network (Dkt. 22-4) |
| Exhibit D ……………………………. | Declaration of Bianca Torres (Dkt. 22-7) |
| Exhibit E ……………………………. | Declaration of Jessica Olive (Dkt. 22-10) |
| Exhibit F …………………………….. | Declaration of Lindsay Toczylowski (Dkt. 22-11) |
| Exhibit G …………………………….. | Declaration of Meghan Maurus (Dkt. 22-12) |
| Exhibit H …………………………….. | Declaration of Melissa Chua (Dkt. 22-13) |
| Exhibit I ……………………………… | Declaration of Sabrina Perez-Arleo (Dkt. 22-16) |
| Exhibit J ……………………………… | Declaration of Sarah Gillman (Dkt. 22-17) |

# Exhibit A

Docusign Envelope ID: 5B7836FA-AA18-4BAE-AC0D-1D5EA1442BFE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-0872 |

**DECLARATION OF GEORGE ESCOBAR,**
**CHIEF OF PROGRAMS AND SERVICES, CASA, INC.**

I, George Escobar, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am the Chief of Programs and Services of CASA, Inc. ("CASA"). CASA is a national nonprofit membership organization headquartered in Langley Park, Maryland, with offices in Maryland, Virginia, Pennsylvania, and Georgia. Founded in 1985, CASA has more than 173,000 lifetime members from across the United States. CASA's members are predominantly noncitizens in a variety of immigration statuses.

2. I have worked at CASA for fourteen years. In my role, I oversee CASA's portfolio of community-facing direct services, including its health, legal, and educational services; employment and workforce development programs; financial literacy and tax programs; and parent engagement programs. An important part of my role is to understand the needs and experiences of our members so that I can work with my staff to design appropriate interventions to address those needs. I therefore speak frequently with community members and receive feedback from my staff regarding CASA members' fears, concerns, and decisions.

Docusign Envelope ID: 5B7836FA-AA18-4BAE-AC0D-1D5EA1442BFE

3.      I make this statement based upon personal knowledge, files and documents of CASA that I have reviewed (such as case files, reports, and collected case metrics), as well as information supplied to me by employees of CASA whom I believe to be reliable. These files, documents, and information are of a type that is generated in the ordinary course of our business and that I would customarily rely upon in conducting CASA business.

**CASA's Mission and Activities**

4.      A CASA member is a person who shares CASA's values, envisions a future where we can achieve full human rights for all, and is convinced that, when united and organized, we can create a more just society by building power in our working-class and immigrant communities. CASA members play an important role in deciding what campaigns we work on and how CASA serves the community.

5.      CASA membership is voluntary. In order to become a member, an individual must apply for membership, pay dues, and subscribe to the principles of CASA. CASA members also must self-identify as members of an immigrant or working-class community.

6.      Currently, the annual fee for CASA membership is $35. Alternatively, individuals may pay a recurring membership fee of $5 per month. The membership fee can be waived for individuals who experience financial hardship or are otherwise unable to pay. Members are also offered the opportunity, for an additional $5, to obtain a CASA ID. This is a physical picture identification card that contains basic information about the member. For many of our immigrant members, this card may be the only type of picture identification they have, other than documents from their home country. In certain jurisdictions, CASA IDs are recognized for the purposes of engaging with certain government agencies, including the police.

7.      CASA's mission is to create a more just society by building power and improving

Docusign Envelope ID: 5B7836FA-AA18-4BAE-AC0D-1D5EA1442BFE

the quality of life in working-class Black, Latino/a/e, Afro-descendent, Indigenous, and immigrant communities. From CASA's beginnings in a church basement, we have envisioned a future with diverse and thriving communities living free from discrimination and fear, working together with mutual respect to achieve human rights for all.

8. In furtherance of this mission, CASA offers a wide variety of social, health, job training, employment, and legal services to immigrant communities, with a particular focus in Maryland, Washington, D.C., Virginia, Pennsylvania, and Georgia. CASA also offers a more limited suite of services remotely to our members across the United States. Those individuals who are not geographically close to a physical CASA office are offered the opportunity to join a national organizing committee, whose members are entitled to vote on CASA's organizational priorities and integrated into our member-led system of internal democratic governance. CASA also conducts campaigns to inform members of immigrant communities of their rights and assists individuals in applying a variety of government benefits. In addition, CASA provides its members with free remote legal assistance, including free legal consultations on immigration issues.

**<u>Harm to CASA's Members</u>**

9. On January 23, 2025, the U.S. Department of Homeland Security ("DHS") issued a memorandum authorizing the revocation of parole status for individuals who had been legally allowed to enter the United States and further authorizing DHS to subject them to expedited removal. Since that date, DHS has taken further action to implement that directive, which has sparked deep fear and confusion in our membership and the immigrant community generally. The expedited removal process has minimal procedural safeguards and would expose our members to rapid deportation, destroying the lives that they've created here in the U.S. and

Docusign Envelope ID: 5B7836FA-AA18-4BAE-AC0D-1D5EA1442BFE

denying them the opportunity to seek longer lasting protection.

10.      CASA has a large number of members who have already been, or are likely to be, directly harmed by the administration's attempt to end humanitarian parole protections and expose paroled individuals to expedited removal. Many of our members are noncitizens, including individuals with U.S. citizen children or other family members with permanent status in the United States, and we have members specifically who were granted parole through either CBP One or the parole processes for Cuba, Haiti, Nicaragua, and Venezuela ("CHNV parole"). CASA has provided legal and other social services to thousands of of immigrant community members and is a national leader in advocating for immigration protections.

11.      More than 33,000 CASA members entered the United States after the CBP One app first launched in October 2020, and a significant portion of those members were likely granted parole through CBP One. We are aware of CASA members who have had their grants of CBP One parole prematurely terminated, putting them at risk of being subjected to expedited removal.

12.      Approximately 2,250 CASA members from Cuba, Haiti, Nicaragua or Venezuela entered after the full implementation of the CHNV parole program in January 2023. A significant number of them were likely sponsored for and granted parole through CHNV parole. Due to a recent Supreme Court order staying a district court decision that had temporarily prevented the Trump administration from categorically terminating all grants of CHNV parole, all CASA members who had been paroled into the United States on CHNV parole are now at risk of having their parole terminated at any point, and then being subjected to expedited removal. We have seen our members who are beneficiaries of CHNV parole receive letters terminating their parole status and, in some cases, directing them to leave the country, which

Docusign Envelope ID: 5B7836FA-AA18-4BAE-AC0D-1D5EA1442BFE

stoked fear and created a lot of uncertainty for them.

13. CASA has multiple members who could be placed in expedited removal proceedings under the Trump administration's current policies because they fit one or more of the various profiles the administration has prioritized for expedited removal. CASA has multiple members whose parole has been prematurely terminated and who have been in the United States for less than two years, including some do not have any pending applications for alternate immigration relief. CASA also has multiple members who were granted parole through the CBP One application and are currently in section 240 removal proceedings, who must appear in immigration court for regular hearings and who run the risk of having their proceedings dismissed and subsequently being placed in expedited removal. The significant ramp-up in immigration enforcement in recent weeks, including but not limited to courthouse arrests and raids in Los Angeles that have resulted in swift and summary deportations, only underlines the vulnerability of CASA members to the harms of the administration's policies terminating individual grants of parole and exposing paroled individuals to expedited removal.

14. LZP is a CASA member originally from Honduras who currently resides in Maryland. She is a single mother who entered the United States with her three children, now aged 18, 13 and 6, on humanitarian parole after attending a CBP One appointment at the southern border in July 2024. LZP's two youngest children are attending school in the United States, which is an opportunity they did not have in Honduras. She currently works at a fruit factory, helping to pack fruit for distribution, to support her family. Over the last month, LZP received notice that both her parole status and work authorization have been terminated, despite the fact that her parole was not supposed to expire until June 2, 2026 and her work authorization was valid through July 1, 2026. She was notified of this via a message in an application on her

Docusign Envelope ID: 5B7836FA-AA18-4BAE-AC0D-1D5EA1442BFE

phone called "Migra Connect" and confirmed it on the USCIS website. These terminations have made her even more afraid that she could be returned to Honduras, where she was a victim of domestic violence and death threats. It has made her afraid to even go outside. She sees what immigration agents are doing, that they are even detaining people who have pending asylum claims or other forms of relief.  LZP applied for asylum on February 28, 2025 and intends to apply for work authorization based on her pending asylum application as soon as she is eligible. Her next scheduled immigration court hearing is in April 2026. Recent reporting about individuals who, like her, were paroled into the country being detained after immigration court and placed into expedited removal makes her afraid to go to her hearing.  This places her in a terrible situation where she is afraid to pursue her legitimate asylum claim, since even going to court could mean that she would be summarily detained and removed from the country without the process she is relying upon.  Yet she knows that in order to have any hope for the future she must fight her case and plans to continue complying with all of her legal obligations, including presenting for immigration court.

15.      NDG and YPC are a married couple, both of whom are CASA members. They have four children, aged 16, 13, 8 and 5. All of them were granted humanitarian parole to enter the U.S. through a CBP One appointment in July 2024. They were also issued NTAs and placed into Section 240 removal proceedings. NDG works as a delivery driver to support their family, while YPC takes care of their children – including their 8-year-old son who suffers from a disability called psychomotor delay that slows his learning process.  He still requires diapers, has difficulty walking, and cannot write. NDG was a politically active small business owner in Venezuela, and he was targeted and attacked by the government for supporting the opposition party.  If he and his family were subjected to expedited removal back to Venezuela, they fear that

Docusign Envelope ID: 5B7836FA-AA18-4BAE-AC0D-1D5EA1442BFE

their family's safety would be at risk, and they would not be able to pursue their pending asylum claims.

16.    CASA member JNM is originally from Haiti and entered the U.S. with his two children on CHNV parole in July 2024.  In Haiti JNM was assaulted at gun point, and gangs threatened to kidnap his children, which forced him to stop taking them to school.  Since being paroled into the United States with his family, JNM has for the first time in many years been able to live in peace, with his children attending school and no longer fearing for their physical safety. On March 29, 2025, however, that sense of security was shattered when he received a letter indicating that his CHNV parole authorization was being terminated and directing him to depart the country by April 24, 2025. After receiving this letter, and consulting with a CASA attorney, JNM was advised to apply for asylum but has not been able to find an attorney to assist him with the application and CASA has not been able to provide him with representation due to resource constraints. To his knowledge he does not have a case in immigration court, but he has a pending sibling petition his sister filed for him approximately seven years ago.  His sister was also the one who sponsored him to enter the country on parole.  JNM is at risk of being subjected to expedited removal because he fits the profile outlined in the March 25 CHNV termination memo.  He is terrified of being subjected to expedited removal without the chance to pursue an asylum application.  All of the gang members who threatened his children know who he is and know that he left, so if he returns he fears it will be a death sentence for him and his family.

17.    Another CASA member, EMP, was pursuing a defensive asylum case in New York and had those proceedings dismissed, only so the government could detain him and seek to place him in expedited removal proceedings.  Without judicial action to protect those whose parole status has been summarily revoked, potentially thousands of CASA members could be

Docusign Envelope ID: 5B7836FA-AA18-4BAE-AC0D-1D5EA1442BFE

subjected to a similar fate.

18.     These members—and countless others like them—represent the human cost of the administration's attempt to dramatically reverse course, rapidly stripping parolees of their legal status and work authorization and potentially subjecting them to immediate expulsion from this country via expedited removal.  Those members who entered on parole went through rigorous hurdles to come to this country, often fleeing terrible and unsafe conditions in their home countries. They followed the process set up by the government to seek safety here, and for the last several years have been building back their lives, starting families, working and contributing to their communities—making this country stronger.

19.     If the administration is allowed to destroy that promise and continue subjecting parolees to expedited removal, without any of the normal protections of due process, it will irreparably harm the communities CASA serves by placing families at risk of separation, jeopardizing livelihoods, and cutting off access to essential healthcare and services. It has also exacerbated the fear and anxiety among immigrants, especially those who have built their lives here and contribute meaningfully to their communities.  As our member's stories indicate, the tactics we are seeing by the administration, including arrests at immigration courthouses and blanket revocation of parole status and work authorization with direction to self-deport, make that fear and confusion even more acute.  This places our members at risk of exposing themselves to harm by returning to countries that are not safe for them, and upends their ability to continue supporting their families and communities here in the United States.

Docusign Envelope ID: 5B7836FA-AA18-4BAE-AC0D-1D5EA1442BFE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June10, 2025
Washington, District of Columbia

DocuSigned by:
George Escobar
53A219C43A564F2...

George Escobar

# Exhibit B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,

*Plaintiffs*,

v.

Noem, *et al.*

*Defendants*.

Case No 25-cv-00872.

**DECLARATION OF ANGELICA SALAS, EXECUTIVE DIRECTOR OF THE COALITION FOR HUMANE IMMIGRANT RIGHTS ("CHIRLA")**

I, Angelica Salas, upon my personal knowledge, hereby declare as follows:

1. I am the Executive Director of the Coalition for Humane Immigrant Rights ("CHIRLA"). I have held this position since 1999. In this capacity, I oversee all of CHIRLA's program areas and am responsible for strategic planning and CHIRLA's annual budget.

2. CHIRLA is a nonprofit organization headquartered in Los Angeles, California, with ten offices throughout California and a national policy office in Washington, D.C. CHIRLA was founded in 1986 and its mission is to advance the human and civil rights of immigrants and refugees and ensure immigrant communities are fully integrated into our society with full rights and access to resources.

**CHIRLA's Mission, Membership, and Services**

3. CHIRLA's mission is to ensure that immigrant communities are fully integrated into our society with full rights and access to resources. CHIRLA's first director was Father Luis Olivares, the pastor at Our Lady Queen of Angels Church. As a leading voice of the Sanctuary movement, Olivares used his church to protect refugees fleeing human rights abuses in Central

America in the 1980s. Since its founding in 1986, CHIRLA has continued to advocate for immigrant rights, organizing, educating, serving, and defending immigrants and refugees in Los Angeles and throughout California.

4. Today, CHIRLA is the largest statewide immigrant rights organization in California, with fourteen unique departments and over 185 staff members who help provide a range of services that reach tens of thousands of Californians each year. For example, over the last three years, CHIRLA's education programs have reached over 820,000 people through more than 7,800 events, and its legal department has assisted approximately 30,000 people. In furtherance of its mission, CHIRLA handles the full spectrum of needs of those primarily residing within low-income immigrant communities in an area with very high costs of living and in areas of California that have long been underserved.

5. CHIRLA is a membership-based organization with approximately 51,279 members across California, about 38,926 of whom reside in Los Angeles County. CHIRLA is funded, in part, by its members. The fee for an individual membership starts at $25, and families may become members for $60.

6. CHIRLA's membership is diverse, and includes U.S. citizens, non-U.S. citizens with lawful status, and non-U.S. citizens without lawful status. Many of our members belong to mixed-status families—that is, families consisting of both individuals with citizenship or lawful immigration status and individuals without. Most of our members are low-income. CHIRLA educates its membership as well as our broader community through know-your-rights trainings, workshops, social media and educational literature about a variety of social services and benefits, including immigration law, financial literacy, workers' rights, and civic engagement.

7. In 2012, CHIRLA launched its legal services program to support its members and

others in the community in seeking the benefits and protections of Deferred Action for

Childhood Arrivals ("DACA"). Since then, we have expanded the program, first by representing

clients in applying for permanent residence and citizenship as well as other affirmative

applications before U.S. Citizenship and Immigration Services ("USCIS"), and then expanding

in 2017 to representing individuals in removal proceedings in immigration court. We now have

three main components within our Department of Legal Services: 1) Programs and Subcontract

Administration; 2) Worker Rights and Labor; and 3) Immigration Legal Programs, with over

sixty staff members across the components. Subcontract Administration oversees funding from

the California Department of Social Services, the County of Los Angeles, and the City of Los

Angeles, and in this way helps ensure wider access across Los Angeles and the State of

California to legal services.  During the past three years, CHIRLA has conducted nearly 30,000

legal consultations and has assisted with hundreds of immigration matters, including I-130

family petitions and attendant adjustments of status, Military Parole in Place cases, consular

processes, as well as humanitarian-based applications including asylum, U visas, and Special

Immigrant Juvenile Status ("SIJS") and Violence Against Women Act ("VAWA") petitions.

       8.     There is overlap between our membership and the clients that our legal services

program serves. Some members join CHIRLA first as members and then become legal services

clients due to need, while others are clients before they become members.

       9.     Part of the CHIRLA Department of Legal Services, the Removal Defense Unit

(RDU), serves immigrants during their initial immigration court proceedings as well as

occasionally on appeal. RDU has recently experienced a large increase in consultation requests

and due to the Trump Administration's ongoing efforts to enact its mass deportation agenda,

RDU is adapting and expanding into assisting detained clients including those facing expedited

removal.

10.    CHIRLA's programs also include a hotline where individuals—including members, clients, and community members—can call with questions. The assistance hotline that CHIRLA operates fields on average 15,000 calls per year. Given CHIRLA's deep community ties and longstanding legal services programs, CHIRLA is often a first point of contact for individuals seeking information about recent policy changes impacting immigrants.

11.    In 2023, in response to a growing need, CHIRLA formed a new Department of Humanitarian Assistance. We were experiencing the arrival of a growing number of recent immigrants to Los Angeles, most of whom needed logistical and legal support. The need became particularly acute when the Governor of Texas, Greg Abbott, began sending buses filled with recent arrivals to cities around the country, including Los Angeles. CHIRLA began working with partner organizations and the City of Los Angeles to assist the newcomers and their families and help them get settled. The vast majority of these new arrivals were paroled into the U.S., primarily via the CBP One application process, and thus are currently at risk of being detained and subjected to expedited removal as has been happening at immigration courts around the country. CHIRLA also has a dedicated program that helps Afghan nationals who arrived both via Operation Allies Welcome and CBP One.

12.    CHIRLA reaches its members and community members through in-person meetings and events throughout California and through its social media and other virtual platforms, including a Facebook Live series "CHIRLA en tu Casa," CHIRLA TV YouTube channel, and TikTok. Organizers, along with legal and communications staff, work collaboratively to prepare materials and content for these events that are geared towards members and non-members alike.

13. In addition to its education initiatives and legal services, CHIRLA engages in policy advocacy efforts on behalf of its members at the local, state, and national levels. For example, a recent CHIRLA campaign focused on advocacy for stronger health and safety protections for domestic workers. This campaign began in response to COVID-19, where domestic workers were at the forefront of the pandemic. Since then, CHIRLA has been supporting state legislation that would remove an exemption that denies domestic workers the same health and safety protections as other workers.

**Harm to CHIRLA's Members**

14. On January 23, 2025, the U.S. Department of Homeland Security ("DHS") issued a memorandum authorizing the revocation of parole status for individuals who had been legally allowed to enter the United States and further authorizing DHS to subject them to expedited removal. Since that date, DHS has taken further action to implement that directive and aggressively target parole beneficiaries for expedited removal, including prematurely terminating grants of parole for individuals who came through the processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV parole") and arresting individuals who were paroled into the country through CBP One after their immigration court hearings. This has spread fear and confusion in CHIRLA's membership and the immigrant community generally. The expedited removal process has minimal procedural safeguards and would expose our members to swift, summary deportation, depriving them of the opportunity to seek relief for which they are eligible and uprooting the lives that they and their families have created in the United States.

15. CHIRLA has many members who have already been, or are likely to be, directly harmed by the administration's attempt to end humanitarian parole protections and expose paroled individuals to expedited removal. We have members specifically who were granted

parole through either CBP One or the parole processes for Cuba, Haiti, Nicaragua, and Venezuela ("CHNV parole") and who could be placed in expedited removal proceedings under the Trump administration's current policies.

16.    Specifically, CHIRLA has members who were granted parole through the CBP One application and are currently in section 240 removal proceedings, who must appear in immigration court for regular hearings. Many of these members fear that they will be apprehended at immigration court and summarily removed from the country because they have heard of the exact same thing happening to others. CHIRLA also has members whose parole was prematurely terminated and who have been in the country for less than two years, including some who do not have any pending applications for asylum or other immigration relief. CHIRLA members are well aware of the recent significant increase in immigration enforcement at courthouses across the country and in and around Los Angeles. The stepped-up immigration enforcement underlines how exposed CHIRLA members are to the administration's drive to terminate individual grants of parole and subject paroled individuals to expedited removal.

17.    For example, CHIRLA member E.I.R.M. entered the U.S. with inspection in November 2023 and was paroled into the U.S. via the CBP One parole program.  He received a Notice to Appear and attended all his master calendar hearings. On March 7, 2025, he was arrested at a CBP checkpoint and detained despite his parole still being valid, and he is now being processed for expedited removal. While in detention, he was given a credible fear interview and given a negative credible fear finding. His attorney asked an immigration judge to review the determination, and although such reviews are supposed to be held within seven days of a negative determination, more than a month has passed and they have not received any review, nor a transcript of the interview. E.I.R.M.'s mental state has declined due to his detention

and the fact that he does not know how much longer it will last. He went through the entire immigration process in complete compliance with all the rules set out for him, and now he has been separated for months from his family and fiancée, unsure of when, or even if, he will get to see them again. Additionally, he faces harm if he were to be forcibly returned to Mexico, where he and his brother have received death threats from a cartel that the U.S. Government has designated a foreign terrorist group and a transnational criminal organization.

