No. 25-5289

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,
*Appellees*,

v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, *et al.*,
*Appellants*.

On Appeal from the U.S. District Court
for the District of Columbia
No. 1:25-cv-00872 (Cobb, J.)

**APPELLANTS' REPLY IN SUPPORT OF EMERGENCY
MOTION FOR A STAY PENDING APPEAL**

PAPU SANDHU
*Assistant Director*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
General Litigation & Appeals
Section
P.O. Box 878, Ben Franklin
Station
Washington, DC 20044

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

TYLER J. BECKER
*Counsel to the Assistant Attorney
General*
U.S. Department of Justice,
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

# TABLE OF CONTENTS

INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................... 1

    I.    The Government Is Likely To Succeed on the Merits ............ 1

        A.    Plaintiffs Fail to Demonstrate Redressability .............. 1

        B.    8 U.S.C. §1252(f)(1) Bars Plaintiffs' Stay Request ........ 5

        C.    The INA Authorizes Expedited Removal of Paroled Arriving Aliens ..................................................... 6

            1.    "Designation" Authority ....................................... 6

            2.    "Arriving in" Authority: ....................................... 8

        D.    The Agency's Actions are not Arbitrary and Capricious .................................................................. 10

    II.    The Remaining Stay Factors Favor the Government .......... 11

    III.    The District Court's Overbroad Relief Exceeded its Authority ............................................................... 13

CONCLUSION ........................................................................ 14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*AFSA v Trump*,
   No. 25-5184, 2025 WL 1742853 (D.C. Cir. June 20, 2025) .................. 12

*Cordon-Linarez v. Garland*,
   No. 24-cv-488, 2024 WL 4652824 (M.D. Pa. 2024) ............................... 3

*Corrales-Gonzalez v. Emmerich*,
   No. 24-CV-638-WMC, 2025 WL 1638423 (W.D. Wis. 2025) ................. 3

*Doe v. Trump*,
   142 F.4th 109 (1st Cir. 2025) ................................................................ 13

*Humane Society of the U.S. v. Cavel Int'l, Inc.*,
   No. 07-5120, 2007 WL 4723381 (D.C. Cir. May 1, 2007) ................... 12

*Immigrant Defs. L. Ctr. v. Noem*,
   No. 25-2581, 2025 WL 2017247 (9th Cir. July 18, 2025) ................... 13

*Jesus Arredondo-Martinez*,
   492 F. App'x 823 (9th Cir. 2012) ........................................................... 3

*J.G.G. v Trump*,
   No. 25-5067, 2025 WL 914682 (D.C. Cir. Mar. 26, 2025) ................... 12

*KalshiEX LLC v. CFTC*,
   119 F.4th 58 (D.C. Cir. 2024) .............................................................. 12

*Leng May Ma v. Barber*,
   357 U.S. 185 (1958) ............................................................................... 9

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) ................................................................... 9, 10, 11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................ 1, 3, 5

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
   366 F.3d 930 (D.C. Cir. 2004) ................................................ 4

*NTEU v. Trump*,
   No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) ................. 12

*Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*,
   457 F.3d 941 (9th Cir. 2006) ................................................ 4

*Obregon-Calcedo v. Thompson*,
   No. 25-1048, 2025 WL 1805464 (D.N.J. 2025) ...................... 3

*Renal Physicians Ass'n v. HHS*,
   489 F.3d 1267 (D.C. Cir. 2007) ............................................ 5

*Scenic Am., Inc. v. DOT*,
   836 F.3d 42 (D.C. Cir. 2016) ................................................ 4

*Trump v. CASA, Inc.*,
   145 S. Ct. 2540 (2025) ................................................. 13, 14

*U.S. v. Arredondo-Martinez*,
   No. 10-525, 2011 WL 13196331 (C.D. Cal. 2011) ................... 3

*Wildlife v. Gutierrez*,
   532 F.3d 913 (D.C. Cir. 2008) ............................................ 2

### STATUTES
### Immigration and Nationality Act of 1952, as amended:

Section 212,
   8 U.S.C. §1182 .................................................................. 8

Section 212(a)(6)(C),
   8 U.S.C. §1182(a)(6)(C) ...................................................... 8

Section 212(d)(5)(A),
   8 U.S.C. §1182(d)(5)(A) ............................................................. 7, 9

