Oral Argument Not Yet Scheduled
No. 25-5289

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA

Coalition for Humane Immigrant Rights; Undocublack Network; Casa, Inc.,
*Plaintiffs – Appellees,*

v.

Kristi Noem, in her official capacity as Secretary of Homeland Security; Todd M. Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; Rodney S. Scott, in his official capacity as Commissioner of U.S. Customs and Border Enforcement; Joseph Edlow, in his official capacity as Director of U.S. Citizenship and Immigration Services; Donald J. Trump, in his official capacity as President of the United States,
*Defendants – Appellants.*

On Appeal from the United States District Court for the District of Columbia
Case No. 1:25-cv-00872, Honorable Jia M. Cobb, District Judge

## BRIEF OF *AMICUS CURIAE* FEDERATION FOR AMERICAN IMMIGRATION REFORM IN SUPPORT OF DEFENDANTS-APPELLANTS

MATT A. CRAPO
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Ste 330
Washington, DC 20001
(202) 328-7004
mcrapo@fairu.org

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

# DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1, *amicus curiae* Federation for American Immigration Reform makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Federation for American Immigration Reform.

# TABLE OF CONTENTS

                              **<u>Page</u>**

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ................................................................................. iii

INTEREST OF *AMICUS CURIAE* ........................................................................ 1

SUMMARY OF ARGUMENT .............................................................................. 1

ARGUMENT .......................................................................................................... 2

  I.  The district court's order conflicts with the statutes and regulations governing parole and expedited removal ....................................................... 2

  II.  In any event, Secretary Noem's CHNV Parole Termination is unreviewable as an exercise of presidential authority ............................... 5

CONCLUSION ..................................................................................................... 10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

                                                        **Page(s)**

### CASES

*Biden v. Texas*,
    597 U.S. 785 (2022)..............................................................................................5

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
    333 U.S. 103 (1948)..............................................................................................6

*Dalton v. Specter*,
    511 U.S. 462 (1994).........................................................................................8, 9

*Detroit Int'l Bridge Co. v. Gov't of Can.*,
    189 F. Supp. 3d 85 (D.D.C. 2016) .......................................................................8

*Kaplan v. Tod*,
    267 U.S. 228 (1925)..............................................................................................3

*Leng May Ma v. Barber*,
    357 U.S. 185 (1958)................................................................................3, 4, 5, 7

*Nishimura Ekiu v. United States*,
    142 U.S. 651 (1892)..............................................................................................6

*Tulare Cty. v. Bush*,
    185 F. Supp. 2d 18 (D.D.C. 2001) .......................................................................8

*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950)..............................................................................................6

*Zadvydas v. Davis*,
    533 U.S. 678 (2001)..............................................................................................3

### STATUTES

Illegal Immigration Reform and Immigrant Responsibility Act,
    Pub. L. No. 104-208, 110 Stat. 3009-546 (1996) ................................................3

Immigration and Nationality Act,
  Pub. L. No. 82-414, § 236(a), 66 Stat. 163 (1952) .................................................4

8 U.S.C. § 1101(a)(13)(B) ............................................................................................4

8 U.S.C. § 1182(d)(5)(A) .............................................................................................4

8 U.S.C. § 1182(f) ........................................................................................................6

8 U.S.C. § 1225(b)(1)(A)(i) .........................................................................................4

8 U.S.C. § 1226(a) (1994) (repealed) ..........................................................................4

8 U.S.C. § 1229a .........................................................................................................3

8 U.S.C. § 1251 (1994) (repealed) ..........................................................................3, 4

## REGULATIONS

8 C.F.R. § 1.2 ...........................................................................................................2, 4

## MISCELLANEOUS

Executive Order 14165 at § 7(b), Securing Our Borders,
  90 Fed. Reg. 8467 (Jan. 20, 2025) (published Jan. 30, 2025) .............................7

Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and
  Venezuelans, 90 Fed. Reg. 13611 (Mar. 25, 2025) ..............................................7

# INTEREST OF *AMICI CURIAE*[1]

*Amicus curiae* Federation for American Immigration Reform ("FAIR") is a non-profit 501(c)(3) corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to inform the public about the effects of both unlawful and lawful immigration, and to defend American citizens, American workers, and the nation's environment by limiting overall immigration, enhancing border security, and ending illegal immigration. FAIR has been involved in more than 100 legal cases since 1980, either as a party or *amicus curiae*, with the aim of protecting all Americans against the substantial harms of mass migration and illegal immigration.

# SUMMARY OF ARGUMENT

The district court's order postponing and staying the January 23 Huffman Memorandum, February 18 ICE Directive, and March 25 Parole Termination Notice for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV Parole Termination) conflicts with binding regulations and the statutes authorizing parole and expedited removal of arriving aliens. Congress has always distinguished between those aliens who have entered the United States and those who are outside

---

[1] All parties consented to the filing this brief. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

the country seeking admission, and the expedited removal statute plainly applies to the latter category—arriving aliens—which includes aliens paroled at the border. The parole statute does not confer any status upon an alien and arriving aliens who are paroled into the country retain their status of "arriving alien" throughout and following termination of parole.