18. Other CHIRLA members who entered the U.S. during the last two years and were paroled in via the CBP One parole program have expressed significant fears of being detained at court hearings, based on footage in the news media of immigration agents arresting people at courthouses. These members also reported a fear of being detained, a fear of harm should they be deported to countries that they fled due to dangers they faced there, and a fear of being separated from their families if they are detained and/or deported. Additionally, some members fear the loss of income to their households if their detention or deportation disrupts their ability to work and hurts their capacity to earn income at the level needed to support their households.

19. For CHIRLA's members, as well as their families and communities, the use of and threat of expedited removal against lawfully paroled individuals is causing widespread fear and uncertainty. This fear has increased significantly for CHIRLA members as a result of the recent sweeping ICE raids in Los Angeles, which have already resulted in the arrests of many noncitizens and has compelled CHIRLA members to refrain from going about their daily lives.

20. In Los Angeles County, home to nearly 40,000 CHIRLA members, any sense of normalcy has been shattered by a high-profile blitz by federal immigration authorities on workplaces and other sites central to people's daily lives. Immigrant Angelenos are inundated by reports of warrantless surprise raids, of their community members snatched up by masked

men, loaded into unmarked vans, and spirited away to unknown locations. Often, family members and lawyers representing or seeking to represent these individuals are unable to ascertain their whereabouts, adding to people's sense of grave danger. And reports are reaching the immigrant community of detained people being deported within a day or two of their arrest, without a hearing in front of an Immigration Judge or other forms of due process. For all these reasons, many of CHIRLA's members are currently living through a period of intense fear, anxiety and dread.

21.    CHIRLA has been receiving many inquiries from members, clients, and community members who were granted parole and are now concerned about that status being revoked and being subject to expedited removal. Since the widespread courthouse arrests began around May 20, 2025, the number of inquiries has increased and CHIRLA's Humanitarian Services department is now facing a wave of inquiries from paroled clients who have received termination notifications via email and are very fearful that they will be detained at their upcoming immigration court hearings.

22.    CHIRLA has already identified several existing clients as well who are vulnerable to the use of expedited removal against parolees. At least four of CHIRLA's existing clients and an additional five children in their families face the risk of expedited removal when they attend their scheduled court hearings in the next few months.

23.    For example, one of CHIRLA's clients and his two children fled organized crime in their home country after relocating internally when their tormentor was released after serving three years out of a 20-year sentence. After all semblance of government protection vanished, and their police report was ignored, they fled the country and entered the U.S. using CBP One. In a few months, the family has a hearing in immigration court, and they fear their case will be

dismissed and they will be arrested for expedited removal like has happened to others who are in similar situations.

24.    The administration has made clear—both through written policies and its recent actions in apprehending and detaining scores of individuals across the country—that it intends to remove noncitizens, including parole beneficiaries, as quickly as possible, in as large numbers as possible. CHIRLA members are at significant risk of being subjected to expedited removal proceedings rather than regular removal proceedings because of the administration's express intent to target parole beneficiaries, including by terminating ongoing removal proceedings and active parole status. This threat of expedited removal and all the harm it inflicts on individuals and their families is causing widespread fear among CHIRLA members.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed June 11, 2025, in Los Angeles, California.

Angelica Salas

# Exhibit C

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-0872 |

**DECLARATION OF PATRICE LAWRENCE,**
**EXECUTIVE DIRECTOR, UNDOCUBLACK NETWORK**

I, Patrice Lawrence, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am the Executive Director of UndocuBlack Network ("UndocuBlack"). Created in 2016, UndocuBlack is a nonprofit membership organization and multigenerational network of Black immigrants that advocates for and supports Black immigrants through facilitating access to resources, storytelling, organizing, and community wellness.

2. I have worked at UndocuBlack for nine years. In my role, I oversee several core departments critical to our mission: Community Wellness, Policy and Advocacy, Community Engagement, Development, and Narrative and Media. Through this work, I help guide the strategic vision for how we support and uplift Black immigrants across the country and ensure our programs are responsive to the evolving needs of our members.

**<u>UndocuBlack's Mission and Activities</u>**

3. UndocuBlack's mission is to foster community, facilitate access to resources, and contribute to transforming the realities of its members – who are Black immigrants – so they can

thrive and live their fullest lives.

4.    At its core, UndocuBlack's work is centered on engaging and supporting its members and advocating for policies that protect members and Black immigrants at large through different areas of work including community engagement and organizing, community wellness, narrative and storytelling, and policy and advocacy.

5.    Since its inception, UndocuBlack has served and supported the Haitian community in particular. UndocuBlack has provided a wide range of services to its Haitian members that include providing legal assistance to sponsors and beneficiaries of humanitarian parole programs and enrolling family members in school and social services programs.

6.    As a part of our policy and advocacy work, UndocuBlack provides educational information and advocacy on behalf of its members. For example, UndocuBlack frequently conducts Know Your Rights trainings with its members to explain new policies that aim to adversely impact the UndocuBlack community.

**UndocuBlack membership**

7.    UBN has members across the nation with chapters in New York, Los Angeles and Washington, DC. UBN serves thousands of immigrants through its organizational chapters with a national network across approximately thirty states.

8.    As of the date of this declaration, UndocuBlack's membership is over 1000 active members. To become an active UndocuBlack member, an individual must (1) identify as Black, (2) be an immigrant, and is asked to (3) apply by submitting a form to indicate their interest in joining the membership. There are no membership dues required.

9.    UndocuBlack also serves those who are part of our larger UndocuBlack Community. The communities in the UndocuBlack network include, but are not limited to,

currently and formerly undocumented young people, elders, students, differently abled people, entrepreneurs, LGBTQ people, houseless and unhoused people, formerly incarcerated people, and people holding temporary legal status. This diverse, inclusive, and expansive network (the "UndocuBlack Community") fosters community, facilitates access to resources, and advocates to transform the realities of UndocuBlack Community members across the United States, helping them to not only survive, but thrive. UndocuBlack's vision is to foster inclusive immigrant rights and racial justice movements that advocate for the rights of, and provide support, healing, and community to those with intersecting identities. UndocuBlack works to achieve this mission and to improve the lives of UndocuBlack Community members.

10. UndocuBlack considers individuals in the UndocuBlack Community who have been involved with UndocuBlack programming or who have reached out to the organization for services to be members of UndocuBlack.

11. UndocuBlack's members include at least 300 Haitian parole beneficiaries who were granted parole through either the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV) or CBP One appointments at a port of entry.

12. UndocuBlack members live in areas where encounters with U.S. Immigration and Customs Enforcement (ICE) officials are common. ICE actively detains noncitizens all over New York, where the largest concentration of UndocuBlack members reside. In the last several months, this activity has increased significantly, including for noncitizens who have a temporary status like parole.

**<u>Harm to UndocuBlack's Members</u>**

13. Under the government's recent policies, UndocuBlack's many members who are Haitian CBP One and CHNV parole beneficiaries face the imminent risk of being processed for

expedited removal, which would cause them severe harm. Our Haitian members who were paroled into the country with the help of sponsors through the CHNV parole program are now likely to have their parole terminated quickly as a result of the Supreme Court's recent decision to stay the lower court order that had previously protected their parole status from the administration's efforts to terminate status early. In the Federal Register Notice that ended the CHNV parole program, and which categorically and prematurely terminated all grants of CHNV parole, the federal government clearly expressed a strong interest in initiating expedited removal proceedings "to the maximum extent possible" for CHNV parole beneficiaries, and in fact justified the *en masse* termination of all CHNV parole grants for precisely that purpose. The same Federal Register Notice also specified that the federal government would prioritize for expedited removal those CHNV parole beneficiaries who had not filed an immigration benefit request for alternate legal status before the publication of the Federal Register Notice, or who are not the beneficiary of an immigration benefit request filed by someone else on their behalf. Given that UndocuBlack has many CHNV parole beneficiary members, we are aware of multiple individuals within our membership, including in New York, who are at this heightened risk of expedited removal under the Federal Register Notice, due to not having any other applications for legal status filed or on their behalf.

14.    We have additionally heard from our members who have expressed fear about the recent rise in arrests at courthouses of noncitizens after their removal proceedings so they can be processed for expedited removal, particularly because paroled individuals have been arrested as part of these enforcement actions. This practice of courthouse arrests poses particular danger to our many members who are CBP One parolees, because many of them were placed in removal proceedings at the time of their parole and must appear regularly in immigration court.

15.    Our members who are parole beneficiaries are frightened based on the reports around the country that they will be arrested and subject to expedited removal. Some UndocuBlack members who are Haitian parole beneficiaries did not come to the United States in time to apply for Temporary Protected Status (TPS), and even those who now have TPS recognize that the Trump administration is attempting to terminate those protections early, so that status is precarious. Many of these members therefore have pending applications for other kinds of immigration relief, including asylum and adjustment of status, or are preparing to file such applications. Although the Federal Register Notice that terminated all individual grants of CHNV parole indicated that individuals who do not have pending immigration benefits applications will be prioritized for expedited removal, our members are well aware of news reports of the Trump administration canceling other immigrants' visas and green card petitions and fear that their own petitions could likewise be canceled or otherwise rendered invalid. They are also well aware of directives from the Trump administration instructing DHS agencies to consider revoking individuals' parole in order to subject them to expedited removal, and indeed, multiple CBP One parole beneficiaries have had their parole revoked, and now all CHNV parole beneficiaries will likely have their parole swiftly terminated, too. If UndocuBlack's parole beneficiary members are processed for expedited removal, they will face significant challenges to presenting any claims for other immigration benefits, or lose the opportunity to do so altogether.

16.    Specifically, UndocuBlack members who may be eligible for asylum or Convention Against Torture protections in the United States would face tremendous obstacles if they were targeted for expedited removal and would have to rely only on the credible fear screening process. The screenings depend on case referrals by enforcement personnel to asylum

officers, and noncitizens are given little opportunity to gather relevant documents, present evidence, or consult counsel, all while battling difficulties with language barriers. Due to these and other inadequacies, the screenings can result in, and have resulted in, the removal of people to dangerous circumstances abroad without the opportunity to develop the kind of case that would have secured relief in immigration court.

17. UndocuBlack's members who are Haitian parole beneficiaries also have family in the United States with different immigration statuses. As a result, UndocuBlack expects that these members, if they are put in expedited removal, will experience abrupt family separation and lose one or more household incomes. They could also be deported to Haiti where they don't have family or resources and where they may be at risk of violence or even death.

18. One UndocuBlack member, UBN Jane Doe 1, is a Haitian woman who was sponsored to come to the United States through the Haitian CHNV parole process. She applied for and was granted TPS, but now, due to the administration's efforts to terminate Haitian TPS prematurely, that status will likely expire in August, and she could be subject to expedited removal. UBN Jane Doe 1's son, who is back in Haiti, is ill, and being able to work in the U.S. through CHNV has been the only way UBN Jane Doe 1 has been able to provide for him. The termination of her CHNV parole and the anticipated early terminations of her TPS, together with the possibility of being removed expeditiously without a meaningful opportunity to request any possible form of relief, have caused significant harm to UBN Jane Doe 1, who has relied upon CHNV parole to provide for herself and her ailing child. Moreover, the government's betrayal and stripping of time that was given to her—which would be exacerbated by efforts to quickly remove her without process—will cause deep financial and psychological harm to her.

19. Another UndocuBlack member, UBN Jane Doe 2, is a 45-year-old mother who

fled Haiti and was paroled into the U.S. with her young son through CBP One in March 2024. As she struggles to navigate the complex asylum process without legal representation, she lives in constant fear for both her life and her child's. Her greatest terror is that stepping outside for any reason could mean never returning to her son. Through free legal resources, she has learned that she must always be prepared to show documentation of at least two years of presence in the U.S. But the harsh reality is that she simply does not have that. The weight of this requirement, coupled with the uncertainty of her status, leaves her paralyzed with fear—afraid to attend her own hearings, afraid to send her son to school, and even afraid to stay in her own home. Any knock at the door or passing shadow, even from the mail carrier, fills her with terror. She lives in a constant state of anxiety, fearing that at any minute, she will be processed for expedited removal, forced to try and quickly defend her asylum claim alone and without the opportunity to see a judge, without the ability to pay for an attorney, and while battling language barriers.

20.     UndocuBlack has dedicated many resources to ensure its members are well-informed about the danger that they now face due to the increased use of expedited removal against parole beneficiaries. UndocuBlack has heard directly from many members who are fearful of being detained, including members who have not been in the United States for two years, which we understand is one of the requirements the government uses to say they are eligible for expedited removal.

21.     UndocuBlack's members who entered on parole after making a CBP One appointment or through the CHNV parole process invested considerable time and resources in applying for these humanitarian parole programs, often while fleeing dangerous circumstances in their home country. They did everything the United States government asked of them to satisfy the requirements established by these parole processes, including vetting and inspection

requirements, and now the government aims to remove them as quickly as possible. UndocuBlack members, and other CHNV and CBP One parole beneficiaries like them, have done nothing to deserve this abrupt change in course; to the contrary, they are hard-working individuals, dedicated to supporting their families and uplifting their communities.

22. Not only will families face separation, but our members would face extreme danger if forced to return home to Haiti. The threat of being subject to expedited removal already feels very real for our members given what is happening around the country at courthouses, and it has already sown extreme fear in our Black immigrant communities. We have heard from members who are afraid to seek medical services they desperately require, take their children to school, or even answer a knock at the door. The members and communities that UndocuBlack serves will be irreparably harmed if the government is permitted to continue targeting parole beneficiaries for expedited removal.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 9, 2025
Washington, District of Columbia

Respectfully submitted,

P.S. Lawrence

Patrice Lawrence

# Exhibit D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants.* | Case No.: 1:25-cv-0872 |

**DECLARATION OF BIANCA L. TORRES**

I, Bianca L. Torres, upon my personal knowledge, hereby declare as follows:

1. I am over the age of 18 and competent to testify to the facts and matters set forth herein.
2. I am an attorney at The Law Office of Bianca L. Torres, PLLC, and I am an attorney in good standing of the State Bar of Arizona. I represent E.I.R.M., a national of Mexico who was paroled into the United States at a port of entry in November 2023 and was subsequently targeted and processed for expedited removal. E.I.R.M. is a member of The Coalition for Humane Immigrant Rights (CHIRLA).
3. On November 21, 2023, E.I.R.M. presented at the Calexico, California port of entry. E.I.R.M. and his brother and sister had used the Department of Homeland Security (DHS) CBP One application to schedule an appointment at this port of entry. Following their inspection by U.S. Customs and Border Protection (CBP) personnel, they were each granted parole into the United States that day through November 19, 2025. At the same time, they were each issued a Notice to Appear that required them to appear at the

Imperial, California Immigration Court on January 9, 2024. Attached as Exhibit A to this declaration is a true and correct copy of E.I.R.M.'s Notice to Appear with all personally identifiable information redacted. E.I.R.M. and his family moved to Tempe, Arizona, and hired me as their attorney. I, as counsel, filed a motion to change the venue of their immigration court proceedings to Phoenix, Arizona.

4. After the three siblings were paroled into the United States, they resided in Tempe, Arizona, and obtained work authorization based on their grants of parole. While in Tempe, E.I.R.M. was working, became engaged to be married to a United States citizen, and had no encounters with law enforcement. E.I.R.M. appeared at all of his Master Calendar Hearings, filed an application for asylum with the immigration court, and was preparing evidence for his final hearing, which was scheduled for April 2, 2026. E.I.R.M. will also be eligible to adjust his status once he is married to his fiancée.

5. On March 7, 2025, while E.I.R.M. and his fiancée were driving to California for a birthday trip for E.I.R.M., they passed through an interior CBP checkpoint in Blythe, California. Although his parole was still valid, CBP personnel arrested and detained E.I.R.M. Although he was initially detained in California, Immigration and Customs Enforcement (ICE) transferred him to the Eloy Detention Center in Eloy, Arizona. On March 14, 2025, DHS filed a motion to change venue to Eloy. On March 26, 2025, the motion to change venue was granted.

6. On April 9, 2025, DHS filed a written motion to dismiss citing 8 C.F.R. § 1239.2(c) and 8 C.F.R. § 239.2(a)(6), stating that the Notice to Appear—the charging document issued to E.I.R.M. when he was first paroled into the country and that initiated his ongoing immigration proceedings—was improvidently issued because, according to DHS,

E.I.R.M. purportedly qualifies for expedited removal pursuant to INA § 235(b). Attached as Exhibit B to this declaration is a true and correct copy of this motion to dismiss with all personally identifiable information redacted. In my many years of practicing immigration law, and representing individuals paroled into the United States, I have never seen or heard of paroled individuals being placed into Expedited Removal proceedings. This is unusual because normally this is a decision made at the port of entry, not months/years after their interaction with CBP.

7. The Immigration Judge granted DHS's motion on April 11, 2025, without providing the usual ten days for the Respondent to respond. As a result, on April 14, 2025, I filed a motion to reconsider, objecting to the motion to dismiss; the Immigration Judge granted my motion on April 16, 2025, allowing for E.I.R.M. to file a response to DHS's motion. On April 25, 2025, I filed an opposition to DHS's motion and DHS filed a reply on May 1, 2025. That same day, the Immigration Judge granted the government's motion to dismiss E.I.R.M.'s removal proceedings. Attached as Exhibit C to this declaration is a true and correct copy of the immigration judge's May 1, 2025, decision with all personally identifiable information redacted. I have filed an appeal with the Board of Immigration Appeals, which is currently pending. Attached as Exhibit D to this declaration is a true and correct copy of this appeal with all personally identifiable information redacted.

8. While E.I.R.M. was detained at the Eloy Detention Center and before his immigration proceedings had even been dismissed by the immigration court, I received communication from his family advising me that an officer met with him on April 22, 2025, asking whether he was afraid of returning to Mexico. I understood this to mean that

the government was moving forward with processing him for expedited removal and that they were determining whether to refer him to a U.S. Citizenship and Immigration Services (USCIS) asylum officer for a credible fear interview. I spoke to my client directly and advised him to request my presence at this interview. I also sent an email to the ICE Office in Eloy and the USCIS Asylum Office with my Form G-28 Notice of Appearance as Attorney requesting that I be present for any credible fear interview USCIS provided to my client. Attached as Exhibits E and F to this declaration are true and correct copies of my emails to the ICE Office and the USCIS Asylum office with all personally identifiable information redacted. I did not receive a response from USCIS to my request.

9. On May 1, 2025, my client was escorted by detention officers to visitation for a credible fear interview via telephone. At that time, E.I.R.M. told the USCIS asylum officer that he wanted his attorney present to answer questions. The USCIS officer attempted to contact me with no advance notice but I was unable to answer because I was in Court at that time. The USCIS officer then told my client that they had to proceed with the interview and if he did not answer they would simply find him not credible. As a result, my client answered the questions and at the end of the interview was told he did not have a credible fear of returning to Mexico. He requested that an Immigration Judge review the determination. To this day, he has not received this review or even a copy of the transcript of his credible fear interview.

10. E.I.R.M. has been significantly harmed throughout this process. His mental state has significantly declined knowing that he is being detained for an unspecified amount of time, and he struggles to understand why. He followed the steps to request legal entry

into the United States, timely filed an application for asylum, attended all court dates and was actively preparing for his final hearing, and had both a valid parole document and work permit when he was detained. E.I.R.M. has now been separated from his fiancée and his family for well over two months, with no notion of when, or even if, they will ever be able to be together again. Conditions in the detention center where he has been held are worsening as the number of individuals detained in Eloy has risen significantly. E.I.R.M. shares a small room with another individual. Within his "pod" approximately 50 people share two microwaves and four telephones. The food provided at the Eloy Detention Center is often expired or close to expiration.

11. E.I.R.M. has also been left in limbo with regard to his immigration case. He was told he did not pass his credible fear interview, but he has not seen an Immigration Judge for the review that he requested and is entitled to, even though his interview was conducted more than a month ago. This is unusual because an Immigration Judge review of a negative credible fear interview is supposed to be held within seven days of the negative finding according to the regulations. *See* 8 C.F.R. § 1003.42(e). If E.I.R.M. is scheduled for a review before an Immigration Judge, I, as his attorney, will be present to advocate on his behalf. His ordinary removal proceedings are also ongoing due to the pendency of his appeal to the Board of Immigration Appeals of the court's dismissal order.

12. Additionally, the illegal dismissal of these proceedings so that DHS can subject E.I.R.M. to expedited removal would result in his swift return to Mexico where he would face harm. E.I.R.M. and his brother received various credible death threats from a Mexican cartel that has been designated a Foreign Terrorist Organization group and a Specially Designated Global Terrorist group by the current administration. *See* U.S. Dep't of State,

*Designation of International Cartels*, Feb. 20, 2025, at

https://www.state.gov/designation-of-international-cartels/. The dismissal has deprived

E.I.R.M. of his right to have his meritorious asylum claim adjudicated in the immigration

court. The limited rights and lack of meaningful process provided in the credible fear

process, including barriers to accessing counsel and evidence since he is detained, are

inadequate to protect E.I.R.M.'s legitimate interests. USCIS should not have conducted

the credible fear interview without making reasonable efforts to allow my presence. One

phone call, without any prior notice, or communication regarding scheduling, is not a

reasonable effort.

13. I, as the legal representative of E.I.R.M., have personal knowledge of the statements

about his immigration history, immigration status, and immigration case. I further declare

that these statements are true and correct to the best of my knowledge.

I declare under penalty of perjury and under the laws of the United States that the foregoing
is true and correct to the best of my knowledge.

Executed in Mesa, Arizona on June 9, 2025.

Bianca L. Torres, Esq.