Section 240a(a)(1),
   8 U.S.C. §1229a(a)(1) ................................................................... 8

Section 240a(c)(2)(A),
   8 U.S.C. §1229a(c)(2)(A) .............................................................. 8

Section 242(f)(1),
   8 U.S.C. §1252(f)(1) ..................................................................... 5

**Other Statute:**

5 U.S.C. §705 .................................................................................... 1

**RULES**

Fed. R. App. P. 8(a)(2)(B)(ii) ........................................................... 12

**REGULATIONS**

8 C.F.R. §1.2 ................................................................................. 2, 12

8 C.F.R. §235.3 ................................................................................ 2

## INTRODUCTION

The district court's sweeping stay under 5 U.S.C. §705 of three recent actions by the U.S. Department of Homeland Security (DHS) suffers from a fatal Article III defect, cannot be sustained on the merits, irreparably harms the Government by sowing uncertainty over the application of expedited removal to potentially hundreds of thousands of aliens, and is overbroad in any event. Plaintiffs have not provided any legal or equitable reason that this Court should endorse the district court's significant intrusion on the use of expedited removal for previously paroled arriving aliens. This Court should grant a stay pending appeal.

## ARGUMENT

## I.    The Government Is Likely To Succeed on the Merits

### A.    Plaintiffs Fail to Demonstrate Redressability

Plaintiffs have not established Article III standing because they fail to show that it is "likely" that their members' alleged injury—being subject to expedited removal—will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation omitted); *see* Defendants' Motion for an Emergency Stay ("Mot.") at 9-12.

As Plaintiffs concede, DHS's arriving alien regulation at 8 C.F.R. §1.2, as applied through 8 C.F.R. §235.3, explicitly authorizes DHS to apply expedited removal to aliens paroled at ports of entry. Mot.9. Yet Plaintiffs did not seek relief against those regulations in their §705 stay motion. In fact, they acknowledged at the hearing that regardless of the three challenged actions, DHS could *still* apply expedited removal to aliens paroled at ports of entry. Dkt.35 at 6:22-7:1; Mot.9-10.

Plaintiffs argue their claims are redressable because DHS allegedly began "subjecting" former parolees to expedited removal at a greater "scale only *after* Defendants adopted the Challenged Actions." Plaintiffs' Opposition to Stay (Opp.) at 6 (emphasis in original). But as Plaintiffs and the district court acknowledge, DHS *did* apply expedited removal to previously paroled aliens prior to the challenged agency actions. Dkt.41 at 34-35; Opp.7-8. Yet the district court accepted Plaintiffs' scale argument, concluding that Plaintiffs needed only to show that "relief … [is] likely to relieve the asserted injury 'in part,' not even the entirety of the injury." Dkt.41 at 37 (quoting *Defs. of Wildlife v. Gutierrez*, 532 F.3d 913, 925 (D.C. Cir. 2008)). And Plaintiffs still have not established what "part" of Plaintiffs' injury would be redressed if DHS could still apply 8

C.F.R. §§1.2 and 235.3 to remove the same previously paroled aliens who Plaintiffs represent.  Mot.10-11.  It is thus "merely speculative" that a ruling on the three actions Plaintiffs challenge would have any impact on DHS subjecting their members to expedited removal; redressability is thus lacking here.[1]  *See Lujan*, 504 U.S. at 561 (quotations omitted); *accord* Mot.11-12.

Courts have repeatedly concluded that plaintiff speculation about the effect of vacating agency action does not establish redressability.  For example, this Court concluded that a plaintiff failed to establish redressability where the plaintiff challenged only interpretive guidelines but did not challenge the "underlying … [r]egulations" that permitted the

---

[1] Plaintiffs' characterization of the status quo before the challenged actions is dubious at best.  Case law demonstrates that DHS pursued expedited removal of such aliens prior to the challenged agency actions. *See, e.g., U.S. v. Arredondo-Martinez*, No. 10-525, 2011 WL 13196331, *1, 4 (C.D. Cal. 2011), *aff'd*, 492 F. App'x 823 (9th Cir. 2012); *Corrales-Gonzalez v. Emmerich*, No. 24-CV-638-WMC, 2025 WL 1638423 (W.D. Wis. 2025) (2023 expedited removal order); *Obregon-Calcedo v. Thompson*, No. 25-1048, 2025 WL 1805464 (D.N.J. 2025) (2024 expedited removal order); *Cordon-Linarez v. Garland*, No. 24-cv-488, 2024 WL 4652824 (M.D. Pa. 2024), *appeal pending*, No. 24-3068 (3d Cir.). Plaintiffs' argument is further undermined by the fact that DHS issued guidance in 2011 to enforcement officers regarding the use of "expedited removal for aliens who were paroled for prosecution purposes and for other reasons as well."  Dkt.36, Ex. A.