In any event, Secretary Noem's termination of the CHNV parole programs is unreviewable under the Administrative Procedure Act (APA). Secretary Noem's CHNV Parole Termination was at the behest of the President and was therefore an exercise of inherent Executive power under Article II of the Constitution as well as discretionary delegated legislative power via the parole statute. Because Secretary Noem's termination was at the behest of the President, her actions are unreviewable under the APA. Because the district court's judgment conflicts with the relevant statutes and regulations, and because the CHNV Parole termination is unreviewable, this Court should reverse.

## ARGUMENT

### I. The district court's order conflicts with the statutes and regulations governing parole and expedited removal.

The government demonstrates that the long-standing regulation defining "arriving alien," 8 C.F.R. § 1.2, renders parolees subject to expedited removal because they fall within the meaning of "arriving aliens." Brief for Appellants at 30-37. In addition to the regulation, however, Congress used the term "arriving

alien" since it first enacted the Immigration and Nationality Act (INA) to describe the class of aliens subject to exclusion proceedings. Congress's long-time use of the term "arriving alien" is consistent with the regulation and supports the government's reading of the parole and expedited removal statutes.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citing *Kaplan v. Tod*, 267 U.S. 228, 230 (1925) (holding that an "excluded" alien "was still in theory of law at the boundary line and had gained no foothold in the United States" despite nine years' presence in the United States); *Leng May Ma v. Barber*, 357 U.S. 185, 188-190 (1958) (holding that alien "paroled" into the United States pending admissibility had not effected an "entry")).

Prior to substantial amendments made to the INA in 1996,[2] an alien's classification as either excludable or deportable depended on whether he made an "entry" into the United States. *See*, *e.g.*, *Leng May Ma*, 357 U.S. at 187. An alien who had effected an entry was subject to deportation proceedings. *See* 8 U.S.C.

---

[2] Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, 110 Stat. 3009-546 (1996) (IIRIRA), the law distinguished between deportation and exclusion proceedings. IIRIRA combined the two proceedings into a new process known as a "removal proceeding." *See* 8 U.S.C. § 1229a (added by the IIRIRA).

3

§ 1251(a) (1994) (repealed by IIRIRA); *Leng May Ma*, 357 U.S. at 187. However, an "arriving alien" who had not affected an entry was placed in exclusion proceedings. *See* 8 U.S.C. § 1226(a) (1994) ("A special inquiry officer shall conduct proceedings … to determine whether an *arriving alien* who has been detained for further inquiry under section 235 [8 U.S.C. § 1225] shall be allowed to enter or shall be excluded and deported.") (emphasis added) (repealed and replaced by IIRIRA); *Leng May Ma*, 357 U.S. at 187; *see also* INA, Pub. L. No. 82-414, § 236(a), 66 Stat. 163, 200 (1952) (same).

At the same time Congress repealed exclusion proceedings and instituted removal proceedings, it provided that an alien "who is arriving in the United States" is subject to expedited removal. 8 U.S.C. § 1225(b)(1)(A)(i). The regulatory definition of "arriving alien," 8 C.F.R. § 1.2, is fully consistent if not required by Congress's use of the term "arriving" to describe aliens who have neither entered nor been admitted.

The parole statute also is also consistent with the regulatory definition of "arriving alien." "An alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B); *see also id.* § 1182(d)(5)(A) ("[S]uch parole of such alien shall not be regarded as an admission" and that once parole ends "the alien shall forthwith return to the custody from which he was paroled" and thereafter be treated "in the same manner

4

as that of any other applicant for admission."). Thus, a straightforward reading of the parole statute makes clear that a parolee has not effected an entry in the legal sense and instead retains the legal status of an arriving alien. Indeed, the Supreme Court has held as much. In *Leng May Ma*, the Supreme Court held that parolees, even though physically present within the United States, have not effected an entry and are treated under the law as though they remain detained at the border. 357 U.S. at 188-90; *see also Biden v. Texas*, 597 U.S. 785, 815 (2022) (Kavanaugh, J., concurring) (describing parole as an alternative to mandatory detention under 8 U.S.C. § 1225(b)).

In sum, the regulatory definition of "arriving aliens" is consistent with, if not required by, the statutory language governing parole and expedited removal. It is also consistent with historical statutory language and practice, and the district court erred in rejecting the regulatory definition. Accordingly, the district court's order should be reversed.

## II. In any event, Secretary Noem's CHNV Parole Termination is unreviewable as an exercise of presidential authority.

There is no question that the United States has a right inherent in its sovereignty to defend itself from foreign dangers by controlling the admission of aliens. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in

such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). It is also well-established that the President has independent authority in the areas of foreign policy and national security. *See e.g., Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs"); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . . inherent in [both Congress and] the executive department of the sovereign"); *see also id.* at 542 ("When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing *an inherent executive power*.") (emphasis added).