# EXHIBIT A

Uploaded on: 11/21/2023 at 02:41:51 PM (Pacific Standard Time) Base City: IMP

DEPARTMENT OF HOMELAND SECURITY

# NOTICE TO APPEAR

Event No:

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Subject ID : FIN #:

SIGMA Event: DOB:

File No:

In the Matter of:

Respondent: currently residing at:

Yuma,ARIZONA 85365,UNITED STATES OF AMERICA

(Number, street, city, state and ZIP code) (Area code and phone number)

- [x] You are an arriving alien.
- [ ] You are an alien present in the United States who has not been admitted or paroled.
- [ ] You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of MEXICO and a citizen of MEXICO;
3. You applied for admission on 11/21/2023 at CALEXICO, CA, USA;
4. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act;
5. You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

See Continuation Page Made a Part Hereof

- [ ] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.
- [ ] Section 235(b)(1) order was vacated pursuant to: [ ] 8CFR 208.30 [ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

2409 LA BRUCHERIE RD,
IMPERIAL, CA, US 92251

*(Complete Address of Immigration Court, including Room Number, if any)*

on January 9, 2024 *(Date)* at 09:00 AM *(Time)* to show why you should not be removed from the United States based on the charge(s) set forth above.

MARTINEZ, Diana L
CBP OFFICER

*(Signature and Title of Issuing Officer)* *Digitally Acquired Signature*

Date: November 21, 2023 CALEXICO, CALIFORNIA

*(City and State)*

EOIR — 1 of 4

Exh. 1 - Adm.

Uploaded on: 11/21/2023 at 02:41:51 PM (Pacific Standard Time) Base City: IMP

**Notice to Respondent**

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form 1-589, Application for Asylum and for Withholding of Removal. The Form 1-589, Instructions, and information on where to file the Form can be found at www.uscis.gov/i-589. Failure to file the Form 1-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

**Request for Prompt Hearing**

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: ______________________

*(Signature of Respondent)*

Date: ______________________

______________________

*(Signature and Title of Immigration Officer)*

**Certificate of Service**

This Notice To Appear was served on the respondent by me on November 21, 2023, in the following manner and in compliance with section 239(a)(1) of the Act.

[x] in person [ ] by certified mail, returned receipt # ______ requested [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[x] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the SPANISH language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

[redacted] Digitally Acquired Signature

*(Signature of Respondent if Personally Served)*

MARTINEZ, Diana L
CBP OFFICER
Digitally Acquired Signature

*(Signature and Title of officer)*

EOIR — 2 of 4

Exh. 1 - Adm.

Uploaded on: 11/21/2023 at 02:41:51 PM (Pacific Standard Time) Base City: IMP

**Privacy Act Statement**

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

Uploaded on: 11/21/2023 at 02:41:51 PM (Pacific Standard Time) Base City: IMP

**U.S. Department of Homeland Security** **Continuation Page for Form** I862

| Alien's Name | File Number [redacted]<br>SIGMA Event: [redacted]<br>Event No: [redacted] | Date<br>November 21, 2023 |
|---|---|---|
| [redacted] | | |

ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

| Signature | Title |
|---|---|
| MARTINEZ, Diana L | CBP OFFICER |

*Digitally Acquired Signature*

EOIR | 4 of 4
Exh. 1 - Adm.

# EXHIBIT B

Uploaded on: 04/09/2025 at 10:30:52 PM (Mountain Standard Time) Base City: ELO

Corina Almeida
Chief Counsel

Derek Faraldo
Assistant Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
1705 E. Hanna Rd.
Eloy, AZ 85131

**DETAINED**

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**ELOY, ARIZONA**

In the Matter of:

[redacted]

In removal proceedings

File No.: [redacted]

Immigration Judge: ORECHWA, NICOLAS

Next Hearing: 4/15/2025

**DEPARTMENT OF HOMELAND SECURITY**
**MOTION TO DISMISS WITHOUT PREJUDICE**

EOIR — 1 of 4

Uploaded on: 04/09/2025 at 10:30:52 PM (Mountain Standard Time) Base City: ELO

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**ELOY, ARIZONA**

| | |
|---|---|
| In the Matter of: ) | |
| [redacted] ) | File No.: [redacted] |
| In removal proceedings ) | |

**DEPARTMENT OF HOMELAND SECURITY**
**MOTION TO DISMISS WITHOUT PREJUDICE**

Pursuant to 8 C.F.R. § 1239.2(c) and 8 C.F.R. § 239.2(a)(6), the Department of Homeland Security (the Department) hereby moves to dismiss the removal proceedings on the Notice to Appear (NTA), issued on or about November 21, 2023, because the NTA was improvidently issued as the respondent qualifies for expedited removal pursuant to Immigration and Nationality Act § 235(b).

**WHEREFORE**, for the reasons stated above, the Department requests this Court grant its motion to dismiss without prejudice.

Respectfully submitted on this 9th day of April 2025.

DEREK A FARALDO Digitally signed by DEREK A FARALDO Date: 2025.04.09 22:28:53 -07'00'

Derek Faraldo
Assistant Chief Counsel

Corina E. Almeida
Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

EOIR — 2 of 4

**CERTIFICATE OF SERVICE**

I hereby certify that this Department of Homeland Security Motion to Dismiss Without Prejudice and any attached documents was/were served upon the respondent (or his/her representative):

☐ by placing a true copy in a sealed envelope, with postage fully to be prepaid and causing the same to be mailed by first class mail to the address set forth below:

☐ by placing a true copy in a sealed envelope into the inter/intra-office mail at Choose an item., to the address set forth below:

☐ by e-service or email to the address set forth below:

☐ by UPS to the address set forth below:

[REDACTED]
[REDACTED]
ELOY, AZ 85131

☒ through the EOIR Courts and Appeals System (ECAS), in which both parties are participating. Therefore, no separate service was completed.

DEREK A FARALDO Digitally signed by DEREK A FARALDO Date: 2025.04.09 22:28:22 -07'00'

Date: April 9, 2025

Assistant Chief Counsel

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**ELOY, ARIZONA**

In the matter of: [redacted] A Number: [redacted]

**ORDER OF THE IMMIGRATION JUDGE**

Upon consideration of **Department of Homeland Security's Motion To Dismiss Without Prejudice,** it is **HEREBY ORDERED** that the motion be

( ) **GRANTED** ( ) **DENIED** because:

( ) DHS does not oppose the motion.
( ) The respondent does not oppose the motion.
( ) A response to the motion has not been filed with the court.
( ) Good cause has been established for the motion.
( ) The court agrees with the reasons stated in the opposition to the motion.
( ) The motion is untimely per ____________________________.
( ) Other:

Deadlines:

( ) The application(s) for relief must be filed by _____________________.
( ) The respondent must comply with DHS biometrics instructions by _____.
( ) The Department/Respondent/Both must file their documents by _______.

______________________________ Date

______________________________ Immigration Judge

---

Certificate of Service

This document was served by: [ ] Mail [ ] Personal Service
To: [ ] Alien [ ] Alien c/o Custodial Officer [ ] Alien's Atty/Rep [ ] DHS
Date: ______________________ By: Court Staff ____________________________

EOIR – 4 of 4

# EXHIBIT C

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**ELOY IMMIGRATION COURT**

Respondent Name:

[redacted]

To:

Torres, Bianca L
1910 S. Stapley Dr.
Suite 221
Mesa, AZ 85204

A-Number:

[redacted]

Riders:
In Removal Proceedings
Initiated by the Department of Homeland Security
Date:
05/01/2025

**ORDER ON MOTION TO DISMISS**

☐ The Respondent ☑ the Department of Homeland Security ☐ the parties jointly has/have filed a motion to dismiss these proceedings under 8 CFR 1239.2(c). The moving party has given notice of the motion to the non-moving party and the court has provided the non-moving party with an opportunity to respond. The motion is ☑ opposed ☐ unopposed.

After considering the facts and circumstances, the immigration court orders that the motion to dismiss is:

☑ Granted without prejudice
☐ Denied

Further explanation:

The court considered the respondent's opposition filed April 25, 2025, and DHS's reply filed May 1, 2025. The dismissal is without prejudice and the respondent may still seek relief from removal.

IT IS SO ORDERED.

Immigration Judge: ORECHWA, NICOLAS 05/01/2025

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name : [redacted] | A-Number : [redacted]

Riders:

Date: 05/01/2025 By: HARCHUT, MARGARET ANN, Court Staff

# EXHIBIT D

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB# 1125-0002

**Notice of Appeal from a Decision of an Immigration Judge**

Staple Check or Money Order Here. Include Name(s) and "A" Number(s) on the face of the check or money order.

**1.** List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s):

[redacted]

For Official Use Only

! **WARNING:** Names and "A" Numbers of **everyone** appealing the Immigration Judge's decision must be written in item #1. The names and "A" numbers listed will be the only ones considered to be the subjects of the appeal.

**2.** I am ☑ the Respondent/Applicant ☐ DHS-ICE *(Mark only one box.)*

**3.** I am ☑ DETAINED ☐ NOT DETAINED *(Mark only one box.)*

**4.** My last hearing was at Eloy, Arizona *(Location, City, State)*

**5. What decision are you appealing?**

*Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

☐ I am filing an appeal from the Immigration Judge's decision *in **merits** proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated______________.

☐ I am filing an appeal from the Immigration Judge's decision *in **bond** proceedings* dated ______________. (For DHS use only: Did DHS invoke the automatic stay provision before the Immigration Court? ☐ Yes. ☐ No.)

☑ I am filing an appeal from the Immigration Judge's decision ***denying a motion to reopen or a motion to reconsider*** dated May 1, 2025, granting motion to dismiss

*(Please attach a copy of the Immigration Judge's decision that you are appealing.)*

EOIR 1 of 5

Form EOIR-26
Revised Sept. 2019

6. **State in detail the reason(s) for this appeal. Please refer to the General Instructions at item F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.**

The Immigration Judge erred in granting the Department of Homeland Security's motion to dismiss without prejudice.

Subjecting Respondent to expedited removal would violate Congress's carefully crafted statutory scheme for processing noncitizen applicants for admission. INA § 235(b) provides Department with several choices for how to process a noncitizen whom it alleges is an inadmissible applicant for admission, but there is no statutory authority for Department to later reverse that choice.

*(Attach additional sheets if necessary)*

**WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

7. Do you desire oral argument before the Board of Immigration Appeals? ☐ Yes ☑ No

8. Do you intend to file a separate written brief or statement after filing this Notice of Appeal? ☑ Yes ☐ No

**WARNING:** If you mark "Yes" in item #7, you should also include in your statement above why you believe your case warrants review by a three-member panel. The Board ordinarily will not grant a request for oral argument unless you also file a brief.

If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule..

9. **Sign Here** X [signature]
Signature of Person Appealing
*(or attorney or representative)*

05/02/2025
Date

**10. Mailing Address of Respondent(s)/Applicant(s)**

[redacted]
(Name)

[redacted]
(Street Address)

(Apartment or Room Number)

Eloy, AZ 85131
(City, State, Zip Code)

(Telephone Number)

**11. Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s)**

Bianca L. Torres
(Name)

1910 S. Stapley Dr.,
(Street Address)

Suite 221
(Suite or Room Number)

Mesa AZ 85204
(City, State, Zip Code)

(Telephone Number)

**NOTE:** You must notify the Board within five (5) working days if you move to a new address or change your telephone number. You must use the Change of Address Form/Board of Immigration Appeals (Form EOIR-33/BIA).

**NOTE:** If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

**12. PROOF OF SERVICE (You Must Complete This)**

I Bianca L. Torres (Name) mailed or delivered a copy of this Notice of Appeal

on May 1, 2025 (Date) to DHS/ICE (Opposing Party)

at VIA ECAS (Number and Street, City, State, Zip Code)

**SIGN HERE** ➜ X [signature]
Signature

**NOTE:** If you are the Respondent or Applicant, the "Opposing Party" is the Assistant Chief Counsel of DHS - ICE.

**WARNING:** If you do not complete this section properly, your appeal will be rejected or dismissed.

**WARNING:** If you do not attach the fee or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal may be rejected or dismissed.

**HAVE YOU?**

- ☐ Read all of the General Instructions
- ☐ Provided all of the requested information
- ☐ Completed this form in English
- ☐ Provided a certified English translation for all non-English attachments
- ☐ Signed the form
- ☐ Served a copy of this form and all attachments on the opposing party
- ☐ Completed and signed the Proof of Service
- ☐ Attached the required fee or Fee Waiver Request
- ☐ If represented by attorney or representative, attach a completed and signed EOIR-27



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**ELOY IMMIGRATION COURT**

Respondent Name:

[REDACTED]

To:

Torres, Bianca L
1910 S. Stapley Dr.
Suite 221
Mesa, AZ 85204

A-Number:

[REDACTED]

Riders:
In Removal Proceedings
Initiated by the Department of Homeland Security
Date:
05/01/2025

**ORDER ON MOTION TO DISMISS**

☐ The Respondent ☑ the Department of Homeland Security ☐ the parties jointly has/have filed a motion to dismiss these proceedings under 8 CFR 1239.2(c). The moving party has given notice of the motion to the non-moving party and the court has provided the non-moving party with an opportunity to respond. The motion is ☑ opposed ☐ unopposed.

After considering the facts and circumstances, the immigration court orders that the motion to dismiss is:

☑ Granted without prejudice
☐ Denied

Further explanation:

The court considered the respondent's opposition filed April 25, 2025, and DHS's reply filed May 1, 2025. The dismissal is without prejudice and the respondent may still seek relief from removal.

IT IS SO ORDERED.

Immigration Judge: ORECHWA, NICOLAS 05/01/2025

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name : [REDACTED] | A-Number : [REDACTED]

Riders:

Date: 05/01/2025 By: HARCHUT, MARGARET ANN, Court Staff

# EXHIBIT E

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

 Gmail

Bianca Torres <bianca.torres@torrespllc.com>

---

[redacted]
3 messages

---

**Bianca Torres** <bianca.torres@torrespllc.com> Wed, Apr 23, 2025 at 3:10 PM
To: "EAZ-Outreach," <EAZ-Outreach@ice.dhs.gov>

Good Afternoon,
My client [redacted] and he has informed me he is being scheduled for a Credible Fear Interview. Attached is my G28, that should already be on file. I would like to be present for this interview. Please coordinate with me for scheduling. Additionally, I wanted to inform ICE that my motion to reconsider the dismissal of his case was granted please see attached. Thus, his case is not yet closed before an Immigration Judge.

Lastly, my client indicated he signed some documents a couple of weeks ago. May I have a copy of what he has signed.

Best,
Bianca L. Torres, Esq.

Attorney
1910 S. Stapley Dr., Suite 221,
Mesa AZ 85204 | (480) 626 2077

---

**2 attachments**

**New G28** [redacted]**.pdf**
311K

**Order on Motin to Reconsider.pdf**
460K

---

**EAZ-Outreach,** <EAZ-Outreach@ice.dhs.gov> Thu, Apr 24, 2025 at 11:21 AM
To: Bianca Torres <bianca.torres@torrespllc.com>

Received and forwarded to Deportation Officer Peru.

Thank you,

EAZ-Outreach

---

**From:** Bianca Torres <bianca.torres@torrespllc.com>
**Sent:** Wednesday, April 23, 2025 3:11 PM
**To:** EAZ-Outreach, <EAZ-Outreach@ice.dhs.gov>
**Subject:** [redacted]

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

[Quoted text hidden]

**2 attachments**

**New G28 [redacted].pdf**
311K

**Order on Motin to Reconsider.pdf**
460K

---

**EAZ-Outreach,** <EAZ-Outreach@ice.dhs.gov> Thu, Apr 24, 2025 at 4:30 PM
To: Bianca Torres <bianca.torres@torrespllc.com>

Good day,

You must reach out to USCIS if you like to be present in the Credible Fear interview, as USCIS conducts those interviews. Also, your client decline to sign M-444 Information about Credible Fear Interview, I will be submitting it as a refused to sign in order to proceed with scheduling his interview.

Respectfully,

*Ema V. Peru*

*Deportation Officer*

*Phoenix Field Office, Eloy Detention Center*

*Enforcement and Removal Operations*

***U.S. Immigration and Customs Enforcement***

*Cell: 520-840-6330*

**Warning: This document is UNCLASSIFIED//FOR OFFICIAL USE ONLY (U//FOUO).** It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official. **No portion of this report should be furnished to the media, either in written or verbal form.**

---

**From:** Bianca Torres <bianca.torres@torrespllc.com>
**Sent:** Wednesday, April 23, 2025 3:11 PM
**To:** EAZ-Outreach, <EAZ-Outreach@ice.dhs.gov>
**Subject:** [redacted]

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

Good Afternoon,

[Quoted te t hidden]

 Bianca Torres <bianca.torres@torrespllc.com>

---

[REDACTED]
3 messages

---

**Peru, Ema V** <Ema.V.Peru@ice.dhs.gov> Thu, Apr 24, 2025 at 4:28 PM
To: "bianca.torres@torrespllc.com" <bianca.torres@torrespllc.com>

Good day,

You must reach out to USCIS if you like to be present in the Credible Fear interview, as USCIS conducts credible fear interviews. Also, your client declines to sign M-444 Information about Credible Fear Interview, I will be submitting it as a refused to sign to proceed with scheduling his interview.

Respectfully,

*Ema V. Peru*

*Deportation Officer*

*Phoenix Field Office, Eloy Detention Center*

*Enforcement and Removal Operations*

***U.S. Immigration and Customs Enforcement***

*Cell: 520-840-6330*

**Warning: This document is UNCLASSIFIED//FOR OFFICIAL USE ONLY (U//FOUO).** It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official. **No portion of this report should be furnished to the media, either in written or verbal form.**

---

**Bianca Torres** <bianca.torres@torrespllc.com> Fri, Apr 25, 2025 at 11:20 AM
To: "Peru, Ema V" <Ema.V.Peru@ice.dhs.gov>

Thank you for the information, I sent an email to the LA Asylum Office. Do you know if there is another way I need to notify USCIS?

My client stated he did sign some documents but it was a couple weeks back, could you please share with me the documents he did sign?

Best,

Bianca L. Torres, Esq.

Attorney
1910 S Stapley Dr , Suite 221,
Mesa AZ 85204 | (480) 626-2077

[Quoted text hidden]

---

**Bianca Torres** <bianca.torres@torrespllc.com> Tue, Apr 29, 2025 at 4:19 PM
To: "Peru, Ema V" <Ema.V.Peru@ice.dhs.gov>

Hello again,

I am following up on my previous email. My client had an attempted interview but requested my presence. I have not had any communication with USCIS regarding his CFI. I sent my G28 to the LA Asylum Office email box, do you have anyother point of contact for USCIS CFI's?

Best,

Bianca L. Torres, Esq.

Attorney
1910 S Stapley Dr , Suite 221,
Mesa AZ 85204 | (480) 626-2077

[Quoted text hidden]

# EXHIBIT F

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

                                  Bianca Torres <bianca.torres@torrespllc.com>

## G28 for pending CFI interview

1 message

**Bianca Torres** <bianca.torres@torrespllc.com> Fri, Apr 25, 2025 at 11:17 AM
To: losangelesasylum@uscis.dhs.gov

Good Afternoon,
My client [REDACTED] has informed me he is being scheduled for a Credible Fear Interview. Attached is my G28. I would like to be present for this interview. Please coordinate with me for scheduling. Additionally, I wanted to inform USCIS/ICE that my motion to reconsider the dismissal of his case was granted please see attached. Thus, his case is not yet closed before an Immigration Judge and he is still in removal proceedings.

Best,
Bianca L. Torres, Esq.

Attorney
1910 S Stapley Dr , Suite 221,
Mesa AZ 85204 | (480) 626-2077

**2 attachments**

**Order on Motin to Reconsider.pdf**
460K

**g28 [REDACTED].pdf**
344K

# Exhibit E

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants.* | Case No.: 1:25-cv-0872 |
|---|---|

**DECLARATION OF JESSICA OLIVE**

I, Jessica Olive, upon my personal knowledge, hereby declare as follows:

1. I am over the age of 18 and competent to testify to the facts and matters set forth herein.

2. I am a supervising attorney at UnLocal, Inc., a community-based non-profit providing direct legal services to New York's immigrant communities. I am an attorney in good standing with the State Bar of New York, with nearly five years of experience. My practice focuses on representing immigrants seeking humanitarian relief, both through affirmative applications and in defensive proceedings. I now represent E.M.P., who was paroled into the United States at a port of entry in 2023 and is now being processed for expedited removal. E.M.P. is a member of CASA.

3. E.M.P. is a national of Venezuela who presented for inspection at the San Ysidro Port of Entry on December 12, 2023. Well before arriving at the port, E.M.P. had secured an appointment using the CBP One application, and following inspection he was granted parole through December 9, 2025. At the same time, he was issued a Notice to Appear that required him to appear for an initial master calendar hearing in Las Vegas, Nevada on

February 6, 2025. Attached as Exhibit A to this declaration is a true and correct copy of E.M.P.'s Notice to Appear with all personally identifiable information redacted.

4. After he was paroled into the United States, E.M.P. resided in Mesquite, Nevada for six months before moving to Manhattan and then the Bronx, New York. E.M.P. obtained work authorization based on his parole status and was working to support himself and his family.

5. On November 6, 2024, E.M.P. filed a form I-589 Application for Asylum and Withholding of Removal with the court and without legal representation. On February 6, 2025, E.M.P. appeared pro se for his initial master calendar hearing in Las Vegas, Nevada. Because E.M.P. had relocated to New York by that point, the Immigration Judge changed venue to New York.