same practices plaintiff sought to challenge. *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 940 (D.C. Cir. 2004). This Court similarly held that plaintiffs failed to establish redressability when seeking to vacate Department of Transportation guidance interpreting agreements with states to allow digital billboards subject to certain criteria because it was mere speculation whether plaintiffs' injury—having to expend resources fighting states' approvals of digital billboards—would be remedied by vacating the guidance. *Scenic Am., Inc. v. DOT*, 836 F.3d 42, 50-53 (D.C. Cir. 2016). Plaintiffs there (as here) presented no evidence indicating whether fewer such billboards would actually be approved absent the guidance. *Id.* at 51, 53. And, more generally, redressability is absent where (as here) plaintiffs fail to challenge authority independently permitting the same conduct. *See*, *e.g.*, *Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941, 955 (9th Cir. 2006) (redressability was lacking because plaintiffs did not challenge another regulation authorizing the same conduct).

Moreover, whether Plaintiffs have established redressability depends on whether Defendants would "behave any differently in the absence of the" challenged actions. *Scenic Am.*, 836 F.3d at 52. Plaintiffs

have provided *no* evidence that staying the challenged actions would cause DHS not to apply expedited removal to previously paroled aliens, especially considering that unchallenged regulations would explicitly permit such actions. Even if Plaintiffs are correct that the challenged actions contributed to expedited removal being applied to previously paroled aliens more often than before, "the undoing of the governmental action" here "will not undo the harm, because the new status quo is held in place by other forces." *Renal Physicians Ass'n v. HHS*, 489 F.3d 1267, 1278 (D.C. Cir. 2007). Plaintiffs simply assume—without evidence—that DHS would apply expedited removal to Plaintiffs' members less often if the challenged actions are stayed. Article III demands more. *See*, *e.g.*, *Lujan*, 504 U.S. at 561.

### B.    8 U.S.C. §1252(f)(1) Bars Plaintiffs' Stay Request

The Government is likely to prevail on its argument that the district court's order was barred by 8 U.S.C §1252(f)(1). Plaintiffs' response is at odds with the statutory text as well as itself. Plaintiffs' theory of redressability is that the Order they sought and obtained provides them relief because it prevents—*i.e.,* "restrain[s]"—the

Government from employing expedited removal.  But if that is so, then it is squarely barred by §1252(f)(1).

In any event, Plaintiffs' arguments are unpersuasive.  Despite their assertion, §1252(f)(1) does not render review under §1252(e)(3) illusory. *See* Opp.9.  As the Government explained at the hearing on the stay motion, the district court could provide party-specific relief to an individual alien who was subject to expedited removal.  Dkt.35 at 44-47. And the Supreme Court always retains authority to "enjoin or restrain" actions under §1252(f)(1).

### C.    The INA Authorizes Expedited Removal of Paroled Arriving Aliens

#### 1.    "Designation" Authority

Plaintiffs' argument that the designation authority does not apply ignores the plain language of the parole statute and misunderstands Congress's statutory scheme.  Plaintiffs' main response is that "an 'applicant for admission' is not the same as someone eligible for expedited removal."  Opp.10.  While true, that has no bearing on the Government's argument.  The designation provision authorizes expedited removal of certain applicants for admission present in the country for less than two years prior to the date of determination of inadmissibility.  Plaintiffs do

not dispute that this includes aliens who enter illegally—who are "applicants for admission" under the expedited removal statute. And, under the parole statute, Congress required aliens, including those paroled at a port of entry, whose parole is subsequently terminated be "dealt with in the *same* manner as that of any other applicant for admission"—*i.e.*, that they may also be subject to designation for expedited removal as well. 8 U.S.C. §1182(d)(5)(A) (emphasis added).