Indeed, Congress has acknowledged the President's inherent authority to exclude aliens in the nation's interest. *See* 8 U.S.C. § 1182(f) (implementing the President's authority, in the interests of the United States, to "suspend the entry of all aliens or any class of aliens" or "impose on the entry of aliens any restrictions he may deem to be appropriate"). Granted the President's inherent constitutional power, as Commander-in-Chief, to exclude aliens, it cannot be a nullity even if exercised outside of the precise form of its implementation by Congress in 8 U.S.C. § 1182(f). And because parolees have not effected an entry and are treated

under the law as though they remain detained at the border, *Leng May Ma*, 357 U.S. at 188-90, they are subject to the President's inherent exclusion power.

On January 20, 2025, President Trump directed Secretary Noem to "[t]erminate all categorical parole programs that are contrary to the policies of the United States established in my Executive Orders, including the program known as the 'Processes for Cubans, Haitians, Nicaraguans, and Venezuelans.'" Executive Order 14165 at § 7(b), Securing Our Borders, 90 Fed. Reg. 8467, 8468 (Jan. 20, 2025) (published Jan. 30, 2025). On March 25, 2025, Secretary Noem complied with the President's directive and issued a notice in the Federal Register terminating the CHNV parole programs and notifying aliens who had been granted parole under that program that any unexpired period of parole would end in thirty days. Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611 (Mar. 25, 2025). In this notice, Secretary Noem made clear that she terminated the CHNV parole programs at "the President's direction, and for the independent reasons stated in this notice…." *Id.* Accordingly, Secretary Noem exercised both inherent Executive authority and delegated statutory authority in terminating the CHNV parole programs.

Because Presidents must always act through subordinates, whether an action is that of the President or the head of an agency, for purposes of APA reviewability, hinges not on whether agency personnel help perform a given action, but on

whether the authority to take that action is presidential or delegated by Congress to an agency. *See, a fortiori, Dalton v. Specter,* 511 U.S. 462, 477 (1994) ("Where a statute … commits decisionmaking to the discretion of the President, judicial review of the President's decision is not available."). Here, one source of independent authority for Secretary Noem's action came directly from the President in the exercise of his inherent constitutional authority over foreign affairs and immigration policy, and she terminated the CHNV parole programs pursuant to his executive order. As the U.S. District Court for the District of Columbia has explained:

> [A]n unreviewable presidential action must involve the exercise of discretionary authority vested in the President; an agency acting on behalf of the President is not sufficient by itself. Since the Constitution vests the powers of the Executive Branch in one unitary chief executive officer, *i.e.*, the President, an agency always acts on behalf of the President. Nonetheless, there is a difference between actions involving discretionary authority delegated by Congress to the President and actions involving authority delegated by Congress to an agency. Courts lack jurisdiction to review an APA challenge in the former circumstances, regardless of whether the President or the agency takes the final action. However, "[w]hen the challenge is to an action delegated to an agency head but directed by the President, a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions usually applicable to that agency's action should govern." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.,* 189 F. Supp. 3d 85, 101-04 (D.D.C. 2016). *See also, e.g., Tulare Cty. v. Bush,* 185 F. Supp. 2d 18, 28 (D.D.C. 2001) ("A court has subject-matter jurisdiction to review an agency action under the APA

8

only when a final agency action exists. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to review pursuant to the APA.") (citing *Dalton,* 511 U.S. at 470) (other internal citations omitted).

Here, Secretary Noem, in addition to "other independent reasons," acted at the direction of the President and implemented his executive order when she terminated the CHNV parole programs. Accordingly, Secretary Noem exercised independent Article II authority in terminating the CHNV parole programs, and the district court lacked jurisdiction to review her actions under the APA. *Dalton,* 511 U.S. at 477. It is, of course, not to the prejudice of the unreviewability of the Secretary's action that it was pursuant to an order that the President had inherent constitutional authority to issue. Obviously, if actions committed to the President's discretion by a statute are unreviewable under the APA, actions he takes pursuant to his inherent authority under the Constitution are at least equally so. Therefore, the district court lacked jurisdiction under the APA to postpone or stay the CHNV Parole Termination and should be reversed.

# CONCLUSION

For the foregoing reasons, this Court should reverse the district court.

Date: November 24, 2025　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　/s/ Matt Crapo
　　　　　　　　　　　　　　　　MATT A. CRAPO
　　　　　　　　　　　　　　　　D.C. Bar No. 473355
　　　　　　　　　　　　　　　　Federation for American Immigration Reform
　　　　　　　　　　　　　　　　25 Massachusetts Ave., NW, Ste 330
　　　　　　　　　　　　　　　　Washington, DC 20001
　　　　　　　　　　　　　　　　(202) 328-7004
　　　　　　　　　　　　　　　　mcrapo@fairus.org

　　　　　　　　　　　　　　　　Counsel for *Amicus Curiae*
　　　　　　　　　　　　　　　　Federation for American Immigration Reform

# CERTIFICATE OF COMPLIANCE

The foregoing brief complies with Fed. R. App. P. 27(d)(2) because it contains 2,209 words, as measured by Microsoft Word software. The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style typeface of 14 points or more.

Date: November 24, 2025          Respectfully submitted,

                                                   /s/ Matt Crapo

# CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of November 2025, I electronically filed the foregoing *amicus* brief with the Clerk of the Court using the CM/ECF system, which I understand to have caused service of the parties' counsel.

s/ Matt Crapo