6. On May 21, 2025, E.M.P. appeared at the New York Broadway Immigration Court at 290 Broadway pro se for his second master calendar hearing. At the hearing, the attorney representing the Department of Homeland Security (DHS) moved to dismiss E.M.P.'s case. Some of the conversation between the immigration judge and the DHS attorney took place in English and were not translated into Spanish for E.M.P. The immigration judge, Edward Grogan, ordered dismissal and advised E.M.P. to apply for asylum affirmatively with U.S. Citizenship and Immigration Services (USCIS) if he wanted to continue his asylum claim. Attached as Exhibit B to this declaration is a true and correct copy of the immigration judge's dismissal order with all personally identifiable information redacted. It was not made clear to E.M.P. that following dismissal the government would take steps to place him in expedited removal and foreclose his ability to apply for asylum affirmatively with USCIS.

7. After the case was dismissed, three plainclothes officers followed E.M.P. to the elevator to exit the building. Upon arriving in the lobby, he was approached by other plainclothes officers who identified him and detained him. He was placed in an unmarked car with other individuals and moved around to various locations.

8. Had the immigration judge understood that DHS only moved to dismiss proceedings so that E.M.P. could be detained and processed for expedited removal, it seems likely that Judge Grogan would not have advised E.M.P. to apply for asylum affirmatively, because that became unavailable to him once he was arrested and placed in expedited removal proceedings.

9. During his detention, E.M.P. expressed a fear of returning to Venezuela and is now housed at Moshannon Valley Processing Center in Pennsylvania awaiting a credible fear interview (CFI) according to an email sent to me from a Deportation Officer when E.M.P. was in transit between facilities. Attached as Exhibit C to this declaration is a true and correct copy of the email with all personally identifiable information redacted. I do not believe E.M.P. has been told anything about being processed for expedited removal, nor has he been issued any documentation regarding expedited removal, including an I-860, Notice and Order of Expedited Removal.

10. After his last hearing, E.M.P. should have been able to return home and gather evidence in support of his claim with the help of his community. Instead, he is now detained in a location far away, unable to regularly communicate with his attorney and loved ones. E.M.P. was actively pursuing his asylum claim when that process was abruptly taken from him. Forcing him into the CFI process is not an adequate substitute, as it offers substantially fewer legal protections. By placing C.M.P. in expedited removal proceedings, the

government effectively denied him his due process rights. Additionally, E.M.P., who is HIV+, went days without his life-saving medication because of his detention. In the limited conversations I have had with E.M.P., he has indicated that his mental health is deteriorating rapidly. He has trouble sleeping and is debilitated by intrusive thoughts and fears about being returned to Venezuela at a moment's notice.

11. Even if E.M.P. were to pass his credible fear interview, returning him to removal proceedings does not restore the position he was in before. The damage has already been done. He now faces the asylum process with greater fear and uncertainty, knowing that the system meant to protect him can change course without warning. This disruption has not only undermined his legal rights but has also deepened his trauma, as he lives with the constant threat that the rules may once again shift beneath him.

12. I have reviewed the contents of this declaration with E.M.P. over a phone call, and he has confirmed that all statements about his immigration history, immigration status, and immigration case are true and correct to the best of his knowledge. It is not feasible for E.M.P. to prepare his own signed declaration, because he is in immigration detention and I am only able to speak to him occasionally by phone. I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in New York, New York on June 5, 2025

____________________________

Jessica Olive, Esq.

# EXHIBIT A

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

Uploaded on: 12/12/2023 at 07:07:40 AM (Pacific Standard Time) Base City: LVG

DEPARTMENT OF HOMELAND SECURITY

# NOTICE TO APPEAR

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Event No: [redacted]

Subject ID : [redacted] FIN #: [redacted]

SIGMA Event: [redacted] DOB: [redacted]

File No: [redacted]

In the Matter of: [redacted]

Respondent: [redacted] currently residing at:

[redacted] ,MESQUITE,NEVADA 89027,UNITED STATES OF AMERICA [redacted]

(Number, street, city, state and ZIP code) (Area code and phone number)

[x] You are an arriving alien.

[ ] You are an alien present in the United States who has not been admitted or paroled.

[ ] You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of VENEZUELA and a citizen of VENEZUELA;
3. You applied for admission on 12/12/2023 at SAN YSIDRO, CA, USA;
4. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

See Continuation Page Made a Part Hereof

[ ] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

[ ] Section 235(b)(1) order was vacated pursuant to: [ ] 8CFR 208.30 [ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

110 N CITY PKWY STE 400,
LAS VEGAS, NV, US 89106

*(Complete Address of Immigration Court, including Room Number, if any)*

on February 6, 2025 *(Date)* at 01:00 PM *(Time)* to show why you should not be removed from the United States based on the charge(s) set forth above.

FLOURNOY, Markeith A
CBP OFFICER

*(Signature and Title of Issuing Officer)* *Digitally Acquired Signature*

Date: December 12, 2023 SAN YSIDRO, CALIFORNIA

*(City and State)*

EOIR — 1 of 4

Exh. 1 - Adm.

Uploaded on: 12/12/2023 at 07:07:40 AM (Pacific Standard Time) Base City: LVG

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at www.uscis.gov/i-589. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

_______________ *(Signature of Respondent)*

Date: _______________

_______________ *(Signature and Title of Immigration Officer)*

## Certificate of Service

This Notice To Appear was served on the respondent by me on December 12, 2023, in the following manner and in compliance with section 239(a)(1) of the Act.

[x] in person [ ] by certified mail, returned receipt # _______ requested [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[x] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the SPANISH language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

[redacted] Digitally Acquired Signature

*(Signature of Respondent if Personally Served)*

FLOURNOY, Markeith A

CBP OFFICER

Digitally Acquired Signature

*(Signature and Title of officer)*

Exh. 1 - Adm.

Uploaded on: 12/12/2023 at 07:07:40 AM (Pacific Standard Time) Base City: LVG

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

Uploaded on: 12/12/2023 at 07:07:40 AM (Pacific Standard Time) Base City: LVG

U.S. Department of Homeland Security

Continuation Page for Form I862

| Alien's Name | File Number [redacted]<br>SIGMA Event: [redacted]<br>Event No: [redacted] | Date<br>December 12, 2023 |
|---|---|---|
| [redacted] | | |

ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:

================================================================================

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

| Signature | Title |
|---|---|
| FLOURNOY, Markeith A | CBP OFFICER |

*Digitally Acquired Signature*

Exh. 1 - Adm.

EOIR - 4 of 4

# EXHIBIT B

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**NEW YORK - BROADWAY IMMIGRATION COURT**

Respondent Name:
[redacted]
To:
[redacted]
BRONX, NY 10453

A-Number:
[redacted]
Riders:
In Removal Proceedings
Initiated by the Department of Homeland Security
Date:
05/21/2025

**ORDER ON MOTION TO DISMISS**

☐ The Respondent ☑ the Department of Homeland Security ☐ the parties jointly has/have filed a motion to dismiss these proceedings under 8 CFR 1239.2(c). The moving party has given notice of the motion to the non-moving party and the court has provided the non-moving party with an opportunity to respond. The motion is ☐ opposed ☑ unopposed.

After considering the facts and circumstances, the immigration court orders that the motion to dismiss is:

☑ Granted without prejudice
☐ Denied

Further explanation:

Respondent filed I-589 with Court on 11/6/2024 according to the docket. Respondent advised to present I-589 to CIS at 26 Federal Plaza in the event that he wished to continue his asylum claim.

IT IS SO ORDERED.

Immigration Judge: Grogan, Edward 05/21/2025

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ P ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name : [redacted] A-Number : [redacted]

Riders:

Date: 05/21/2025 By: Correa, Jennifer, Court Staff

# EXHIBIT C

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)



Jessica Olive <jessica@unlocal.org>

***Urgent* A**

**Dawson, Khristopher** <Khristopher.Dawson@ice.dhs.gov> Thu, May 22, 2025 at 7:58 AM
To: "Pujol, Joseph T" <Joseph.T.Pujol@ice.dhs.gov>, "jessica@unlocal.org" <jessica@unlocal.org>

Good morning,

Your client has filed an M-444 for his fear claim and housing will be assigned soon. Please use the https://locator.ice.gov/odls/#/search to locator your client.

Khristopher Dawson

Supervisory Detention and Deportation Officer, Detained Docket Unit

New York Field Office

Enforcement and Removal Operations

U.S. Immigration and Customs Enforcement

Cell: 646 938-5542 Desk: 212 863-3497

**From:** NYCEROAttorneyInquiries, <NYCEROAttorneyInquiries@ice.dhs.gov>
**Sent:** Thursday, May 22, 2025 7:36 AM
**To:** Pujol, Joseph T <Joseph.T.Pujol@ice.dhs.gov>; Dawson, Khristopher <Khristopher.Dawson@ice.dhs.gov>
**Cc:** NYCEROAttorneyInquiries, <NYCEROAttorneyInquiries@ice.dhs.gov>
**Subject:** FW: *Urgent* A:

Greetings,

Please see email below and respond to it accordingly copying the NYCEROATTORNEYINQUIRIES Mailbox and also by taking appropriate action (updating EARM/DHS Portal/etc.) If this case does not fall within your docket, kindly forward to the proper Deportation Officer copying also this mailbox.

Thank you,

NYC ERO Attorney Inquiries

Enforcement and Removal Operations

U.S. Immigration and Customs Enforcement

**From:** Jessica Olive <jessica@unlocal.org>
**Sent:** Wednesday, May 21, 2025 6:44 PM
**To:** NYCEROAttorneyInquiries, <NYCEROAttorneyInquires@ice.dhs.gov>; ERO.INFO <ERO.INFO@ice.dhs.gov>
**Subject:** *Urgent* A

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

Good evening,
[Quoted text hidden]
[Quoted text hidden]

# Exhibit F

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,

*Plaintiffs,*

*v.*

KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,

*Defendants.*

Case No.: 1:25-cv-0872

**DECLARATION OF LINDSAY TOCZYLOWSKI**

I, Lindsay Toczylowski, upon my personal knowledge, hereby declare as follows:

1. I am over the age of 18 and competent to testify to the facts and matters set forth herein.

2. I am the President and CEO at Immigrant Defenders Law Center ("ImmDef"), and I am an attorney in good standing of the State Bar of California (State Bar# 262481). My office represents 2 clients, E.F.S. and R.A.U.P., who were both paroled into the United States at a port of entry following CBP One appointments but were detained last week while unrepresented at their immigration court hearings and are now being processed for expedited removal.

3. On Friday, May 23, 2025, I was at the North Los Angeles Court observing immigration court hearings. During Immigration Judge Peter Kim's morning docket that day, I personally observed E.F.S. appear for his hearing unrepresented alongside his wife and young son.

4. During the hearing, the Department of Homeland Security ("DHS") attorney, Caroline Tompkins, made an oral motion to the court to sever E.F.S.'s case from that of his wife and son. She specifically stated that the government was moving to dismiss E.F.S.'s case as it was no longer in the government's best interest to pursue the case and the Department intended to place E.F.S. into expedited removal proceedings.

5. E.F.S. verbally opposed the motion to dismiss and told the court that he wanted his case to remain with his wife and child. The Judge said that is not a legal basis to deny the Government's motion to dismiss and ordered E.F.S.'s case dismissed.

6. I followed E.F.S. and his wife and son out of the courtroom after the proceedings were dismissed and witnessed approximately 6 ICE officers arrest E.F.S. in front of his young son and wife. While the male officers handcuffed E.F.S., a female ICE officer ushered his wife and young son away. E.F.S.'s young son, who I later learned was 8 years old, had a shocked look on his face and tears in his eyes. E.F.S.'s wife was shaking and holding on to her son. The ICE officers moved E.F.S. into a non-public hallway with a service elevator and left his wife and young son stunned and confused in the hallway.

7. Another attorney from my office, Andrew Freire, and I spoke to the wife of E.F.S. following his arrest. She informed us that this was their first court hearing and that they had entered the U.S. via CBP One appointments in 2024. I then directed Andrew Freire to go downstairs and attempt to speak to E.F.S. in government custody, which he did.

8. I then returned to Immigration Judge Kim's courtroom to observe the afternoon master calendar docket. The last case that was called that afternoon was a young man, R.A.U.P. In his case, I personally observed the same DHS attorney, Caroline Tompkins, move to

dismiss his case saying that it was no longer in the government's best interest to pursue the case and the Department intended to pursue expedited removal. Like E.F.S., R.A.U.P. verbally opposed the dismissal, but when Immigration Judge Kim asked him to articulate a basis, he was not able to say much more than he wants to remain in the U.S. and wants to continue with his case. The Immigration Judge told him that he could continue with his case outside of court but did not explain what expedited removal means. Following this, the Immigration Judge dismissed the proceedings despite R.A.U.P.'s opposition.

9. I followed R.A.U.P. out of the courtroom as he exited with his female partner. Moments after exiting the courtroom, he was stopped by approximately 6 ICE officers who immediately began restraining him. His partner started screaming and fell to the floor. She was begging the officers not to take R.A.U.P. and saying "he is a good person. He didn't do anything wrong." The officers did not speak to her and quickly moved R.A.U.P. into the service elevator hallway. I remained with his partner who told me that R.A.U.P. had entered the U.S. approximately 6 months earlier via a CBP One appointment. This was his first court appearance. I gathered additional information from his partner so that we could meet with him in custody.

10. No one from ImmDef was able to meet with R.A.U.P. that day because the attorney access at the 300 North Los Angeles Street building ended shortly after his detention. By the time we located him the following Tuesday, he and E.F.S. had both been moved 1100 miles away to a detention center in Tacoma, Washington, far from their families and attorneys. Our team at ImmDef has continued to meet with them and is representing both E.F.S. and R.A.U.P. in their expedited removal proceedings.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in Los Angeles, California on June 4, 2025.

Lindsay Toczylowski

# Exhibit G

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants.* | Case No.: 1:25-cv-0872 |
|---|---|

**DECLARATION OF MEGHAN DUPUIS MAURUS**

I, Meghan DuPuis Maurus, upon my personal knowledge, hereby declare as follows:

1. I am over the age of 18 and competent to testify to the facts and matters set forth herein.

2. I am an attorney at Border Butterflies Project, a coalitional project of LGBT organizations including the Transgender Law Center, the Black LGBTQIA+ Migrant Project, and Familia TQLM, and I am an attorney in good standing of the State Bars of New York and New Jersey. I represent J.A.L.M., a citizen of Honduras who arrived in the United States on September 3, 2024, at Eagle Pass, Texas, after appearing at a port of entry pursuant to an appointment that he received using the mobile application formerly known as CBP One. On that date, J.A.L.M. was paroled into the United States and provided a Notice to Appear (NTA) and other documents. Attached as Exhibit A to this declaration is a true and correct copy of J.A.L.M.'s Notice to Appear with all personally identifiable information redacted.

3. J.A.L.M. went to live with family members at the address in Kearns, Utah that he had provided to government personnel at the border. With the help of a community

organization, J.A.L.M. applied for and received an Employment Authorization Document (EAD) and lawful employment in Kearns.

4. The Department of Homeland Security (DHS) filed the NTA with the Salt Lake City, Utah Immigration Court, and had a court date set for Jan. 20, 2028. In the months before April 2025, I provided legal information and was in contact with the client regarding their efforts to find legal counsel and support, but did not initially enter an appearance to represent him in removal proceedings.

5. In April 2025, J.A.L.M. was arrested at their birthday party by Kearns, Utah police after he went to a nearby police station in person to report an escalating situation at his family's home. J.A.L.M. paid a bail with the police department and was taken immediately into U.S. Immigration and Customs Enforcement (ICE) custody. No charges to date have been filed by the Office of the District Attorney in Salt Lake City, Utah.

6. On April 8, 2025, the ICE attorney representing the Department of Homeland Security in removal proceedings filed in the Salt Lake City Immigration Court a motion to dismiss the case without prejudice. The stated goal was to place J.A.L.M. into expedited removal proceedings. Beginning on April 8, 2025, I attempted three times to file a G-28, Notice of Appearance with United States Citizenship and Immigration Services (USCIS). My goal in entering an appearance with USCIS was to ensure that I could represent J.A.L.M. in any expedited removal proceedings, including in any Credible Fear Interview (CFI) that USCIS might conduct with J.A.L.M. as part of those expedited removal proceedings. Each time the response from USCIS was that they had no jurisdiction over the matter and therefore could not accept the G-28.

7. On April 10, 2025, I filed an application for Asylum, Withholding of Removal and protection under the Convention against Torture (I-589), which was accepted in ECAS on April 14, 2025. On April 10, I also filed an opposition to the dismissal motion. Attached as Exhibit B to this declaration is a true and correct copy of my opposition to the ICE motion to dismiss with all personally identifiable information redacted.

8. During this time, J.A.L.M. was incarcerated at the Southern Nevada Detention Center, where he remains detained.

9. On April 14, 2025, I received a telephone call without advance notice from a USCIS asylum officer who had my client on the line and said they were going to conduct a CFI. At the outset I explained that my client was not subject to expedited removal because he was still in ongoing removal proceedings in the Salt Lake City Immigration Court. As a result, I objected to USCIS having jurisdiction to conduct a CFI. Nonetheless the CFI proceeded.

10. J.A.L.M. explained during the interview that their fear of return to Honduras was based on their sexual orientation and gender presentation/identity. The USCIS officer asked about J.A.L.M.'s entry into the United States and J.A.L.M. explained that they entered the United States with parole and a Notice to Appear (NTA) after receiving an appointment through the CBP One application to appear at a port of entry. About an hour into the CFI, J.A.L.M. was asked why they had crossed the border without waiting for an appointment to go to a port of entry. J.A.L.M. explained for the second time that they had waited for an appointment and only went to the port of entry at Eagle Pass, Texas, once they had that CBP One appointment. At this point the interviewer paused the interview to

seek clarification. The break was approximately 15-20 minutes. When she returned, the officer terminated the interview without explanation.

11. Shortly after the termination of the CFI, I sent another G-28 to USCIS seeking to be named as J.A.L.M.'s legal representative. That email was also returned stating that USCIS did not have jurisdiction. Attached as Exhibits C and D to this declaration, respectively, are true and correct copies of this next G-28 submission to USCIS and USCIS's responses to the submission, all personally identifiable information redacted. These papers are representative of my prior three attempts to file with USCIS a G-28 to represent J.A.L.M.

12. On April 28, 2025, Immigration Judge (IJ) Douglas Nelson granted DHS's motion to dismiss the removal case against J.A.L.M. Attached as Exhibit E to this declaration is a true and correct copy of the immigration judge's decision with all personally identifiable information redacted.

13. On May 8, 2025, USCIS called me on the telephone without advance notice and with J.A.L.M. on the line to resume my client's CFI. I requested to reschedule because of a scheduling conflict. On May 13, 2025, the CFI proceeded telephonically as scheduled and I was present.

14. On May 19, 2025, J.A.L.M. was informed he had passed his CFI, and was placed back in removal proceedings.

15. J.A.L.M. remains detained pending his new removal case. His first Master Calendar Hearing (MCH) was on June 3, 2025. At the MCH, the new Immigration Judge stated that she could not see any of the prior proceedings, and anything related to the case would need to be re-submitted.

16. J.A.L.M. arrived in the United States in September 2024 at an official port of entry with an appointment that he secured using the government-issued CBP One process and they was inspected and lawfully paroled into the country at that time. They went to the address that he provided to government officials, lawfully obtained an EAD and employment, and followed all processes and requirements provided to him by ICE and the immigration courts. Beginning with their detention by ICE on or about April 8, 2025, he has experienced significant emotional distress. I have spent numerous hours scrambling to understand what the government was doing at various points in this case, from initiating a credible fear interview process while removal proceedings were ongoing and expedited removal could not legally have been commenced, to moving to dismiss his removal proceedings despite the fact that he was lawfully paroled into the country, to repeatedly rejecting my properly-filed notices of appearance with USCIS. The complete process from being in removal proceedings in front of EOIR through expedited removal and back to removal proceedings took up numerous hours of office time within our office and caused our client incredible amounts of anxiety and took an emotional toll. J.A.L.M. is gay and has a strong asylum case. J.A.L.M.'s asylum claim stems from his effeminate gender presentation and his sexuality. They are afraid and currently experiencing mental distress at being in a detention center where they fear bullying and violence from other detainees. After all the time and emotional distress that J.A.L.M. was subjected to as a result of the government's efforts to dismiss removal proceedings and process them for expedited removal, J.A.L.M. is once more in removal proceedings.

17. This declaration is based on a review of all documents available to myself and J.A.L.M. regarding their immigration history, immigration status, and immigration case and to the

best of their knowledge all statements are true and correct. It is not feasible for J.A.L.M.

to prepare his own signed declaration, because they are in immigration detention and I

have only been able to review the documents in their immigration file and am only able

to occasionally speak to them by phone.

I declare under penalty of perjury and under the laws of the United States that the foregoing is

true and correct to the best of my knowledge.

Executed in San Diego, California on June 11, 2025.

Meghan Dupuis Maurus

# EXHIBIT A

Uploaded on: 05/20/2025 at 09:53:25 AM (Pacific Daylight Time) Base City: LVG

DEPARTMENT OF HOMELAND SECURITY

# NOTICE TO APPEAR

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

File No: [REDACTED]

In the Matter of:

Respondent: [REDACTED] currently residing at:

NEVADA SOUTHERN DETENTION CENTER, 2190 E. MESQUITE AVE, PAHRUMP NV, 89060 — 385-461-5697

(Number, street, city, state and ZIP code) (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of Honduras and a citizen of HONDURAS;
3. You entered the United States at an unknown location on or about 2024-09-03;
4. You did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

☒ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☒ Section 235(b)(1) order was vacated pursuant to: ☒ 8CFR 208.30 ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

110 N CITY PKWY, STE 400, LAS VEGAS, NV, 89106

*(Complete Address of Immigration Court, including Room Number, if any)*

on 6/3/2025 *(Date)* at 8:00 AM *(Time)* to show why you should not be removed from the United States based on the charge(s) set forth above.