The context of the designation provision also indicates a continuing status, not a past event. Mot.15. If "has not been … paroled" means has not been granted parole on a past occasion, as Plaintiffs advocate, an alien whose parole is terminated would *not* be "dealt with in the *same* manner as that of *any other* applicant for admission," 8 U.S.C. §1182(d)(5)(A) (emphases added). Any "other" applicant—*i.e.*, one who was never paroled—who lacks two years of continuous presence prior to the date of the determination of inadmissibility would be subject to expedited removal. To treat aliens whose parole has been terminated in

the same manner as other applicants for admission, all such aliens must be potentially subject to expedited removal.[2]

Finally, Plaintiffs offer scant response to Defendants' arguments based on the agency's regulations. Plaintiffs grudgingly acknowledge (Opp.14) that 8 C.F.R. §208.14(c)(4)(ii) appears to authorize designation of paroled arriving aliens. Their only response is to parrot the district court's characterization of that argument as "weak" without explanation. *See* Opp.14. That bare *ipse dixit* hardly provides a basis for denying a stay.

### 2. "Arriving in" Authority:

Plaintiffs fail to rebut the Government's argument that paroled arriving aliens fall within the "arriving in" statutory authority. *See* Opp.15-17. In particular, Plaintiffs fail to reconcile their position with

---

[2] Plaintiffs' reference to 8 U.S.C. §1229a(c)(2)(A) proves nothing. *See* Opp.11. As discussed, certain applicants for admission who are present for more than the required two years are not subject to the designation provision and may be placed in §240 removal proceedings. Moreover, expedited removal only applies to aliens who are inadmissible under 8 U.S.C. §1182(a)(6)(C) or (7), *see* 8 U.S.C. §1225(b)(1)(A)(i), while 8 U.S.C. §1229a(c)(2)(A) applies more broadly to aliens who are inadmissible under any subsection of 8 U.S.C. §1182. *See also* 8 U.S.C. §1229a(a)(1) (authorizing removal proceedings to "decid[e] the inadmissibility or deportability of an alien").

the language of the parole statute as discussed above. 8 U.S.C. §1182(d)(5)(A); *see also Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958).

Additionally, Plaintiffs' (and the district court's) disregard of a long-established regulation is deeply revealing. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) ("[C]ourts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes…. And interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning."). Particularly when a district court is faced with a regulation that answers the question presented and Plaintiffs refuse to challenge the regulation, the district court should generally accept the long-standing contemporaneous agency construction.

The long-standing and undisputed inclusion of paroled aliens does not contradict the statute or regulation. The designation and "arriving in" provisions are separate sources of authority. Congress excluded *currently* paroled aliens from the designation provision, but the absence of an equivalent exclusion from the "arriving in" provision does not

9

support the inference that Plaintiffs draw. *See* Opp.17. To the contrary: Congress demonstrated that it knew how to exclude aliens—and did not do so for paroled aliens in the arriving alien provision. The exclusion in the designated alien provision has a very specific purpose, which is to preclude the designation of an alien for expedited removal *for the duration of the alien's parole*. And a regulation allowing aliens to demonstrate that they were paroled may inform DHS's exercise of its enforcement discretion and is therefore not "moot." Opp.17.

### D.    The Agency's Actions are not Arbitrary and Capricious

Plaintiffs' arbitrary and capricious claim fails because DHS has statutory authority to apply expedited removal to aliens paroled at ports of entry. Plaintiffs' assertion that this claim is independent of the statutory authority issue is wrong. *See* Opp.18.

*First*, the issue of the agency's consideration of reliance interests was not an actual basis of the district court's stay order, *see* Dkt.41 at 72-73, and Plaintiffs do not address this issue in their opposition. *See* Opp.18. *Second*, Plaintiffs strain to create an inconsistency as to the documents' legal justifications where none exists. *See id.* Specifically, Plaintiffs allege the Huffman Memo requires DHS to apply expedited

10

removal to aliens "before they have resided in the country for two years." *Id.* But that requirement is found nowhere in that document and there is no inconsistency with the February 18 Directive. Furthermore, the CHNV Termination Notice cannot be the basis of an inconsistency given it does not purport to create a new rule for expedited removal.[3] In any event, DHS's statements in the Notice about being limited to a two-year time period simply do not constitute a renunciation of using expedited removal under its "arriving in" authority; indeed, such a renunciation would be contrary to the governing regulation at §1.2, which Plaintiffs fail to challenge.