[signature] Supervisory Asylum Officer

*(Signature and Title of Issuing Officer)*

Date: 5/16/2025

PAHRUMP NV

*(City and State)*

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.
**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

Upon information and belief, the language that the alien understands is SPANISH

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

_______________ *(Signature of Respondent)*

_______________ *(Signature and Title of Immigration Officer)*

Date: _______________

## Certificate of Service

@ D0740 7

This Notice To Appear was served on the respondent by me on ~~[illegible]~~ 5.19.25, in the following manner and in compliance with section 239(a)(1) of the Act.

☑ in person ☐ by certified mail, returned receipt # ________ requested ☐ by regular mail
☐ Attached is a credible fear worksheet.
☑ Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the SPANISH language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

[redacted] Personally Served) D0740 7 *(Signature and Title of officer)*

Uploaded on: 05/20/2025 at 09:53:25 AM (Pacific Daylight Time) Base City: LVG

Uploaded on: 05/20/2025 at 09:53:25 AM (Pacific Daylight Time) Base City: LVG

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

EOIR — 3 of 3

# EXHIBIT B

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

Meghan DuPuis Maurus
EOIR CC111789
2364 Paseo de las Americas, 104-301
San Diego, CA 92154
(619) 649-8898
maurus@transgnderlawcenter.org

**DETAINED**

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**SALT LAKE CITY IMMIGRATION COURT**
**SALT LAKE CITY, UTAH**

**In the matter of:**

[redacted]

**In Removal Proceedings**

**File No.** [redacted]

**Hon. Douglas Donaldson**

**Next Hearing: Jan. 20, 2028**

**RESPONDENT'S OPPOSITION TO THE DEPARTMENT OF HOMELAND SECURITY'S MOTION TO DISMISS**

Meghan DuPuis Maurus
EOIR CC111789
2364 Paseo de las Americas, 104-301
San Diego, CA 92154
(619) 649-8898
maurus@transgnderlawcenter.org

**DETAINED**

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**SALT LAKE CITY IMMIGRATION COURT**
**SALT LAKE CITY, UTAH**

**In the matter of:**

[REDACTED]

**In Removal Proceedings**

**File No.** [REDACTED]

**RESPONDENT'S OPPOSITION TO DHS'S MOTION TO DISMISS**

On April 8, 2025counsel for the Department of Homeland Security (DHS) Office of the Principal Legal Advisor (OPLA) filed a motion to dismiss these proceedings. DHS alleges that, pursuant to 8 C.F.R. § 239.2(a)(7), the circumstances of this case have changed after the issuance of the Notice to Appear to such an extent that continuation is no longer in the best interest of the government because the government has now decided that it would like to pursue expedited removal against the Respondent. OPLA did not seek Respondent's position before filing the motion to dismiss, and Respondent strenuously opposes the motion.[1] For the reasons set forth below, the Court should deny DHS's motion to dismiss.

## I. FACTS AND PROCEDURAL HISTORY

ÿ The Immigration Court Practice Manual (ICPM) states that a party "should make a good faith effort to ascertain the opposing party's position on the motion." EOIR Policy Manual, Pt. II – ICPM, Ch. 5.2(i), https://www.justice.gov/eoir/reference-materials/ic/chapter-5/2. The Court should reject DHS's motion for their failure to comply with the ICPM by not making a good faith effort to contact Respondent's counsel.

DHS issued a Notice to Appear (NTA) to initiate these removal proceedings against Respondent on September 3, 2024, alleging that Respondent was an arriving alien. Respondent was not a citizen or national of the United States. Respondent was a citizen of Honduras. Respondent applied for admission on September 3, 2024, at Eagle Pass, Texas (Bridge 2). DHS further alleged that Respondent was an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act ("INA"); and that they were an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity or nationality. DHS filed the NTA on September 3, 2024, commencing these removal proceedings.

Respondent entered the United States after applying for, and receiving, a date to present at the border through CBP One. On September 3, 2024, CBP One was the process laid out by the US Government on how to enter and seek asylum. Respondent received their date to present on September 3, 2024, and presented at the assigned date and time, and entered through the Port of Entry at Eagle Pass, Texas. Respondent travelled to the sponsor they had listed in CBP One and at the border. Respondent was placed in removal proceedings and given a date to appear in Salt Lake City Immigration Court on Jan. 20, 2028, at 1pm. Through a local legal organization Respondent applied for, and obtained a work permit, and was on waitlists with at least two organizations to complete the Application for Asylum, Withholding of Removal, and Protection under the Convention against Torture ("CAT"), Form I-589 ("I-589"), within one year of entering the United States. They remained at the address listed when they entered the United States.

Respondent submitted a I-589 on April 9, 2025, asserting asylum based on their membership in a particular social group, and their political opinion. Mr. [redacted] is a gay man who has also been a member of a LGBT rights organization in Honduras. On both of these bases he has been physically harmed, sexually assaulted, and endured a lifetime of smaller but daily assault on his person for being gay. Respondent decided to leave Honduras after being kidnapped off the street and violently raped at knifepoint. At the end the perpetrator told Respondent he knew who he was and knew his family. Respondent was threatened with death. He went to the police, but they told him there was nothing they could do, and that likely the perpetrator would know he came. Respondent felt the only way to stay alive was to flee Honduras. See, Exhibit E.

The incident that caused him to flee was merely the last incident in a lifetime of anti-LGBT violence against him. *Id.* He was spit on in the street. Nearly daily he would have people say anti-gay slurs or insults. *Id.* He had to barely subsist as a self-employed person because he could not find employment because of his sexuality. *Id.* He was attacked physically on numerous occasions. *Id.* In short, he suffered a lifetime of violence and abuse for his sexuality.

## I. ARGUMENT

This Court should deny DHS's motion to dismiss. In adjudicating DHS's motion, this Court must consider Respondent's arguments in opposition to the motion. *Matter of G-N-C-*, 22 I&N Dec. 281, 284-85 (BIA 1998). This Court should deny DHS's motion to dismiss because

Respondent wishes to have this Court adjudicate his pending application for Asylum, Withholding of Removal and protection under CAT, and, since DHS has chosen to

commence INA § 240 proceedings, he has a right to be heard on that claim. Further, Respondent will suffer serious prejudice if this Court grants DHS's motion to dismiss and he is not able to pursue her application for asylum before this Court. Even evaluating DHS's motion solely on its stated basis pursuant to 8 C.F.R. § 239.2(a)(7), the motion must be denied because DHS has failed to establish that circumstances in *this case* have changed since the NTA's issuance, or that it is not in the government's best interest for the case to proceed to a final merits adjudication. In fact, DHS cannot lawfully apply expedited removal to the Respondent, as doing so would violate bedrock anti-retroactivity law. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

**A. This Court Has a Duty to Consider the Respondent's Arguments in Opposition to DHS's Motion to Dismiss.**

This Court has the exclusive authority to decide whether or not to dismiss these removal proceedings, and it must consider the Respondent's reasons for opposing DHS's motion. *See* 8 C.F.R. § 1239.2(c); *Matter of G-N-C-*, 22 I&N Dec. 281, 284-85 (BIA 1998). Board of Immigration Appeals (BIA) precedent recognizes that, in adjudicating a DHS motion to dismiss, an Immigration Judge must consider both parties' arguments. *G-N-C-*, 22 I&N Dec. at 284-85 ("To the extent that these proceedings were terminated without considering arguments from both sides, the Immigration Judge erred."). In a 2023 case, the BIA reaffirmed its longstanding precedent that when DHS moves to dismiss removal proceedings, the Immigration Judge "must ... independently adjudicate the motion." *Matter of H.N. Ferreira*, 28 I&N Dec. 765, 768 (BIA 2023). In adjudicating DHS's motion, the Court must consider all "underlying facts and circumstances," including "[t]he respondent's interest." *Id.* at 769. Recent EOIR guidance has affirmed the Immigration Judge's role as an independent and impartial adjudicator. *See* Memorandum from Sirce E. Owen, EOIR Acting

Dir., PM 25-02, EOIR's Core Policy Values, at 1 (Jan. 27, 2025).

In interpreting Immigration Judge and BIA regulatory authority to control removal proceedings and adjudicate other types of motions that bear on a case's finality, the BIA has repeatedly confirmed that DHS does not have "absolute veto power over the authority of an Immigration Judge or the Board to act in proceedings." *Matter of Avetisyan*, 25 I&N Dec. 688, 693 (BIA 2012); *accord Matter of W-Y-U-*, 27 I&N Dec. 17, 20 n.5 (BIA 2017); *see also Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 890 (9th Cir. 2018) ("In the context of . . . motions to reopen and requests for continuances—the BIA and the Ninth Circuit, as well as other circuits, have rejected allowing such veto power to a party."). Instead, Immigration Judges are required to "exercise [their] independent judgment and discretion and may take any action consistent with the Act and regulations that is appropriate and necessary for the disposition of such cases." *Avetisyan*, 25 I&N Dec. at 691 (citing 8 C.F.R. § 1003.10(b)).

In sum, this Court must consider the Respondent's arguments against dismissal.

**B. This Court Should Deny DHS's Motion to Dismiss Because Dismissal for Expedited Removal Would Severely Prejudice the Respondent.**

Dismissal of these proceedings so that DHS can subject the Respondent to expedited removal would result in his swift return to Honduras, where he would face harm. This is further evidenced by the fact that Respondent spent a little over a year in Mexico where he also endured anti-gay violence. Initially, Respondent considered staying in Mexico when they left Honduras. See, I-589. However, they experienced anti-LGBT attacks and violence and realized they had to continue to flee to the United States. Respondent has a strong asylum case as a LGBT man with clear past persecution. Justice is best served by continuing the removal proceedings in Immigration Court where a Judge can adjudicate the claim most expeditiously and efficiently.

Dismissal of these proceedings would also deprive the Respondent of his right to have her meritorious claim for Asylum adjudicated, as described below. BIA case law evaluating unilateral DHS dismissal motions has upheld dismissal where the respondent was not prejudiced. *See, e.g.*, *Matter of Andrade Jaso & Carbajal Ayala*, 27 I&N Dec. 557, 559 (BIA 2019) (upholding Immigration Judge grant of DHS motion to dismiss noting that dismissal was without prejudice, as "[t]he respondents have not been ordered removed,…there is no indication that they are in imminent danger of removal," and they could pursue relief in the future if DHS placed them into new removal proceedings); *G-N-C-*, 22 I&N Dec. at 286 (upholding DHS's motion to dismiss where the respondent did not specify relief he was eligible for or "explain how he was prejudiced" by the Immigration Judge's decision to dismiss). In contrast, here, the dismissal would severely prejudice the Respondent, and thus the Court must deny DHS's motion.

1. *Respondent Has a Right to Pursue Humanitarian Protection, and This Court Has a Responsibility to Adjudicate Respondent's Application.*

This Court should deny DHS's motion to dismiss because the Respondent has a right to have his claims for humanitarian protection adjudicated on the merits. Noncitizens in removal proceedings have a right to apply for relief from removal and to a hearing on their applications for relief. *See* INA § 240(b)(4)(B); 8 C.F.R. § 1240.10(a)(4); *see also, e.g.*, *Matter of M-A-M-*, 25 I&N Dec. 474, 479 (BIA 2011) ("Included in the rights that the Due Process Clause requires in removal proceedings is the right to a full and fair hearing."). The regulations state that the Immigration Judge "*shall* inform the [noncitizen] of his or her apparent eligibility to apply for *any of the benefits enumerated in this chapter* and *shall afford the [noncitizen] an opportunity to make application during the hearing*, in accordance with the provisions of § 1240.8(d)." 8 C.F.R.

§ 1240.11(a)(2) (emphases added).

Respondent has a statutory right to seek asylum. INA § 208(a)(1) ("[A noncitizen] who is physically present in the United States or who arrives in the United States . . . irrespective of such [noncitizen's] status, may apply for asylum "). Granting DHS's motion to dismiss where, as here, Respondent wishes to present his asylum claim would subvert Congress's clearly articulated intent. It would also violate his "right to a hearing on the merits of [their] claim." *W-Y-U-*, 27 I&N Dec. at 19; *see* 8 C.F.R. § 1240.11(c)(3) (directing that applications for asylum and withholding "*will be decided by the immigration judge* . . . after an evidentiary hearing to resolve factual issues in dispute" (emphasis added)).

In adjudicating an opposed DHS motion to dismiss, as here, the Court must consider whether dismissal would prejudice the Respondent, including considering the Respondent's desire to have an application for relief adjudicated on the merits. *Cf. Avetisyan*, 25 I&N Dec. at 691 (recognizing that in considering whether to defer action on a case, an Immigration Judge considers "justice and fairness to the parties"). Once DHS has initiated removal proceedings by filing an NTA, it is the Court's "responsibility to . . . adjudicate the respondent's application for relief from removal, if any." *Id.*; *see also Matter of J-A-B- & I-J-V-A-*, 27 I&N Dec. 168, 170 (BIA 2017) (recognizing IJ's "duty to adjudicate the respondents' case once the removal proceedings were initiated."). The BIA has repeatedly recognized that "[t]he role of the Immigration Courts and the Board is to adjudicate whether [a noncitizen] is removable and eligible for relief from removal in cases brought by the DHS." *J-A-B- & I-J-V-A-*, 27 I&N at 170 (quoting *W-Y-U-*, 27 I&N Dec. at 19); *J-A-B- & I-J-V-A-*, 27 I&N at 170 (noting that terminating proceedings upon unilateral motion may be "inconsistent with [the IJ's] role in our adjudicative process.").

In *Matter of W-Y-U-*, where the respondent, who had filed an application for asylum with the court, opposed a DHS motion for administrative closure, the BIA recognized that in exercising their administrative closure authority an Immigration Judge must consider the respondent's "interest in having [the] case resolved on the merits." 27 I&N Dec. at 18-19. The BIA further acknowledged that a noncitizen in removal proceedings has a right to seek asylum and related relief and a "right to a hearing on the merits of [their] claim." *Id.* at 19. The BIA concluded that these were persuasive reasons for the case to proceed and be resolved on the merits and reversed the Immigration Judge's grant of DHS's motion for administrative closure. *Id.* at 20.[22]

Similarly, here, the Court should deny DHS's motion given Respondent's interest in having the case resolved on the merits and his right to be heard on his claims for humanitarian protection. *See W-Y-U-*, 27 I&N Dec. at 19; *H.N. Ferreira*, 28 I&N Dec. at 769-70 (reversing dismissal noting the respondent's "significant" interest in having her Form I-751 reviewed). Indeed, the facts of this case are similar to unpublished BIA decisions where the BIA has sustained respondents' appeal of a DHS motion to dismiss in light of respondents' desire to seek relief before the immigration court. *See, e.g.*, Ex. A, G-C-D-, AXXX XXX 178 (BIA May 15, 2017) (unpublished) (sustaining appeal where respondents wished to have their applications for cancellation of removal and asylum adjudicated by the court); Ex. B, R-G-H-M-, AXXX-XXX 972 (Aug. 9, 2017) (unpublished) (sustaining appeal where the respondents wished to seek cancellation of removal, noting that a respondent being a low DHS enforcement priority was no guarantee

[22] *Matter of W-Y-U-* was partially superseded on other grounds via the 2024 EOIR Rule, Efficient Case and Docket Management in Immigration Proceedings, 89 Fed. Reg. 46742, 46753 (May 29, 2024).

that she would remain so in the future and was not a sound basis for terminating her case and denying her the opportunity to have her cancellation claim adjudicated); Ex. C, AXXX XXX XXX (BIA Jan. 8, 2024) (unpublished) (sustaining appeal where the respondent wanted an adjudication on their pending asylum application, noting that DHS's reason for dismissal to preserve limited resources "is not a sufficient basis to terminate these proceedings over the objection of the respondent after DHS filed a Notice to Appear, and the respondent filed an application for relief from removal").

2. *Respondent Will Suffer Harm If Not Able to Pursue his Applications for Asylum, Withholding of Removal and protection under the CAT*

Respondent has applied for asylum, withholding of removal, and protection under the CAT and wishes to continue to pursue this relief. Dismissing this case in Immigration Court and then forcing the Respondent to re-start their asylum process via a credible fear under INA § 235 would be an incredible waste of resources and severely harmful to the Respondent. It would prejudice the Respondent to lose the opportunity to have their case heard in an appropriate venue, only to be placed in an extended limbo of starting the process over *via* expedited removal/CFI process. Their detention is unnecessary and undertaken at taxpayer expense. As would be dismissing this case only to place them back into expedited removal proceedings. Additionally, Respondent would have fewer rights in the CFI process than he is currently entitled in removal proceedings, which would prejudice the Respondent. *See Matter of E-R-M- & L-R-M-, 25 I&N Dec. 520, 521 n.1 (BIA 2011) (noting that respondents in removal proceedings have "more rights available to them" than in expedited removal proceedings) compare, e.g., INA § 240(b)(4), 8 C.F.R. §§ 1240.3, 1240.10(a), 1003.1(b)(3) (rights in removal proceedings), with 8 C.F.R. §§ 1003.42(c), 1208.30(g)(2)(iv)(A) (limited rights in credible fear process.*

Granting DHS Motion to Dismiss would upend the principle of fairness and reliance that is guaranteed by our system of law. Respondent followed all instructions and requirements laid out of him by the US Government in pursuing his asylum claim. He waited for six months to obtain a date to present at the border via CBP One, which was then the method laid out by the US Government. See, Exhibit E. He stayed in a shelter for LGBT people in Mexico and suffered anti-LGBT violence during that time, but managed to wait to get a date as was instructed by the US Government. *Id.* Respondent provided a familial sponsor at the border, went to live with that sponsor, and followed all instructions laid out for him by immigration officials. *Id.* They sought, and obtained, a work permit. They were seeking counsel to prepare and file their asylum application and other forms of humanitarian protection. Respondent followed the lawful process in place at the time with the belief that they would be able to pursue asylum, and now they may be removed with virtually no opportunity to present their claim.

As in *Matter of W-Y-U-*, here Respondent seeks a merits adjudication from this Court on his pending application for relief, which if granted would make him "eligible for lawful status in the United States," whereas dismissal provides him no legal status. *Id.* at 19; *see also id.* at 20 ("An unreasonable delay in the resolution of the proceedings may operate to the detriment of [noncitizens] by preventing them from obtaining relief that can provide lawful status...... ").

Unlike in other cases where the BIA has considered DHS unilateral motions to dismiss, here the prejudice to the Respondent would be immediate and extreme. If the Court grants dismissal, DHS will subject himto expedited removal, likely resulting in his swift deportation from the United States with no ability to have his meritorious claim for relief

heard in any forum. *See, e.g.*, *Matter of Andrade Jaso & Carbajal Ayala*, 27 I&N at 559 (upholding IJ grant of DHS motion to dismiss noting that "[t]he respondents have not been ordered removed, . . . there is no indication that they are in imminent danger of removal," and they could pursue relief in the future if DHS placed them into new removal proceedings).

**C. Even When Evaluated Solely on Its Stated Basis, DHS's Motion Must Be Denied.**

Even evaluating DHS's motion solely on its stated basis, if this Court conducts "an informed adjudication . . . based on an evaluation of the factors underlying [DHS's] motion," *G-N-C-*, 22 I&N Dec. at 284, that motions fails on its own terms and must be denied. *See Matter of Andrade Jaso & Carbajal Ayala*, 27 I&N Dec. at 559 (considering whether DHS's motion under 8 C.F.R. § 239.2(a)(7) complied with that provision's requirements). The regulation underlying DHS's motion allows DHS to seek dismissal where "[c]ircumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government." 8 C.F.R. § 239.2(a)(7). This provision encompasses a case-specific component— "circumstances of the case"— and a government-specific component— "best interest of the government." *Id.* Here, DHS has failed to establish that circumstances in Respondent's case have changed since the NTA's issuance and has separately failed to demonstrate that continuation is no longer in the government's best interest. Further, DHS's sole reason for requesting dismissal is to pursue expedited removal against Respondent, which it cannot lawfully do as explained below.

*1. DHS Cannot Lawfully Pursue Expedited Removal Against Respondent*

DHS's sole reason for requesting dismissal under 8 C.F.R. § 239.2(a)(7) is so that DHS can pursue expedited removal against Respondent. The Court should deny DHS's motion to dismiss because DHS's intended post-dismissal actions are unlawful for at least

two reasons.

**First**, subjecting Respondent to expedited removal would violate Congress's carefully crafted statutory scheme for processing noncitizen applicants for admission. INA § 235(b) provides DHS with several choices for how to process a noncitizen whom it alleges is an inadmissible applicant for admission, but there is no statutory authority for DHS to later reverse that choice. For certain allegedly inadmissible noncitizens, DHS can *either* place them into expedited removal under 8 U.S.C. § 1225(b)(1) *or* place them into full removal proceedings under 8 U.S.C. § 1225(b)(2). *See Matter of E-R-M- & L-R-M-*, 25 I&N Dec. at 523 (holding that "DHS has discretion to put [noncitizens] in section 240 removal proceedings even though they may also be subject to expedited removal under section 235(b)(1)(A)(i) of the Act"); *Matter of Cabrera-Fernandez*, 28 I&N Dec. 747, 748 (BIA 2023). If DHS at the time of initial processing of the individual makes the choice to use its INA § 235(b)(2) authority by issuing the noncitizen an NTA, as DHS did in Respondent's case, DHS has no authority to later reverse that choice. Nor does DHS point to any such authority in their motion to dismiss.