## II.    The Remaining Stay Factors Favor the Government

The district court's order harms the Government and the public interest in prompt execution of removal orders. Those harms warrant a stay pending appeal.

The Executive's inability to employ a lawful, expedited procedure for seeking removal inflicts irreparable harm and supports granting a

---

[3] Plaintiffs misconstrue the Government's argument on this point. *See* Opp.18-19. The problem with Plaintiffs' reliance on the CHNV Notice is that the agency published that notice to terminate the parole programs and terminate paroles under such programs, not to provide criteria for expedited removal.

stay.  *NTEU v. Trump*, No. 25-5157, 2025 WL 1441563, at *2 (D.C. Cir. May 16, 2025); *AFSA v. Trump*, No. 25-5184, 2025 WL 1742853, at *3 (D.C. Cir. June 20, 2025).

Plaintiffs object to two declarations filed with the Government's Motion.  Opp.21.  But the stay factors require consideration of the relevant harms and the applicable rules permit such submissions.  Fed. R. App. P. 8(a)(2)(B)(ii)–(iii).  This Court has routinely considered (and even invited) such evidentiary submissions.  *J.G.G. v Trump*, No. 25-5067, 2025 WL 914682, at *4 (D.C. Cir. Mar. 26, 2025) (denying stay but discussing declaration submitted on appeal); *Humane Society of the U.S. v. Cavel Int'l, Inc.*, No. 07-5120, 2007 WL 4723381, at *1 (D.C. Cir. May 1, 2007); *see KalshiEX LLC v. CFTC*, 119 F.4th 58, 60 (D.C. Cir. 2024). Plaintiffs' discounting of the Government's harm is overwhelmingly premised on merits-based arguments, which fail as discussed previously and above.

Finally, Plaintiffs greatly exaggerate their members' harms by ignoring the agency's ability to continue to apply 8 C.F.R. §§1.2 and 235.3 to arriving aliens even if a stay is denied.

12

### III. The District Court's Overbroad Relief Exceeded its Authority

Plaintiffs brush aside the Supreme Court's "complete relief principle" in *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025). Opp.22. However, "*CASA* provides fresh guidance regarding the equitable powers of federal courts," *Doe v. Trump*, 142 F.4th 109, 112 (1st Cir. 2025), and Plaintiffs fail to adequately explain why their members cannot obtain complete relief through a remedy that is narrowly tailored to the actual parties.

*CASA*'s analysis notably applies to §705 stays. *See Immigrant Defs. L. Ctr. v. Noem*, No. 25-2581, 2025 WL 2017247, at *14 (9th Cir. July 18, 2025). That makes perfect sense: *CASA* applies traditional equitable principles and §705's text—which is focused on preserving the status quo and preventing irreparable harm—is plainly applying those same traditional equitable principles. *See id.*

Perhaps recognizing *CASA's* relevance, Plaintiffs contend the district court reasonably applied the complete-relief principle. Opp.23. Not so. None of the considerations they rely upon justify such extraordinary relief extending to *hundreds of thousands* of non-party aliens. Plaintiffs' (and the district court's) reliance on equitable

13

considerations such as the limited review available under the expedited removal statute cannot justify the district court's vastly overbroad remedy. *CASA* rejected a similar appeal concluding that "the policy pros and cons are beside the point"; rather "the equitable relief available in the federal courts is that 'traditionally accorded by courts of equity' at the time of our founding." 145 S. Ct. at 2560 (citation omitted). That holding is dispositive here.

## CONCLUSION

The Court should grant a stay pending appeal.

Respectfully submitted,

PAPU SANDHU
*Assistant Director*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, DC 20044
(202) 616-9357

BRETT A. SHUMATE
*Assistant Attorney General*
/s/ *Drew C. Ensign*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
TYLER J. BECKER
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
*Drew.C.Ensign@usdoj.gov*
(202) 514-2000

Dated: August 27, 2025

14

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the reply contains 2,582 words. The reply complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Century Schoolbook type.

/s/ *Papu Sandhu*
Papu Sandhu

Dated: August 27, 2025          Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2025, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Papu Sandhu*
Papu Sandhu

Dated: August 27, 2025        Attorney for Appellants