The Supreme Court's interpretation of INA § 235(b) in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), also supports a reading of the statute that permits DHS to subject any given inadmissible applicant for admission to one process or the other, with no mechanism for later reversing course. In *Jennings*, the Supreme Court differentiated between (b)(1) noncitizens and (b)(2) noncitizens. The Court observed that "applicants for admission fall into one of two categories, those covered by [INA §235](b)(1) and those covered by [INA § 235](b)(2). [INA § 235](b)(2) . . . serves as a catchall provision that applies to all applicants for admission not covered by [INA § 235[(b)(1)." *Id.* at 287–88. Indeed, the statute itself

states that INA § 235(b)(2) applies to applicants for admission "to whom paragraph [(b)](1)" does not apply.[3] Here, because DHS has elected to commence removal proceedings in Respondent's case, paragraph (b)(1) does not apply.

Similarly, a number of provisions in the INA describe INA § 235(b)(2) noncitizens as those "to whom proceedings under [INA § 240] are . . . initiated *at the time of such [noncitizen's] arrival*."[4] This language makes clear that Congress understood that DHS's processing decision for a noncitizen applicant for admission—whether to proceed with (b)(1) or (b)(2)—would occur at the time of the noncitizen's arrival or initial apprehension, not at some other point months or years later. In a 2003 decision, the U.S. District Court for the Eastern District of Michigan questioned DHS's authority to use expedited removal against noncitizens who had been paroled into the United States at some earlier point, concluding that the government had "not provided any authority to show that expedited removal applies to [noncitizens] who are 'arriving aliens' based solely on the entry fiction doctrine and who have been residing in the interior of the United States for some time." *Am.-Arab Anti-Discrimination Comm. v. Ashcroft*, 272 F. Supp. 2d 650, 667-68 (E.D. Mich. 2003).

**Second**, subjecting Respondent to expedited removal would be unlawful because it would violate the long-held doctrine that new rules may not be applied retroactively in the

[3] INA § 235(b)(2)(B)(ii); *accord Innovation L. Lab v. Wolf*, 951 F.3d 1073, 1083 (9th Cir. 2020), *vacated and remanded sub nom. Mayorkas v. Innovation L. Lab*, 141 S. Ct. 2842 (2021), *and vacated as moot sub nom. Innovation L. Lab v. Mayorkas,* 5 F.4th 1099 (9th Cir. 2021).

[4] *See, e.g.*, INA § 240B(a)(4) (referring to a noncitizen "who is arriving . . . and with respect to whom proceedings under section 1229a of this title are . . . initiated *at the time of such alien's arrival*" (emphasis added)); INA § 212(a)(9)(A)(i) (making inadmissible certain noncitizens "ordered removed under [INA § 235(b)(1)] or at the end of proceedings under [INA § 240] initiated upon the [noncitizen's] arrival"); INA § 241(b)(1)(A) ("[a noncitizen] who arrives at the United States and with respect to whom proceedings under [INA § 240] of this title were initiated at the time of such [noncitizen's] arrival"); INA § 241(c)(1) ("[A noncitizen] arriving at a port of entry of the United States who is ordered removed either without a hearing under [INA § 235(b)(1) or § 235(c)] or pursuant to proceedings under [INA § 240] initiated at the time of such [noncitizen's] arrival ......................................................................................................").

absence of a clear congressional grant of retroactive rulemaking authority. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). In this case, DHS purports to have the authority to subject Respondent to expedited removal pursuant to the January 24, 2025 Federal Register Notice expanding expedited removal to its full legislative scope. DHS, Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). While Congress granted DHS the authority to determine the scope of expedited removal up to the statutory maximum, *see* INA § 235(b)(1)(A)(iii)(I), it did not grant DHS the authority to apply new expedited removal designations retroactively. The Supreme Court has long recognized that "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen*, 488 U.S. at 208. To do so would add "new legal consequences to events completed [prior to the expansion]." *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 269-70 (1994). Because Congress did not grant DHS the power to retroactively expand expedited removal, DHS cannot subject the Respondent, whose removal proceedings were initiated before the January 2025 expansion, to expedited removal; as described above, doing so would cause him significant prejudice.

   2. *DHS Has Failed to Show How Circumstances of This Case Have Changed Since the NTA's Issuance.*

   Further, dismissal is inappropriate because the "[c]ircumstances of the case" have not changed. 8 C.F.R. § 239.2(a)(7). DHS's motion does not even attempt to articulate how circumstances in *this case* have changed since the issuance of Respondent's NTA. In fact, DHS's motion references no facts specific to this case whatsoever. Contrary to DHS's conclusory statement that circumstances have changed, in fact no relevant circumstances have changed with respect to Respondent's case— he remains eligible for asylum and

continues to desire an adjudication on his claim on the merits by this Court. *See supra* Section II.B. Respondent has been waiting for an adjudication of his application for relief that only this Court has jurisdiction to grant.

Though DHS does not articulate the alleged changed circumstance in its motion, presumably DHS would argue that its new desire to pursue expedited removal against Respondent is a change in circumstances. But even if DHS's immigration enforcement policy may have changed since the NTA was issued, a political change underlying the government's enforcement policy is insufficient to show a changed circumstance in "the case," meaning this specific case of Respondent Josue Andres Leiva Molina, considering his individualized circumstances and facts. *See also Andrade Jaso & Carbajal Ayala*, 27 I&N Dec. at 559 (concluding that the respondent's post NTA behavior constituted a change in circumstances for purposes of 8 C.F.R. § 239.2(a)(7)).

Because DHS has not shown that circumstances in this case have changed since the issuance of the NTA, the Court should deny DHS's motion to dismiss.

*3. DHS Has Failed to Show Why Continuation Is Not in the "Best Interest of the Government."*

Even if DHS had articulated changed circumstances in this case since the NTA's issuance, which it has not, DHS has failed to show why continuation is not in the "best interest of the government." 8 C.F.R. § 239.2(a)(7). DHS's motion fails to consider key factors necessary to determining the government's best interest in an individual case, including Respondent's individual circumstances, Respondent's position on dismissal, and the efficient use of limited government resources. Consideration of these factors compels the conclusion that this case should proceed to a merits determination, as Respondent desires.

*a. The Respondent's Individual Circumstances and Position on Dismissal*

Determining whether dismissal of given case is in the government's best interest necessarily requires DHS to reach out to the respondent, as required by the ICPM, prior to filing for dismissal in order to understand the respondent's viewpoint and reasons why the respondent opposes dismissal. An individual's in having their claim for permanent immigration relief adjudicated on the merits must inform the governm ent's view of whether dismissal is in the government's best interest. Moreover, what is in the government's best interest necessarily includes knowing the respondent's current case circumstances[5] and how a strategy one way or the other impacts lawful permanent residents and U.S. citizens in the respondent's life. Thus, OPLA's failure to seek Respondent's position before filing this motion itself defeats their assertion that dismissal is in the government's best interest, and therefore the motion must be denied.

*b. Efficient Use of Limited Government Resources*

DHS has not established that dismissal of this case is in the government's best interest because it has failed to address a key factor, the efficient use of limited government resources. In this case, Respondent wishes to pursue relief before the Court, including relief that only the immigration court has authority to grant.

Dismissing these proceedings over Respondent's objection would waste rather than conserve government resources. If this case is dismissed, Respondent will likely appeal the dismissal. DHS will then have to invest considerable resources in defending its decision to dismiss these proceedings. Likewise, the Department of Justice will expend considerable resources if this case is dismissed. The BIA will expend resources to issue a decision on

---

[5] DHS cannot know what the current circumstances of this case are because the of the lack of record in the case.

appeal. The case may then be remanded to this Court, restoring Respondent to his current position before the Court, after the passage of time and expenditure of considerable government resources. If this case is dismissed and Respondent is placed in expedited removal, Respondent will pursue asylum through the Credible Fear process, requiring the use of more government resources to adjudicate the claim in another forum, which will ultimately result in the case returning to this Court for an asylum adjudication. This process would result in a much larger aggregate expenditure of resources than allowing Respondent's claim to proceed now as he desires.

In contrast, this Court's adjudication of Respondent's I-589 application on promotes finality of the removal proceedings and prevents waste of government resources. If this case is allowed to move forward, the Court will schedule Respondent for an individual hearing which will use a limited amount of the Court's time and of OPLA's time.

Because DHS cannot establish either of the necessary requirements for bringing a motion to dismiss under 8 C.F.R. § 239.2(a)(7), this Court must deny the motion and allow Respondent's case to proceed to an adjudication on the merits.

## II. CONCLUSION

For all of the reasons stated above, this Court should deny DHS's motion to dismiss and allow Respondent to proceed to the merits of the application pending before the Court.

Respectfully Submitted,

Meghan DuPuis Maurus
EOIR CC111789
2364 Paseo de las Americas, 104-301
San Diego, CA 92154
(619) 649-8898
maurus@transgnderlawcenter.org

# EXHIBIT C

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)



Emem Maurus <maurus@transgenderlawcenter.org>
To: AsylumD3Prescreening
Wednesday, April 16, 2025 at 1:32 PM

2 MB
Download All · Preview All

To Whom It May Concern,

My name is Meghan D. Maurus. I represent the above referenced client. They are currently detained at **Nevada South Detention Center**. Attached you will find a G-28.

My client is in active removal proceedings in Salt Lake City, Utah, and we are opposing any motion to dismiss the case. The case remains pending.

In detention they have been asked several times to sign removal papers, and they have refused. They have refused because they fled their country due to persecution based on their **gender and sexuality**. They have clear past persecution and fear future persecution.

I have spoken with them, and they seek to continue their case and will not abandon or renounce it. Before any removal is effectuated, we seek a CFI with counsel present.

Best Regards,

Meghan D. Maurus

--

Meghan Maurus
Legal Director
Border Butterflies
Transgender Law Center
2364 Paseo de las Americas, 104-301
San Diego, CA 92154
(619) 649-8898
(+52) 664-358-2763
maurus@transgenderlawcenter.org

# EXHIBIT D

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)



RE:

AsylumD3Prescreening <AsylumD3Prescreening@uscis.dhs.gov>
To: Emem Maurus

Thursday, April 17, 2025 at 7:59 AM

This message is flagged for follow up.

Mark Complete

Hello,

Thank you for reaching out to District 3. Unfortunately, your client's case is no longer in our jurisdiction as it is with ICE.

Please reach out to ICE: https://www.ice.gov/contact

Thank you,
District 3
//mb

**From:** Emem Maurus <maurus@transgenderlawcenter.org>
**Sent:** Wednesday, April 16, 2025 3:33 PM
**To:** AsylumD3Prescreening <AsylumD3Prescreening@uscis.dhs.gov>
**Subject:**

You don't often get email from maurus@transgenderlawcenter.org. Learn why this is important

**CAUTION:** This email originated from outside of the Federal Government. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the USCIS Security Operations Center with questions or click the "Report Phishing" button to report it as a phishing attempt.

To Whom It May Concern,

My name is Meghan D. Maurus. I represent the above referenced client. They are currently detained at **Nevada South Detention Center**. Attached you will find a G-28.

My client is in active removal proceedings in Salt Lake City, Utah, and we are opposing any motion to dismiss the case. The case remains pending.

In detention they have been asked several times to sign removal papers, and they have refused. They have refused because they fled their country due to persecution based on their **gender and sexuality**. They have clear past persecution and fear future persecution.

I have spoken with them, and they seek to continue their case and will not abandon or renounce it. Before any removal is effectuated, we seek a CFI with counsel present.

Best Regards,

Meghan D. Maurus

--
Meghan Maurus
Legal Director
Border Butterflies
Transgender Law Center
2364 Paseo de las Americas, 104-301
San Diego, CA 92154
(619) 649-8898
(+52) 664-368-2763
maurus@transgenderlawcenter.org

# EXHIBIT E



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**SALT LAKE CITY IMMIGRATION COURT**

| Respondent Name: [redacted]<br>To:<br>Maurus, Meghan DuPuis<br>2364 paseo de las Americas<br>104-301<br>San Diego, CA 92154 | A-Number: [redacted]<br>Riders:<br>In Removal Proceedings<br>Initiated by the Department of Homeland Security<br>Date:<br>04/28/2025 |
|---|---|

**ORDER ON MOTION TO DISMISS**

☑ The Respondent ☐ the Department of Homeland Security ☐ the parties jointly has/have filed a motion to dismiss these proceedings under 8 CFR 1239.2(c). The moving party has given notice of the motion to the non-moving party and the court has provided the non-moving party with an opportunity to respond. The motion is ☑ opposed ☐ unopposed.

After considering the facts and circumstances, the immigration court orders that the motion to dismiss is:

☑ Granted without prejudice
☐ Denied

Further explanation:

On April 8, 2025, the Department of Homeland Security (DHS) filed its Motion to Dismiss Without Prejudice. It states that the respondent is removable under INA section 235(b)(1). It seeks to remove the respondent as per that authority. Accordingly, it seeks dismissal without prejudice because circumstances have changed since the issuance of the Notice to Appear (NTA), namely that continuation of these removal proceedings is no longer in the interest of the government.

On April 10, 2025, the respondent filed his Opposition to DHS's Motion to Dismiss. He states that DHS failed to make a good faith effort to ascertain the respondent's position on the motion. It objects to dismissal because DHS has failed to establish circumstances in this particular case that have changed since the issuance of the NTA. The respondent fears that the merits of his case will not be heard if placed into expedited removal and that he will face harm upon return to his country. He asserts that he has a right to have his claims for protection adjudicated on their merits. Respondent says he will lose the opportunity to have his case heard in an appropriate venue if dismissal is allowed. He believes that DHS cannot lawfully

pursue expedited removal at this stage. He also argues, among other things, that dismissal is not an efficient use of the government's limited resources.

The Court has considered all arguments presented by both sides. Previously, DHS elected to place this respondent into removal proceedings rather than expedited removal as it probably should have done from the beginning. Its election has caused resources to be spent by multiple agencies and by the respondent in furtherance of these proceedings. Yet there is no authority that states DHS is prohibited from changing its election. Indeed, recent authority (Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025)) reaffirms the application of Congress's explicit authorization of DHS's categorization of aliens to whom expedited removal procedures may be applied. The exercise of that authority is within "the sole and unreviewable discretion" of DHS and may be modified at any time. INA section 235(b)(A)(A)(iii)(I). Accordingly, DHS is allowed to end these removal proceedings and institute expedited removal.

As for any due process concerns the Court finds the respondent is not entitled to commencement or continuation of removal proceedings to regularize his status through adjudication of a discretionary application for relief. See INA section 240A(b)(1); Matters of Jaso & Ayala, 27 I&N Dec. 557 at 559 (BIA 2019). This is a significant factor that weighs in favor of the DHS request. Moreover, the INA does not include "a judicially enforceable duty to proceed within a reasonable time." Kowalczyk v. INS, 245 F.3d 1143, 1150 n.5 (10th Cir. 2001).

Nor is the respondent precluded from seeking asylum and its related protections. In expedited removal, when he expresses his fear of persecution or torture, or a fear of return to his country, the inspecting officer shall not proceed further with his removal until he has been referred to an asylum officer. 8 CFR section 235.3(b)(4).

Accordingly, the government's motion to dismiss these proceedings is hereby GRANTED.


IT IS SO ORDERED.

Immigration Judge: NELSON, DOUGLAS 04/28/2025

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name : [redacted] | A-Number : [redacted]

Riders:

Date: 05/01/2025 By: Recinos, Nuvia, Court Staff

# Exhibit H

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants.* | Case No.: 1:25-cv-0872 |

**DECLARATION OF MELISSA LIM CHUA**

I, Melissa Lim Chua, upon my personal knowledge, hereby declare as follows:

1. I am over the age of 18 and competent to testify to the facts and matters set forth herein.
2. I am Co-Director of the Immigrant Protection Unit at the New York Legal Assistance Group (NYLAG), and I am an attorney in good standing of the State Bar of New York. NYLAG represents one client, D.L.C., who was paroled into the United States after an appointment properly made through the CBP One application and was subsequently processed for expedited removal. D.L.C. and his mother are both members of CASA.

**D.L.C.**

3. D.L.C. is a national of Venezuela who was granted parole on or about May 1, 2024, after securing an appointment using the CBP One application to appear at an official port of entry. He was 19 years old at the time of entry. That same day, D.L.C. was issued a Notice to Appear (NTA), which was docketed with EOIR on May 2, 2024. D.L.C. was

subsequently granted an employment authorization document (EAD) pursuant to this parole, valid for one year.

4.  Upon arriving in the United States, D.L.C. was living with his mother and attending a public school focused on supporting English Language Learners. On May 28, 2024, D.L.C. filed a timely *pro se* application for asylum with the immigration court detailing his fear of his removal to Venezuela. On October 2, 2024, D.L.C. attended his first master calendar hearing with the immigration court. The Immigration Judge scheduled a second master calendar hearing for May 21, 2025.

5.  On April 11, 2025, D.L.C. received an email informing him that his parole was being terminated effective April 18, 2025; on April 18, 2025, D.L.C.'s parole was terminated.

6.  Prior to his second hearing with the immigration court, D.L.C. began the process of seeking Special Immigrant Juvenile Status ("SIJS") with the assistance of a *pro se* clinic at the NYC Asylum Seeker Navigation Center, set up by the City of New York to provide *pro se* services to newly arrived New York residents. SIJS is a pathway to lawful permanent resident status (LPR) or a "green card" for children who are under 21 years of age and have been "abused, neglected or abandoned" by one or more parents. There are two general stages in obtaining SIJS: the first is a proceeding in the Family or Surrogates Court where the child resides, and the second is an application with the Department of Homeland Security (DHS). Upon information and belief, D.L.C. is *prima facie* eligible for SIJS relief because he is: under 21 years old; unmarried; unable to be reunified with his father because his father abandoned and neglected him, and his father is deceased, a similar basis under New York State law; and it is not in his best interest to return to his home country.

7. On May 21, 2025, D.L.C. and his mother attended his second master calendar hearing *pro se* at the 290 Broadway Immigration Court in New York. D.L.C.'s mother informed me that at that hearing, counsel for DHS moved the Court to dismiss D.L.C.'s proceedings, despite D.L.C.'s timely-submitted and pending application for asylum. Upon information and belief, the Court asked D.L.C.'s mother several questions regarding dismissal, a complicated legal procedure that neither D.L.C nor his mother fully understood. Neither D.L.C. nor his mother speak English fluently, nor does either have any background in the American legal system. At the time of the hearing, D.L.C. and his mother believed dismissal would allow D.L.C. to move forward more easily on his SIJS case and that he could continue to pursue his application for asylum outside of the court. D.L.C.'s mother stated that neither she nor D.L.C. were clearly advised that DHS intended to arrest and detain him or that DHS would later attempt to remove him through expedited removal procedures upon dismissal of D.L.C.'s immigration court proceedings, nor were they advised that dismissal would mean that D.L.C. could no longer pursue his asylum application before the immigration court.

8. After D.L.C.'s case was dismissed, D.L.C. and his mother left court, where they were followed into the elevator by two men in plain clothes. After leaving the elevator at the lobby on the first floor, the two men, who were ICE officers, ordered D.L.C. and his mother up against a wall. The officers spoke English, which neither D.L.C. nor his mother speak fluently. D.L.C.'s mother believes that the ICE officers said that they had an arrest warrant for them, but when she asked to see the warrant, they did not provide anything to her. The ICE officers then asked D.L.C. and his mother to present their "papers" and D.L.C.'s mother complied. Immediately after she presented their

documents, the ICE officers handcuffed D.L.C. Although his mother tried to explain that D.L.C. was young and was very ill, the ICE officers detained D.L.C. and put him in a vehicle. Although D.L.C.'s mother took video of the arrest, she stopped recording when the ICE officers told her that if she continued to resist, she would also be detained. Upon information and belief, aside from this May 21, 2025, apprehension by ICE, D.L.C. has not had any contact with law enforcement since entering the United States.

9.  On May 21, 2025, the same day that D.L.C. was detained, another NYLAG attorney observed a number of ICE officers throughout the immigration courts at 26 Federal Plaza and 290 Broadway in New York, including in courtrooms. While many of the officers were undercover, there were also at least two armed DHS law enforcement officers in uniform outside of the buildings. In front of the immigration courts, the NYLAG attorney also observed and photographed multiple vehicles marked "DHS police," as well as a number of unmarked vehicles that, upon information and belief, were in use by ICE. At 290 Broadway, the NYLAG attorney observed the apprehension of a noncitizen, who was arrested by plainclothes ICE officers and placed into an unmarked vehicle.

10. Shortly after D.L.C was detained, D.L.C.'s mother was connected with NYLAG's rapid response team, which generally focuses on providing representation to noncitizens who have been detained and/or ordered removed following proceedings that do not comport with due process. We reached out to ICE Enforcement and Removal Operations (ERO) on D.L.C.'s behalf and were informed that D.L.C. would be transferred to an Asylum Pre-Screening Officer (APSO) for a CFI on May 22, which we understood to mean that D.L.C. had been placed into expedited proceedings. At that time we informed ICE them that D.L.C. was not properly subject to expedited removal as he entered on parole and

that he had an upcoming hearing in family court for his SIJS application. We did confirm that he would receive a credible fear interview (CFI) should they subject him to expedited proceedings, as he feared removal to Venezuela. We additionally asked that D.L.C. receive a fear screening with respect to El Salvador should the government try to remove him to that country instead of to Venezuela.

11. We additionally informed ICE that D.L.C. suffered from a chronic medical condition that required treatment. A few months after arriving in the United States, D.L.C. began experiencing serious health issues. Specifically, D.L.C. suffers from persistent fevers and gastrointestinal issues, leading him to seek medical treatment repeatedly from the Sun River Health Center. Unable to determine the cause of his symptoms, the health center referred him to New York Blood and Cancer Specialists for follow-up visits with an oncologist and hematologist. At the time of his detention by U.S. Immigration and Customs Enforcement, D.L.C. was being assessed for the cause of his ongoing symptoms. Since being detained, D.L.C. received a diagnosis from these outside specialists that may be life threatening or lead to significant morbidity if not treated properly.

12. Had D.L.C. or his mother been aware of the ramifications of dismissal, they would have vigorously opposed dismissal of proceedings. D.L.C.'s mother reported that she and D.L.C. did try to change their pleading regarding dismissal, because they became concerned about their decision towards the end of the hearing, but D.L.C.'s mother is unsure if that was translated from Spanish to English for the Court. D.L.C.'s mother informed me that there was a man in the courtroom observing their proceedings whom she did not recognize. On May 29, 2025, we requested a copy of the "Digital Audio

Recording" (DAR) via a Freedom of Information Act Request (FOIA) and on May 30, 2025, we requested a copy of the DAR via the court's system to retrieve the Record of Proceedings (ROP). We were first provided with a copy of the DAR today, June 10, 2025.

13. NYLAG's immigration unit handles hundreds of removal cases a year and we have not previously seen DHS move to dismiss removal proceedings to pursue expedited removal, let alone processing a person paroled into the country for removal through expedited removal.

14. Although NYLAG began the process of reaching out to D.L.C. on May 21, 2025, because of D.LC.'s movement between facilities, we were unable to make contact with him until the morning of May 28, 2025. Initially, upon information and belief, D.L.C. believed that he would be sent to a detention center in New Jersey. When D.L.C. appeared in the ICE detainee locator on May 22, 2025, the locator indicated that D.L.C. had been detained at the Elizabeth Contract Detention Center in Elizabeth, New Jersey. That same day, NYLAG attorneys were informed by ERO that D.L.C. was not at Elizabeth, but at the Orange County Jail (OCJ), in Goshen, New York. When NYLAG attorneys called OCJ, they were informed by OCJ staff that D.L.C. was not in fact detained there. The evening of May 22, 2025, D.L.C. was then moved to the Port Isabel Detention Center (Port Isabel) in Los Fresnos, Texas. That same day, NYLAG attorneys set up a call for Tuesday, May 27, 2025, the first available attorney visit that was available. However, on the evening of May 24, 2025, D.L.C. called his mother, indicating that he had been moved to the Alexandria Staging Facility in Alexandria, Louisiana. On the morning of May 25, 2025, a NYLAG attorney reached out to ERO to confirm D.L.C.'s whereabouts, as the detainee locator on the morning of May 25, 2025, still indicated that D.L.C. was at

Port Isabel. That same day, ERO sent an email to the NYLAG attorney indicating that D.L.C. was at the Moshannon Valley Correctional Center (Moshannon) in Pennsylvania. However, soon after the email from ERO, D.L.C. called his mother and informed her that he was, in fact, still in Alexandria. The NYLAG attorney wrote another email to ERO, again asking them to clarify his location, and was informed that D.L.C. was not actually in Moshannon yet but would be transferred from Alexandria to Moshannon via airplane later in the day on May 25, 2025. ERO then informed the NYLAG attorney that they would have to contact Moshannon in order to set up an attorney visit with D.L.C. As of 7:00 am on May 26, 2025, the ICE detainee locator listed D.L.C. as being held in Alexandria. Around that time, D.L.C.'s mother called a NYLAG attorney to relay that D.L.C. had called from Moshannon. Following that phone call, a NYLAG attorney emailed ERO in Moshannon to confirm his location. ERO emailed saying that D.L.C. had never been detained at Moshannon. Having received the message from D.L.C.'s mother relaying that D.L.C. had called from Moshannon, the NYLAG attorney emailed ERO again to ask again where D.L.C. was being held. As of 11:00 am on May 26, 2025, D.L.C. was still listed as being at Alexandria, notwithstanding having called his mother from Moshannon. It was not until May 27, 2025, at approximately 10:27am that we confirmed by contacting Moshannon directly that D.L.C. was, in fact, at that facility. Because of transit, NYLAG was not able to make contact with D.L.C. until the morning of Tuesday, May 28, 2025, the earliest available appointment.

15. Upon information and belief, prior to NYLAG's first contact with D.L.C. on May 28, 2025, D.L.C. had asked officials for an attorney to be present at his CFI but was told that he would have to proceed with his CFI on whatever date they provided him, with or

without an attorney. It can take many days to schedule a legal call when a non-citizen is transferred to a new detention facility, and D.L.C.'s constant transfers between facilities have made it impossible to date to make contact with him to represent or even prepare him for his CFI.

16. On May 29, 2025, D.L.C. had his CFI. NYLAG was only made aware of the CFI through D.L.C.'s mother one hour before the interview. Upon learning about the imminent interview, we contacted APSO with a Form G-28 indicating that we were representing D.L.C. and asked to be called into the interview. At approximately 8:30 am, counsel was contacted by APSO and allowed to represent D.L.C. during the interview.

17. On May 30, 2025, NYLAG attorneys and D.L.C.'s mother appeared at a scheduled Bronx Family Court hearing in connection with his request for SIJC. Although the Department of Homeland Security (DHS) did not make him available for this previously scheduled court hearing, even virtually, the Bronx Family Court referee granted the guardianship and special findings orders necessary for D.L.C. to qualify for SIJS. NYLAG filed D.L.C.'s application for SIJS on Form I-360 with U.S. Citizenship and Immigration Services on Tuesday, June 3, 2025.

18. On June 1, 2025, D.L.C. was served with a new Notice to Appear (NTA), indicating that he had passed his CFI. Attached to the NTA was the Notice and Order of Expedited Removal on Form I-860, signed on May 21, 2025, the day of the dismissal of D.L.C.'s hearing. Attached as Exhibits A and B to this declaration are, respectively, true and correct copies of D.L.C.'s second Notice to Appear and Form I-860, with all personally identifiable information redacted. Prior to that date, we had not received copies of the Form I-860, despite having asked ERO for them.

19. D.L.C. has suffered serious harm from being subjected to expedited removal proceedings. First, as a result of DHS's decision to end D.L.C.'s immigration court proceedings and to instead process him through expedited removal, D.L.C. was placed great at risk of losing his ability to pursue SIJS, an important form of relief from removal. D.L.C. would have been unable to seek this relief had he been expeditiously removed to Venezuela and the only want he was able to avoid such a removal was by separately establishing that he has a credible fear of persecution in Venezuela; had he not had a strong claim for asylum, he would not have been returned to ordinary immigration court proceedings and his eligibility for SIJS relief would have provided no opportunity to slow down the removal process for him to pursue that relief.

20. Additionally, D.L.C.'s detention resulting from DHS's decision to process him for expedited removal means he will not be able to obtain the medical intervention necessary to treat his newly diagnosed condition. As a result, his health is likely to deteriorate, making it extremely difficult to pursue an asylum case, and potentially exposing him to significant morbidity and/or death.

21. Finally, D.L.C. is young—only 20 years old—and he is already feeling extremely scared and hopeless at the fact that he has been jailed and moved far from family, school, and support. He has had ongoing headaches and is unlikely to be able to receive the treatment necessary for his medical condition. Moreover, as evidenced by the difficulty NYLAG attorneys have had communicating with D.L.C., continuing to subject him to detention as a result of the decision to dismiss his first removal proceedings and pursue expedited removal will make it extremely difficult for him to access counsel and properly present

his claims, increasing the risk that he will be removed to a country where he faces the threat of persecution without the meaningful opportunity to have his cases adjudicated.

22. It is not feasible for D.L.C. to prepare his own signed declaration, because he is in immigration detention and we are only able to speak with him occasionally by phone.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in New York, New York on June 11, 2025.

Melissa Lim Chua

# EXHIBIT A

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

DEPARTMENT OF HOMELAND SECURITY

# NOTICE TO APPEAR

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

File No: [redacted]

In the Matter of:

Respondent: [redacted] currently residing at:

MOSHANNON VALLEY PROCESSING CENTER, 555 GEO DRIVE, PHILIPSBURG, PA 16866 — 929-759-8099

(Number, street, city, state and ZIP code) (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of Venezuela and a citizen of VENEZUELA;
3. You entered the United States at an unknown location on or about 2024-05-01;
4. You did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document;
5. You were not then admitted or paroled after inspection by an Immigration Officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

Section 212(a)(6)(A)(i) of the Act, as amended, as an alien present in the United States without being admitted or paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General.

☒ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☒ Section 235(b)(1) order was vacated pursuant to: ☒ 8CFR 208.30 ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

625 EVANS STREET, ROOM 148A, ELIZABETH, NJ 07201

*(Complete Address of Immigration Court, including Room Number, if any)*

on 06/12/2025 *(Date)* at 9:00 AM *(Time)* to show why you should not be removed from the United States based on the charge(s) set forth above.

[signature] Supervisory Asylum Officer

*(Signature and Title of Issuing Officer)*

Date: 06/01/2025

Philipsburg, PA

*(City and State)*

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.
**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

Upon information and belief, the language that the alien understands is SPANISH

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: ______________________ *(Signature of Respondent)*

Date: ______________

______________________ *(Signature and Title of Immigration Officer)*

## Certificate of Service

This Notice To Appear was served on the respondent by me on ______________, in the following manner and in compliance with section 239(a)(1) of the Act.

☐ in person ☐ by certified mail, returned receipt # ____________ requested ☐ by regular mail
☐ Attached is a credible fear worksheet.
☐ Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the ______________________ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

______________________ *(Signature of Respondent if Personally Served)*

______________________ *(Signature and Title of officer)*

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

# EXHIBIT B

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

# NOTICE AND ORDER OF EXPEDITED REMOVAL

DETERMINATION OF INADMISSIBILITY

Event Number: [redacted]

File No: [redacted]

Date: May 21, 2025

In the Matter of: [redacted]

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) 212(a) ☐ (6)(C)(i); ☐ (6)(C)(ii); ☒ (7)(A)(i)(I); ☐ (7)(A)(i)(II); ☐ (7)(B)(i)(I); and/or ☐ (7)(B)(i)(II); of the Act, as amended, and therefore are subject to removal, in that:

1. You are not a citizen or national of the United States;

2. You are a native of VENEZUELA and a citizen of VENEZUELA;

3. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; and/or

4. You are an immigrant in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

FAHAD ASLAM
DO
Name and title of immigration officer (Print)

Signature of immigration officer (Sign in ink)

## ORDER OF REMOVAL UNDER SECTION 235(b)(1) OF THE ACT

Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States.

FAHAD ASLAM
DO
Name and title of immigration officer (Print)

[signature]
Signature of immigration officer (Sign in ink)

V. COLLADO COLLADO
Supervisory Detention and Deportati
Name and title of supervisor (Print)

[signature]
Signature of supervisor, if available (Sign in ink)

☐ Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty).

## CERTIFICATE OF SERVICE

I personally served the original of this notice upon the above-named person on 05/21/25.
(Date)

[signature]
Signature of immigration officer (Sign in ink)

Refused to sign
Signature of alien (Sign in ink)

05/21/25
(Date)

U.S. Department of Homeland Security

Continuation Page for Form I-860

| Alien's Name | File Number | Date |
|---|---|---|
| [redacted] | [redacted] Event No: [redacted] | 05/21/2025 |

NARRATIVE
---------
5. ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION OF LAW:========================================================================================212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

| Signature | Title |
|---|---|
| FAHAD ASLAM [signature] | DO |

2 of 2 Pages

# Exhibit I

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,

*Plaintiffs,*

*v.*

KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,

*Defendants.*

Case No.: 1:25-cv-0872

**DECLARATION OF ATTORNEY SABRINA PEREZ-ARLEO**

I, Sabrina Perez-Arleo, upon my personal knowledge, hereby declare as follows:

1. I am over the age of 18 and competent to testify to the facts and matters set forth herein.
2. I am an attorney at Perez Law Office, PLLC, and I am an attorney in good standing of the State Bar of Arizona. I represent 1 client, G.C.M., who was paroled into the United States at a port of entry and has been targeted with and processed for expedited removal.
3. G.C.M. is a national of Peru who presented at the Brownsville, Texas port of entry for a CBP One appointment on December 11, 2024, for inspection. After inspection, G.C.M. was paroled into the country and granted parole status until 2026. At the same time, he was issued a Notice to Appear with an immigration court hearing date. Attached as Exhibit A to this declaration is a true and correct copy of G.C.M.'s Notice to Appear with all personally identifiable information redacted.
4. After G.C.M. was paroled into the United States, G.C.M. resided in Arizona with family.

5.  G.C.M. was scheduled to appear for a first master calendar hearing on June 17, 2026, after the anticipated expiration of G.C.M.'s parole status. G.C.M. was preparing to file his affirmative asylum application with the assistance of counsel.

6.  On March 21, 2025, G.C.M. was detained by Immigration and Customs Enforcement ("ICE") after a traffic stop. G.C.M. was processed into the Eloy Detention Center in Eloy, Arizona, and he remains detained there to this day. G.C.M. had valid parole status at the time of detention. Based upon my review of the record of proceedings, it appears that, on March 28, 2025, ICE filed a form I-830 Notice with the Court, which informs the Court of an individual's address and whether he is detained. Although the Form I-830 indicated that a motion was attached, there is no motion in the record of proceedings, and one does not appear to have been filed.

7.  On April 3, 2025, when G.C.M. was still detained and unrepresented by counsel, the attorney representing the Department of Homeland Security ("DHS") filed a motion to dismiss proceedings without prejudice. The motion stated as its basis that the Notice to Appear had been "improvidently" issued. Attached as Exhibit B to this declaration is a true and correct copy of DHS's motion with all personally identifiable information redacted. That same day, the Immigration Judge granted the DHS motion to dismiss. Attached as Exhibit C to this declaration is a true and correct copy of the Immigration Judge's order, dated the same day, granting the DHS motion to dismiss. DHS did not seek out or include G.C.M.'s position on the motion. G.C.M. was not provided with an opportunity to respond to the motion filed by DHS.

8.  On April 6, 2025, three days after the Court granted the DHS motion to dismiss, G.C.M.'s parole status was revoked.

9. On April 7, 2025, G.C.M. retained me to represent him. G.C.M. was not previously represented by counsel. I filed my G-28 Notice of Representation with ICE, and ICE was aware that G.C.M. was represented by counsel.

10. On April 23, 2025, G.C.M. was interviewed by a U.S. Citizenship and Immigration Services officer for a Credible Fear Interview ("CFI"). On April 20, 2025, Friday morning at about 7:00am MST, I was contacted by an asylum officer. The officer informed me that G.C.M. was about to have a CFI and asked if I wanted to be on the call. I was not able to be on the call because I had an appointment to get to, and I asked the officer to reschedule the call. After much pushback from the asylum officer, the officer obtained authorization from his supervisor to continue the interview, because I insisted that I wanted to be present. On Monday, April 23, 2025, I received another phone call from USCIS. This time, it was a different officer. It was early morning, and I did not receive any notification about this interview and was not available to participate in the call at that time as I was out of my office. The officer told me that she would conduct another CFI before G.C.M.'s CFI, and she would call me back after that interview. I was told that the interviews are not rescheduled unless there were "special circumstances" to warrant rescheduling the interview. I had not received the evidence, and I did not have sufficient time to properly prepare for G.C.M.'s CFI. About two hours later, I was in my office, and I received a call back from the asylum officer to conduct the CFI with G.C.M. I could hear that G.C.M. was very nervous during his CFI—he could not remember dates or details well. G.C.M. received a negative CFI determination. I did not receive the negative CFI determination myself, and I have not seen the determination myself, but my client told me that he was told that his CFI was denied. G.C.M. informed me that a judge

reviewed his CFI determination and upheld the negative CFI. I did not receive any hearing notification of that hearing and was not present. Communication with G.C.M. has been difficult, because he does not have funds to make calls, the detention center is very far from my office, and it takes me over an hour to get to Eloy Detention Center.

11. On May 5, 2025, I filed G.C.M.'s appeal with the Board of Immigration Appeals appealing the Court's dismissal of his removal proceedings. G.C.M.'s brief was filed by me on June 2, 2025, and the appeal remains pending.

12. G.C.M. is afraid to return to Peru, but because he has been processed for expedited removal and he was issued a negative CFI finding, he is now unable to present his asylum claim for which he is eligible unless his appeal is successful. G.C.M. is not eligible for other forms of relief. Before, when he was in regular removal proceedings, he would have been able to request asylum as a form of relief from removal, and he would have been able to present that claim to an immigration judge for adjudication on the merits. In removal proceedings, G.C.M. could present expert testimony, and he would have time to obtain evidence. He also would have been able to prepare his claim with his family and counsel, instead of being detained, which creates significant challenges for communication, access to counsel and other resources. G.C.M. did not expect to have a hearing in his case until June 17, 2026, and he was not prepared for the expedited removal proceedings initiated against him. Also, I am unable to have much contact with G.C.M., and it is difficult to work with him while he is in detention. For example, the last time I visited him, he did not have any of his documentation with him, because he said he had been brought in from outside and did not have access to those documents. Relying on G.C.M.'s account without reviewing his documentation makes it challenging,

because he does not understand English, and he does not have any experience with the legal process.

13. I have reviewed the contents of this declaration with G.C.M. by phone, and he has confirmed that all statements about his immigration history, immigration status, and immigration case are true and correct to the best of his knowledge. It is not feasible for G.C.M. to prepare his own signed declaration, because he is in immigration detention and I have only been able to review the documents filed with the Court, he does not call me often, and I am not able to visit him often at the detention center.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in Chandler, AZ on 06/04/2025

JOHN ESPARZA
NOTARY PUBLIC - ARIZONA
Maricopa County
Commission # 665954
My Commission Expires
April 27, 2028

Sabrina Perez-Arleo, Esq.

Subscribed and sworn before me this 5 day of June, 2025.

Notary Public

# EXHIBIT A

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

DEPARTMENT OF HOMELAND SECURITY

# NOTICE TO APPEAR

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Event No: [redacted]

Subject ID : [redacted] FIN #: [redacted]

SIGMA Event: [redacted] DOB: [redacted]

File No: [redacted]

In the Matter of: [redacted]

Respondent: [redacted] currently residing at:

[redacted] Cottonwood,ARIZONA 86326,UNITED STATES OF AMERICA [redacted]

(Number, street, city, state and ZIP code) (Area code and phone number)

[x] You are an arriving alien.

[ ] You are an alien present in the United States who has not been admitted or paroled.

[ ] You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of PERU and a citizen of PERU;
3. On or about December 11, 2024, you applied for admission to the United States at the Brownsville, Texas Port of Entry;
4. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

See Continuation Page Made a Part Hereof

[ ] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

[ ] Section 235(b)(1) order was vacated pursuant to: [ ] 8CFR 208.30 [ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

250 N 7TH AVE STE 300,
PHOENIX, AZ, US 85007

*(Complete Address of Immigration Court, including Room Number, if any)*

on June 17, 2026 *(Date)* at 08:30 AM *(Time)* to show why you should not be removed from the United States based on the charge(s) set forth above.

VICENCIO, Marisol
CBP OFFICER [signature]

*(Signature and Title of Issuing Officer)* *Digitally Acquired Signature*

Date: December 11, 2024 BROWNSVILLE , TEXAS

*(City and State)*

EOIR – 1 of 4

Uploaded on: 12/11/2024 at 01:00:57 PM (Mountain Standard Time) Base City: PHO

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form 1-589, Application for Asylum and for Withholding of Removal. The Form 1-589, Instructions, and information on where to file the Form can be found at www.uscis.gov/i-589. Failure to file the Form 1-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

Upon information and belief, the language that the alien understands is SPANISH

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

_______________ *(Signature of Respondent)*

Date: _______________

_______________ *(Signature and Title of Immigration Officer)*

## Certificate of Service

This Notice To Appear was served on the respondent by me on December 11, 2024 , in the following manner and in compliance with section 239(a)(1) of the Act.

[x] in person [ ] by certified mail, returned receipt # _______ requested [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[x] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the SPANISH language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

Digitally Acquired Signature — *(Signature of Respondent if Personally Served)*

VICENCIO, Marisol
CBP OFFICER
Digitally Acquired Signature — *(Signature and Title of officer)*

EOIR — 2 of 4

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

Uploaded on: 12/11/2024 at 01:00:57 PM (Mountain Standard Time) Base City: PHO

**U.S. Department of Homeland Security** **Continuation Page for Form** I862

| Alien's Name | File Number<br>SIGMA Event:<br>Event No: | Date<br>December 11, 2024 |
|---|---|---|

ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:

=====================================================================================

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

| Signature | Title |
|---|---|
| M Vicencio VICENCIO, Marisol | CBP OFFICER |

*Digitally Acquired Signature*

Form I-831 Continuation Page (Rev. 08/01/07)

# EXHIBIT B

Uploaded on: 04/03/2025 at 09:25:08 AM (Mountain Standard Time) Base City: PHO

orina lmeida
hief ounsel

Briana . Rodriguez
ssistant hief ounsel
U.S. mmigration and ustoms Enforcement
U.S. Department of omeland Security
1705 E. anna d.
Eloy Z 85131

**DETAINED**

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**PHOENIX, ARIZONA**

| | |
|---|---|
| n the Matter of: ) | |
| [redacted] ) | File No.: [redacted] |
| n removal proceedings ) | |

mmigration Judge: abich Paul

Next earing: 6/17/2026

**DEPARTMENT OF HOMELAND SECURITY**
**MOTION TO DISMISS WITHOUT PREJUDICE**

EOIR — 1 of 3

Uploaded on: 04/03/2025 at 09:25:08 AM (Mountain Standard Time) Base City: PHO

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**PHOENIX, ARIZONA**

n the Matter of:

[redacted]

n removal proceedings

File No.: [redacted]

**DEPARTMENT OF HOMELAND SECURITY**
**MOTION TO DISMISS WITHOUT PREJUDICE**

Pursuant to 8 .F. . § 1239.2(c) and 8 .F. . § 239.2(a)(6) the Department of omeland Security (the Department) hereby moves to dismiss without prejudice the removal proceedings on the Notice to Appear (NT ) issued on or about December 11 2024 because the NTA was improvidently issued.

espectfully submitted this 3rd day of April 2025.

BRIANA A RODRIGUEZ Digitally signed by BRIANA A RODRIGUEZ Date: 2025.04.03 09:23:16 -07'00'

Briana . odriguez
ssistant hief ounsel

orina lmeida
hief ounsel
U.S. mmigration and ustoms Enforcement
U.S. Department of omeland Security

EOIR — 2 of 3

**CERTIFICATE OF SERVICE**

hereby certify that this Department of omeland Security Motion to Dismiss Without Prejudice and any attached documents was/were served upon the respondent (or his/her representative):

☒ by placing a true copy in a sealed envelope into the inter/intra-office mail at 1705 E. anna d. Eloy Z 85131 to the address set forth below:

EL Z 85131

Date: April 3, 2025

BRIANA A RODRIGUEZ Digitally signed by BRIANA A RODRIGUEZ Date: 2025.04.03 09:23:39 -07'00'

ssistant hief ounsel

# EXHIBIT C

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**PHOENIX IMMIGRATION COURT**

Respondent Name:

[redacted]

To:

[redacted]

ELOY, AZ 85131

A-Number:

[redacted]

Riders:

In Removal Proceedings

Initiated by the Department of Homeland Security

Date:

04/03/2025

**ORDER ON MOTION TO DISMISS**

☐ The Respondent ☑ the Department of Homeland Security ☐ the parties jointly has/have filed a motion to dismiss these proceedings under 8 CFR 1239.2(c). The moving party has given notice of the motion to the non-moving party and the court has provided the non-moving party with an opportunity to respond. The motion is ☐ opposed ☐ unopposed.

After considering the facts and circumstances, the immigration court orders that the motion to dismiss is:

☑ Granted without prejudice
☐ Denied

Further explanation:

To ensure that the proceeding is not prolonged, or that the Respondent possibly expends resources to obtain counsel, the Court grants the Department's motion prior to receiving the Respondent's position. The Court finds that the Department's motion has been filed prior to the Respondent's initial hearing and having obtained counsel. Thus, given this early stage in removal proceedings, the Court finds that the Respondent is not prejudiced by dismissal. Matter of G-N-C-, 22 I&N Dec. 281, 284-85 (BIA 1998).

IT IS SO ORDERED.

Immigration Judge: HABICH, PAUL 04/03/2025

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ M ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name : [redacted] | A-Number : [redacted]

Riders:

Date: 04/04/2025 By: STROH, BELEN, Court Staff

# Exhibit J

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants.* | Case No.: 1:25-cv-0872 |
|---|---|

**DECLARATION OF SARAH T. GILLMAN, ESQ.**

I, Sarah T. Gillman, Esq, declare under penalty of perjury under the laws of the United States of America:

1. I am over the age of 18 and competent to testify to the facts and matters set forth herein.

2. I am an attorney and currently hold the position of Director of Strategic U.S. Litigation, U.S. Advocacy & Litigation, Robert F. Kennedy Human Rights (RFK Human Rights). I previously held the position of Legal Director of Rapid Defense Network (RDN). Prior to that, I was a Supervising Attorney with The Legal Aid Society's Immigration Law Unit, where I was responsible for the supervision of a staff of attorneys and paralegals in the Society's New York Immigrant Family Unity Project ("NYIFUP"). Prior to that, I served as a Staff Attorney with The Legal Aid Society's Immigration Law Unit. I have also held positions with the New York University School of Law (NYU), Immigrant Rights Clinic (IRC). From 2012-2014, I held the position of Adjunct Professor of Clinical Law and in the Summer of 2019 and Summer of 2021, I was a Summer Cooperating Attorney. I have been representing individuals who are detained

and facing deportation from the United States for seventeen (17) years with a specific focus on detention and removal defense.

3. RFK Human Rights currently represents a client, J.M.A., who was paroled into the United States at a port of entry and was nearly two years later processed for expedited removal. J.M.A. is a national of Cuba who used the Department of Homeland Security's CBP One mobile application in 2023 to schedule an appointment to present at a port of entry for inspection. On June 9, 2023, the day of his appointment, J.M.A. came to the Calexico port of entry along the U.S.-Mexico border, was inspected by a U.S. Customs and Border Protection officer and was paroled into the country.

4. Following his parole into the United States, the Department of Homeland Security (DHS) commenced removal proceedings against J.M.A. However, because he is a Cuban national whose parole into the United States made him eligible to apply for lawful permanent resident (LPR) status through the Cuban Adjustment Act (CAA) after one year in the country, removal proceedings were terminated without prejudice to allow for USCIS to adjudicate the CAA application. After that, J.M.A. applied for and received an employment authorization document (EAD), found a job, and became a trusted and valued employee at his company.

5. In February 2025, J.M.A. was detained by DHS after he was arrested by local police and charged with petit larceny—a charge that he has denied and has not yet led to any conviction. While J.M.A. was shopping in a store with a friend, a security guard alleged that J.M.A. and his friend were stealing items. While both denied the allegations and explained that they were shopping, the security guard called the local police and J.M.A. and his friend were arrested. Thereafter, the local police contacted immigration authorities.

6.  On or about February 9, 2025, J.M.A. was detained by immigration authorities and once more placed in removal proceedings. On March 25, 2025, J.M.A. appeared *pro se* for a master calendar hearing while in detention at the Buffalo Federal Detention Facility (BFDF). Prior to the March 25, 2025, hearing date, an attorney for DHS filed a written motion to terminate removal proceedings and that motion was granted by the Immigration Judge at the March 25 hearing. Attached as Exhibits A, B, and C to this declaration, respectively, are true and correct copies of DHS's motion to dismiss, the immigration judge's decision, and the transcript of the March 25 hearing with all personally identifiable information redacted.

7.  Thereafter the client was placed in expedited removal proceedings on March 26, 2025, and referred for a credible fear interview that took place on March 31, 2025. Although the asylum officer found J.M.A.'s responses credible, he issued a negative credible fear determination. J.M.A. requested a review of the asylum officer's negative credible fear determination before the Immigration Judge.

8.  On April 3, 2025, RFK Human Rights entered an appearance on behalf of J.M.A. RFK Human Rights filed an appeal with the Board of Immigration Appeals (BIA) of the Immigration Judge's decision granting the DHS's motion to terminate removal proceedings and prepared a submission in support of the Immigration Judge's review of the negative credible fear determination.

9.  On April 7, 2025, the Immigration Judge reversed the negative fear determination. As a result of this reversal, J.M.A. was statutorily entitled to be returned to regular removal proceedings before the immigration court.

10. On May 3, 2025, DHS and RFK Human Rights filed with the BIA a joint motion to remand the case to the immigration court so that J.M.A. can apply for all available and appropriate forms of relief. The BIA granted the joint motion to remand.
11. On June 5, 2025, J.M.A. and undersigned counsel appeared at the first Master Calendar hearing following the BIA remand. The Immigration Juge who is assigned to J.M.A.'s case is the same Immigration Judge who granted the DHS motion on March 25, 2025. At the June 5 hearing, I advised the Immigration Judge that J.M.A. has a pending application with USCIS to adjust status under the CAA. The Immigration Judge was surprised about this fact given that it was not disclosed by DHS at the time J.M.A. appeared pro se before the Immigration Judge on March 25, 2025. The Immigration Judge stated that if J.M.A. had a pending application to adjust status under the CAA, he should not have been put into expedited removal proceedings. The Immigration Judge asked the DHS attorney if he agreed with that analysis and the DHS attorney concurred and noted that he had not filed the motion to terminate.
12. The placement of J.M.A. in expedited removal, despite the fact that he had been paroled into the United States, nearly resulted in his quick removal from the United States. Unlike many others, J.M.A. was able to secure pro bono counsel to assist him in presenting his credible fear claim to the immigration judge reviewing the asylum officer's negative determination. If J.M.A. had been removed from the United States, he would have been removed to Cuba—a country where he fears persecution and torture. Additionally, J.M.A.'s removal from the country through expedited removal proceedings would have vitiated his right to continue pursuing his application for adjustment of status under the CAA.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in New York, New York on June 9, 2025

Sarah Gillman

Sarah T. Gillman, Esq.

# EXHIBIT A

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

Carol G. Bridge
Chief Counsel
Jeffrey T. Fiut
Deputy Chief Counsel
Sydney V. Probst
Assistant Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
4250 Federal Drive
Batavia, NY 14020

DETAINED

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE OF IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**BATAVIA, NEW YORK**

| **IN THE MATTER OF:** | **IN REMOVAL PROCEEDINGS** |
|---|---|
| [redacted] | [redacted] |
| Respondent | |

Immigration Judge: TBD

Hearing Date: March 25, 2025

**U.S. DEPARTMENT OF HOMELAND SECURITY**
**MOTION TO DISMISS WITHOUT PREJUDICE**

***Revised 3/12/2025***

Uploaded on: 03/24/2025 at 09:31:21 AM (Eastern Daylight Time) Base City: BTV

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE OF IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**BATAVIA, NEW YORK**

| **IN THE MATTER OF:** | **IN REMOVAL PROCEEDINGS** |
| --- | --- |
| [redacted] | [redacted] |
| Respondent | |

The U.S. Department of Homeland Security (Department) moves to dismiss removal proceedings, without prejudice. Specifically, the Department has reviewed the facts and circumstances of the case and determined that circumstances after issuance of the Notice to Appear have changed to such an extent that continuation is no longer in the best interest of the government. 8 C.F.R. §§ 1239.2(c), 239.2(a)(7) and (c).

Dismissal pursuant to this motion is without prejudice and does not constitute a final judgment rendered on the merits of any issue in these proceedings. *See* 8 C.F.R. § 1239.2(c) (providing that dismissal "shall be without prejudice to the alien or the Department").

**WHEREFORE**, for the reasons stated above, the Department requests this Court grant its motion to dismiss without prejudice.

Respectfully submitted on March 24, 2025

Sydney Probst
Sydney V. Probst
Assistant Chief Counsel

*Revised 3/12/2025*

Uploaded on: 03/24/2025 at 09:31:21 AM (Eastern Daylight Time) Base City: BTV

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**BATAVIA, NEW YORK**

| IN THE MATTER OF: | IN REMOVAL PROCEEDINGS |
|---|---|
| [redacted] | [redacted] |
| Respondent | |

**ORDER OF THE IMMIGRATION JUDGE**

Upon consideration of the **U.S. Department of Homeland Security Motion to Dismiss Without Prejudice**, it is HEREBY ORDERED that the motion be:

[ ] **GRANTED.**

[ ] **DENIED** because: ____________________________________________

____________________________________________

____________________________________________

____________________________________________

____________________ Date

____________________ TBD
Immigration Judge

---

**CERTIFICATE OF SERVICE**

This document was served by: [ M ] Mail; [ P ] Personal Service; [ O ] Other: __________

To: [ ] Alien; [ ] Alien c/o Custodial Officer; [ ] Alien's Atty/Rep.; [ ] DHS

Date:______________ By: Court Staff______________________________

Uploaded on: 03/24/2025 at 09:31:21 AM (Eastern Daylight Time) Base City: BTV

| **IN THE MATTER OF:**<br>[redacted]<br>Respondent | **IN REMOVAL PROCEEDINGS**<br>[redacted] |
|---|---|

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, I served a copy of this **U.S. Department of Homeland Security Motion to Dismiss Without Prejudice**.

☐ an identical copy in a sealed envelope with postage thereon fully prepaid and causing the same to be deposited with the U.S. Postal Service to the person at the precise and complete address set forth below. (See Immigration Court Practice Manual, Chapter 3.2)

☒ an identical copy hand-delivered to a responsible person at the address, set forth below, of the individual being served. (*See* Immigration Court Practice Manual, Chapter 3.2)

☐ through the EOIR Courts and Appeals System (ECAS), which will automatically send service notifications to both parties that a new document has been filed.

**c/o Buffalo Federal Detention Facility**
**4250 Federal Drive**
**Batavia, NY 14020**

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 24, 2025.

Sydney V. Probst
Sydney V. Probst
Assistant Chief Counsel

# EXHIBIT B

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BATAVIA IMMIGRATION COURT**

Respondent Name:

[redacted]

To:

[redacted]

BATAVIA, NY 14020

A-Number:

[redacted]

Riders:

In Removal Proceedings

Initiated by the Department of Homeland Security

Date:

03/25/2025

**ORDER ON MOTION TO DISMISS**

☐ The Respondent ☑ the Department of Homeland Security ☐ the parties jointly has/have filed a motion to dismiss these proceedings under 8 CFR 1239.2(c). The moving party has given notice of the motion to the non-moving party and the court has provided the non-moving party with an opportunity to respond. The motion is ☐ opposed ☐ unopposed.

After considering the facts and circumstances, the immigration court orders that the motion to dismiss is:

☑ Granted without prejudice
☐ Denied

Further explanation:

IT IS SO ORDERED.

Immigration Judge: SCHULTZ, ERIC 03/25/2025

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Noncitizen | [ P ] Noncitizen c/o custodial officer | [ ] Noncitizen's atty/rep. | [ P ] DHS

Respondent Name : [redacted] | A-Number : [redacted]

Riders:

Date: 03/25/2025 By: Cavar, Sandi, Court Staff

# EXHIBIT C

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of File: [redacted]

| | | |
|---|---|---|
| | ) | |
| [redacted] | ) | IN REMOVAL PROCEEDINGS |
| | ) | |
| RESPONDENT | ) | Transcript of Hearing |

Before Schultz, Eric, Immigration Judge

Date: March 25, 2025 Place: BATAVIA, NEW YORK

Transcribed by Heritage Reporting Corp.

Official Interpreter:

Language: SPANISH

Appearances:

For the RESPONDENT:

For the DHS: PETER MARCHE

1    JUDGE FOR THE RECORD

2        Good morning everyone.  We're on the record.  This is Immigration Judge Eric

3    Schultz presiding in removal proceedings at the Batavia, New York Immigration Court

4    on March 25, 2025, in a group master calendar hearing for three Respondents.  I will

5    identify them by name and alien registration number momentarily.  The Respondents

6    are each detained in the custody of the Department of Homeland Security.  They are

7    appearing in person before the Court today.  I've familiarized myself with their record of

8    proceedings.  The Department of Homeland Security is represented by Assistant Chief

9    Counsel Peter Marche, who is appearing in person with the Court today.  The

10   Respondents are not represented.  We have the assistance of a Spanish interpreter

11   telephonically connected from Language Services Associates to assist the Court and

12   the parties today.

13   JUDGE TO INTERPRETER

14       To our interpreter, we are on the record.  Thank you for your help.  As always we

15   appreciate it.

16   INTERPRETER TO JUDGE

17       Good morning.  Thank you so much, Your Honor.  My pleasure.

18   JUDGE TO INTERPRETER

19       Do you swear or affirm to faithfully and correctly interpret the proceedings here

20   from English to Spanish and Spanish to English?

21   INTERPRETER TO JUDGE

22       Yes, I do.

23   JUDGE TO INTERPRETER

24       Thank you.

25   JUDGE TO RESPONDENTS

A▉▉▉▉▉▉▉                          1                         March 25, 2025

To the Respondents through our interpreter, good morning gentlemen. When I say your name, please stand and remain standing. [REDACTED]. [REDACTED]. And [REDACTED] [REDACTED].

JUDGE FOR THE RECORD

Let the record reflect all three Respondents stood when called, indicating they are all present for this group master calendar hearing.

JUDGE TO RESPONDENTS

To the Respondents through our interpreter, thank you, gentlemen. You may be seated. Please raise your hand if Spanish is your best language. Thank you. You may lower your hands.

JUDGE FOR THE RECORD

Let the record reflect that all three Respondents raised their hand indicating Spanish is their best language.

JUDGE TO RESPONDENTS

So, to the Respondents, I'm going to explain to you the legal rights that you have in these proceedings. Please listen carefully and after I've completed my explanation, I will speak to each of you individually.

The reason why we're here is because the U.S. Government has charged that you do not have a legal right to remain in the United States and has listed those charges in a document called a Notice to Appear that you were given to start this case. There are two purposes for these hearings. The first is to see if the U.S. Government is correct in that charge. The second is to see if you qualify for any relief or benefit that would allow you to stay in the United States or leave without being ordered removed.

During these proceedings, you have the right to present evidence in support of

1    your case and to examine and object to any evidence presented by the Government.  If

2    at the end of these hearings the Court determines you are not legally allowed to remain

3    in the United States, you have a right to appeal that decision to a higher court called the

4    Board of Immigration Appeals.

5            If you apply for any relief from removal, such as for example asylum, the Court

6    will set a deadline for you to file your application with the Court.  If the application is not

7    filed by the deadline set, the Court may deem the application abandoned.  You also

8    have what's called a corroboration requirement.  This means you are expected and

9    required to file reasonably available documents to support claims you make in an

10   application.  So, for example, if you apply for asylum, you're expected to file documents

11   to show why you have a fear of returning to your home country.  If you don't provide

12   those kinds of documents, the Court may deny your application for relief, based on lack

13   of corroboration.

14           You have the right to be represented during these proceedings by an attorney or

15   a qualified representative at your own expense.  The Court and the Government cannot

16   provide you with an attorney.  However, when you came into Court today, our officer

17   gave you a list of individuals and organizations that may be able to represent you at little

18   or no cost to you.  Please understand you are not limited to just the attorneys on the list.

19   If you wish, you can arrange for any attorney you want, but it is your responsibility to

20   find counsel.

21   JUDGE FOR THE RECORD

22           This concludes the group legal rights advisals.  I will now go into each individual

23   case.

24                               [OFF THE RECORD]

25                                [ON THE RECORD]

███████████                      3                    March 25, 2025

JUDGE FOR THE RECORD

We are back on the record. This is Immigration Judge Eric Schultz in the matter of [REDACTED], file number [REDACTED]. Let the record reflect this Respondent was part of a group master calendar hearing in which I explained and was part of that group for legal rights he has in these proceedings. We are now on his individual matter.

JUDGE TO [REDACTED]

To the Respondent through our interpreter, good morning. How are you?

[REDACTED] TO JUDGE

Good morning, sir. I'm fine. Thanks.

JUDGE TO [REDACTED]

Please confirm what language do you speak and understand best.

[REDACTED] TO JUDGE

I speak a little bit English, but I'm so nervous right now. It's better for me to speak Spanish. [indiscernible].

JUDGE TO [REDACTED]

All right. So, in English and through our interpreter, sir, if English [sic] is your best language, please let's use the interpreter. These are important proceedings for you. I want to make sure you understand everything.

[REDACTED] TO JUDGE

I will use interpreter, please.

JUDGE TO [REDACTED]

Please raise your right hand. Do you swear or affirm that the testimony you will give today will be the truth?

[REDACTED] TO JUDGE

Yes. I swear.

JUDGE TO [redacted]

Thank you. You may lower your hand, and please tell me your full name.

[redacted] TO JUDGE

[redacted].

JUDGE TO [redacted]

Thank you.

JUDGE TO INTERPRETER

Madam Interpreter, when I speak to Government Counsel, please continue consecutive interpretations. Okay?

INTERPRETER TO JUDGE

Okay.

JUDGE TO [redacted]

So, to the Respondent, sir, yesterday the Government attorney's office filed a request or a motion to dismiss your proceedings without prejudice, which means there would be no longer an Immigration Court proceeding. They have the right to do that under regulation. They get to decide who should appear in front of me and then when that happens, I decide the issues, but they can decide whether to proceed or not in certain cases like yours.

JUDGE TO MR. MARCHE

Attorney Marche, are you familiar with this, and did you want to add anything?

MR. MARCHE TO JUDGE

I saw the motion filed by my co-Counsel, Ms. Probst. I have nothing further to add, Your Honor.

JUDGE TO [redacted]

So, to the Respondent, sir, I am going to sign that order dismissing this

Immigration Court proceeding. You have Counsel -- you can try to find Counsel yourself if you'd like and talk to your deportation officer, but we're not going to have an Immigration Court case right now. All right? Do you understand?

[REDACTED] TO JUDGE

Yes, sir.

JUDGE TO [REDACTED]

Do you have any questions?

[REDACTED] TO JUDGE

No, sir.

JUDGE TO [REDACTED]

All right.

JUDGE FOR THE RECORD

So, this is actually going to be an adjournment code 8(a) for signing the order before the hearing, and we will go off the record on the removal case and go to the bond hearing next.

<u>HEARING CLOSED</u>